IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:08 MD 1932

| | |
|---|---|
| IRENE GRACE, | ) |
| Plaintiff, | ) |
| | ) ORDER |
| v. | ) |
| FAMILY DOLLAR STORES INC., | ) |
| Defendant. | ) |

**THIS MATTER** is before the court on Defendant's Motion for Summary Judgment (Doc. No. 114); and Memorandum in Support (Doc. No. 115); Plaintiffs' Response in Opposition (Doc. No. 127); and Defendant's Reply (Doc. No. 133). For the reasons set forth below, the motion is **GRANTED**.

## I. FACTS

Plaintiff, Irene Grace (Grace), worked at Family Dollar Stores from 1996 until October 2004. Grace resigned her employment with Family Dollar in October 2004. At the time Grace became store manager, Family Dollar paid Grace a salary of $400 per week. (Grace Deposition, pp. 25-26.) In 2000, Grace received a pay increase to $625 per week; in November 2002, Grace received another pay increase and was paid a salary of $655 per week. *(Id.* at 84.)

Grace testified in the deposition that she regularly interviewed and provided recommendations as to the hiring of employees, trained employees, assigned employees to a

1

schedule and set their hours of work, and directed and supervised her employee's work. (Grace Dep. at 95-95, 192-194, 58-60, 62, 70-72, 96, 118-119, 92-94, 176, 96, 99-101, 108, 170, 183-184.) She also maintained sales records and was responsible for financial records, conducted performance reviews of her employees, handled employees' complaints and disputes between employees, disciplined employees, planned and apportioned work among her employees, was responsible for ordering merchandise, controlled the flow and distribution of merchandise, was responsible for the safety of her employees at the store, and was responsible for handling customer complaints and controlling theft. *(Id.* at 145-150, 73-74, 76-80, 109-110, 60, 110-113, 99-102, 173-74, 183-84, 43, 60-61, 50, 54-56, 68-69, 126-128, 43, 53, 56-57.) Defendant also alleges that she was free from supervision as her District Manager was only in her store 2-3 times per month. However, Grace also testified in her deposition, that her primary duty was freight and that she spent 95% of the time doing freight (doing it herself, not supervising other people doing it). Plaintiff also alleges that she spent 99% of the time during a week putting out freight, running a cash register, doing the schematics and doing the janitorial work. (Grace Dep. 206-209.)

In Grace's deposition, she testified that at the stores she managed, the range in the number of employees would be from three to five, and that she always had at least two cashiers. Although there were occasions when she did not have an Assistant Store Manager in her store, this was a temporary situation related to illness or turnover. Family Dollar's records show that Grace directed at least 80 employee-hours of work a total of 89.29% of the time she was a Store

Manager. However, Plaintiff contradicts these statements in her declaration[1], alleging that there were many occasions where she was the only employee in the store or she worked with only 1 cashier present. Plaintiff alleges that during a 4 month period of time, Plaintiff did not have two or more full/part time employees working in the store for 80 hours per week, 80% of the time.

It is undisputed that Grace did not have the authority to hire or fire. However, Family Dollar alleges that Grace interviewed candidates as part of the screening process and made recommendations to her District Manager. (Grace Dep. at 94-95, 192-194.) Grace verified in her deposition that her evaluations and recommendations were followed 95 to 99% of the time. *(Id.* at 73.) Grace also testified that she would often cut a person's hours back to the point that they would actually quit. Grace had the authority to take this step of forcing out an employee on her own; she did not clear it with her District Manager First. *(Id.* at 111-113.) Grace disputes these facts in her declaration by arguing that Grace could not terminate or discipline employees without District Manager approval and she made fewer than five hiring and promotional recommendations during the 8 years she was employed with Family Dollar and that other store employees made similar recommendations. (Grace Decl. ¶ 7, 10.)

---

[1] The court notes that the Plaintiff's declaration was prepared after Plaintiff's deposition and on many occasions directly contradicts the sworn testimony. Furthermore, Grace cannot create a genuine issue of material fact in her declaration by contradicting her sworn testimony from her deposition pursuant to *Daugherty*. *Daugherty v. Food Lion, LLC*, 2006 WL 1642233 at * 5 (W.D.N.C. June 13, 2006) (affirming grant of summary judgment and noting that "in resisting a motion for summary judgment, a plaintiff may not create an issue of material fact merely by submitting an affidavit contradicting his own prior sworn testimony").

## II. STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has met the initial burden, the non-moving party must come forward with specific facts demonstrating a genuine issue for trial. *Celotex*, 477 U.S. at 323. A genuine issue for trial exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Pursuant to Rule 56(e), after "a motion for summary judgment is made . . . an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading," rather "the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. C. P. 56(e); *Anderson*, 477 U.S. at 250. This is particularly important where the nonmoving party bears the burden of proof. *Hughes v. Bedsole*, 48 F.3d. 1376, 1381 (4th Cir. 1995). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Anderson*, 477 U.S. at 249. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249-50. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the Plaintiff. *Id.* at 252. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict.

When considering summary judgment motions, courts must view the facts in the light most favorable to the party opposing the motion. *Austin v. Clark Equip. Co.*, 48 F.3d 833, 835 (4th Cir. 1995). "[T]he court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000). Indeed, summary judgment is only proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotations omitted). However, in reviewing the whole record, the Court must remember to "disregard all evidence favorable to the moving party that the jury is not required to believe" and, therefore, only "give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that [the] evidence comes from disinterested witnesses." *Reeves*, 530 U.S. at 151.

### III. DISCUSSION

The FLSA requires that an employee receive overtime pay if he or she works more than forty hours in a week. 29 U.S.C. § 207(a)(1). However, the statute exempts from this requirement "any employee employed in a bona fide executive . . . capacity." 29 U.S.C. § 213(a)(1). The DOL has promulgated regulations which further describe and interpret the scope of this exemption. Due to the time span of Grace's claims, two different sets of DOL regulations apply to this analysis: the regulations in effect prior to August 23, 2004 (the pre-2004

regulations) and the regulations that went into effect on August 23, 2004 (the current regulations).

The pre-2004 regulations set forth both a "short" and "long" test for determination whether an employee qualifies as an exempt executive. *See* 29 C.F.R. § 541.1 (pre-2004). The short test is used for employees who are compensated on a salary basis at a rate of at least $250 per week. 29 C.F.R § 541.1(f) (pre-2004). It is undisputed that Grace earned a salary of more than $250 per week during the relevant time period. Accordingly, the short test is appropriate method for determining whether Grace was properly classified as exempt. Under the short test, an employee qualifies as an executive if (1) her primary duty consists of the management of the enterprise and (2) includes the customary and regular direction of the work of two or more other employees. 29 C.F.R. § 541.119(a) (pre-2004); 29 C.F.R. § 541.1(f) (pre-2004). Similarly, the current regulations provide that an employee qualifies as an executive if: (1) she is compensated on a salary basis at a rate of at least $455 per week; (2) her primary duty is management of the enterprise; (3) she customarily and regularly directs the work of two or more other employees; and (4) she has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight. 29 C.F.R. § 541.100(a).

**1. Family Dollar Satisfies the Salary Basis Test**

Family Dollar satisfies the salary basis test under both the pre-2004 regulation, which requires a weekly salary of not less than $250 per week under the short test, and the current regulations, which requires a weekly salary of not less than $455 per week. 29 C.F.R § 541.100;

29 C.F.R. § 541.1(f) (pre-2004). In 1996, Grace became store manager and Family Dollar paid her a salary of $400 per week. In 2000, Grace received a pay increase to $625 per week; in November 2002, Grace received another pay increase and was paid a salary of $655 per week.

**2. Family Dollar Satisfies the Primary Duty Test**

Both sets of regulations provide an almost identical list of "management" activities, which include, but are not limited to:

> Interviewing, selecting and training of employees; setting and adjusting their rates of pay and hours of work; directing their work; maintaining their production or sales records for use in supervision or control; appraising their productivity and efficiency for the purpose of recommending promotions or other changes in their status; handling their complaints and grievances and disciplining them when necessary; planning the work; determining the techniques to be used; apportioning the work among the workers; determining the type of materials, supplies, machinery or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety of the [employees] and the property.

29 C.F.R. § 541.102(b) (pre-2004).[2] In Grace's deposition, Grace explicitly testified that she regularly performed almost every one of these management activities (see extensive list in the facts).

Grace testified that as Store Manager, it was her responsibility to run the store and that the "buck stops" with her. (Grace Dep. at 39-41, 103.) Grace also testified that she was the top management official in the store on a daily basis. *(Id.* at 163.) The regulations provide guidance as to how an employee's primary duty may be determined. Both sets of regulations instruct that

---

[2] The current regulations include two additional examples: planning and controlling the budget and monitoring or implementing legal compliance measures. 29 C.F.R. § 541.102.

7

the determination should be "based on all the facts in a particular case." 29 C.F.R. § 541.700(a); 29 C.F.R. § 541.103 (pre-2004). The current regulations provide the additional insight that primary duty "means the principal, main, major or most important duty that the employee performs" and that the "major emphasis" should be on the character of the employee's job as a whole. 29 C.F.R. § 541.700(a). The pre-2004 regulations set forth five factors to consider in this analysis: (1) the amount of time spent in the performance of managerial duties; (2) the relative importance of the managerial duties as compared with other types of duties; (3) the frequency with which the employee exercises discretionary powers; (4) her relative freedom from supervision; and (5) the relationship between her salary and the wages paid other employees for the kind of nonexempt work performed by the supervisor. 29 C.F.R. § 541.103 (pre-2004).[3]

### a. The Amount of Time Spent in the Performance of Managerial Duties

Grace cannot defeat the exemption by claiming that she spent the majority of her time performing non-managerial duties. Both sets of regulations set forth a general rule of thumb that an employee who spends more than 50 percent of his or her time performing managerial work will typically satisfy the primary duty requirement. 29 C.F.R. § 541.700(b); 29 C.F.R. § 541.103 (pre-2004). However, the regulations emphasize that "time alone . . . is not the sole test" and that exempt executives are not required to spend more than 50 percent of their time performing exempt work if other factors support the conclusion that management is their primary duty. *Id.* Furthermore, the current regulations specifically address the concept of concurrent duties. 29 C.F.R. § 541.106. This section instructs that "[c]oncurrent performance of exempt and

---

[3] The current regulations are similar, but they omit reference to the frequency with which the employee exercises discretionary powers. 29 C.F.R. § 541.700(a).

nonexempt work does not disqualify an employee from the executive exemption if the requirements of § 541.100 are otherwise met." *Id.* Grace was responsible for the overall management of the store for the entire time she was in the store. (Grace Dep. at 165-66.) Grace also performed her non-managerial work concurrently with her exempt managerial work. For example, Grace was responsible for directing and supervising her employees with regard to unloading freight from the truck even while she also assisted in the unloading process. *(Id.* at 54-55.) Grace would also train, direct and supervise her employees as she worked alongside them. *(Id.* at 99-100, 108.) Grace also recognized that she would frequently multitask and would evaluate the condition of the store and watch out for theft while simultaneously running a cash register. *(Id.* at 102-04.) Likewise, while Grace was stocking shelves or running a register, she also was responsible for making sure the whole store ran successfully at the same time. *(Id.* at 103, 216.)

### b. The Relative Importance of the Managerial Duties as Compared With Other Types of Duties

Grace's managerial duties are more important than other duties that she performed. At the time Grace was hired as a Store Manager at Family Dollar, she was told that she would be making deposits, processing freight, training people, and basically "running the store." (Grace Dep. at 21.) Grace admits that handling customers and employees and managing her financial responsibilities were "significant," "critical" and "important." *(Id.* at 41, 147.) In the end, Grace's primary responsibilities were to take care of the customers and ensure that the store was profitable. *(Id.* at 42.) Grace's performance evaluation and her salary and bonus depended directly on her handling of these responsibilities. *(Id.* at 42-46.) Grace also testified that one of

9

her primary tasks and functions as a successful store manager was to train her employees in customer satisfaction in order to create loyal, repeat customers, and she emphasized training during her tenure. *(Id.* at 61-62, 70-72.) Thus, according to Grace, these managerial tasks constituted the focus and the most important part of her job.

### c. Grace's Relative Freedom from Supervision

Grace was relatively free from supervision in managing her stores. Grace testified that Wilson, who was Grace's District Manager for the majority of her tenure as Store manager, only came into the store once every two to three weeks for a short visit. (Grace Dep. at 138.) Furthermore, Wilson was responsible for seventeen stores throughout eleven different counties in Georgia. (Wilson Decl. ¶ 3.) Though he was in contact with Grace by telephone and e-mail, Grace does not allege that Wilson was a micro-manager who constantly was looking over her shoulder. On the contrary, Grace testified that she disciplined employees on her own, handled disputes between employees and customer complaints independently, and generally did not feel that running certain decisions by her District Manager, such as terminations, was an infringement on her ability to run her store the way she saw fit. (Grace Dep. at 100-113, 117-118, 120.)

Courts have found that employees were relatively free from supervision in circumstances where the exempt executive was subject to substantially greater oversight than Grace. In *Thomas*, the plaintiff store manager was supervised by a district manager who typically visited each store once or twice per week and communicated frequently by phone and e-mail. 506 F.3d at 499, 507. The court also noted that "[i]n addition to stringent managerial oversight, Speedway has also adopted detailed company policies and standardized operating procedures, as an

additional means of fostering consistency throughout its multi-store organization." *Id.* Nevertheless, the Sixth Circuit found that the plaintiff was relatively free from supervision, recognizing that the factor "does not demand complete freedom from supervision" and noting that the plaintiff operated on a day-to-day basis without a supervisor looking over her shoulder and that "frequent, even daily exchange of e-mail and phone communications with her district manager" did not equate to exacting supervision. *Id.*

### d. The Relationship Between Grace's Salary and the Wages Paid Other Employees for the Kind of Nonexempt Work Performed by the Supervisor

Grace earned significantly more than non-exempt store employees. Starting in January 2000, Grace received $625 per week. (Wilson Decl. ¶ 6.) In November 2002, Grace received another pay increase, earning $655 per week, which continued to her resignation in October 2004. *(Id.*; Grace Dep. at 86-87.) She also regularly received bonuses of $1,000 or more during her tenure as Store Manager, whereas none of the nonexempt workers received such a bonus. (Grace Dep. at 86-87.) Grace worked an average of 52 to 65 hours per week. *(Id.* at 180-82.) Setting aside her bonus payments, this results in an average hourly wage of between $12.02 per hour (52 hour week) and $9.62 per hour 965 hour week) during the period from January 2000 to November 2002 and an average hourly wage of $12.60 per hour (52 hour week) and $10.07 per hour (65 hour week) for the period of November 2002 to her resignation. In comparison, the nonexempt employees working at Grace's store, even using the highest hourly wage for those employees whose wages changed over time, received an average hourly wage of only $5.81 per hour. (Wilson Decl. ¶ 8.) Specifically, of the fifty-four nonexempt employees who worked at

11

Grace's store from July 28, 2001 to October 2004, fifty-one made $7 per hour or less, and not more than $9.50 per hour. *Id.*

### e. The Frequency With Which the Employee Exercises Discretionary Powers

Grace frequently exercised discretion in performing her store manager duties. Grace interviewed and provided recommendations as to the hiring of employees; she disciplined employees and mediated employee disputes; she conducted performance reviews for her employees; and she planned and apportioned work among her employees. (Grace Dep. at 73-74, 76-80, 92-95, 99-102, 109-110, 113, 176, 183-84, 192-194.) Grace exercised significant discretion when it came to controlling theft and deciding whether or not to involve police when she caught shoplifters. *(Id.* at 140-43.) Grace also had to use flexibility and discretion to deal with occasional problems with merchandise or truck shipments, including markdowns of damaged merchandise. *(Id.* at 47-50, 89-90.) Finally, although some of the Family Dollar store setup was standardized and governed by schematics, Grace concedes that she had some discretion in how to arrange and decorate certain displays. *(Id.* at 126-28.)

Although Grace alleges that she was required to perform certain nonexempt work, she concedes that she had the discretion and flexibility to choose what tasks to perform herself and what tasks to delegate to her employees; thus, the fact that she chose to perform janitorial work does not defeat the exemption, because it was not mandated by Family Dollar. (Grace Dep. at 213-14.) Likewise, the fact that Family Dollar maintains certain policies and procedures for the sake of consistency does not mean that Grace fails to exercise discretion.

### 3. Grace Customarily and Regularly Directed the Work of Two Or More Employees

Both the pre-2004 and current regulations require that an employee customarily and regularly direct the work of two or more other employees to qualify as an executive. 29 C.F.R. § 541.100(a)(3); 29 C.F.R. § 541(f) (pre-2004). The current regulations state that the phrase "means a frequency that must be greater than occasional but which, of course, may be less than constant." 29 C.F.R. § 541.701. As a general rule of thumb, the DOL has adopted an "80-hour rule" which generally requires an exempt executive to direct a total of 80 employee-hours of work each week. *See* 69 Fed.Reg. 22135. Grace testified that at the stores she managed, the range in the number of employees would be from three to five, and that she always had at least two cashiers. (Grace Dep. at 75-76.) Although there were occasions when she did not have an Assistant Store Manager in her store, this was a temporary situation related to illness or turnover. *(Id.* at 75-76, 200-01.) In addition, Family Dollar's records show that Grace directed at least 80 employee-hours of work a total of 89.29% of the time that she was a Store Manager. (Wilson Decl. ¶ 7.)

### 4. Grace Had Authority and Discretion With Regard To Interviewing and Hiring and Her Recommendations Were Closely Followed

Grace's deposition testimony establishes that she meets the additional prong of the executive exemption test contained in the current regulations, namely that her suggestions and recommendations as to the hiring, firing, and change of status of other employees were given particular weight. 29 C.F.R. § 541.100(a)(4). Grace was actively involved in the interviewing and employee screening process, her District manager almost always followed her

13

recommendations, and she took action to terminate or force out at least one employee without prior approval from her District Manager. (Grace Dep. at 73, 79-80, 94-95, 111-118, 192-194.) Grace was responsible for replacing turnover and hiring good people to ensure appropriate staffing. *(Id.* at 94-95, 192-194.) Grace also confirmed that as part of her job duties, she would sit down with her District Manager and provide input and recommendations regarding the performance and potential of her employees. *(Id.* at 73.) Grace verified that her evaluations and recommendations were followed 95 to 99 percent of the time. *(Id.* at 79-80.)

With respect to the termination of the employees, if there was a performance issue with an employee, Grace would often cut that person's hours back to the point that they would eventually quit. Grace had the authority to take this step of forcing out an employee on her own; she did not clear it with her District Manager first. *(Id.* at 111-113.) Overall, while Grace may not have had the ultimate decision-making authority with respect to hiring, firing and change of status, she made frequent recommendations as to these matters and that her recommendations were almost always followed, thereby satisfying the requirement.

## IV. CONCLUSION

Family Dollar has satisfied both the pre-2004 DOL regulations and the current DOL regulations establishing that Grace qualifies as an exempt executive under the FLSA. Therefore, Family Dollar is entitled to judgment as a matter of law.

## V. ORDER

**IT IS ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED** and Plaintiff Grace is dismissed.

**SO ORDERED**.

Signed: July 9, 2009

Graham C. Mullen
United States District Judge