IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:08 MD 1932

| | |
|---|---|
| IRENE GRACE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| FAMILY DOLLAR STORES, INC., ) | |
| ) | |
| Defendant. ) | |
| _____) | |

**THIS MATTER** is before the Court on Defendant's Motion for Summary Judgment and Memorandum in Support (Doc. No. 168); Plaintiff's Response in Opposition (Doc. No. 222); and Defendant's Reply (Doc. No. 266).[1] For the reasons set forth below, the motion is **GRANTED**.

**FACTS** [2]

---

[1] Plaintiff's case comes before this Court as part of a proposed collective action. On September 6, 2007, this Court granted Defendant's Motion to Strike Collective Action Allegations. (3:06cv306, Doc. No. 78). On July 9, 2009, this Court granted Defendant's Motion for Summary Judgment as to the named Plaintiff in this case, Irene Grace, and dismissed her from this action. (3:08md1932, Doc. No. 172). Ms. Grace appealed both orders to the Fourth Circuit Court of Appeals. The Court of Appeals held that Ms. Grace was a manager, and therefore affirmed this Court's judgment in favor of Family Dollar Stores, Inc. *See Grace v. Family Dollar Stores Inc.*, 637 F.3d 508 (4th Cir. 2011).

[2] To the extent Plaintiff makes any factual assertions based on the decision in *Morgan v. Family Dollar Stores, Inc.*, the Court will disregard such assertions. The Court will also disregard exhibits based on the *Morgan* case. In *Grace v. Family Dollar Stores, Inc.*, the Fourth Circuit Court of Appeals rejected Ms. Grace's argument that the facts in *Morgan* and in her case were identical; similarly, this Court finds no basis to support the assumption that the facts between Plaintiff's case and the *Morgan* case are the same. *See Grace v. Family Dollar Stores, Inc.*, 637 F.3d 508 (4th Cir. 2011) (finding that potential variations between store size, store inventory, and the individual responsibilities of managers, as well as differences in managers' performance of exempt and nonexempt duties and the supervisory activity of district managers, precluded Plaintiff's argument that the facts in *Morgan* and in her case were identical).

Plaintiff, Tammy Asher ("Asher"), began working for Family Dollar in June 1995 as an Assistant Store Manager in Kentucky.[3] (Doc. No. 169, Asher Dep. at 20-21.)[4] Shortly thereafter, Asher was offered a position as a Store Manager, which she accepted and maintained through August 6, 2007. (*Id*. at 21.) Asher then became a manager of a store in North Carolina from September 4, 2005 to the end of Asher's employment with Family Dollar on January 7, 2006.[5] (*Id*.) From March 19, 2004 to March 21, 2004, Asher was paid a salary of approximately $485 per week. (Doc. No. 169, Gasperini Decl. ¶ 5.)[6] From March 21, 2004 to April 3, 2005, she was paid a salary of $510 per week. (*Id*.) From April 3, 2005 until August 2005, she was paid a salary of $540 per week.[7] (*Id*.) From September 4, 2005 to January 7, 2006, she was paid a salary of $700 per week. (*Id*.) Asher earned bonuses of $2,325.55 in May

---

[3] Asher filed her opt-in consent form on March 19, 2007. Accordingly, March 19, 2004, or three years prior to her opt-in date, through the end of her management position in January 2006, represents the longest possible relevant time period for Asher's claims in this action.

[4] The Court notes that Plaintiff's declaration was prepared after Plaintiff's deposition and on many occasions directly contradicts her sworn testimony. Plaintiff cannot create a dispute about a fact contained in deposition testimony by referring to a subsequent affidavit of the deponent contradicting the deponent's prior testimony, for "it is well established that a genuine issue of fact is not created where the only issue of fact is to determine which of the two conflicting versions of a party's testimony is correct." *Erwin v. United States*, 591 F.3d 313, 325 n.7 (4th Cir. 2010) (internal quotation marks and alterations omitted) (quoting *Halperin v. Abacus Tec. Corp.*, 128 F.3d 191, 198 (4th Cir. 1997); *see also Waste Mgmt. Holdings, Inc. V. Gilmore*, 252 F.3d 316, 341 (4th Cir. 2001); *Rohrbough v. Wyeth Labs*., 916 F.2d 970, 975-76 (4th Cir. 1990); *Barwick v. Celotex Corp*., 736 F.2d 946, 960 (4th Cir. 1984). To the extent that Plaintiff's deposition testimony and later affidavit are inconsistent, the Court will disregard the affidavit and rely on the testimony she gave in his deposition, where she was examined at length about her responsibilities as a manager of a Family Dollar Store. *See Grace*, 637 F.3d at 513.

[5] From August 7, 2005 to September 3, 2005, Asher was not a store manager and was not paid on a salary basis.

[6] The court is aware that Plaintiff objects to the admissibility of Gasperini's declaration. An Order, however, dated August 10, 2011, by the undersigned, concluded that the declarations of Family Dollar employees regarding the "two full time employees or their equivalent" and "significant salary difference" prongs of the executive exemption were admissible. Plaintiffs failed to file a response to Family Dollar's supplemental briefing on this issue despite being given 30 days to do so by the court. (Doc. No. 566).

[7] From August 7, 2005 to September 3, 2005, Asher was not a store manager and was not paid on a salary basis.

of 2004 and $2,021.38 in May of 2005, for which nonexempt store employees were not eligible. (*Id*.)

The record shows that of the nine (9) nonexempt employees who worked at Asher's Kentucky store, eight (8) made $6.55 per hour or less, and none made more than $7.80 per hour (even using the highest wage for those employees whose wages changed over time received an average hourly wage of $5.95 per hour). (*Id*. ¶ 7.) Asher reported working an average of 56.5 hours per week as store manager of her Kentucky store. (*Id*. ¶ 9.) The record also shows that of the twelve (12) nonexempt employees who worked at Asher's North Carolina store, ten (10) made $7 per hour or less, and none made more than $9.50 per hour (even using the highest wage for those employees whose wages changed over time received an average hourly wage of $6.63 per hour). (*Id*. ¶ 8.) Asher reported working an average of 63.5 hours per week as store manager of her North Carolina store. (*Id*. ¶ 9.) Family Dollar's records reflect that Asher managed at least 80 employee hours 98.75% of the time she was a store manager during the relevant time period. (*Id*. ¶ 8.)

Asher contends that she devoted 90% of her time performing nonexempt work. (Doc. No. 169, Asher Dep. at 160.) She agreed, however, that even if she were performing physical tasks such as running the cash register or stocking the shelves, she would also direct and evaluate her employees as she worked alongside them. (*Id*. at 56-57, 63-66.) In fact, Asher conceded that, on a daily basis, she directed the work of her employees. (*Id*. at 17, 57, 59-61, 63-66, 67, 112-13.) Asher's managerial tasks included training, supervising, and directing employees (*Id*. at 17, 28-29, 52-55, 57, 59-61, 63-66, 67, 112-12), completing the store's financial paperwork (*Id*. at 16, 24, 52-53, 95-97, 100, 101-03, 105-07, 112-113, 117), apportioning hours to employees (*Id*. at 84-85, 90-91, 115-16), and addressing customer complaints and employee

disputes (*Id*. at 94-95). Asher also decided when to discipline employees (*Id*. at 57, 63-66, 73-77, 78-82, 84-86, 89-93, 96-98); how to adjust the schedule (*Id*. at 84-85, 90-91, 115-16); how to assign and apportion work among herself and her employees (*Id*. at 131-32, 141-42, 168-69); how to review employment applications and interview candidates (*Id*. at 32-39, 44-45); and how to arrange and decorate certain seasonal displays (*Id*. at 137-28).

Asher specifically testified that she had the authority to hire cashiers and stockers, and that she did, in fact, hire these employees while she was a store manager. (*Id*. at 32-36, 38-39, 44-45.) She also testified that when positions in her store came open, she would pull applications from her file, review and evaluate the applicants and determine who she wanted to interview for the position. (*Id*. at 34-37.) Additionally, she testified that she specifically recommended one person for promotion to assistant manager and also was asked to provide input regarding the promotion of at least two other employees and the district manager followed these recommendations. (*Id*. at 38-39, 72-73.) Asher also conceded that there was never a time where there was an individual who she thought should be promoted, but was not promoted. (*Id*. at 73.)

As Store Manager, Asher reported to a District Manager. Asher testified that Lori Campbell, Asher's district manager for a majority of her tenure as store manager, would typically visit the store two to four times per month. (*Id*. at 127-129.) Additionally, Asher testified that she would call Ms. Campbell once a week or once every two weeks and "just let her know how things were going." (*Id*. at 134.) Moreover, Family Dollar's records indicate that, during the relevant time period, Ms. Campbell oversaw approximately twenty (20) stores, including the store managed by Asher. (Doc. No. 169, Gasperini Decl. ¶ 3.) Her territory

4

spanned approximately one hundred forty-three (143) miles from north to south and eighty (80) miles from east to west. (*Id.*)

## STANDARD OF REVIEW

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party always bears the initial burden of "informing the district court of the basis for its motion," and identifying the matter "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Once the movant has met the initial burden, "the non-moving party 'may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.'" *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)). This is particularly important where the nonmoving party bears the burden of proof. *Hughes*, 48 F.3d at 1381. A genuine issue for trial exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249-50. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict.

When considering summary judgment motions, courts must view the facts in the light most favorable to the party opposing the motion. *Austin v. Clark Equip. Co.*, 48 F.3d 833, 835 (4th Cir. 1995). In reviewing the whole record, the Court must remember to "disregard all evidence favorable to the moving party that the jury is not required to believe" and therefore only "give credence to the evidence favoring the nonmovant as well as that evidence supporting

the moving party that is uncontradicted and unimpeached, at least to the extent that [the] evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000).

## **DISCUSSION**

The FLSA requires that an employee receive overtime pay if he or she works more than forty hours a week. 29 U.S.C. § 207(a)(1). The FLSA, however, exempts from this requirement "any employee employed in a bona fide executive…capacity." 29 U.S.C. § 213(a)(1). The Department of Labor ("DOL") has promulgated regulations which further describe and interpret the scope of this exemption. Due to the time span of Asher's claims, two different sets of DOL regulations apply to this analysis: the regulations in effect prior to August 23, 2004 (the "pre-2004 regulations") and the regulations that went into effect on August 23, 2004 (the "current regulations").

The pre-2004 regulations set forth both a "short" and "long" test for determining whether an employee qualifies as an exempt executive. *See* 29 C.F.R. § 541.1 (pre-2004). The short test is used for employees who are compensated on a salary basis at a rate of at least $250 per week.[8] 29 C.F.R. § 541.1(f) (pre-2004). Under the short test, an employee qualifies as an executive if (1) her primary duty consists of the management of the enterprise and (2) includes the customary and regular direction of the work of two or more other employees. 29 C.F.R. § 541.119(a) (pre-2004); 29 C.F.R. § 541.1(f) (pre-2004).

---

[8] The "long" test found in the pre-2004 regulations includes six factors. Section 541.1(f) states clearly, however, that an employee who is compensated for her services on a salary basis of at least $250 per week and who satisfies the tests promulgated by sections 541.1(a)-(b) shall be deemed to meet all other requirements under that section. 29 C.F.R. § 541.1(f) (pre-2004).

Similarly, the current regulations provide that an employee qualifies as an executive if: (1) she is compensated on a salary basis at a rate of at least $455 per week; (2) her primary duty is management of the enterprise; (3) she customarily and regularly directs the work of two or more other employees; and (4) she has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight. 29 C.F.R. § 541.100(a).

The DOL has also promulgated additional regulations which further describe and define these tests; these additional regulations are discussed below. Because Asher's claim covers the period of March 19, 2004[9] to January 2005, it is governed, in differing degrees, by both pre-2004 and current regulations. The application of the different regulations, however, is not material to the outcome of this case.

1.      **Family Dollar Satisfies the Salary Basis Test**[10]

From March 19, 2004 to March 21, 2004, Asher was paid a salary of approximately $485 per week. (Doc. No. 169, Gasperini Decl. ¶ 5.)[11] From March 21, 2004 to April 3, 2005, she was paid a salary of $510 per week. (*Id*.) From April 3, 2005 until August 2005, she was paid a salary of $540 per week. (*Id*.) From September 4, 2005 to January 7, 2006, she was paid a salary of $700 per week. (*Id*.) Therefore, Family Dollar satisfies the salary basis test under both the pre-2004 regulations, which require a weekly salary of not less than $250 per week under the

---

[9] *See supra* FN 3.

[10] Asher concedes that she meets the salary basis test under both the pre-2004 and the current regulations. (Doc. No. 222, Opposition at 14, n.4.)

[11] *See supra* FN. 6.

short test[12], and the current regulations, which require a weekly salary of not less than $455 per week. 29 C.F.R. § 541.1(f) (pre-2004); 29 C.F.R. § 541.100.

2.  **Family Dollar Satisfies the Primary Duty Test**

The regulations provide guidance as to how an employee's primary duty may be determined. Both sets of regulations instruct that the determination should be "based on all the facts in a particular case." 29 C.F.R. § 541.103 (pre-2004). The pre-2004 regulations set forth five factors to consider in this analysis: (1) the amount of time spent in the performance of managerial duties; (2) the relative importance of the managerial duties as compared with other types of duties; (3) the frequency with which the employee exercises discretionary powers; (4) the relative freedom from supervision; and (5) the relationship between the manager's salary and the wages paid to other employees for the kind of nonexempt work performed by the supervisor. 29 C.F.R. § 541.103 (pre-2004).[13]

Upon consideration of the five factors identified for determining whether Asher's primary duty was management, the Court concludes that the factors are readily satisfied.

a.  **The Amount of Time Spent in Performance of Managerial Duties**

Asher cannot overcome the exemption by claiming she spent the majority of her time performing non-managerial duties. Both sets of regulations state that an employee who spends

---

[12]The Court finds Asher's argument that she was merely a "working foreman" unavailing. Under the pre-2004 regulations, the working foreman concept only applies to the "long test," which does not apply here. 29 C.F.R. § 541.115(a)-(b) (describing the concept in terms of the long test's limitation on the amount of nonexempt work). The current regulations state that a "*manager in a retail establishment*" can "supervise employees and serve customers at the same time without losing the exemption." 29 C.F.R. § 541.106(b) (emphasis added). Section 29 C.F.R. § 541.106(c) states "[i]n contrast," a "working supervisor" who performs "nonexempt work *on the production line in a manufacturing plant* does not become exempt" merely by occasionally directing the work of other nonexempt employees on the "*production line.*" (emphasis added.)

[13] The current regulations omit reference to the frequency with which the employee exercises discretionary powers. 29 C.F.R. § 541.700.

8

more than fifty percent of his or her time performing managerial work will typically satisfy the primary duty requirement. 29 C.F.R. § 541.700(b); 29 C.F.R. § 541.103 (pre-2004). The regulations, however, also emphasize that "time alone…is not the sole test" and that exempt executives are not required to spend more than fifty percent of their time performing exempt work if other factors support the conclusion that management is their primary duty. *Id; see also Grace,* 637 F.3d 508, 515 (4th Cir. 2011).

Both sets of regulations provide an almost identical list of "management" activities, which include, but are not limited to:

> Interviewing, selecting and training of employees; setting and adjusting their rates of pay and hours of work; directing their work; maintaining their production or sales records for use in supervision or control; appraising their productivity and efficiency for the purpose of recommending promotions or other changes in their status; handling their complaints and grievances and disciplining them when necessary; planning the work; determining the techniques to be used; apportioning the work among the workers; determining the type of materials, supplies, machinery or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety of the [employees] and the property.

29 C.F.R. § 541.102(b) (pre-2004).[14] Asher explicitly testified that she regularly performed *almost every one* of these management activities as a Family Dollar Store Manager.[15] (emphasis added).

---

[14] The current regulations include two additional examples: planning and controlling the budget and monitoring or implementing legal compliance measures. 29 C.F.R. § 541.102. While she did not set the budget amount, Asher was responsible for managing and planning the schedule to comply with her payroll budget, further supporting that she performed managerial duties. (Doc. No. 169, Asher Dep. at 115.)

[15] The fact that the Assistant Managers can perform the same tasks as Asher does not render her tasks and duties any less managerial. Courts have consistently held that the fact that a non-exempt employee may sometimes perform exempt duties does not make these duties any less exempt/managerial. *See Baldwin v. Trailer Inns, Inc.*, 266 F.3d 1104, 1115 (9th Cir. 2001) ("[t]hat the [non-exempt] assistant managers may have performed some managerial tasks does not render the tasks non-exempt."). Asher was responsible for the operation of the store, a fact which is supported by Asher's testimony that Assistant Store Managers would call her at home if there was a problem at the store. (Doc. No. 169, Asher Dep. at 30-31, 84-85, 90-91, 141-42.)

The current regulations specifically address the concept of concurrent duties. 29 C.F.R. § 541.106. Concurrent performance, or multi-tasking, of exempt and nonexempt work is explicitly recognized as a managerial duty by the DOL's regulations. *Id*; *see also* 29 U.S.C. § 213(a)(1).[16] "It is misleading simply to add up the time that [Plaintiff] spent unloading trucks, stocking inventory, running cash registers, or sweeping floors and conclude thereby that she was merely a clerk and not a manager." *Grace,* 637 F.3d at 516.

In *Grace*, the Fourth Circuit found the plaintiff "was performing management duties whenever she was in the store, even though she also devoted most of her time [99%] to doing the mundane physical activities necessary for its successful operation." *Id.* at 517. Similar to the plaintiff in *Grace*, even though Asher contends that she devoted 90% of her time performing nonexempt work, she was also the person responsible for running the store. (Doc. No. 169, Asher Dep. at 160.) For example, she agreed that even if she were performing physical tasks such as running the cash register or stocking the shelves, she would also direct and evaluate her employees as she worked alongside them.[17] (*Id*. at 56-57, 63-66.) While Asher argues that management was not her primary duty because she spent a majority of her time engaged in manual labor, the regulations and the Court in *Grace* clarify that performance of these duties, in conjunction with overall supervision and management of the store, is not contrary to the application of the exemption.

---

[16] The FLSA recognizes the nature of retail business and states that "an employee of a retail or service establishment shall not be excluded from the definition of an employee employed in a bona fide executive or administrative capacity because of the number of hours in his work week which he devotes to activities not directly or closely related to the performance of executive or administrative activities." 29 U.S.C. § 213(a)(1).

[17] Asher's argument in her declaration that there were occasions when she was sent to other store locations to solely perform manual labor tasks and was not performing any exempt work at all is also unpersuasive, given that she provided no information regarding the frequency of these alleged incidents. *See Counts v. South Carolina Electric & Gas Co.*, 317 F.3d 453, 456-57 (4th Cir. 2003) (performance of nonexempt work for five or six weeks out of every eighteen months could not alter exempt status).

### b. The Relative Importance of the Managerial Duties as Compared with Other Types of Duties

Asher's managerial duties were more important than the other duties she performed because they were critical to the operation of the store. In *Grace*, the plaintiff's managerial tasks, which included filling out paperwork, addressing customer complaints, working with employees on their schedules, and collecting cash, were critical to the operation of the store, as there was "*noone else at the site to direct these actions*." *Grace*, 637 F.3d at 517 (emphasis in the original). Similarly, Asher's managerial tasks, which included training, supervising, and directing employees (Doc. No. 169, Asher Dep. at 17, 28-29, 52-55, 57, 59-61, 63-66, 67, 112-12), completing the store's financial paperwork (*Id*. at 16, 24, 52-53, 95-97, 100, 101-03, 105-07, 112-113, 117), apportioning hours to employees (*Id*. at 84-85, 90-91, 115-16), and addressing customer complaints and employee disputes (*Id*. at 94-95) were critical to the operation of the store. While Asher argues that she was under the direct supervision of the district manager, she nonetheless stated that she came to the store two to four times per month – not enough to direct the managerial tasks. (*Id*. at 127-129.) Therefore, because she was the *only person running the* store, without Asher's handling of these managerial tasks, the store could not have operated successfully. (emphasis added.)

### c. Frequency With Which the Employee Exercises Discretionary Power

Asher exercised discretion virtually every day and all day long in her capacity as store manager. Asher decided when to discipline employees (*Id*. at 57, 63-66, 73-77, 78-82, 84-86, 89-93, 96-98); how to adjust the schedule (*Id*. at 84-85, 90-91, 115-16); how to assign and apportion work among herself and her employees (*Id*. at 131-32, 141-42, 168-69); how to review employment applications and interview candidates (*Id*. at 32-39, 44-45); how to arrange and

11

decorate certain seasonal displays (*Id*. at 137-28); and, while at the same time, satisfying customers. All of these tasks involved "discretionary acts inherent in being responsible for the successful operation of a retail store." *Grace*, 637 F.3d at 517. Moreover, the fact that Family Dollar maintains certain policies and procedures for the sake of consistency does not mean that Asher failed to exercise discretion in enforcing these policies and procedures.[18]

### d. Relative Freedom from Supervision

Relative freedom from supervision does not demand complete freedom from supervision. In *Grace*, the plaintiff's supervising district manager typically visited the store once every two to three weeks. *Grace*, 637 F.3d at 517. The court also noted, apart from his supervision, which was not uncharacteristic for any retail operation, the district manager was not a "micro-manager who constantly was looking over [the manager's] shoulder." *Id*. The supervision of seventeen stores would hardly permit [the district manager] to micro-manage all of them. *Id*. Moreover, courts have found that an employee's "frequent, even daily exchange of e-mail and phone communications with her district manager" did not equate to exacting supervision. *Thomas v. Speedway SuperAmerica LLC*, 506 F.3d at 508 (6th Cir. 2007).

Asher was relatively free from supervision during the relevant time period. Asher testified that Lori Campbell, Asher's district manager for a majority of her tenure as store manager, would typically visit the store two to four times per month. (Doc. No. 169, Asher Dep. at 127-129.) Additionally, Asher testified that she would call Ms. Campbell once a week or once

---

[18]*See Murray v. Stuckey's, Inc.*, 50 F.3d 564, 570 (8th Cir. 1995) (standardized procedures and policies may circumscribe but do not eliminate discretion of on-site store manager); *Thomas v. Speedway SuperAmerica LLC*, 506 F.3d at 507 (6th Cir. 2007) (manager still exercised discretion on a daily basis even though store had standardized operating procedures); *Grace v. Family Dollar Stores, Inc.*, 637 F.3d 508 (4th Cir. 2011) (manager still exercised discretion even though she was subject to company policies and the company template for a store in the Family Dollar chain).

every two weeks and "just let her know how things were going." (*Id*. at 134.) The infrequency of Ms. Campbell's visits and her frequent contact by telephone and email (*Id*. at 133-134) does not equate to exacting supervision over Asher. *See Thomas*, 506 F.3d at 508. Moreover, Family Dollar's records indicate that, during the relevant time period, Ms. Campbell oversaw approximately twenty (20) stores, including the store managed by Asher. (Doc. No. 169, Gasperini Decl. ¶ 3.) Her territory spanned approximately one hundred forty-three (143) miles from north to south and eighty (80) miles from east to west. (*Id*.) The large territory and number of stores Ms. Campbell was responsible for supervising does not allow her to micro-manage each individual store. *See Grace*, 637 F.3d at 517.

      **e.**      **Relationship Between Salary and Wages Paid to Other Employees for the Kind of Nonexempt Work Performed by the Supervisor**

To determine the relationship between a managerial salary and wages paid to nonmanagerial employees, the Fourth Circuit considered, first, whether the manager earned more, in absolute terms, than nonmanagerial employees and, second, whether the manager was a "profit center." *Grace*, 637 F.3d at 517. This second consideration asks whether the manager had the ability to influence the amount of her compensation. *Id.*

As to the first consideration, Asher earned significantly higher amounts on an hourly basis than nonexempt workers. The record shows that of the nine (9) nonexempt employees who worked at Asher's *Kentucky store*, eight (8) made $6.55 per hour or less, and none made more than $7.80 per hour (even using the highest wage for those employees whose wages changed over time received an average hourly wage of $5.95 per hour). (Doc. No. 169, Gasperini Decl. ¶ 7.) In comparison, the records indicate that Asher reported working an average of 56.5 hours per week as store manager of her Kentucky store. (*Id*. ¶ 9.) Asher earned compensation which,

13

when computed on an hourly basis, averaged $8.58 per hour ($485 per week), $9.03 ($510 per week), and $9.56 per hour ($540 per week).

The record also shows that of the twelve (12) nonexempt employees who worked at Asher's *North Carolina store*, ten (10) made $7 per hour or less, and none made more than $9.50 per hour (even using the highest wage for those employees whose wages changed over time received an average hourly wage of $6.63 per hour). (*Id.* ¶ 8.) In comparison, the records indicate that Asher reported working an average of 63.5 hours per week as store manager of her North Carolina store. (*Id.* ¶ 9.) Asher earned compensation which, when computed on an hourly basis, averaged $11.02 per hour ($700 per week).

As to the second consideration, Asher was a "profit center;" her performance evaluation, salary, and bonus depended on her store's profitability. (*Id.* at 71:7-12); *See Grace*, 637 F.3d at 517. Asher earned bonuses of $2,325.55 in May of 2004 and $2,021.38 in May of 2005, for which nonexempt store employees were not eligible. (Doc. No. 169, Gasperini Decl. ¶ 5.) A review of these calculations and comparisons reveal a significant difference in wages between Asher and her nonexempt employees.[19]

### 3. Customary and Regular Direction of the Work of Two or More other Employees

To qualify as an executive, the regulations require an employee's primary duty to include the "customary and regular direction of the work of two or more other employees." 29 C.F.R. §

---

[19] Asher's argument analyzing the highest earning nonexempt employee to compare that person's wage to her salary is not supported by citation to any authority. Courts have analyzed the wages of *all* of the nonexempt employees in making a wage comparison. *See Grace v. Family Dollar Stores Inc.,* 637 F.3d at 517 (Plaintiff's calculated salary of $9.62 to $12.02 per hour was significantly more than the hourly employees at Family Dollar, who earned an average wage of $5.81 per hour); *Thomas v. Speedway SuperAmerica LLC*, 506 F.3d 496, 508-09 (6th Cir. 2007) (Plaintiff's calculated salary of $10.44 was significantly more than the typical hourly wage of $7.00 paid to nonexempt employees); *Jones v. Virginia Oil Co., Inc.*, 69 Fed. Appx. 633, 638-39 (4th Cir. 2003) (holding that this factor weighed in favor of the defendant where plaintiff made approximately $165 more than the average hourly worker).

541.119(a) (pre-2004); 29 C.F.R. § 541.100(a)(3). The pre-2004 regulations do not further define the terms "customary and regular," but the current regulations state that the phrase "means a frequency that must be greater than occasional but which, of course, may be less than constant." 29 C.F.R. § 541.701. Asher, on a daily basis, directed the work of her employees. (Doc. No. 169, Asher Dep. at 17, 57, 59-61, 63-66, 67, 112-13.)

Both sets of regulations also require the employee direct the work of "two full-time employees or the equivalent." 29 C.F.R. § 541.104(a); 29 C.F.R. § 541.105(a)(pre-2004). The DOL has adopted an "80-hour rule" which generally requires an exempt executive to direct a total of eighty employee-hours of work each week. *See* 69 Fed.Reg. 22135; *see also Grace*, 637 F.3d at 513 (holding that Grace customarily and regularly directed the work of two or more other employees who worked eighty or more hours per week during 89.23% of the weeks that she was store manager). Family Dollar's records reflect that Asher managed at least 80 employee hours 98.75% of the time she was a store manager during the relevant time period.[20] (Doc. No. 169, Gasperini Decl. ¶ 8.) Therefore, Asher customarily and regularly directed the work of at least two full-time employees and satisfies this factor.

### 4. Authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight

Finally, the additional prong of the executive exemption test contained in the current regulations states that an exempt employee has authority to hire *or* fire other employees *or* her recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees are given particular weight. 29 C.F.R. § 541.100(a)(4) (emphasis added).

---

[20] Asher also testified that she had two assistant managers at the stores she managed and that she had cashiers and stockers who worked for her. (Doc. No. 169, Asher Dep. at 25-26, 32-33, 38-39, 44-45.)

The DOL provides guidance with respect to whether an employee's recommendations satisfy this standard. Specifically, the "factors to be considered include, but are not limited to, whether it is part of the employee's job duties to make such suggestions and recommendations; the frequency with which such suggestions and recommendations are made or requested; and the frequency with which the employee's suggestions and recommendations are relied upon." 29 C.F.R. § 541.105. Importantly, the employee's recommendations "may still be deemed to have 'particular weight' even if a higher level manager's recommendation has more importance and even if the employee does not have the authority to make the ultimate decision as to the employee's change in status." *Id*.

Asher had the authority to hire other employees and her recommendations as to hiring and promotion of other employees were given particular weight. With respect to her authority to hire, she specifically testified that she had the authority to hire cashiers and stockers, and that she did, in fact, hire these employees while she was a store manager.[21] (Doc. No. 169, Asher Dep. at 32-36, 38-39, 44-45.) With respect to her recommendations as to hiring, she testified that when positions in her store came open, she would pull applications from her file, review and evaluate the applicants and determine who she wanted to interview for the position. (*Id*. at 34-37.) Her testimony demonstrates that she was actively involved in the employee screening process, which necessarily means that her suggestions as to hiring were given particular weight, as she controlled who was given an interview. Finally, with respect to recommendations for promotion, she testified that she specifically recommended one person for promotion to assistant manager and also was asked to provide input regarding the promotion of at least two other

---

[21] The regulations do not require that Asher had the authority to hire *all* other employees, so the fact that Asher could not hire assistant managers without district manager approval is irrelevant. 29 C.F.R. § 541.100(a)(4).

employees and the district manager *followed* these recommendations. (*Id*. at 38-39, 72-73) (emphasis added.) Asher also conceded that there was never a time where there was an individual who she thought should be promoted, but was not promoted. (*Id*. at 73.) Therefore, both Asher's authority to hire employees and the fact that her recommendations were given particular weight each independently satisfy this factor.

## **CONCLUSION**

Looking at the facts in the light most favorable to the non-moving party, the Court finds that Family Dollar has satisfied the DOL regulations qualifying Asher as an exempt executive under the FLSA. No reasonable jury could find otherwise. Therefore, Family Dollar is entitled to judgment as a matter of law.

## **ORDER**

IT IS ORDERED that:

(1) Defendant's Motion for Summary Judgment (Doc No. 168) is GRANTED and Plaintiff Tammy Asher is dismissed;

(2) The Court finds that there is no just reason to delay finding of final judgment for Family Dollar with regard to Plaintiff Tammy Asher's claim against Family Dollar;

(3) The Clerk is directed to enter final judgment, pursuant to Rule 54(b), for Family Dollar with regard to Plaintiff Tammy Asher.

**SO ORDERED.**

Signed: November 8, 2011

*Graham C. Mullen*
Graham C. Mullen
United States District Judge