# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:08 MD 1932

| | |
|---|---|
| SHAWN ERIC WARD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) ORDER |
| | ) |
| FAMILY DOLLAR STORES, INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |

**THIS MATTER** is before the court on Defendant's Motion for Summary Judgment and Memorandum in Support (Doc. No. 329); Plaintiffs' Response in Opposition (Doc. No. 434); and Defendant's Reply (Doc. No. 456).[1] For the reasons set forth below, the motion is **GRANTED**.

---

[1] Plaintiff's case comes before this Court as part of a proposed collective action with Shawn Eric Ward as lead plaintiff. On January 22, 2008, this Court denied plaintiffs' Motion to Facilitate Notice. (3:06cv441, Doc. No. 67.) In a related action, this Court denied Plaintiff Irene Grace's Motion for Preliminary Certification as a Collective Action by Order dated September 6, 2007. (3:06cv306, Doc. No. 78.) On July 9, 2009, this Court granted Defendant's Motion for Summary Judgment as to Ms. Grace's case and dismissed Ms. Grace from the action. (3:08md1932, Doc. No. 172.) Ms. Grace appealed both orders to the Fourth Circuit Court of Appeals. The Court of Appeals held that Ms. Grace was a manager and therefore affirmed this Court's judgment in favor of Family Dollar Stores, Inc. *See Grace v. Family Dollar Stores Inc.*, 637 F.3d 508 (4th Cir. 2011).

1

# FACTS[2][3]

Plaintiff Ike Garza ("Garza") began working at Family Dollar in May of 2002 as an Assistant Manager of Store 1782 in Austin, Texas. (Doc. No. 330, Garza Deposition at 42, 43:1-19, 65:20-25, 66:1-22). In July of 2002, Garza was offered the Store Manager position and received a pay increase, earning $650 per week. (*Id*. at 43:15-19.) Over the following years, Garza worked at several Family Dollar stores as Store Manager.[4] He worked at Store 1782 in Austin, earning $650 per week; Store 3276 in Gonzalez, Texas, earning $550 per week; Store 1906 in Gonzalez, Texas, earning $550 per week, and Store 6513 in New Braufels, Texas where he received $625 per week.[5] (*Id*. at 43:15-19, 65:21-25, 66:1-6, 68:10-20, 87:18-25, 88:1-5.)

---

[2] To the extent Plaintiff makes any factual assertions based on the decision in *Morgan v. Family Dollar Stores, Inc.*, the Court will disregard such assertions. The Court will also disregard exhibits based on the *Morgan* case. In *Grace v. Family Dollar Stores, Inc.*, the Fourth Circuit Court of Appeals rejected Ms. Grace's argument that the facts in *Morgan* and in her case were identical; similarly, this Court finds no basis to support the assumption that the facts between Plaintiff's case and the *Morgan* case are the same. *See Grace v. Family Dollar Stores, Inc.*, 637 F.3d 508, 518 (4th Cir. 2011) (finding that potential variations between store size, store inventory, and the individual responsibilities of managers, as well as differences in managers' performance of exempt and nonexempt duties and the supervisory activity of district managers, precluded Plaintiff's argument that the facts in *Morgan* and in her case were identical).

[3] The Court notes that Plaintiff's declaration was prepared after Plaintiff's deposition and on many occasions directly contradicts his sworn testimony. Plaintiff cannot create a dispute about a fact contained in deposition testimony by referring to a subsequent affidavit of the deponent contradicting the deponent's prior testimony, for "it is well established that a genuine issue of fact is not created where the only issue of fact is to determine which of the two conflicting versions of a party's testimony is correct." *Erwin v. United States*, 591 F.3d 313, 325 n.7 (4th Cir. 2010) (internal quotation marks and alterations omitted) (quoting *Halperin v. Abacus Tec. Corp.*, 128 F.3d 191, 198 (4th Cir. 1997); *see also Waste Mgmt. Holdings, Inc. V. Gilmore*, 252 F.3d 316, 341 (4th Cir. 2001); *Rohrbough v. Wyeth Labs.*, 916 F.2d 970, 975-76 (4th Cir. 1990); *Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984). To the extent that Plaintiff's deposition testimony and later affidavit are inconsistent, the Court will disregard the affidavit and rely on the testimony he gave in his deposition, where he was examined at length about his responsibilities as a manager of a Family Dollar Store.

[4] Garza filed his opt-in consent form on September 29, 2006. Accordingly, September 29, 2003, or three years from his opt-in date, through the end of his employment at Family Dollar in March, 2005, represents the longest possible relevant time period for Garza's claims in this action.

[5] In his deposition, Garza stated that he could not recall his exact wages at the New Braufels store, but that the rate of $625 per week "[c]ould have been" correct. (Doc. No. 330, Garza Dep. at 87:18-25.) However, nowhere in Plaintiff's Opposition to Defendant's Motion for Summary Judgment does Garza dispute this pay rate, nor does he provide any evidence contrary to Family Dollar's records.

According to Michelle DeBrocq ("DeBrocq"), a Family Dollar employee, Garza worked an average of approximately 63.89 hours per week during the relevant time period.[6] (Doc. No. 330, DeBrocq Declaration at ¶6.) Garza testified that store managers were entitled to bonuses based on the status of the store's inventory. (Garza Dep. at 194:14-20.) Garza received bonuses during his employment that totaled $1,582.29. (Doc. No. 330, DeBrocq Decl. ¶5.) Of the thirty-six hourly employees working under Garza from September 29, 2003, to March 2, 2005, approximately thirty-one of them earned $7.00 per hour or less. (*Id*. at ¶8.) Even using the highest hourly wage for those employees whose wages changed over time, the non-exempt employees working at Garza's stores received an average hourly wage of $6.38 per hour. (*Id.*) There were at least eighty work hours per week reported by hourly employees in the stores where Garza was the assigned store manager for 81.58% of the relevant time period. (*Id*. at ¶7.)

Garza testified that he was responsible for running the store and that he was the team leader of the store. (Doc. No. 330, Garza Dep. at 159:1-13.) Elizabeth Alvarez, an assistant manager working under Garza's supervision, testified that Garza was responsible for the day-to-day operations of the store and that she could call Garza at home if a problem arose that she could not handle herself. (Doc. No. 330, Alvarez Deposition at 65:23-25, 66, 67:1-4.) As Store Manager, Garza was responsible for scheduling the employee work schedule to fit the needs of his store, directing and supervising employees, and apportioning work and delegating specific

---

[6] The Court is aware that Plaintiff objects to the admissibility of Debrocq's declaration as it relates to the "two full time employees or their equivalent" and "significant salary difference" prongs of the executive exemption. However, by Order dated August 10, 2011, the undersigned concluded that the declarations of Family Dollar employees regarding the "two full time employees or their equivalent" and "significant salary difference" prongs of the executive exemption were admissible. Significantly, Plaintiffs failed to file a response to Family Dollar's supplemental briefing on this issue despite being given thirty days to do so by the Court. (Doc. No. 590.)

tasks to employees. (Doc. No. 330, Garza Dep. at 125:7-9, 127:11-25, 128, 129:1-21, 138, 139, 140, 141, 142, 143:1-4, 245:15-25, 246, 247:1-15, 251:2-4, 260:3-25, 261, 262, 263:1-3.) He had the authority to delegate tasks to other employees, or to take them on himself. (*Id*. at 245:15-25, 246:1-8, 255:9-25, 256:1-7.) Garza was also responsible for handling complaints, ordering merchandise, completing store paperwork, making sure shelves were stocked, preventing shrinkage, disciplining employees, making sure the store was clean, making bank deposits, training new employees, advising employees about their performance, and maintaining store safety. (*Id.* at 103:4-24, 104:1-5, 150:12-16, 175:7-25, 176, 240:5-25, 241:1-2, 246:12-25, 273:14-16, 274:13-25, 275:1-4, 279, 298, 299:1-2.) Garza was responsible for collecting employment applications, facilitating a pre-employment integrity test, recommending applicants for hire to his district manager, and conducting the final interviews of the candidates. (*Id*. at 58:2-25, 59, 60, 61, 62:1-13, 79:9-25, 80, 81:1-14, 207-08.)

Garza testified that in Austin, the district manager visited twice every other week for the first six months, then only once a month; in Gonzales, the district manager visited once a month; and in Seguin, the district manager was in every day because he assisted with clean up. (*Id.* at 159:14-25, 160, 161, 162, 163:1-21.) Garza also received daily emails from his district manager. (*Id*. at 163:22-25, 164:1-12.) Garza was responsible for providing promotion recommendations to his district manager, and the district manager interviewed the majority of the applicants Garza recommended for hire. (Doc. No. 330, Garza Dep. at 59:19-25, 60, 207:20-25, 208, 209.)

## STANDARD OF REVIEW

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

4

56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party always bears the initial burden of "informing the district court of the basis for its motion," and identifying the matter "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Once the movant has met the initial burden, "the non-moving party 'may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.'" *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)). This is particularly important where the nonmoving party bears the burden of proof. *Hughes*, 48 F.3d at 1381. A genuine issue for trial exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249-50. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict.

When considering summary judgment motions, courts must view the facts in the light most favorable to the party opposing the motion. *Austin v. Clark Equip. Co.*, 48 F.3d 833, 835 (4th Cir. 1995). In reviewing the whole record, the Court must remember to "disregard all evidence favorable to the moving party that the jury is not required to believe" and therefore only "give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that [the] evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000).

## **DISCUSSION**

The Fair Labor Standards Act ("FLSA") requires that an employee receive overtime pay if he or she works more than forty hours a week. 29 U.S.C. § 207(a)(1). However, the statute exempts from this requirement "any employee employed in a bona fide executive…capacity." 29 U.S.C. § 213(a)(1). The Department of Labor ("DOL") has promulgated regulations which further describe and interpret the scope of this exemption. Due to the time span of Garza's claims, two different sets of DOL regulations apply to this analysis: the regulations in effect prior to August 23, 2004 (the pre-2004 regulations) and the regulations that went into effect on August 23, 2004 (the current regulations).[7]

The pre-2004 regulations set forth both a "short" and "long" test for determination whether an employee qualifies as an exempt executive. 29 C.F.R. § 541.1 (pre-2004). The short test is used for employees who are compensated on a salary basis at a rate of at least $250 per week. 29 C.F.R. § 541.1(f) (pre-2004). It is undisputed that Garza earned a salary of more than $250 per week during the relevant time period. Accordingly, the short test is the appropriate method for determining whether Garza was properly classified as exempt.[8] Under the short test, an employee qualifies as an executive if (1) his or her primary duty consists of management of the enterprise and (2) includes the customary and regular direction of the work of two or more other employees. 29 C.F.R. § 541.119(a) (pre-2004); 29 C.F.R. § 541.1(f) (pre-2004). Similarly, the current regulations went into effect on August 23, 2004, and should also be applied to this analysis. The current regulations provide that an employee qualifies as an executive if: (1) he or

---

[7] The Pre-2004 regulations apply to his employment from July of 2002 through August 22, 2004. The Current regulations apply to his employment from August 23, 2004, through March of 2005.

[8] The "long" test found in the pre-2004 regulations includes six factors. Section 541.1(f) states clearly, however, that an employee who is compensated for his or her services on a salary basis of at least $250 per week and who satisfies the tests promulgated by sections 541.1(a)-(b) shall be deemed to meet all other requirements under that section. 29 C.F.R. § 541.1(f) (pre-2004).

she is compensated on a salary basis at a rate of at least $455 per week: (2) his or her primary duty is management of the enterprise; (3) he or she customarily and regularly directs the work of two or more other employees; and (4) he or she has the authority to hire or fire other employees or his or her suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight. 29 C.F.R. § 541.100(a).

    1. **Family Dollar Satisfies the Salary Basis Test**

Family Dollar satisfies the salary basis test under both the pre-2004 regulations, which require a weekly salary of not less than $250 per week under the short test, and the current regulations, which require a weekly salary of not less than $455 per week. 29 C.F.R. § 541.100; 29 C.F.R. 541.1(f) (pre-2004). During his employment as Store Manager, Garza received payment ranging from $550 to $650 per week. (Garza Dep. at 43:15-19, 65:21-25, 66:1-6, 68:10-20, 87:18-25, 88:1-5.) Thus, Family Dollar has met the salary basis test under both the pre-2004 regulations and the current regulations.

    2. **Family Dollar Satisfies the Primary Duty Test**

The regulations provide guidance as to how an employee's primary duty may be determined. Both sets of regulations instruct that the determination should be "based on all the facts in a particular case." 29 C.F.R. § 541.103 (pre-2004).

The pre-2004 regulations set forth five factors to consider in this analysis: (1) the amount of time spent in the performance of managerial duties; (2) the relative importance of the managerial duties as compared with other types of duties; (3) the frequency with which the manager exercises discretionary powers; (4) the manager's relative freedom from supervision;

and (5) the relationship between the manager's salary and the wages paid to other employees for the kind of nonexempt work performed by the supervisor. 29 C.F.R. § 541.103 (pre-2004).[9]

Upon consideration of the five factors identified for determining whether Garza's primary duty was management, the Court concludes that the factors are readily satisfied.

### a. The Amount of Time Spent in the Performance of Managerial Duties

Garza cannot defeat the exemption by claiming that he spent the majority of his time performing non-managerial duties. The current regulations provide a list of "management" activities, which include but are not limited to:

> Interviewing, selecting and training of employees; setting and adjusting their rates of pay and hours of work; directing their work; maintaining their production or sales records for use in supervision or control; appraising their productivity and efficiency for the purpose of recommending promotions or other changes in their status; handling their complaints and grievances and disciplining them when necessary; planning the work; determining the techniques to be used; apportioning the work among the workers; determining the type of materials, supplies, machinery or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety of the [employees] and the property; planning and controlling the budget; monitoring or implementing legal compliance measures.

29 C.F.R. § 541.102. The regulations also state that an employee who spends more than fifty percent of his or her time performing managerial work will typically satisfy the primary duty requirement. 29 C.F.R. § 541.700(b). The regulations also emphasize, however, that "time alone…is not the sole test" and that exempt executives are not required to spend more than fifty percent of their time performing exempt work if other factors support the conclusion that

---

[9] The current regulations omit reference to the frequency with which the manager exercises discretionary powers. 29 C.F.R. § 541.700.

8

management is their primary duty. *Id; see also Grace v. Family Dollar Stores, Inc.,* 637 F.3d 508, 515 (4th Cir. 2011).

Furthermore, the regulations specifically address the concept of concurrent duties. Concurrent performance, or multi-tasking, of exempt and nonexempt work is explicitly recognized as a managerial duty by the DOL's regulations. 29 C.F.R. § 541.106; *see also* 29 C.F.R. § 541.103 (pre-2004) (stating that a manager will be considered to have management as his or her primary duty, although the manager spends more than fifty percent of his or her time performing non-exempt tasks, where "[w]hile engaged in such work [the manager] supervises other employees . . . handles customer complaints . . . or performs other management duties as the day to day operations require") *and* 29 U.S.C. § 213(a)(1).[10] As the Fourth Circuit Court of Appeals stated in *Grace*, "It is misleading simply to add up the time that [Plaintiff] spent unloading trucks, stocking inventory, running cash registers, or sweeping floors and conclude thereby that she was merely a clerk and not a manager." *Grace,* 637 F.3d at 516.

Garza was responsible for the management of his stores the entire time he was present in his stores. (Doc. No. 330, Garza Dep. at 159:1-13.) In his deposition, Garza admitted to running the store and being the "leader of the store." (*Id.* at 159:1-13.) Garza testified that he regularly performed a majority of the management activities described in the current regulations. (*Id.* at 103:4-24, 104:1-5, 125:7-9, 127:11-25, 128, 129:1-21, 138, 139, 140, 141, 142, 143:1-4, 150:12-16, 175:7-25, 176, 240:5-25, 241:1-2, 245:15-25, 246, 247:1-15, 251:2-4, 255:9-25, 256:1-7, 260:3-25, 261, 262, 263:1-3, 273:14-16, 274:13-25, 275:1-4, 279, 298, 299:1-2.) For example, he testified that he was responsible for handling complaints, ordering merchandise, completing store

---

[10] The FLSA recognizes the nature of retail business and states that "an employee of a retail or service establishment shall not be excluded from the definition of an employee employed in a bona fide executive or administrative capacity because of the number of hours in his work week which he devotes to activities not directly or closely related to the performance of executive or administrative activities." 29 U.S.C. § 213(a)(1).

paperwork, making sure shelves were stocked, preventing shrinkage, disciplining employees, making bank deposits, training new employees, advising employees about their performance, and maintaining store safety. (*Id*. at 103:4-24, 104:1-5, 150:12-16, 175:7-25, 176, 240:5-25, 241:1-2, 246:12-25, 273:14-16, 274:13-25, 275:1-4, 279, 298, 299:1-2.) The responsibility of apportioning work and delegating specific tasks to employees also fell to Garza. (*Id*. at 245:15-25, 246, 247:1-15.)

Moreover, Garza performed his non-managerial work concurrently with his exempt managerial work. According to Elizabeth Averez, an assistant manager working under Garza's supervision, Garza was still responsible for managerial tasks such as maintaining good customer service and watching for mistakes made by other employees even while he was completing ordinary tasks like unloading a truck or stocking inventory. (Doc. No. 330, Averez Dep. at 65:3-22.) Garza testified that he would have to do "more than one thing at the same time" during the course of his work day; for example, while completing non-exempt work, he would watch the store to make sure other employees were doing their jobs correctly and to prevent shoplifting. (Doc. No. 330, Garza Dep. at 168:18-25, 169, 170:1-17.) Similarly, in *Grace,* the plaintiff testified that she would look at the condition of the front end of the store and keep an eye out for theft while running the cash register. *Grace*, 637 F.3d at 516. The Fourth Circuit Court of Appeals found this concurrent performance of exempt and non-exempt tasks to be the performance of a managerial duty, stating that the plaintiff "was performing management duties whenever she was in the store, even though she also devoted most of her time to doing the mundane physical activities necessary for its successful operation." *Id.* at 515-17. Therefore, even if Garza spent the majority of his time completing menial tasks, he was acting as manager a hundred percent of the time he was at the store. Even while completing such duties as unloading

the truck or stocking shelves, his concurrent performance of exempt and non-exempt tasks equates to the performance of a managerial duty. Accordingly, the Court finds this requirement readily satisfied.

### b. The Relative Importance of the Managerial Duties as Compared with Other Types of Duties

Garza's managerial duties were more important than the other duties that he performed. Court's evaluate the relative importance of an employee's managerial duties by measuring "the significance of the managerial tasks to the success of the facility." *Jones v. Virginia Oil Co.*, 69 F. App'x 633, 683 (4th Cir. 2003). Garza was responsible for handling customer complaints, ordering merchandise, completing store paperwork, making sure shelves were stocked, preventing shrinkage, disciplining employees, making sure the store was clean, making bank deposits, training new employees, advising employees about their performance, and maintaining store safety. (Doc. No. 330, Garza Dep. 103:4-24, 104:1-5, 150:12-16, 175:7-25, 176, 240:5-25, 241:1-2, 246:12-25, 273:14-16, 274:13-25, 275:1-4, 279, 298, 299:1-2.) Garza's responsibilities were among those that the Fourth Circuit found "critical to the success" of the facility. *Jones*, 69 F. App'x at 638. Thus, Family Dollar could not have operated successfully without the functions performed by Garza.

### c. Garza's Relative Freedom from Supervision

Garza was relatively free from supervision in managing his stores. In *Jones*, the Fourth Circuit Court of Appeals considered whether the plaintiff's "discretion in running the day-to-day

operations of the store was . . . constrained by supervisors." *Jones*, 69 F. App'x at 638. In *Grace*, the Fourth Circuit Court of Appeals found the plaintiff to be relatively free from supervision where the plaintiff's supervising district manager typically visited the store once every two to three weeks. *Grace*, 637 F.3d at 517. The court also noted, apart from his supervision, which was not uncharacteristic for any retail operation, the district manager was not a "micro-manager who constantly was looking over her shoulder." *Id*. The supervision of seventeen stores would hardly permit him to micro-manage all of them. *Id*.

According to Michelle Debrocq, a Family Dollar Employee, the district managers for the two stores in which Garza worked during the relevant time period were responsible for districts that encompassed anywhere from nineteen to forty-one stores. (Doc. No. 330, Debrocq Decl. ¶ 4.) Accordingly, Garza testified that, during his time at the Austin store, his district manager was able to visit two days every other week for the first six months, and then later at a frequency of only once a month. (Doc. No. 330, Garza Dep. at 159-60.) During his time at the Gonzales store, Garza's district manager would visit once a month for approximately thirty minutes to an hour and half, or when necessary to hire a new employee. (*Id*. at 160.) At the Seguin store, Garza's district manager was present on a daily basis, but the purpose of the district manager's visits to the Seguin store was merely to help clean up the store at the end of the day as part of a "swat team" comprised solely of managers. (*Id*. at 161:15-25, 162:1-4.) At the New Braunfels store, the district manager would visit once a month for approximately thirty minutes per visit. (*Id*. at 162:5-13.)

Courts have found that employees were relatively free from supervision in circumstances where the exempt executive was subject to substantially greater oversight than Gazra. In *Thomas*

*v. Speedway SuperAmerica LLC*, a district manager who typically visited each store once or twice per week and communicated frequently by phone and email supervised the plaintiff store manager. *Thomas v. Speedway SuperAmerica LLC*, 506 F.3d 496, 507 (6th Cir. 2007). The court also noted that "[i]n addition to stringent managerial oversight, Speedway has also adopted detailed company policies and standardized operating procedures, as an additional means of fostering consistency through its multi-store organization." *Id.* at 496. Nevertheless, the Sixth Circuit found that the plaintiff was relatively free from supervision, recognizing that the factor "does not demand complete freedom from supervision" and noting that the plaintiff operated on a day-to-day basis without a supervisor looking over her shoulder. *Id.* at 507. Similarly, although the district manager in *Jones* visited the plaintiff's store four times a week, the Fourth Circuit found that the plaintiff satisfied the "relatively free from supervision" prong because "[the plaintiff's] discretion in running the day-to-day operations of the store was not constrained by supervisors." *Jones*, 69 F. App'x at 635, 638.

For the majority of the time Garza worked at Family Dollar, his district managers visited the store at a frequency lower than the district managers in *Grace*, *Thomas*, and *Jones*. Moreover, there is no indication that Garza's district managers oversaw the day-to-day operations of the stores or constrained Garza's discretion in running the stores. Although Garza received daily emails from his district managers and communicated with them occasionally by telephone, his district managers were not micro-managers who were constantly looking over his shoulder. (Doc. No. 330, Garza Dep. at 163:22-25, 164, 165, 166, 167:1-23.) Moreover, Courts have found that "frequent, even daily exchange of e-mail and phone communications" between store managers and district managers "does not equate to exacting supervision." *See Thomas* 506 F.3d at 507. Therefore, the Court finds that Garza was relatively free from supervision.

### d. The Relationship Between Gazra's Salary and the Wages Paid to Other Employees for the Kind of Nonexempt Work Performed by the Supervisor

To determine the relationship between a managerial salary and wages paid to nonmanagerial employees, the Fourth Circuit considered, first, whether the manager earned more in absolute terms than nonmanagerial employees and, second, whether the manager was a "profit center." *Grace*, 637 F.3d at 517. This second consideration asks whether the manager had the ability to influence the amount of his or her compensation. *Id.*

First, Gazra earned significantly more than his non-exempt store employees in absolute terms. Garza earned $650 a week at the Austin store, $550 a week at the Gonzales and Seguin stores, and $625 a week at the New Braunfels store. (Doc. No. 330, Garza Dep. at 43:15-19, 65:21-25, 66:1-6, 68:10-20, 87:18-25, 88:1-5.) According to Michelle DeBrocq, a Family Dollar employee, Garza also received a bonus in the amount of $687.80 in October of 2003 and a bonus in the amount of $894.49 in Novemeber of 2003. (DeBrocq Decl. ¶5.) DeBrocq also testified that, according to Family Dollar's records, Garza worked an average of 63.89 hours per week, excluding weeks where he logged zero work hours. (*Id.* at ¶6.) Using this average, Garza's hourly wage at the store he earned the least at, excluding any bonuses he made, calculates out to $8.60 an hour. At the store he earned the most at, his hourly wage calculates out to $10.17 an hour. In comparison, DeBrocq testified that, of the thirty-six hourly employees who worked under Mr. Gazra from September 29, 2003, to March 2, 2005, approximately thirty-one of them earned $7.00 an hour or less, and, even using the highest hourly wage for those employees whose wages changed over time, the hourly employees working under Mr. Gazra earned an average

hourly wage of $6.38. (*Id*. at ¶8.)[11]  Garza testified during his deposition that the "max" Family Dollar allowed him to pay his employees was $6 an hour for associates and $8.50 an hour for assistant managers. (Doc. No. 330, Garza Dep. at 71:16-25, 72, 73:1-15.)

Second, Gazra was a "profit center." Garza testified that store managers were entitled to bonuses based on the status of the store's inventory. (Doc. No. 330, Garza Dep. at 194:14-20.) As Garza testified, "If [the store's inventory is] really good, then you get a bonus." (*Id.* at 194:20.) Garza also testified that problems affecting the store's inventory, such as shrinkage, customer shoplifting, employee shoplifting, and breakage, were his responsibility as store manager. (*Id*. at 196:13-25, 197, 198:1-13.) Elizabeth Alvarez, an assistant manager working under Garza, also testified that managers received bonuses based on the store's inventory. (Doc. No. 330, Alvarez Dep. at 74:23-25, 74:1-3.) According to Michelle DeBrocq, an employee of Family Dollar, Family Dollar's records showed that Garza received bonuses totaling $1582.89 in 2003. (Doc. No. 330, DeBrocq Decl. ¶5.) Therefore, Garza was a "profit center" because he was able to influence the amount of money he made by successfully performing his managerial duties. Similarly, in *Grace*, the Fourth Circuit found Ms. Grace to be a "profit center" because her "bonus depended on her store's profitability." *Grace*, 637 F.3d at 517.

### e. The Frequency With Which the Employee Exercises Discretionary Powers

Gazra frequently exercised discretion in performing his managerial duties. In *Grace*, the Fourth Circuit Court of Appeals found that the plaintiff frequently exercised discretionary powers by making such day-to-day decisions as "[h]ow to handle a customer complaint or employee

---

[11] The Court notes that Mr. Garza has asserted that his hourly rate would have been less than the figure given in the DeBrocq declaration. In his deposition, Mr. Garza asserted that his hourly rate would have been "5.25, 5.30 an hour." (Doc. No. 330, Garza Dep. at 319:23-25, 320:1-4.) However, Mr. Garza has not submitted any evidence to the Court explaining or verifying his calculation, or otherwise raising a genuine issue of material fact regarding the amount of his hourly rate. Notably, Mr. Garza also stated that he did not record all of the hours that he worked, although he knew Family Dollar's policy required him to do so. (*Id*. at 320:24-25, 321, 322, 323, 324.)

complaint[s], how to adjust a schedule, how to arrange the stock in a manner that was pleasing, what task to address first, [and] how to keep a mindful eye on shrinkage and breakage while at the same time satisfying customers . . . ." *Id.* at 517. The Court reasoned that "[e]very one of [the plaintiff's] day-today [sic] tasks involved judgment and discretion" and that "all [of the plaintiff's tasks] involved discretionary acts inherent in being responsible for the successful operation of a retail store." *Id.*

Similar to the plaintiff in *Grace*, Gazra performed many day-to-day tasks that required his judgment and discretion and that were critical to the operation of her store. For example, Garza had to decide how to handle customer complaints. (Doc. No. 330, Garza Dep. at 246:12-25.) Garza was also responsible for determining how to schedule employees to fit the needs of his store. (*Id.* at 125-140). In addition, Garza had to decide how to apportion work and delegate specific tasks to employees. (*Id*. at 245- 46, 251-64.) The fact that Family Dollar maintained certain policies and procedures for the sake of consistency does not mean that Gazra failed to exercise discretion in carrying out such policies or in being responsible for the successful operation of his store. Therefore, the Court finds that Garza frequently exercised discretionary powers during his employment as Store Manager.

### 3. **Garza Customarily and Regularly Directed the Work of Two or More Employees**

Both regulations require that an employee customarily and regularly direct the work of two or more other employees to qualify as an executive. 29 C.F.R. § 541.100(a)(3); 29 C.F.R. 541.1 (pre-2004). The regulations state that the phrase "customarily and regularly" means "a frequency that [is] greater than occasional but . . . may be less than constant." 29 C.F.R. § 541.701. As a general rule of thumb, the DOL has adopted an "eighty-hour rule" which generally requires an

exempt executive to direct a total of eighty employee-hours of work each week. 69 Fed.Reg. 22135. However, courts have not required employers to show that the manager directed a total of eighty employee-hours of work each week for the entire relevant period of time in order to satisfy the "customarily and regularly" requirement. In *Grace*, the Fourth Circuit found the manager to qualify as an executive where she directed eighty employee-hours of work each week for 89.23% of the relevant time period, but did not set a bright-line rule as to what percentage of the time a manager must direct a total of eighty employee-hours of work each week in order to satisfy the requirement. *Grace*, 637 F.3d at 513. The Seventh Circuit, also declining to set a bright-line rule, found that a manager directing eighty employee-hours of work each week for 67% of the relevant time period did not "customarily and regularly" direct the work of two or more employees. *Jackson v. Go-Tane Servs.,* 56 F. Appx. 267, 272 (7th Cir. 2003). Similarly, the First Circuit found 76% to be too low to satisfy the "customarily and regularly" requirement. *Secretary of Labor v. Daylight Dairy Prods., Inc.*, 779 F.2d 784, 788 (1st Cir. 1985). The District Court in *Morgan v. Family Dollar Stores* decided to apply an 80% threshold test. *Morgan v. Family Dollar Stores*, 551 F.3d 1233, 1274 (11th Cir. 2008). Although the Eleventh Circuit Court of Appeals found no reversible error in the District Court's reading of the "customarily and regularly" requirement, it also refused to draw a bright line rule or adopt the District Court's 80% threshold test. *Id.* at 1276.

Based on Michelle DeBrocq's review of Family Dollar's records, there were at least eighty work hours per week reported by hourly employees in the stores where Garza was the assigned store manager for 81.58% of the relevant time period.[12] (Doc. No. 330, DeBrocq Decl. ¶7.)

---

[12] The Court notes that temporary staff shortages are common in any business due to employee turn over, and that it is not unusual for a retail store such as Family Dollar to not be staffed at a hundred percent for a hundred percent of the time. Notably, Mr. Garza experienced a period of time at the Gonzales store where two employees quit and, as a result, he and the assistant manager were temporarily the only employees scheduled to work. (Doc. No. 330, Garza Dep. at 77:18-25, 78, 79:1-14.)

Applying the above-referenced case law, this Court finds 81.58% of the relevant time period sufficient to satisfy the requirement under both the pre-2004 and current regulations.[13] Therefore, looking at the record before the Court, the Court finds that Garza did customarily and regularly direct the work of at least two full-time employees or their equivalent during the relevant time period.

### 4. Gazra Had Authority and Discretion with Regard to Interviewing and Hiring and His Recommendations Were Closely Followed

Gazra's deposition testimony establishes that he meets the additional prong of the executive exemption test contained in the current regulations, namely that his suggestions as to the hiring, firing, or change of status of other employees were given particular weight. 29 C.F.R. § 541.100(a)(4). The regulations state with respect to this standard that the "factors to be considered include, but are not limited to, whether it is part of the employee's job duties to make such suggestions and recommendations; the frequency with which such suggestions and recommendations are made or requested; and the frequency with which the employee's suggestions and recommendations are relied upon." 29 C.F.R. § 541.105. An employee's recommendations "may still be deemed to have 'particular weight' even if a higher level manager's recommendation has more importance and even if the employee does not have authority to make the ultimate decision as to the employee's change in status. *Id*.

---

[13] The Court also notes that nowhere in Plaintiff's Opposition to Defendant's Motion for Summary Judgment does the Plaintiff argue that directing the work of two full-time employees or their equivalent for 81.58% of the relevant time period is too low of a percentage to satisfy the "customarily and regularly" prong of the executive exemption test under either the pre-2004 or current regulations. (Doc. No. 353.) Plaintiff does challenge the admissibility of the declaration given by Michelle DeBrocq, in which the 81.58% figure was set forth. (*Id*. at 19-22.) However, this Court has held that the declaration is admissible. *See supra* FN. 3.

Garza admitted that he interviewed and recommended hiring various applicants. (Doc. No. 330, Garza Dep. at 60:9-25, 61, 62:1-13, 207:20-25, 208:1-19.) He was responsible for collecting employment applications, facilitating the pre-employment integrity test, recommending applicants for hire to his district manager, and conducting the final interviews of the candidates. (*Id.* at 58:2-25, 59, 60, 61, 62:1-13, 79:9-25, 80, 81:1-14, 207-08.) Garza's district manager interviewed the majority of the applicants that Garza recommended. (*Id.* at 59:19-25, 60.) Moreover, Garza was responsible for providing promotion recommendations which were also generally taken under advisement. (*Id.* at 207:20-25, 208, 209.) Overall, while Gazra did not have the ultimate decision-making authority with respect to hiring, firing, or change of employment status, he made frequent recommendations as to those matters, and his recommendations were given particular weight by his district manager, thereby satisfying the requirement.

## CONCLUSION

Viewing the facts in the light most favorable to the non-moving party, the Court finds that Family Dollar has satisfied the DOL regulations, thereby establishing that Gazra qualifies as an exempt executive under the FLSA. Therefore, Family Dollar is entitled to judgment as a matter of law.

## ORDER

IT IS **ORDERED** that:

(1) Defendant's Motion for Summary Judgment is **GRANTED** and Plaintiff Ike Gazra is dismissed;

(2) The Court finds that there is no just reason to delay finding of final judgment for Family Dollar with regard to Plaintiff Ike Gazra's claim against Family Dollar;

(3) The Clerk is directed to enter final judgment, pursuant to Rule 54(b), for Family Dollar with regard to Plaintiff Ike Gazra.

**SO ORDERED**.

Signed: November 9, 2011

Graham C. Mullen
United States District Judge