IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:08 MD 1932

| | |
|---|---|
| IRENE GRACE, )<br>)<br>       **Plaintiff,** )<br>)<br>v. )<br>)<br>FAMILY DOLLAR STORES, INC., )<br>)<br>       **Defendant.** )<br>_____) | **ORDER** |

**THIS MATTER** is before the Court on Defendant's Motion for Summary Judgment and Memorandum in Support (Doc. No. 148); Plaintiff's Response in Opposition (Doc. No. 174); Defendant's Reply (Doc. No. 189), and Defendant's Supplement to its Motion for Summary Judgment (Doc. No. 784). [1] For the reasons set forth below, the motion is **GRANTED**.

**FACTS** [2]

---

[1] Plaintiff's case comes before this Court as part of a proposed collective action. On September 6, 2007, this Court granted Defendant's Motion to Strike Collective Action Allegations. (3:06cv306, Doc. No. 78). On July 9, 2009, this Court granted Defendant's Motion for Summary Judgment as to the named Plaintiff in this case, Irene Grace, and dismissed her from this action. (3:08md1932, Doc. No. 172). Ms. Grace appealed both orders to the Fourth Circuit Court of Appeals. The Court of Appeals held that Ms. Grace was a manager, and therefore affirmed this Court's judgment in favor of Family Dollar Stores, Inc. *See Grace v. Family Dollar Stores Inc.*, 637 F.3d 508 (4th Cir. 2011).

[2] To the extent Plaintiff makes any factual assertions based on the decision in *Morgan v. Family Dollar Stores, Inc.*, the Court will disregard such assertions. The Court will also disregard exhibits based on the *Morgan* case. In *Grace v. Family Dollar Stores, Inc.*, the Fourth Circuit Court of Appeals rejected Ms. Grace's argument that the facts in *Morgan* and in her case were identical; similarly, this Court finds no basis to support the assumption that the facts between Plaintiff's case and the *Morgan* case are the same. *See Grace v. Family Dollar Stores, Inc.*, 637 F.3d 508 (4th Cir. 2011) (finding that potential variations between store size, store inventory, and the individual responsibilities of managers, as well as differences in managers' performance of exempt and nonexempt duties and the supervisory activity of district managers, precluded Plaintiff's argument that the facts in *Morgan* and in her case were identical).

Plaintiff, Amanda Echols ("Echols") began working at Family Dollar, Store Number 269,[3] in 2002 as an assistant manager.[4] (Doc. No. 149, Echols Dep. at 23.)[5] It was not long before Echols was offered a promotion to store manager, which she accepted. (*Id*. at 26.) At the time Echols became a store manager, Family Dollar paid her a salary of $545 per week. (Doc. No. 149, Morgan Decl. ¶ 4; Echols Dep. at 30.)[6] In November 2000, she received a pay increase to $575.46 per week. (*Id*.) In November 2004, she received another pay increase to $615 per week. (*Id*.) In October 2005, she received another pay increase to $635 per week, which she received throughout the remainder of her employment with Family Dollar. (*Id*.) Echols resigned from her employment with Family Dollar in July of 2006. (Doc No. 149, Echols Dep. at 40.) During the relevant time period, Echols worked an average of 55.24 hours per week as store manager. (Doc. No. 784, Debrocq Decl. ¶ 4.)

---

[3] Over the course of her career with Family Dollar, Echols managed only one store, number 269, permanently, but she also worked as the acting manager for another store, number 3887, for about four months. (Doc No. 149, Echols Dep. at 38.)

[4] Echols filed her opt-in consent form on July 4, 2007. Accordingly, July 4, 2004, or three years prior to her opt-in date, through the end of her management position in July 2006, represents the longest possible relevant time period for Echols' claims in this action.

[5] The Court notes that Plaintiff's declaration was prepared after Plaintiff's deposition and on many occasions directly contradicts her sworn testimony. Plaintiff cannot create a dispute about a fact contained in deposition testimony by referring to a subsequent affidavit of the deponent contradicting the deponent's prior testimony, for "it is well established that a genuine issue of fact is not created where the only issue of fact is to determine which of the two conflicting versions of a party's testimony is correct." *Erwin v. United States*, 591 F.3d 313, 325 n.7 (4th Cir. 2010) (internal quotation marks and alterations omitted) (quoting *Halperin v. Abacus Tec. Corp.*, 128 F.3d 191, 198 (4th Cir. 1997); *see also Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 341 (4th Cir. 2001); *Rohrbough v. Wyeth Labs.*, 916 F.2d 970, 975-76 (4th Cir. 1990); *Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984). To the extent that Plaintiff's deposition testimony and later affidavit are inconsistent, the Court will disregard the affidavit and rely on the testimony she gave in her deposition, where she was examined at length about her responsibilities as a manager of a Family Dollar Store. *See Grace*, 637 F.3d at 513.

[6] The court is aware that Plaintiff objects to the admissibility of Morgan's declaration. An Order, however, dated August 10, 2011, by the undersigned, concluded that the declarations of Family Dollar employees regarding the "two full time employees or their equivalent" and "significant salary difference" prongs of the executive exemption were admissible. Plaintiffs failed to file a response to Family Dollar's supplemental briefing on this issue despite being given 30 days to do so by the court. (Doc. No. 566).

The record shows that of the thirty-five (35) nonexempt employees who worked in the store where Echols was the store manager from 2004 to 2006, approximately twenty-six (26) earned $6.25 or less per hour (even using the highest wage for those employees whose wages changed over time, the nonexempt employees working at Echols' stores received an average hourly wage of $6.28 per hour). (*Id.* at ¶ 6.) Echols, on a daily basis, directed the work of her employees. (Doc. No. 149, Echols Dep. at 44.) Family Dollar's records reflect that Echols managed at least 80 employee hours 97.54% of the time she was a store manager during the relevant time period. (Doc. No. 149, Morgan Decl. ¶ 5.)

Echols contends that she devoted 99% of her time to performing nonexempt work, but admitted that she was also the person responsible for the overall management of the store for the entire time she was in the store. (Doc. No. 149, Echols Dep. at 42, 126, 189-90.) For example, Echols confirmed that she often supervised and directed her employees while she was performing non-managerial tasks. (*Id*. at 46, 98-100)

Echols' managerial tasks included training, supervising, and directing employees (*Id*. at 16, 42, 44, 46, 87-88, 93-94, 98-101), completing the store's financial paperwork (*Id*. at 15, 160, 162-63), apportioning hours to employees (*Id*. at 32, 35, 37), and being responsible for both employee and customer safety (*Id*. at 155, 157). Echols also decided how to adjust the schedule (*Id*. at 32, 35); how to assign and apportion work among herself and her employees (*Id*. at 42, 44); how to review employment applications and interview candidates (*Id*. at 47-50); how to discipline employees (*Id*. at 112, 130-33, 136-39); how to conduct performance reviews of her employees (*Id*. at 101-03, 107, 141); how to arrange and decorate certain displays (*Id*. at 33); and how to deal with problems with merchandise, including markdowns of damaged merchandise

3

(*Id*. at 33). Additionally, Echols conceded that she had the flexibility to choose what tasks to perform herself and what tasks to delegate to her employees. (*Id*. at 42, 44.)

Echols specifically testified that she was actively involved in the interviewing and employee screening process, and that her district manager almost always followed her recommendations. (*Id*. at 47-52, 54, 76-77.) Echols selected who she interviewed by first sifting though stacks of employment applications and weeded out anybody she did not want to interview. (*Id*. at 47-49) Additionally, the district manager did not veto Echols' recommendations to interview candidates. (*Id*. at 51.) Echols also made recommendations for the promotion and demotion of employees. (*Id*. at 149-50.) Specifically, Echols recommended that clerk Mark Cagle be promoted to the Assistant Manager position, and the district manager followed that recommendation. (*Id*.)

As store manager, Echols reported to a district manager. Echols testified that her district manager would visit the store once a week, ranging from 10-15 minutes to half a day. (*Id*. at 193, 195-96.) Additionally, Echols testified that she spoke to her district manager daily by telephone and e-mail. (*Id*. at 193.) Moreover, based on Family Dollar's records, District 129, which included the store managed by Echols during the relevant time period, included approximately twenty-one (21) stores. (Doc. No. 149, Morgan Decl. ¶ 3.) The district spanned approximately 40 miles from north to south and approximately 100 miles from east to west. (*Id*.)

## **STANDARD OF REVIEW**

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party always

bears the initial burden of "informing the district court of the basis for its motion," and identifying the matter "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Once the movant has met the initial burden, "the non-moving party 'may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.'" *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)). This is particularly important where the nonmoving party bears the burden of proof. *Hughes*, 48 F.3d at 1381. A genuine issue for trial exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249-50. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict.

When considering summary judgment motions, courts must view the facts in the light most favorable to the party opposing the motion. *Austin v. Clark Equip. Co.*, 48 F.3d 833, 835 (4th Cir. 1995). In reviewing the whole record, the Court must remember to "disregard all evidence favorable to the moving party that the jury is not required to believe" and therefore only "give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that [the] evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000).

## **DISCUSSION**

The Fair Labor Standards Act ("FLSA") requires that an employee receive overtime pay if he or she works more than forty hours a week. 29 U.S.C. § 207(a)(1). The FLSA, however,

exempts from this requirement "any employee employed in a bona fide executive…capacity." 29 U.S.C. § 213(a)(1). The Department of Labor ("DOL") has promulgated regulations which further describe and interpret the scope of this exemption. Due to the time span of Echols' claims, two different sets of DOL regulations apply to this analysis: the regulations in effect prior to August 23, 2004 (the "pre-2004 regulations") and the regulations that went into effect on August 23, 2004 (the "current regulations").

The pre-2004 regulations set forth both a "short" and "long" test for determining whether an employee qualifies as an exempt executive. *See* 29 C.F.R. § 541.1 (pre-2004). The short test is used for employees who are compensated on a salary basis at a rate of at least $250 per week.[7] 29 C.F.R. § 541.1(f) (pre-2004). Under the short test, an employee qualifies as an executive if (1) her primary duty consists of the management of the enterprise and (2) includes the customary and regular direction of the work of two or more other employees. 29 C.F.R. § 541.119(a) (pre-2004); 29 C.F.R. § 541.1(f) (pre-2004).

Similarly, the current regulations[8] provide that an employee qualifies as an executive if: (1) she is compensated on a salary basis at a rate of at least $455 per week; (2) her primary duty is management of the enterprise; (3) she customarily and regularly directs the work of two or more other employees; and (4) she has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight. 29 C.F.R. § 541.100(a).

---

[7] The "long" test found in the pre-2004 regulations includes six factors. Section 541.1(f) states clearly, however, that an employee who is compensated for her services on a salary basis of at least $250 per week and who satisfies the tests promulgated by sections 541.1(a)-(b) shall be deemed to meet all other requirements under that section. 29 C.F.R. § 541.1(f) (pre-2004).

[8] *See supra* FN. 4.

The DOL has also promulgated additional regulations which further describe and define these tests; these additional regulations are discussed below. Because Echols' claim covers the period of July 4, 2004[9] to July 2006, it is governed, in differing degrees, by both pre-2004 and current regulations. The application of the different regulations, however, is not material to the outcome of this case.

### 1. Family Dollar Satisfies the Salary Basis Test

At the time Echols became a store manager, Family Dollar paid her a salary of $545 per week. (Doc. No. 149, Morgan Decl. ¶ 4; Echols Dep. at 30.)[10] In November 2000, she received a pay increase to $575.46 per week. (*Id.*) In November 2004, she received another pay increase to $615 per week. (*Id.*) In October 2005, she received another pay increase to $635 per week, which she received throughout the remainder of her employment with Family Dollar. (*Id.*) Therefore, Family Dollar satisfies the salary basis test under both the pre-2004 regulations, which require a weekly salary of not less than $250 per week under the short test, and the current regulations, which require a weekly salary of not less than $455 per week. 29 C.F.R. § 541.1(f) (pre-2004); 29 C.F.R. § 541.100.

### 2. Family Dollar Satisfies the Primary Duty Test

The regulations provide guidance as to how an employee's primary duty may be determined. The regulations instruct that the determination should be "based on all the facts in a particular case." 29 C.F.R. § 541.700(a). The regulations set forth five factors to consider in this analysis: (1) the amount of time spent in the performance of managerial duties; (2) the

---

[9] *Id.*

[10] *See supra* FN. 6.

relative importance of the managerial duties as compared with other types of duties; (3) the frequency with which the employee exercises discretionary powers;[11] (4) the relative freedom from supervision; and (5) the relationship between the manager's salary and the wages paid to other employees for the kind of nonexempt work performed by the supervisor. (*Id*.)

Upon consideration of the factors identified for determining whether Echols' primary duty was management, the Court concludes that the factors are readily satisfied.

        **a.**        **The Amount of Time Spent in Performance of Managerial Duties**

Echols cannot overcome the exemption by claiming she spent the majority of her time performing non-managerial duties. Both sets of regulations state that an employee who spends more than fifty percent of his or her time performing managerial work will typically satisfy the primary duty requirement. 29 C.F.R. § 541.700(b); 29 C.F.R. § 541.103 (pre-2004). The regulations, however, also emphasize that "time alone…is not the sole test" and that exempt executives are *not required to spend more than fifty percent of their time performing exempt work* if other factors support the conclusion that management is their primary duty. *Id; see also Grace,* 637 F.3d 508, 515 (4th Cir. 2011) (emphasis added).

The regulations provide a list of "management" activities, which include, but are not limited to:

> Interviewing, selecting and training of employees; setting and adjusting their rates of pay and hours of work; directing their work; maintaining their production or sales records for use in supervision or control; appraising their productivity and efficiency for the purpose of recommending promotions or other changes in their status; handling their complaints and grievances and disciplining them when necessary; planning the work; determining the techniques to be used; apportioning the work among the workers; determining the type of materials, supplies, machinery or tools

---

[11] The current regulations omit reference to the frequency with which the employee exercises discretionary powers. 29 C.F.R. § 541.700.

to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety of the [employees] and the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.[12]

29 C.F.R. § 541.102.[13] Echols explicitly testified that she regularly performed a majority of these management activities as a Family Dollar store manager.[14]

The current regulations specifically address the concept of concurrent duties. 29 C.F.R. § 541.106. Concurrent performance, or multi-tasking, of exempt and nonexempt work is explicitly recognized as a managerial duty by the DOL's regulations. *Id*; *see also* 29 U.S.C. § 213(a)(1).[15] "It is misleading simply to add up the time that [Plaintiff] spent unloading trucks, stocking inventory, running cash registers, or sweeping floors and conclude thereby that she was merely a clerk and not a manager." *Grace,* 637 F.3d at 516.

---

[12] An employee need not perform all management duties listed in the regulations, or evenly regularly perform such duties, in order to be considered an exempt executive. *See Aguirre v. SBC Communs., Inc.*, 2007 U.S. Dist. Lexis 72666, 63-62 (S.D. Tex. Sept. 30, 2007) (finding that "plaintiffs' 'primary duty' for purposes of the executive exemption was 'management,' despite the fact that the plaintiffs did not perform other 'managerial' duties listed in Section 541.102.").

[13] The pre-2004 regulations omit planning and controlling the budget and monitoring or implementing legal compliance measures. 29 C.F.R. § 541.102(b) (pre-2004).

[14] The fact that the Assistant Managers can do the same tasks as Echols does not render her tasks and duties any less managerial. Courts have consistently held that the fact that a non-exempt employee may sometimes perform exempt duties does not make these duties any less exempt/managerial. *See Baldwin v. Trailer Inns, Inc.*, 266 F.3d 1104, 1115 (9th Cir. 2001) ("[t]hat the [non-exempt] assistant managers may have performed some managerial tasks does not render the tasks non-exempt.").

[15] The FLSA recognizes the nature of retail business and states that "an employee of a retail or service establishment shall not be excluded from the definition of an employee employed in a bona fide executive or administrative capacity because of the number of hours in her work week which she devotes to activities not directly or closely related to the performance of executive or administrative activities." 29 U.S.C. § 213(a)(1). In addition, the regulations specifically recognize that certain executives, particularly in retail establishments, will often perform exempt work concurrently with nonexempt work. "Assistant managers in a retail establishment who perform exempt executive work such as supervising and directing the work of other employees . . . may have management as their primary duty even if the assistant managers spend more than 50 percent of their time performing nonexempt work . . . ." 29. C.F.R. § 541.700(c).

In *Grace*, the Fourth Circuit found the plaintiff "was performing management duties whenever she was in the store, even though she also devoted most of her time [99%] to doing the mundane physical activities necessary for its successful operation." *Id.* at 517. Similar to the plaintiff in *Grace*, even though Echols contends that she devoted 99% of her time to performing nonexempt work, she was also the person responsible for the overall management of the store for the entire time she was in the store. (Doc. No. 149, Echols Dep. at 42, 126, 189-90.) For example, Echols confirmed that she often supervised and directed her employees while she was performing non-managerial tasks. (*Id*. at 46, 98-100) While Echols argues that management was not her primary duty because she spent a majority of her time engaged in manual labor, the regulations and the court in *Grace* clarify that performance of these duties, in conjunction with overall supervision and management of the store, is not contrary to the application of the exemption.

### b. The Relative Importance of the Managerial Duties as Compared with Other Types of Duties

Echols' managerial duties were more important than the other duties she performed because they were critical to the operation of the store. In *Grace*, the plaintiff's managerial tasks, which included filling out paperwork, addressing customer complaints, working with employees on their schedules, and collecting cash, were critical to the operation of the store, as there was "*noone else at the site to direct these actions*." *Grace*, 637 F.3d at 517 (emphasis in the original). Similarly, Echols' managerial tasks, which included training, supervising, and directing employees (Doc. No. 149, Echols Dep. at 16, 42, 44, 46, 87-88, 93-94, 98-101), completing the store's financial paperwork (*Id*. at 15, 160, 162-63), apportioning hours to employees (*Id*. at 32, 35, 37), and being responsible for both employee and customer safety (*Id*.

at 155, 157), were critical to the operation of the store. While Echols argues that she was under the direct supervision of the district manager, she nonetheless stated that her district manager visited the store only once a week – not enough to direct the managerial tasks. (*Id*. at 193, 195.) Therefore, because she was the *only person running the store*, the store could not have operated successfully without Echols' handling of these managerial tasks.

### c. Relative Freedom from Supervision

Relative freedom from supervision does not demand compete freedom from supervision. In *Grace*, the plaintiff's supervising district manager typically visited the store once every two to three weeks. *Grace*, 637 F.3d at 517. The court also noted, apart from her supervision, which was not uncharacteristic for any retail operation, the district manager was not a "micro-manager who constantly was looking over [the manager's] shoulder." *Id*. The supervision of seventeen stores would hardly permit [the district manager] to micro-manage all of them. *Id*; *see also Thomas v. Speedway SuperAmerica LLC*, 506 F.3d 496, 504-509 (6th Cir. 2007) (court found it significant that plaintiff's district manager was responsible for ten to twelve stores, as opposed to situations where a higher level manager was responsible for only a few stores). Moreover, courts have found that an employee's "frequent, even daily exchange of e-mail and phone communications with her district manager" did not equate to exacting supervision. *Thomas*, 506 F.3d at 508.

Echols was relatively free from supervision during the relevant time period. Echols testified that her district manager would visit the store once a week ranging from 10-15 minutes to half a day. (Doc. No. 149, Echols Dep. at 193, 195-96.) Additionally, Echols testified that she spoke to her district manager daily by telephone and e-mail. (*Id*. at 193.) The infrequency

of the visits and the frequent contact by telephone and e-mail does not equate to exacting supervision over Echols. *See Thomas*, 506 F.3d at 508. Moreover, based on Family Dollar's records, District 129, which included the store managed by Echols during the relevant time period, included approximately twenty-one (21) stores. (Doc. No. 149, Morgan Decl. ¶ 3.) The district spanned approximately 40 miles from north to south and approximately 100 miles from east to west. (*Id.*) The large territory and number of stores the district manager was responsible for supervising does not allow him to micro-manage each individual store. *See Grace*, 637 F.3d at 517; *Thomas*, 506 F.3d at 508.

### d. Relationship Between Salary and Wages Paid to Other Employees for the Kind of Nonexempt Work Performed by the Supervisor

To determine the relationship between a managerial salary and wages paid to nonmanagerial employees, the Fourth Circuit considered, first, whether the manager earned more, in absolute terms, than nonmanagerial employees and, second, whether the manager was a "profit center." *Grace*, 637 F.3d at 517. This second consideration asks whether the manager had the ability to influence the amount of her compensation. *Id.*

As to the first consideration, Echols earned significantly higher amounts on an hourly basis than nonexempt workers. The record shows that of the thirty-five (35) nonexempt employees who worked in the store where Echols was the store manager from 2004 to 2006, approximately twenty-six (26) earned $6.25 or less per hour (even using the highest wage for those employees whose wages changed over time, the nonexempt employees working at Echols' stores received an average hourly wage of $6.28 per hour). (Doc. No. 149, Morgan Decl. ¶ 6.) In comparison, Echols worked an average of 55.24 hours per week as store manager. (Doc. No. 784, Debrocq Decl. ¶ 4.) Echols earned compensation which, when computed on an hourly

basis, averaged $9.87 per hour ($545 per week), $10.42 per hour ($575.46 per week), $11.13 per hour ($615 per week), and $11.50 per hour ($635 per week). A review of these calculations and comparisons reveal a significant difference in wages between Echols and her nonexempt employees.[16] [17]

        e.        **Frequency With Which the Employee Exercises Discretionary Power**

Echols exercised discretion virtually every day and all day long in her capacity as store manager. Echols decided how to adjust the schedule (*Id*. at 32, 35); how to assign and apportion work among herself and her employees (*Id*. at 42, 44); how to review employment applications and interview candidates (*Id*. at 47-50); how to discipline employees (*Id*. at 112, 130-33, 136-39); how to conduct performance reviews of her employees (*Id*. at 101-03, 107, 141); how to arrange and decorate certain displays (*Id*. at 33); how to deal with problems with merchandise, including markdowns of damaged merchandise (*Id*. at 33); and, while at the same time, satisfying customers. All of these tasks involved "discretionary acts inherent in being responsible for the successful operation of a retail store." *Grace*, 637 F.3d at 517. Although Echols alleges that she was required to perform certain nonexempt work, she conceded that she had the flexibility to choose what tasks to perform herself and what tasks to delegate to her

---

[16] Echols' argument analyzing the highest earning nonexempt employee ($8.00) to compare that person's wage to her salary is not supported by citation to any authority. Courts have analyzed the wages of *all* of the nonexempt employees in making a wage comparison. *See Grace v. Family Dollar Stores Inc.,* 637 F.3d at 517 (Plaintiff's calculated salary of $9.62 to $12.02 per hour was significantly more than the hourly employees at Family Dollar, who earned an average wage of $5.81 per hour); *Thomas v. Speedway SuperAmerica LLC*, 506 F.3d 496, 508-09 (6th Cir. 2007) (Plaintiff's calculated salary of $10.44 was significantly more than the typical hourly wage of $7.00 paid to nonexempt employees); *Jones v. Virginia Oil Co., Inc.*, 69 Fed. Appx. 633, 638-39 (4th Cir. 2003) (holding that this factor weighed in favor of the defendant where plaintiff made approximately $165 more than the average hourly worker).

[17] As to the second consideration, the Court is without information as to whether Echols received a bonus during the relevant time period. The Court, however, recognizes that Echols' average hourly wage is substantially greater than the average hourly nonexempt employees and therefore satisfies this factor.

employees; thus the fact that she chose to perform that work does not defeat the exemption, since Family Dollar did not mandate that she personally perform that work. (*Id*. at 42, 44.) Moreover, the fact that Family Dollar maintains certain policies and procedures for the sake of consistency does not mean that Echols failed to exercise discretion in enforcing these policies and procedures.[18]

### 3. Customary and Regular Direction of the Work of Two or More other Employees

To qualify as an executive, the regulations require an employee's primary duty to include the "customary and regular direction of the work of two or more other employees." 29 C.F.R. § 541.100(a)(3); 29 C.F.R. § 541.1(f) (pre-2004). The pre-2004 regulations do not further define the terms "customary and regular," but the current regulations state that the phrase "means a frequency that must be greater than occasional but which, of course, may be less than constant." 29 C.F.R. § 541.701. Echols, on a daily basis, directed the work of her employees. (Doc. No. 149, Echols Dep. at 44.) The regulations also require the employee to direct the work of "two full-time employees or the equivalent." 29 C.F.R. § 541.104(a); 29 C.F.R. § 541.105(a)(pre-2004). The DOL has adopted an "80-hour rule" which generally requires an exempt executive to direct a total of eighty employee-hours of work each week. *See* 69 Fed.Reg. 22135; *see also Grace*, 637 F.3d at 513 (holding that Grace customarily and regularly directed the work of two or more other employees who worked eighty or more hours per week during 89.23% of the weeks that she was store manager). Family Dollar's records reflect that Echols managed at least

---

[18]*See Murray v. Stuckey's, Inc.*, 50 F.3d 564, 570 (8th Cir. 1995) (standardized procedures and policies may circumscribe but do not eliminate discretion of on-site store managers); *Thomas v. Speedway SuperAmerica LLC*, 506 F.3d, 496, 507 (6th Cir. 2007) (manager still exercised discretion on a daily basis even though store had standardized operating procedures); *Grace v. Family Dollar Stores, Inc.*, 637 F.3d 508, 516 (4th Cir. 2011) (manager still exercised discretion even though she was subject to company policies and the company template for a store in the Family Dollar chain).

80 employee hours 97.54% of the time she was a store manager during the relevant time period. (Doc. No. 149, Morgan Decl. ¶ 5.) Therefore, Echols customarily and regularly directed the work of at least two full-time employees and satisfies this factor.

> 4. **Authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight**

Finally, the additional prong of the executive exemption test contained in the current regulations states that an exempt employee has authority to hire or fire other employees or her recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees are given particular weight. 29 C.F.R. § 541.100(a)(4). The DOL provides guidance with respect to whether an employee's recommendations satisfy this standard. Specifically, the "factors to be considered include, but are not limited to, whether it is part of the employee's job duties to make such suggestions and recommendations; the frequency with which such suggestions and recommendations are made or requested; and the frequency with which the employee's suggestions and recommendations are relied upon." 29 C.F.R. § 541.105. Importantly, the employee's recommendations "may still be deemed to have 'particular weight' even if a higher level manager's recommendation has more importance and even if the employee does not have the authority to make the ultimate decision as to the employee's change in status."[19] *Id*.

---

[19]*See Davis v. Family Dollar Stores*, No. 3:03-0170 (D.S.C. Sept. 28, 2004) ("the record shows that plaintiff had considerable influence in the hiring and firing of employees in her store even though they ultimately had to be approved by higher management"); *Lovelady v. Allsup's Convenience Stores, Inc.*, 304 Fed.Appx. 301, 305-06 (5th Cir. 2008) (managers who did not have ultimate authority still satisfied test where they made recommendations which were almost always followed); *Grace v. Family Dollar Stores, Inc.*, 637 F.3d 508, 514 (4th Cir. 2011) (manager's suggestions regarding the hiring of employees were given significant weight when the manager followed those recommendations 95% of the time).

Echols' recommendations as to hiring and promotion of other employees were given particular weight. With respect to hiring recommendations, Echols was actively involved in the interviewing and employee screening process, and her district manager almost always followed her recommendations. (Doc. No. 149, Echols Dep. at 47-52, 54, 76-77.) Echols selected who she interviewed by first sifting though stacks of employment applications and weeded out anybody she did not want to interview. (*Id*. at 47-49.) Additionally, the district manager did not veto Echols' recommendations to interview candidates. (*Id*. at 51.) With respect to recommendations for promotion, Echols made recommendations for the promotion and demotion of employees. (*Id*. at 149-50.) Specifically, Echols recommended that clerk Mark Cagle be promoted to the Assistant Manager position, and the district manager followed that recommendation. (*Id*.) Therefore, Echols made frequent recommendations as to these matters to her district manager and her recommendations were almost always followed, satisfying the particular weight requirement.

## **CONCLUSION**

Looking at the facts in the light most favorable to the non-moving party, the Court finds that Family Dollar has satisfied the DOL regulations qualifying Echols as an exempt executive under the FLSA. No reasonable jury could find otherwise. Therefore, Family Dollar is entitled to judgment as a matter of law.

## **ORDER**

IT IS ORDERED that:

(1)     Defendant's Motion for Summary Judgment (Doc No. 148) is GRANTED and Plaintiff Amanda Echols is dismissed;

(2) The Court finds that there is no just reason to delay finding of final judgment for Family Dollar with regard to Plaintiff Amanda Echols' claim against Family Dollar;

(3) The Clerk is directed to enter final judgment, pursuant to Rule 54(b), for Family Dollar with regard to Plaintiff Amanda Echols.

**SO ORDERED.**

Signed: February 27, 2012

Graham C. Mullen
United States District Judge