IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:08 MD 1932

| | |
|---|---|
| IRENE GRACE, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>FAMILY DOLLAR STORES, INC., )<br>)<br>Defendant. )<br>_____) | ORDER |

**THIS MATTER** is before the Court on Defendant's Motion for Summary Judgment and Memorandum in Support (Doc. No. 361); Plaintiff's Response in Opposition (Doc. No. 446); Defendant's Reply (Doc. No. 475); and Defendant's Supplement to its Motion for Summary Judgment (Doc. No. 772).¹ For the reasons set forth below, the motion is **GRANTED**.

**FACTS** ²

---

¹ Plaintiff's case comes before this Court as part of a proposed collective action. On September 6, 2007, this Court granted Defendant's Motion to Strike Collective Action Allegations. (3:06cv306, Doc. No. 78). On July 9, 2009, this Court granted Defendant's Motion for Summary Judgment as to the named Plaintiff in this case, Irene Grace, and dismissed her from this action. (3:08md1932, Doc. No. 172). Ms. Grace appealed both orders to the Fourth Circuit Court of Appeals. The Court of Appeals held that Ms. Grace was a manager, and therefore affirmed this Court's judgment in favor of Family Dollar Stores, Inc. *See Grace v. Family Dollar Stores Inc.*, 637 F.3d 508 (4ᵗʰ Cir. 2011).

² To the extent Plaintiff makes any factual assertions based on the decision in *Morgan v. Family Dollar Stores, Inc.*, the Court will disregard such assertions. The Court will also disregard exhibits based on the *Morgan* case. In *Grace v. Family Dollar Stores, Inc.*, the Fourth Circuit Court of Appeals rejected Ms. Grace's argument that the facts in *Debrocq* and in her case were identical; similarly, this Court finds no basis to support the assumption that the facts between Plaintiff's case and the *Morgan* case are the same. *See Grace v. Family Dollar Stores, Inc.*, 637 F.3d 508 (4ᵗʰ Cir. 2011) (finding that potential variations between store size, store inventory, and the individual responsibilities of managers, as well as differences in managers' performance of exempt and nonexempt duties and the supervisory activity of district managers, precluded Plaintiff's argument that the facts in *Morgan* and in her case were identical).

Plaintiff, Angela Cooper ("Cooper"), returned to Family Dollar in May 2000 after having been a store manager at the Angleton, Texas store and resigning to work for a competitor.[3] (Doc. No. 362, Cooper Dep. at 33, 259-60.)[4] Cooper ended her employment with Family Dollar in November, 2003. (*Id.* at 26, 60.) At the time Cooper became a store manager, Family Dollar paid her a salary of $520 per week. (*Id.* at 97.) Her salary increased to $565 per week and again to $580 per week. (*Id.* at 97-98.) By November, 2003, Family Dollar raised Cooper's salary to $623 per week. (*Id.* at 98.) Cooper also earned bonuses of $907.01 and $359.57 in 2001, $412.59 and 293.68 in 2002, and $1,065.40 in 2003, for which nonexempt store employees were not eligible. (Doc. No. 169, Debrocq Decl. ¶ 5.)[5] During the relevant time period, Cooper worked an average of 79 hours per week as store manager. (*Id.* at ¶ 3.)

The record shows that of the twenty-one (21) nonexempt employees who worked in the store where Cooper was the store manager during the relevant time period, most earned between $5.50 and $6.00 per hour (even using the highest wage for those employees whose wages

---

[3] Cooper filed her opt-in consent form on July 28, 2004. Accordingly, July 28, 2001, or three years prior to her opt-in date, through the end of her management position in November 2003, represents the longest possible relevant time period for Cooper's claims in this action.

[4] The Court notes that Plaintiff's declaration was prepared after Plaintiff's deposition and on many occasions directly contradicts her sworn testimony. Plaintiff cannot create a dispute about a fact contained in deposition testimony by referring to a subsequent affidavit of the deponent contradicting the deponent's prior testimony, for "it is well established that a genuine issue of fact is not created where the only issue of fact is to determine which of the two conflicting versions of a party's testimony is correct." *Erwin v. United States*, 591 F.3d 313, 325 n.7 (4th Cir. 2010) (internal quotation marks and alterations omitted) (quoting *Halperin v. Abacus Tec. Corp.*, 128 F.3d 191, 198 (4th Cir. 1997); *see also Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 341 (4th Cir. 2001); *Rohrbough v. Wyeth Labs.*, 916 F.2d 970, 975-76 (4th Cir. 1990); *Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984). To the extent that Plaintiff's deposition testimony and later affidavit are inconsistent, the Court will disregard the affidavit and rely on the testimony she gave in her deposition, where she was examined at length about her responsibilities as a manager of a Family Dollar Store. *See Grace*, 637 F.3d at 513.

[5] The court is aware that Plaintiff objects to the admissibility of Debrocq's declaration. An Order, however, dated August 10, 2011, by the undersigned, concluded that the declarations of Family Dollar employees regarding the "two full time employees or their equivalent" and "significant salary difference" prongs of the executive exemption were admissible. Plaintiffs failed to file a response to Family Dollar's supplemental briefing on this issue despite being given 30 days to do so by the court. (Doc. No. 566).

changed over time, the nonexempt employees working at Cooper's store received an average hourly wage of $5.95 per hour). (*Id.* at ¶ 7.) Cooper, on a daily basis, directed the work of her employees. (Doc. No. 362, Cooper Dep. at 238.) Family Dollar's records reflect that Cooper managed at least 80 employee hours 100% of the time she was a store manager during the relevant time period. (Doc. No. 362, Debrocq Decl. ¶ 6.)

Cooper contends that she devoted 90% of her time to performing nonexempt work, but admitted that she was also the person responsible for the overall management of the store for the entire time she was in the store. (Doc. No. 362, Cooper Dep. at 255.) For example, while Cooper was stocking shelves, sweeping the floor, or helping customers, she always kept an eye on what was going on in the store. (*Id*. at 310.)

Cooper's managerial tasks included training, supervising, and directing employees (*Id.* at 238, 256-57), completing the store's financial paperwork (*Id*. at 127-28), apportioning hours to employees (*Id*. at 132, 154-55), and handling customer complaints (*Id*. at 234-35). Cooper also decided how to adjust the schedule (*Id*. at 167); how to assign and apportion work among herself and her employees (*Id*. at 203); how to accomplish tasks (*Id*. at 127-28); how to manage a payroll budget (*Id*. at 132); how to manage controllable shrink issues (*Id*. at 99-100, 231); and how to display merchandise (*Id*. at 264).

As store manager, Cooper reported to a district manager. Cooper testified that her district manager, Mike McKinley, would visit the store two to three times per month ranging from two to three hours per visit. (*Id*. at 108, 109, 110-11.) Additionally, Cooper testified that she spoke to her district manager daily by telephone and e-mail. (*Id*. at 11, 114.) Moreover, based on Family Dollar's records, McKinley's district consisted of approximately seventeen (17)

to nineteen (19) stores and spanned between sixty-three (63) and 102 miles. (Doc. No. 362, Debrocq Decl. ¶ 4.)

## STANDARD OF REVIEW

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party always bears the initial burden of "informing the district court of the basis for its motion," and identifying the matter "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Once the movant has met the initial burden, "the non-moving party 'may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.'" *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)). This is particularly important where the nonmoving party bears the burden of proof. *Hughes*, 48 F.3d at 1381. A genuine issue for trial exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249-50. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict.

When considering summary judgment motions, courts must view the facts in the light most favorable to the party opposing the motion. *Austin v. Clark Equip. Co.*, 48 F.3d 833, 835 (4th Cir. 1995). In reviewing the whole record, the Court must remember to "disregard all evidence favorable to the moving party that the jury is not required to believe" and therefore only "give credence to the evidence favoring the nonmovant as well as that evidence supporting

4

the moving party that is uncontradicted and unimpeached, at least to the extent that [the] evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000).

## **DISCUSSION**

The Fair Labor Standards Act ("FLSA") requires that an employee receive overtime pay if he or she works more than forty hours a week. 29 U.S.C. § 207(a)(1). The FLSA, however, exempts from this requirement "any employee employed in a bona fide executive…capacity." 29 U.S.C. § 213(a)(1). The Department of Labor ("DOL") has promulgated regulations which further describe and interpret the scope of this exemption. Because Cooper's claim covers the period of July 28, 2001[6] through November 2003, her claims must be reviewed under the pre-2004 regulations ("pre-2004" regulations).

The pre-2004 regulations[7] set forth both a "short" and "long" test for determining whether an employee qualifies as an exempt executive. *See* 29 C.F.R. § 541.1 (pre-2004). The short test is used for employees who are compensated on a salary basis at a rate of at least $250 per week.[8] 29 C.F.R. § 541.1(f) (pre-2004). Under the short test, an employee qualifies as an executive if (1) her primary duty consists of the management of the enterprise and (2) includes the customary and regular direction of the work of two or more other employees. 29 C.F.R. § 541.119(a) (pre-2004); 29 C.F.R. § 541.1(f) (pre-2004).

---

[6] *See supra* FN 3.

[7] Cooper's argument that Family Dollar has failed to carry its burden on the "particular weight" requirement is unavailing because this element of the regulations did not go into effect until August 2004.

[8] The "long" test found in the pre-2004 regulations includes six factors. Section 541.1(f) states clearly, however, that an employee who is compensated for her services on a salary basis of at least $250 per week and who satisfies the tests promulgated by sections 541.1(a)-(b) shall be deemed to meet all other requirements under that section. 29 C.F.R. § 541.1(f) (pre-2004).

5

The DOL has also promulgated additional regulations which further describe and define these tests; these additional regulations are discussed below. In light of these regulations, Cooper qualifies as an exempt executive.

1.  **Family Dollar Satisfies the Salary Basis Test**

At the time Cooper became a store manager, Family Dollar paid her a salary of $520 per week. (Doc. No. 362, Cooper Dep. at 97.) Her salary increased to $565 per week and again to $580 per week. (*Id*. at 97-98.) By November, 2003, Family Dollar raised Cooper's salary to $623 per week.[9] (*Id*. at 98.) Therefore, Family Dollar satisfies the salary basis test under the pre-2004 regulations short test, which require a weekly salary of not less than $250 per week under the short test. 29 C.F.R. § 541.1(f) (pre-2004).[10]

2.  **Family Dollar Satisfies the Primary Duty Test**

The regulations provide guidance as to how an employee's primary duty may be determined. The regulations instruct that the determination should be "based on all the facts in a particular case." 29 C.F.R. § 541.103 (pre-2004). The regulations set forth five factors to consider in this analysis: (1) the amount of time spent in the performance of managerial duties; (2) the relative importance of the managerial duties as compared with other types of duties; (3) the frequency with which the employee exercises discretionary powers; (4) the relative freedom

---

[9] Cooper left her job before her salary increase to $623 became effective. (Doc. No. 362, Cooper Dep. at 98.)

[10] The Court finds Cooper's argument that she was merely a "working foreman" unavailing. Under the pre-2004 regulations, the working foreman concept only applies to the "long test," which does not apply here. 29 C.F.R. § 541.115(a)-(b) (describing the concept in terms of the long test's limitation on the amount of nonexempt work). The current regulations state that a "*manager in a retail establishment*" can "supervise employees and serve customers at the same time without losing the exemption." 29 C.F.R. § 541.106(b) (emphasis added). Section 29 C.F.R. § 541.106(c) states "[i]n contrast," a "working supervisor" who performs "nonexempt work *on the production line in a manufacturing plant* does not become exempt" merely by occasionally directing the work of other nonexempt employees on the "*production line*." (emphasis added.)

from supervision; and (5) the relationship between the manager's salary and the wages paid to other employees for the kind of nonexempt work performed by the supervisor. (*Id*.)

Upon consideration of the factors identified for determining whether Cooper's primary duty was management, the Court concludes that the factors are readily satisfied.

### a. The Amount of Time Spent in Performance of Managerial Duties

Cooper cannot overcome the exemption by claiming she spent the majority of her time performing non-managerial duties. Both sets of regulations state that an employee who spends more than fifty percent of his or her time performing managerial work will typically satisfy the primary duty requirement. 29 C.F.R. § 541.700(b); 29 C.F.R. § 541.103 (pre-2004). The regulations, however, also emphasize that "time alone…is not the sole test" and that exempt executives are *not required to spend more than fifty percent of their time performing exempt work if other factors support the conclusion that management is their primary duty.*[11] *Id; see also Grace,* 637 F.3d 508, 515 (4th Cir. 2011) (emphasis added).

The regulations provide a list of "management" activities, which include, but are not limited to:

> Interviewing, selecting and training of employees; setting and adjusting their rates of pay and hours of work; directing their work; maintaining their production or sales records for use in supervision or control; appraising their productivity and efficiency for the purpose of recommending promotions or other changes in their status; handling their complaints and grievances and disciplining them when necessary; planning the work; determining the techniques to be used; apportioning the work

---

[11]The Court disagrees with Cooper's contention that failure to meet the fifty (50) percent threshold means that an employee fails to satisfy the primary duty requirement. The Fourth Circuit clarified the application of the fifty (50) percent "rule of thumb" by stating that, "[i]t is clear from this language that primary duty is meant to be assessed by the totality of the circumstances." *Counts v. S.C. Elec. & Gas Co.*, 317 F.3d 453, 456 (4th Cir. 2003). Cooper's reliance on *Clark v. J.M. Benson Co., Inc.*, 789 F.2d 282 (4th Cir. 1986) is misplaced because the Court held that it would apply the fifty (50) percent rule to that *specific case*. (emphasis added.) Additionally, Cooper's reliance on *Shockley v. City of Newport News*, 997 F.2d 18 (4th Cir. 1993) is also misplaced because that case involved police officers, not retail store managers, who were not paid on a salary basis - something that is not at issue here.

among the workers; determining the type of materials, supplies, machinery or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety of the [employees] and the property.[12]

29 C.F.R. § 541.102(b) (pre-2004). Cooper explicitly testified that she regularly performed almost every one of these management activities as a Family Dollar store manager.[13]

The current regulations specifically address the concept of concurrent duties. 29 C.F.R. § 541.106. Concurrent performance, or multi-tasking, of exempt and nonexempt work is explicitly recognized as a managerial duty by the DOL's regulations. *Id*; *see also* 29 U.S.C. § 213(a)(1). "It is misleading simply to add up the time that [Plaintiff] spent unloading trucks, stocking inventory, running cash registers, or sweeping floors and conclude thereby that she was merely a clerk and not a manager." *Grace,* 637 F.3d at 516.

In *Grace*, the Fourth Circuit found the plaintiff "was performing management duties whenever she was in the store, even though she also devoted most of her time [99%] to doing the mundane physical activities necessary for its successful operation." *Id.* at 517. Similar to the plaintiff in *Grace*, even though Cooper contends that she devoted 90% of her time to performing nonexempt work, she was also the person responsible for the overall management of the store for the entire time she was in the store. (Doc. No. 362, Cooper Dep. at 255.) For example, while Cooper was stocking shelves, sweeping the floor, or helping customers, she always kept an eye

---

[12] An employee need not perform all management duties listed in the regulations, or evenly regularly perform such duties, in order to be considered an exempt executive. *See Aguirre v. SBC Communs., Inc.*, 2007 U.S. Dist. Lexis 72666, 63-62 (S.D. Tex. Sept. 30, 2007) (finding that "plaintiffs' 'primary duty' for purposes of the executive exemption was 'management,' despite the fact that the plaintiffs did not perform other 'managerial' duties listed in Section 541.102.").

[13] The fact that the Assistant Managers can do the same tasks as Cooper does not render her tasks and duties any less managerial. Courts have consistently held that the fact that a non-exempt employee may sometimes perform exempt duties does not make these duties any less exempt/managerial. *See Baldwin v. Trailer Inns, Inc.*, 266 F.3d 1104, 1115 (9th Cir. 2001) ("[t]hat the [non-exempt] assistant managers may have performed some managerial tasks does not render the tasks non-exempt.").

8

on what was going on in the store. (*Id*. at 310.) While Cooper argues that management was not her primary duty because she spent a majority of her time engaged in manual labor, the regulations and the court in *Grace* clarify that performance of these duties, in conjunction with overall supervision and management of the store, is not contrary to the application of the exemption.

        **b.**      **The Relative Importance of the Managerial Duties as Compared with Other Types of Duties**

Cooper's managerial duties were more important than the other duties she performed because they were critical to the operation of the store. In *Grace*, the plaintiff's managerial tasks, which included filling out paperwork, addressing customer complaints, working with employees on their schedules, and collecting cash, were critical to the operation of the store, as there was "*noone else at the site to direct these actions*." *Grace*, 637 F.3d at 517 (emphasis in the original). Similarly, Cooper's managerial tasks, which included training, supervising, and directing employees (Doc. No. 362, Cooper Dep. at 238, 256-57), completing the store's financial paperwork (*Id*. at 127-28), apportioning hours to employees (*Id*. at 132, 154-55), and handling customer complaints (*Id*. at 234-35), were critical to the operation of the store. While Cooper argues that she was under the direct supervision of the district manager, she nonetheless stated that her district manager visited the store only two to three times per month – not enough to direct the managerial tasks. (*Id*. at 109, 110-11.) Therefore, because she was the *only person running the store*, the store could not have operated successfully without Cooper's handling of these managerial tasks.[14]

---

[14] Cooper testified in her deposition that the store was hers to manage and that Family Dollar held her, and no one else, responsible for the store. (Doc. No. 362, Cooper Dep. at 146, 185.)

### c. Relative Freedom from Supervision

Relative freedom from supervision does not demand compete freedom from supervision. In *Grace*, the plaintiff's supervising district manager typically visited the store once every two to three weeks. *Grace*, 637 F.3d at 517. The court also noted, apart from her supervision, which was not uncharacteristic for any retail operation, the district manager was not a "micro-manager who constantly was looking over [the manager's] shoulder." *Id*. The supervision of seventeen stores would hardly permit [the district manager] to micro-manage all of them. *Id*; *see also Thomas v. Speedway SuperAmerica LLC*, 506 F.3d 496, 504-509 (6th Cir. 2007) (court found it significant that plaintiff's district manager was responsible for ten to twelve stores, as opposed to situations where a higher level manager was responsible for only a few stores). Moreover, courts have found that an employee's "frequent, even daily exchange of e-mail and phone communications with her district manager" did not equate to exacting supervision. *Thomas*, 506 F.3d at 508.

Cooper was relatively free from supervision during the relevant time period. Cooper testified that her district manager, Mike McKinley, would visit the store two to three times per month ranging from two to three hours per visit. (Doc. No. 362, Cooper Dep. at 108, 109, 110-11.) Additionally, Cooper testified that she spoke to her district manager daily by telephone and e-mail. (*Id*. at 11, 114.) The infrequency of the visits and the frequent contact by telephone and e-mail does not equate to exacting supervision over Cooper. *See Thomas*, 506 F.3d at 508. Moreover, based on Family Dollar's records, McKinley's district consisted of approximately seventeen (17) to nineteen (19) stores and spanned between sixty-three (63) and 102 miles. (Doc. No. 362, Debrocq Decl. ¶ 4.) The large territory and number of stores that McKinley was

responsible for supervising does not allow him to micro-manage each individual store. *See Grace*, 637 F.3d at 517; *Thomas*, 506 F.3d at 508.

### d. Relationship Between Salary and Wages Paid to Other Employees for the Kind of Nonexempt Work Performed by the Supervisor

To determine the relationship between a managerial salary and wages paid to nonmanagerial employees, the Fourth Circuit considered, first, whether the manager earned more, in absolute terms, than nonmanagerial employees and, second, whether the manager was a "profit center." *Grace*, 637 F.3d at 517. This second consideration asks whether the manager had the ability to influence the amount of her compensation. *Id.*

As to the first consideration, Cooper earned significantly higher amounts on an hourly basis than nonexempt workers. The record shows that of the twenty-one (21) nonexempt employees who worked in the store where Cooper was the store manager during the relevant time period, most earned between $5.50 and $6.00 per hour (even using the highest wage for those employees whose wages changed over time, the nonexempt employees working at Cooper's stores received an average hourly wage of $5.95 per hour). (Doc. No. 362, Debrocq Decl. ¶ 7.) In comparison, Cooper worked an average of 79 hours per week as store manager. (Doc. No. 772, Debrocq Decl. ¶ 3.) Cooper earned compensation which, when computed on an hourly basis, averaged $6.58 per hour ($520 per week), $7.15 per hour ($565 per week), and $7.34 per hour ($580 per week).[15]

As to the second consideration, Cooper was a "profit center;" her performance evaluation, salary, and bonus depended on her store's profitability. *See Grace*, 637 F.3d at 517. Cooper earned bonuses of $907.01 and $359.57 in 2001, $412.59 and 293.68 in 2002, and $1,065.40 in

---

[15]*See supra* FN. 6.

2003, for which nonexempt store employees were not eligible. (Doc. No. 169, Debrocq Decl. ¶ 5.) A review of these calculations and comparisons reveal a significant difference in wages between Cooper and her nonexempt employees.

e. **Frequency With Which the Employee Exercises Discretionary Power**

Cooper exercised discretion virtually every day and all day long in her capacity as store manager. Cooper decided how to adjust the schedule (*Id*. at 167); how to assign and apportion work among herself and her employees (*Id*. at 203); how to accomplish tasks (*Id*. at 127-28); how to manage a payroll budget (*Id*. at 132); how to manage controllable shrink issues (*Id*. at 99-100, 231); how to display merchandise (*Id*. at 264); and, while at the same time, satisfying customers. Although Cooper alleges that she was required to perform certain nonexempt work, she conceded that she had the flexibility to choose what tasks to perform herself and what tasks to delegate to her employees. Thus, the fact that she chose to perform that work does not defeat the exemption since Family Dollar did not mandate that she personally perform that work. (*Id*. at 203.) All of these tasks involved "discretionary acts inherent in being responsible for the successful operation of a retail store." *Grace*, 637 F.3d at 517. Moreover, the fact that Family Dollar maintains certain policies and procedures for the sake of consistency does not mean that Cooper failed to exercise discretion in enforcing these policies and procedures.[16]

---

[16]*See Murray v. Stuckey's, Inc.*, 50 F.3d 564, 570 (8th Cir. 1995) (standardized procedures and policies may circumscribe but do not eliminate discretion of on-site store manager); *Thomas v. Speedway SuperAmerica LLC*, 506 F.3d 496, 507 (6th Cir. 2007) (manager still exercised discretion on a daily basis even though store had standardized operating procedures); *Grace v. Family Dollar Stores, Inc.*, 637 F.3d 508, 516 (4th Cir. 2011) (manager still exercised discretion even though she was subject to company policies and the company template for a store in the Family Dollar chain).

### 3. Customary and Regular Direction of the Work of Two or More other Employees

To qualify as an executive, the regulations require an employee's primary duty to include the "customary and regular direction of the work of two or more other employees." 29 C.F.R. § 541.1(f) (pre-2004). The pre-2004 regulations do not further define the terms "customary and regular." Cooper, on a daily basis, directed the work of her employees. (Doc. No. 362, Cooper Dep. at 238.) The regulations also require the employee direct the work of "two full-time employees or the equivalent." 29 C.F.R. § 541.105(a)(pre-2004). The DOL has adopted an "80-hour rule" which generally requires an exempt executive to direct a total of eighty employee-hours of work each week. *See* 69 Fed.Reg. 22135; *see also Grace*, 637 F.3d at 513 (holding that Grace customarily and regularly directed the work of two or more other employees who worked eighty or more hours per week during 89.23% of the weeks that she was store manager). Family Dollar's records reflect that Cooper managed at least 80 employee hours 100% of the time she was a store manager during the relevant time period. (Doc. No. 362, Debrocq Decl. ¶ 6.) Therefore, Cooper customarily and regularly directed the work of at least two full-time employees and satisfies this factor.

### CONCLUSION

Looking at the facts in the light most favorable to the non-moving party, the Court finds that Family Dollar has satisfied the DOL regulations qualifying Cooper as an exempt executive under the FLSA. No reasonable jury could find otherwise. Therefore, Family Dollar is entitled to judgment as a matter of law.

**ORDER**

IT IS ORDERED that:

(1) Defendant's Motion for Summary Judgment (Doc No. 361) is GRANTED and Plaintiff Angela Cooper is dismissed;

(2) The Court finds that there is no just reason to delay finding of final judgment for Family Dollar with regard to Plaintiff Angela Cooper's claim against Family Dollar;

(3) The Clerk is directed to enter final judgment, pursuant to Rule 54(b), for Family Dollar with regard to Plaintiff Angela Cooper.

**SO ORDERED.**

Signed: February 27, 2012

Graham C. Mullen
United States District Judge