IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:08 MD 1932

| | |
|---|---|
| IRENE GRACE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| FAMILY DOLLAR STORES, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER** is before the Court on Defendant's Motion for Summary Judgment and Memorandum in Support (Doc. No. 313); Plaintiff's Response in Opposition (Doc. No. 420); and Defendant's Reply (Doc. No. 479).[1] For the reasons set forth below, the motion is **GRANTED**.

## FACTS [2]

Plaintiff, Phillis Fancher, began working for Family Dollar in May 2000 as a clerk. (Doc. No. 314, Fancher Dep. at 11, 21.) After a short stint as an assistant manager, Fancher

---

[1] Plaintiff's case comes before this Court as part of a proposed collective action. On September 6, 2007, this Court granted Defendant's Motion to Strike Collective Action Allegations. (3:06cv306, Doc. No. 78). On July 9, 2009, this Court granted Defendant's Motion for Summary Judgment as to the named Plaintiff in this case, Irene Grace, and dismissed her from this action. (3:08md1932, Doc. No. 172). Ms. Grace appealed both orders to the Fourth Circuit Court of Appeals. The Court of Appeals held that Ms. Grace was a manager, and therefore affirmed this Court's judgment in favor of Family Dollar Stores, Inc. *See Grace v. Family Dollar Stores Inc.*, 637 F.3d 508 (4th Cir. 2011).

[2] The Court denies Fancher's request to invoke the doctrine of offensive collateral estoppel. To the extent Plaintiff makes any factual assertions based on the decision in *Morgan v. Family Dollar Stores, Inc.*, the Court will disregard such assertions. The Court will also disregard exhibits based on the *Morgan* case. In *Grace v. Family Dollar Stores, Inc.*, the Fourth Circuit Court of Appeals rejected Ms. Grace's argument that the facts in *Morgan* and in her case were identical; similarly, this Court finds no basis to support the assumption that the facts between Plaintiff's case and the *Morgan* case are the same. *See Grace v. Family Dollar Stores, Inc.*, 637 F.3d 508 (4th Cir. 2011) (finding that potential variations between store size, store inventory, and the individual responsibilities of managers, as well as differences in managers' performance of exempt and nonexempt duties and the supervisory activity of district managers, precluded Plaintiff's argument that the facts in *Morgan* and in her case were identical).

briefly filled in as a store manager between September 22, 2002 and October 19, 2002. (*Id.*) Family Dollar promoted Fancher to store manager on a permanent basis on January 12, 2003.[3] (*Id.* at 24.) From September 22, 2002 to October 19, 2002, Fancher was paid a salary of approximately $475 per week. (Doc. No. 784, Debrocq Decl. ¶ 5.)[4] From January 12, 2003 to May 18, 2003, she was paid a salary of approximately $500 per week. (*Id.*) On May 18, 2003, she received a pay increase to $505 per week, which she received throughout the remainder of her employment with Family Dollar in December 2003. (*Id.*) Fancher earned bonuses of $327.80 in July 2003 and $61.48 in August 2003, for which nonexempt store employees were not eligible. (*Id.* at ¶ 6.) Fancher worked an average of 60.4 hours per week. (*Id.* at ¶ 7.)

The record shows that the hourly employees working at Fancher's store, even using the highest wage for those employees whose wages changed over time, received an average hourly wage of $6.37 per hour. (*Id.* at ¶ 9.) Family Dollar's records reflect that Fancher managed at least eighty employee-hours of work 48% of the time each week she was a store manager during the relevant time period. (*Id.* at ¶ 8.) However, Fancher admitted that her payroll budget was sufficient to staff two full-time employees and herself during her tenure as store manager at Family Dollar. (Doc. No. 314, Fancher Dep. at 84-86, 97, 182, 212.) Fancher attributes the shortage of employee hours to her difficulty in hiring qualified candidates. (*Id.* at 86, 113-114, 164-65.)

---

[3] Fancher filed her opt-in consent form on July 26, 2004. However, since Fancher did not work as a store manager until September 22, 2002 (and did not work as a permanent store manager until January 12, 2003), the longest possible relevant time period for Fancher's claims in this action ranges from September 22, 2002 to her resignation on December 27, 2003.

[4] The court is aware that Plaintiff objects to the admissibility of Debrocq's declaration. An Order, however, dated August 10, 2011, by the undersigned, concluded that the declarations of Family Dollar employees regarding the "two full time employees or their equivalent" and "significant salary difference" prongs of the executive exemption were admissible. Plaintiffs failed to file a response to Family Dollar's supplemental briefing on this issue despite being given 30 days to do so by the court. (Doc. No. 566).

Fancher contends that she devoted 85% of her time to performing nonexempt work, but admitted that she was also responsible for the overall management of the store for the entire time she was in the store. (*Id*. at 58, 127, 195-96, 207-08.) For example, while stocking shelves, Fancher would keep an eye out for shoplifters and also supervise her employees as they performed their duties. (*Id*. at 59-60.) Moreover, Fancher testified that she evaluated her employees as she worked alongside them. (*Id*. at 117.) Fancher's managerial tasks included training employees (*Id*. at 38-39, 64-65, 70, 100-101), completing the store's financial paperwork (*Id*. at 47, 60-61, 70-73, 138-40), apportioning hours to employees (*Id*. at 62-63, 102-103, 106, 166), and disciplining employees (*Id*. at 116-17). Fancher also decided how to complete the performance reviews of her employees (*Id*. at 115-117); how to adjust the schedule (*Id*. at 106-09); how to resolve employee complaints (*Id*. at 134-35); how to arrange and decorate certain seasonal displays (*Id*. at 145-46); and how to apportion work among herself and her employees (*Id*. at 55, 126, 129-30).

As store manager, Fancher reported to a district manager. Fancher testified that her district manager visited her store once per month. (*Id*. at 49-50, 181.) Fancher also testified that she was in daily contact with her district manager by telephone and email. (*Id*. at 51-55.) Moreover, Fancher's district manager was responsible for approximately nineteen to twenty-four stores. (Doc. No. 314, Debrocq Decl. ¶ 4.) Fancher's district manager's territory spanned approximately one hundred miles in Texas. (*Id*.)

## STANDARD OF REVIEW

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party always

bears the initial burden of "informing the district court of the basis for its motion," and identifying the matter "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Once the movant has met the initial burden, "the non-moving party 'may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.'" *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)). This is particularly important where the nonmoving party bears the burden of proof. *Hughes*, 48 F.3d at 1381. A genuine issue for trial exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249-50. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict.

When considering summary judgment motions, courts must view the facts in the light most favorable to the party opposing the motion. *Austin v. Clark Equip. Co.*, 48 F.3d 833, 835 (4th Cir. 1995). In reviewing the whole record, the Court must remember to "disregard all evidence favorable to the moving party that the jury is not required to believe" and therefore only "give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that [the] evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000).

## **DISCUSSION**

The Fair Labor Standards Act ("FLSA") requires that an employee receive overtime pay if he or she works more than forty hours a week. 29 U.S.C. § 207(a)(1). The FLSA, however,

exempts from this requirement "any employee employed in a bona fide executive…capacity." 29 U.S.C. § 213(a)(1). The Department of Labor ("DOL") has promulgated regulations which further describe and interpret the scope of this exemption. Due to the relevant time period of Fancher's claims, the only DOL regulations that apply to this analysis are the regulations that were in effect prior to August 23, 2004 (the "pre-2004 regulations").

The pre-2004 regulations set forth both a "short" and "long" test for determining whether an employee qualifies as an exempt executive. *See* 29 C.F.R. § 541.1 (pre-2004). The short test is used for employees who are compensated on a salary basis at a rate of at least $250 per week.[5] 29 C.F.R. § 541.1(f) (pre-2004). Under the short test, an employee qualifies as an executive if (1) her primary duty consists of the management of the enterprise and (2) includes the customary and regular direction of the work of two or more other employees. 29 C.F.R. § 541.119(a) (pre-2004); 29 C.F.R. § 541.1(f) (pre-2004).

1. **Family Dollar Satisfies the Salary Basis Test**

From September 22, 2002 to October 19, 2002, Fancher was paid a salary of approximately $475 per week. (Doc. No. 784, Debrocq Decl. ¶ 5.) From January 12, 2003 to May 18, 2003, she was paid a salary of approximately $500 per week. (*Id*.) On May 18, 2003, she received a pay increase to $505 per week, which she received throughout the remainder of her employment with Family Dollar in December 2003. (*Id*.) Therefore, Family Dollar satisfies the salary basis test under the pre-2004 regulations, which require a weekly salary of not less than $250 per week under the short test. 29 C.F.R. § 541.1(f) (pre-2004).

---

[5] The "long" test found in the pre-2004 regulations includes six factors. Section 541.1(f) states clearly, however, that an employee who is compensated for her services on a salary basis of at least $250 per week and who satisfies the tests promulgated by sections 541.1(a)-(b) shall be deemed to meet all other requirements under that section. 29 C.F.R. § 541.1(f) (pre-2004).

### 2. Family Dollar Satisfies the Primary Duty Test

The regulations provide guidance as to how an employee's primary duty may be determined. Both sets of regulations instruct that the determination should be "based on all the facts in a particular case." 29 C.F.R. § 541.103 (pre-2004). The pre-2004 regulations set forth five factors to consider in this analysis: (1) the amount of time spent in the performance of managerial duties; (2) the relative importance of the managerial duties as compared with other types of duties; (3) the frequency with which the employee exercises discretionary powers; (4) the relative freedom from supervision; and (5) the relationship between the manager's salary and the wages paid to other employees for the kind of nonexempt work performed by the supervisor. 29 C.F.R. § 541.103 (pre-2004).

Upon consideration of the five factors identified for determining whether Fancher's primary duty was management, the Court concludes that the factors are readily satisfied.

#### a. The Amount of Time Spent in Performance of Managerial Duties

Fancher cannot overcome the exemption by claiming that she spent the majority of her time performing non-managerial duties. The regulations state that an employee who spends more than fifty percent of his or her time performing managerial work will typically satisfy the primary duty requirement. 29 C.F.R. § 541.700(b); 29 C.F.R. § 541.103 (pre-2004). The regulations, however, also emphasize that "time alone…is not the sole test" and that exempt executives are not required to spend more than fifty percent of their time performing exempt work if other

factors support the conclusion that management is their primary duty.[6] *Id; see also Grace,* 637 F.3d 508, 515 (4th Cir. 2011).

The regulations provide an almost identical list of "management" activities, which include, but are not limited to:

> Interviewing, selecting and training of employees; setting and adjusting their rates of pay and hours of work; directing their work; maintaining their production or sales records for use in supervision or control; appraising their productivity and efficiency for the purpose of recommending promotions or other changes in their status; handling their complaints and grievances and disciplining them when necessary; planning the work; determining the techniques to be used; apportioning the work among the workers; determining the type of materials, supplies, machinery or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety of the [employees] and the property.[7]

29 C.F.R. § 541.102(b) (pre-2004). Fancher explicitly testified that she regularly performed almost every one of these management activities as a Family Dollar store manager.[8]

---

[6] The Court disagrees with Fancher's contention that failure to meet the 50 percent threshold means that an employee fails to satisfy the primary duty requirement. The Fourth Circuit clarified the application of the 50 percent "rule of thumb" by stating that, "[i]t is clear from this language that primary duty is meant to be assessed by the totality of the circumstances." *Counts v. S.C. Elec. & Gas Co.*, 317 F.3d 453, 456 (4th Cir. 2003).

[7] An employee need not perform all management duties listed in the regulations, or even regularly perform such duties, in order to be considered an exempt executive. *See Aguirre v. SBC Communs., Inc.*, 2007 U.S. Dist. Lexis 72666 at * 63-62 (S.D. Tex. Sept. 30, 2007) (finding that "plaintiffs' 'primary duty' for purposes of the executive exemption was 'management,' despite the fact that the plaintiffs did not perform other 'managerial' duties listed in Section 541.102.").

[8] The Court disagrees with Fancher's argument that the use of a "team concept" in running her store creates a question of fact as to whether her primary duty was management. The fact that the assistant managers could perform the same tasks as Fancher does not render her tasks and duties any less managerial. Courts have consistently held that the fact that a non-exempt employee may sometimes perform exempt duties does not make these duties any less exempt/managerial. *See Baldwin v. Trailer Inns, Inc.*, 266 F.3d 1104, 1115 (9th Cir. 2001) ("[t]hat the [non-exempt] assistant managers may have performed some managerial tasks does not render the tasks non-exempt").

Courts have specifically addressed the concept of concurrent duties.[9] Concurrent performance, or multi-tasking, of exempt and nonexempt work is explicitly recognized as a managerial duty by the FLSA. *See* 29 U.S.C. § 213(a)(1).[10] "It is misleading simply to add up the time that [Plaintiff] spent unloading trucks, stocking inventory, running cash registers, or sweeping floors and conclude thereby that she was merely a clerk and not a manager." *Grace,* 637 F.3d at 516.

In *Grace*, the Fourth Circuit found that the plaintiff "was performing management duties whenever she was in the store, even though she also devoted most of her time [99%] to doing the mundane physical activities necessary for its successful operation." *Id.* at 517. Similar to the plaintiff in *Grace*, Fancher contends that she devoted 85% of her time to performing nonexempt work, but she was also responsible for the overall management of the store for the entire time she was in the store. (Doc. No. 314, Fancher Dep. at 58, 127, 195-96, 207-08.) For example, while stocking shelves, Fancher would keep an eye out for shoplifters and also supervise her employees as they performed their duties. (*Id*. at 59-60.) Moreover, Fancher testified that she evaluated her employees as she worked alongside them. (*Id*. at 117.) While Fancher argues that management was not her primary duty because she spent a majority of her time engaged in manual labor, the regulations and the court in *Grace* clarify that performance of these duties, in conjunction with

---

[9] *See Jones v. Virginia Oil Co., Inc.*, 69 Fed. Appx. 633, 637 (4th Cir. 2003) (manager exempt where she spent 75 to 80 percent of her time carrying out non-exempt tasks); *Murray v. Stuckey's, Inc.*, 939 F.2d 614, 618-20 (8th Cir. 1991) (*Murray I*) (store managers met the primary duty test even though 65-95 percent of managers' time was spent on non-managerial duties).

[10] The FLSA recognizes the nature of a retail business and states that "an employee of a retail or service establishment shall not be excluded from the definition of an employee employed in a bona fide executive or administrative capacity because of the number of hours in his work week which he devotes to activities not directly or closely related to the performance of executive or administrative activities." 29 U.S.C. § 213(a)(1).

overall supervision and management of the store, is not contrary to the application of the exemption.

                **b.**        **The Relative Importance of the Managerial Duties as Compared with Other Types of Duties**

Fancher's managerial duties were more important than the other duties she performed because they were critical to the operation of the store. In *Grace*, the plaintiff's managerial tasks, which included filling out paperwork, addressing customer complaints, working with employees on their schedules, and collecting cash, were critical to the operation of the store, as there was "*no one else at the site to direct these actions*." *Grace*, 637 F.3d at 517 (emphasis in the original). Similarly, Fancher's managerial tasks, which included training employees (Doc. No. 314, Fancher Dep. at 38-39, 64-65, 70, 100-101), completing the store's financial paperwork (*Id*. at 47, 60-61, 70-73, 138-40), apportioning hours to employees (*Id*. at 62-63, 102-103, 106, 166), and disciplining employees (*Id*. at 116-17) were critical to the operation of the store. While Fancher argues that she was under the direct supervision of the district manager, she nonetheless stated that her district manager, during the relevant time period, came to the store one a month – not enough time to direct the managerial tasks. (*Id*. at 49-50, 181.) Therefore, the store could not have operated successfully without the managerial functions performed by Fancher.

                **c.**        **Frequency With Which the Employee Exercises Discretionary Power**

Fancher exercised discretion virtually every day and all day long in her capacity as store manager. Fancher decided how to complete the performance reviews of her employees (*Id*. at 115-117); how to adjust the schedule (*Id*. at 106-09); how to resolve employee complaints (*Id*. at 134-35); how to arrange and decorate certain seasonal displays (*Id*. at 145-46); how to apportion work among herself and her employees (*Id*. at 55, 126, 129-30); and, while at the same time,

satisfying the needs of her customers. All of these tasks involved "discretionary acts inherent in being responsible for the successful operation of a retail store." *Grace*, 637 F.3d at 517. Moreover, although Family Dollar maintains certain policies and procedures for the sake of consistency, Fancher exercised discretion in deciding how to execute these policies and procedures.[11]

### d. Relative Freedom from Supervision

Relative freedom from supervision does not demand complete freedom from supervision. In *Grace*, the plaintiff's supervising district manager typically visited the store once every two to three weeks.[12] *Grace*, 637 F.3d at 517. The *Grace* court also noted, apart from the district manager's supervision, which was not uncharacteristic for any retail operation, the district manager was not a "micro-manager who constantly was looking over [the manager's] shoulder." *Id*. "The supervision of seventeen stores would hardly permit [the district manager] to micro-manage all of them." *Id*. Moreover, courts have found that an employee's "frequent, even daily exchange of e-mail and phone communications with her district manager" did not equate to exacting supervision. *Thomas*, 506 F.3d at 508.

Fancher was relatively free from supervision during the relevant time period. Fancher testified that her district manager visited her store once per month. (*Id*. at 49-50, 181.) Fancher also testified that she was in daily contact with her district manager by telephone and email. (*Id*.

---

[11] *See Murray v. Stuckey's, Inc.*, 50 F.3d 564, 570 (8th Cir. 1995) (*Murray II*) (standardized procedures and policies may circumscribe but do not eliminate discretion of on-srite store managers); *Thomas v. Speedway SuperAmerica LLC*, 506 F.3d, 496, 507 (6th Cir. 2007) (manager still exercised discretion on a daily basis even though store had standardized operating procedures); *Grace*, 637 F.3d 508, 516 (manager still exercised discretion even though she was subject to company policies and the company template for a store in the Family Dollar chain).

[12] *See also Jones*, 69 Fed.Appx. at 635-38 (employee was relatively free from supervision where district manager visited one to four times per week); *Thomas*, 506 F.3d at 449, 507 (plaintiff was relatively free from supervision where district manager visited once or twice per week).

at 51-55.) The infrequency of the district manager's visits, paired with Fancher's frequent exchange of email and phone communications with her district manager, does not equate to exacting supervision. *See Thomas*, 506 F.3d at 508.

Moreover, Fancher's district manager was responsible for approximately nineteen to twenty-four stores. (Doc. No. 314, Debrocq Decl. ¶ 4.) Fancher's district manager's territory spanned approximately one hundred miles in Texas. (*Id*.) The large territory and number of stores the district manager was responsible for supervising did not allow him to micro-manage each individual store. *See Grace*, 637 F.3d at 517.

    e.  **Relationship Between Salary and Wages Paid to Other Employees for the Kind of Nonexempt Work Performed by the Supervisor**

To determine the relationship between a managerial salary and wages paid to nonmanagerial employees, the Fourth Circuit considered, first, whether the manager earned more, in absolute terms, than nonmanagerial employees and, second, whether the manager was a "profit center." *Grace*, 637 F.3d at 517. This second consideration asks whether the manager had the ability to influence the amount of her compensation. *Id.*

As to the first consideration, Fancher earned significantly higher amounts on an hourly basis than nonexempt workers. The record shows that the hourly employees working at Fancher's store, even using the highest wage for those employees whose wages changed over time, received an average hourly wage of $6.37 per hour. (Doc. No. 314, Debrocq Decl. ¶ 9.) In comparison, Fancher worked an average of 60.4 hours per week. (*Id.* at ¶ 7.) Fancher earned compensation which, when computed on an hourly basis, averaged $7.86 per hour ($475 per week), $8.28 per hour ($500 per week), and $8.36 per hour ($505 per week).

As to the second consideration, Fancher was a "profit center;" her performance evaluation, salary, and bonus depended on her store's profitability. *See Grace*, 637 F.3d at 517. Fancher earned bonuses of $327.80 in July 2003 and $61.48 in August 2003, for which nonexempt store employees were not eligible. (Doc. No. 314, Debrocq Decl. ¶ 6.) A review of these calculations and comparisons reveal a significant difference in wages between Fancher and her nonexempt employees.

### 3. Customary and Regular Direction of the Work of Two or More other Employees

To qualify as an executive, the regulations require an employee's primary duty to include the "customary and regular direction of the work of two or more other employees." 29 C.F.R. § 541.119(a) (pre-2004). The pre-2004 regulations do not further define the terms "customary and regular." The DOL has adopted an "80-hour rule" which generally requires an exempt executive to direct a total of eighty employee-hours of work each week. *See* 69 Fed.Reg. 22135; *see also Grace*, 637 F.3d at 513 (holding that Grace customarily and regularly directed the work of two or more other employees who worked eighty or more hours per week during 89.23% of the weeks that she was store manager). In *Murray II*, the Eight Circuit held that the 80-hour rule is not a rigid standard, and specifically rejected the DOL's justification for this rule in the case of store managers of certain retail establishments. 50 F.3d at 569.

The DOL and courts have specifically recognized that "circumstances might justify lower standards." *Id.*; see also DOL Field Operations Handbook, Section22c00 ("Unusual circumstances might occasionally justify lower standards . . . The determination as to whether an employee customarily and regularly supervises other employees within the meaning of Reg. 541.1(b) depends on all the facts and circumstances"). For example, the *Murray II* court held that

12

the fact that certain store managers who schedule fewer employees during the winter, when business was slow, constituted "unusual circumstances" that did not defeat the exemption. 50 F.3d 564. Other courts have found that an employee's failure to perform certain duties in accordance with an employer's reasonable expectations may qualify as the type of "unusual circumstances" for which the DOL specifically provides. *See e.g., Marx v. Friendly Ice Cream Corp.*, 882 A.2d 374, 386 (N.J. Super Ct. 2005) (the court cautioned that "mangers may schedule their staff time poorly, through inexperience, incompetence or design, thereby creating the necessity that justifies their own performance of nonexempt work and receipt of overtime pay"); *Golden v. Merrill Lynch & Co.*, Inc., 2007 WL 4299443 at * 15 (S.D.N.Y. Dec. 6, 2007) ("compliance with the [New Jersey regulation's] quantitative requirement can be established as a matter of law based on the 'realistic requirements' of Plaintiff's job").

Family Dollar's records reflect that Fancher managed at least eighty employee-hours of work 48% of the time each week she was a store manager during the relevant time period. (Doc. No. 314, Debrocq Decl. ¶ 8.) However, Fancher admitted that her payroll budget was sufficient to staff two full-time employees and herself during her tenure as store manager at Family Dollar. (Doc. No. 314, Fancher Dep. at 84-86, 97, 182, 212.) Fancher attributes the shortage of employee hours to her difficulty in hiring qualified candidates. (*Id*. at 86, 113-114, 164-65.) Family Dollar's payroll budget allowed for flexibility to hire at least two full time employees and Family Dollar took this step to ensure that Fancher's store was appropriately staffed. The fact that Fancher did not meet Family Dollar's expectation constitutes an unusual circumstance. Even though Fancher did not meet a specific quantitative requirement set forth by the regulations, unusual circumstances existed, such that this requirement may be satisfied based on the realistic requirements of her job.

## CONCLUSION

Looking at the facts in the light most favorable to the non-moving party, the Court finds that Family Dollar has satisfied the DOL regulations qualifying Fancher as an exempt executive under the FLSA.

## ORDER

IT IS ORDERED that:

(1) Defendant's Motion for Summary Judgment (Doc No. 313) is GRANTED and Plaintiff Phillis Fancher is dismissed;

(2) The Court finds that there is no just reason to delay finding of final judgment for Family Dollar with regard to Plaintiff Phillis Fancher's claim against Family Dollar;

(3) The Clerk is directed to enter final judgment, pursuant to Rule 54(b), for Family Dollar with regard to Plaintiff Phillis Fancher.

**SO ORDERED.**

Signed: August 3, 2012

Graham C. Mullen
United States District Judge