IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:08 MD 1932

| | |
|---|---|
| IRENE GRACE, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>FAMILY DOLLAR STORES, INC., )<br>)<br>Defendant. )<br>_____ ) | ORDER |

**THIS MATTER** is before the Court on Defendant's Motion for Summary Judgment and Memorandum in Support (Doc. No. 327); Plaintiff's Response to Defendant's Motion for Summary Judgement (Doc. No. 447); Defendant's Reply (Doc. No. 489); and Defendant's Supplements to its Motions for Summary Judgement (Doc. No. 784).[1] For the reasons set forth below, the motion is **GRANTED**.

**FACTS** [2]

---

[1] Plaintiff's case comes before this Court as part of a proposed collective action. On September 6, 2007, this Court granted Defendant's Motion to Strike Collective Action Allegations. (3:06cv306, Doc. No. 78). On July 9, 2009, this Court granted Defendant's Motion for Summary Judgment as to the named Plaintiff in this case, Irene Grace, and dismissed her from this action. (3:08md1932, Doc. No. 172). Ms. Grace appealed both orders to the Fourth Circuit Court of Appeals. The Court of Appeals held that Ms. Grace was a manager, and therefore affirmed this Court's judgment in favor of Family Dollar Stores, Inc. *See Grace v. Family Dollar Stores Inc.*, 637 F.3d 508 (4th Cir. 2011).

[2] To the extent Plaintiff makes any factual assertions based on the decision in *Morgan v. Family Dollar Stores, Inc.*, the Court will disregard such assertions. The Court will also disregard exhibits based on the *Morgan* case. In *Grace v. Family Dollar Stores, Inc.*, the Fourth Circuit Court of Appeals rejected Ms. Grace's argument that the facts in *Morgan* and in her case were identical; similarly, this Court finds no basis to support the assumption that the facts between Plaintiff's case and the *Morgan* case are the same. *See Grace,* 637 F.3d 508 (finding that potential variations between store size, store inventory, and the individual responsibilities of managers, as well as differences in managers' performance of exempt and nonexempt duties and the supervisory activity of district managers, precluded Plaintiff's argument that the facts in *Morgan* and in her case were identical).

Plaintiff, Arlene Atkins, began working for Family Dollar in June 2001 as a store manager trainee.[3] (Doc. No. 328, Atkins Dep. at 58.)[4] On September 24, 2001, Atkins was promoted to a store manager position and was paid a salary of $500 per week. (Doc. No. 784, Debrocq Decl. ¶ 3.)[5] On August 11, 2002, Atkins received a pay increase to $515 per week, which she received throughout the remainder of her employment with Family Dollar. (*Id.*) Atkins earned a bonus of $51.58 in December 2001, and a bonus of $1,567.06 in October 2002, for which nonexempt store employees were not eligible. (*Id.* at ¶ 4.) Atkins worked an average of 68.14 hours per week. (*Id.* at ¶ 5.)

The record shows that the hourly employees working at Atkins' stores, even using the highest wage for those employees whose wages changed over time, received an average hourly wage of $5.99 per hour. (Doc. No. 328, Debrocq Decl. ¶ 8.) Atkins testified that, on a daily basis, she directed the work of her employees. (Doc. No. 328, Atkins Dep. at 39, 205, 222.) Family Dollar's records reflect that Atkins managed at least 80 employee hours 95.95% of the

---

[3] Atkins filed her opt-in consent form on September 24, 2004. Accordingly, September 24, 2001, or three years prior to her opt-in date, through the end of her employment in February 2003, represents the longest possible relevant time period for Atkins' claims in this action.

[4] The Court notes that Plaintiff's declaration was prepared after Plaintiff's deposition and on many occasions directly contradicts her sworn testimony. Plaintiff cannot create a dispute about a fact contained in deposition testimony by referring to a subsequent affidavit of the deponent contradicting the deponent's prior testimony, for "it is well established that a genuine issue of fact is not created where the only issue of fact is to determine which of the two conflicting versions of a party's testimony is correct." *Erwin v. United States*, 591 F.3d 313, 325 n.7 (4th Cir. 2010) (internal quotation marks and alterations omitted) (quoting *Halperin v. Abacus Tec. Corp.*, 128 F.3d 191, 198 (4th Cir. 1997); *see also Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 341 (4th Cir. 2001); *Rohrbough v. Wyeth Labs.*, 916 F.2d 970, 975-76 (4th Cir. 1990); *Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984). To the extent that Plaintiff's deposition testimony and later affidavit are inconsistent, the Court will disregard the affidavit and rely on the testimony she gave in her deposition, where she was examined at length about her responsibilities as a manager of a Family Dollar store. *See Grace*, 637 F.3d at 513.

[5] The Court is aware that Plaintiff objects to the admissibility of Debrocq's declaration. An Order, however, dated August 10, 2011, by the undersigned, concluded that the declarations of Family Dollar employees regarding the "two full time employees or their equivalent" and "significant salary difference" prongs of the executive exemption were admissible. Plaintiffs failed to file a response to Family Dollar's supplemental briefing on this issue despite being given 30 days to do so by the court. (Doc. No. 566.)

time she was a store manager during the relevant time period. (Doc. No. 328, Debrocq Decl. ¶ 7.)

Atkins contends that she devoted more than 50% of her time performing nonexempt work,[6] but admitted that she was also responsible for the overall management of the store for the entire time she was in the store. (Doc. No. 328, Atkins Dep. at 215-16, 222.) For example, Atkins was still responsible for her managerial duties, such as handling customer complaints and watching out for theft, even when performing nonexempt work. (*Id*. at 71, 82, 257-58.) Atkins testified that if she was working in a different area of the store or performing manual tasks, then she would stop what she was doing to address a customer who needed to speak with her. (*Id.* at 215). Additionally, Atkins implemented a "walkie-talkie" system which allowed the cashiers to easily reach her with customer issues. (*Id*. at 216.)

Atkins' managerial tasks included training employees (Doc. No. 328, Atkins Dep. at 82, 211), completing the store's financial paperwork (*Id*. at 199-203), apportioning hours to employees (*Id*. at 126), and disciplining employees (*Id*. at 157). Atkins also decided how to complete performance reviews for her employees (*Id*. at 144-45); how to adjust the schedule (*Id*. at 126); how to handle customer complaints and reduce theft (*Id*. at 71, 95, 215); how to apportion work among herself and her employees (*Id*. at 205); how to review employment applications and select candidates for interviews (*Id*. at 100, 103-05, 108-09); and what various types of merchandise to order (*Id*. at 195).

---

[6]"Rather than submitting admissible evidence on this element.... Defendant simply asks this Court to assume that Atkins performed managerial duties more than 50% of the time, without anything more." (Doc. No. 447, Pl. Response at 14.)

As store manager, Atkins reported to a district manager. Atkins testified that her district manager would typically visit her store two to three times per month. (*Id.* at 51.) Atkins further testified that she did not speak with her district manager every day by telephone. (*Id.* at 52.) Moreover, Atkins reported to the same district manager over the course of her career at Family Dollar, despite the fact that she managed three different stores. (Doc. No. 328, DeBrocq Decl. ¶ 5). Between September 24, 2001 and October 2001, Atkins' district manger was responsible for approximately twenty stores. (*Id.* at ¶ 4.) During this time period the district spanned 246 miles. (*Id.*) Between October 2001 and February 2003, her district manager was responsible for twenty-three stores. (*Id.*) During this time period the district spanned 124 miles. (*Id.*)

## **STANDARD OF REVIEW**

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party always bears the initial burden of "informing the district court of the basis for its motion," and identifying the matter "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Once the movant has met the initial burden, "the non-moving party 'may not rest upon mere allegation or denials of her pleading, but must set forth specific facts showing that there is a genuine issue for trial.'" *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)). This is particularly important where the nonmoving party bears the burden of proof. *Hughes*, 48 F.3d at 1381. A genuine issue for trial exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249-50.

The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict.

When considering summary judgment motions, courts must view the facts in the light most favorable to the party opposing the motion. *Austin v. Clark Equip. Co.*, 48 F.3d 833, 835 (4th Cir. 1995). In reviewing the whole record, the Court must remember to "disregard all evidence favorable to the moving party that the jury is not required to believe" and therefore only "give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that [the] evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000).

## DISCUSSION

The Fair Labor Standards Act ("FLSA") requires that an employee receive overtime pay if he or she works more than forty hours a week. 29 U.S.C. § 207(a)(1). The FLSA, however, exempts from this requirement "any employee employed in a bona fide executive…capacity." 29 U.S.C. § 213(a)(1). The Department of Labor ("DOL") has promulgated regulations which further describe and interpret the scope of this exemption. Due to the relevant time period covering Atkins' claims, only the DOL regulations in effect prior to August 23, 2004 (the "pre-2004 regulations") apply to this analysis.[7]

The pre-2004 regulations set forth both a "short" and "long" test for determining whether an employee qualifies as an exempt executive. *See* 29 C.F.R. § 541.1 (pre-2004). The short test is

---

[7] The current regulations went into effect on August 23, 2004 and Atkins' claim covers the period of time between September 24, 2001 and February 2003. Therefore, the regulations in effect prior to August 23, 2004 (the pre-2004 regulations) are the only regulations this Court will follow. Consequently, the current regulations are inapplicable.

used for employees who are compensated on a salary basis at a rate of at least $250 per week.[8] 29 C.F.R. § 541.1(f) (pre-2004). Under the short test, an employee qualifies as an executive if (1) her primary duty consists of the management of the enterprise and (2) includes the customary and regular direction of the work of two or more other employees. 29 C.F.R. § 541.119(a) (pre-2004); 29 C.F.R. § 541.1(f) (pre-2004).

1. **Family Dollar Satisfies the Salary Basis Test**

As of September 24, 2001, Atkins was paid a salary of approximately $500 per week. (Doc. No. 784, Debrocq Decl. ¶ 3.) On August 11, 2002, Atkins received a pay increase to $515 per week, which she received throughout the remainder of her employment with Family Dollar. (*Id*.) Therefore, Family Dollar satisfies the salary basis test under the pre-2004 regulations, which require a weekly salary of not less than $250 per week under the short test. 29 C.F.R. § 541.1(f) (pre-2004).

2. **Family Dollar Satisfies the Primary Duty Test**

The regulations provide guidance as to how an employee's primary duty may be determined. The regulations instruct that the determination should be "based on all the facts in a particular case." 29 C.F.R. § 541.103 (pre-2004). The pre-2004 regulations set forth five factors to consider in this analysis: (1) the amount of time spent in the performance of managerial duties; (2) the relative importance of the managerial duties as compared with other types of duties; (3) the frequency with which the employee exercises discretionary powers; (4) the relative freedom from supervision; and (5) the relationship between the manager's salary and the wages paid to

---

[8]The "long" test found in the pre-2004 regulations includes six factors. Section 541.1(f) states clearly, however, that an employee who is compensated for her services on a salary basis of at least $250 per week and who satisfies the tests promulgated by sections 541.1(a)-(b) shall be deemed to meet all other requirements under that section. 29 C.F.R. § 541.1(f) (pre-2004).

other employees for the kind of nonexempt work performed by the supervisor. 29 C.F.R. § 541.103 (pre-2004).

Upon consideration of the five factors identified for determining whether Atkins' primary duty was management, the Court concludes that the factors are readily satisfied.

### a.  The Amount of Time Spent in Performance of Managerial Duties

Atkins cannot overcome the exemption by claiming that she spent the majority of her time performing non-managerial duties. The regulations state that an employee who spends more than fifty percent of his or her time performing managerial work will typically satisfy the primary duty requirement. 29 C.F.R. § 541.700(b); 29 C.F.R. § 541.103 (pre-2004). The regulations, however, also emphasize that "time alone…is not the sole test" and that exempt executives are not required to spend more than fifty percent of their time performing exempt work if other factors support the conclusion that management is their primary duty.[9] *Id; see also Grace,* 637 F.3d at 515.

The pre-2004 regulations provide a list of "management" activities, which include but are not limited to:

> Interviewing, selecting and training of employees; setting and adjusting their rates of pay and hours of work; directing their work; maintaining their production or sales records for use in supervision or control; appraising their productivity and efficiency for the purpose of recommending promotions or other changes in their status; handling their complaints and grievances and disciplining them when necessary; planning the work; determining the techniques to be used; apportioning the work among the workers; determining the type of materials, supplies, machinery or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and

---

[9] The Court disagrees with Atkins' contention that failure to meet the 50 percent threshold means that an employee fails to satisfy the primary duty requirement. The Fourth Circuit clarified the application of the 50 percent "rule of thumb" by stating that, "[i]t is clear from this language that primary duty is meant to be assessed by the totality of the circumstances." *Counts v. S.C. Elec. & Gas Co.*, 317 F.3d 453, 456 (4th Cir. 2003). Atkins' reliance on *Clark v. J.M. Benson Co., Inc.*, 789 F.2d 282 (4th Cir. 1986) is misplaced because the court held that it would apply the 50 percent rule to that *specific case*. (emphasis added.) Additionally, Atkins' reliance on *Shockley v. City of Newport News*, 997 F.2d 18 (4th Cir. 1993) is also misplaced because that case involved police officers, not retail store managers, who were not paid on a salary basis - something that is not at issue here.

distribution of materials or merchandise and supplies; providing for the safety of the [employees] and the property.[10]

29 C.F.R. § 541.102(b) (pre-2004).[11] Atkins explicitly testified that she regularly performed almost every one of these management activities as a Family Dollar store manager.[12]

Courts have specifically addressed the concept of concurrent duties.[13] Concurrent performance, or multi-tasking, of exempt and nonexempt work is explicitly recognized as a managerial duty by the FLSA. *See* 29 U.S.C. § 213(a)(1).[14] "It is misleading simply to add up the time that [Plaintiff] spent unloading trucks, stocking inventory, running cash registers, or sweeping floors and conclude thereby that she was merely a clerk and not a manager." *Grace,* 637 F.3d at 516.

---

[10] An employee need not perform all management duties listed in the regulations, or even regularly perform such duties, in order to be considered an exempt executive. *See Aguirre v. SBC Communs., Inc.*, 2007 U.S. Dist. Lexis 72666 at * 63-62 (S.D. Tex. Sept. 30, 2007) (finding that "plaintiffs' 'primary duty' for purposes of the executive exemption was 'management,' despite the fact that the plaintiffs did not perform other 'managerial' duties listed in Section 541.102.").

[11] The current regulations include two additional examples: planning and controlling the budget and monitoring or implementing legal compliance measures. 29 C.F.R. § 541.102. As previously stated, however, the Court is following pre-2004 regulations

[12] The Court disagrees with Atkins' argument that the use of a "team concept" in running her store creates a question of fact as to whether her primary duty was management. The fact that her assistant managers could perform the same tasks as Atkins does not render her tasks and duties any less managerial. Courts have consistently held that the fact that a non-exempt employee may sometimes perform exempt duties does not make these duties any less exempt/managerial. *See Baldwin v. Trailer Inns, Inc.*, 266 F.3d 1104, 1115 (9th Cir. 2001) ("[t]hat the [non-exempt] assistant managers may have performed some managerial tasks does not render the tasks non-exempt").

[13] *See Jones v. Virginia Oil Co., Inc.*, 69 Fed. Appx. 633, 637 (4th Cir. 2003) (manager exempt where she spent 75 to 80 percent of her time carrying out non-exempt tasks); *Murray v. Stuckey's, Inc.*, 939 F.2d 614, 618-20 (8th Cir. 1991) (*Murray I*) (store managers met the primary duty test even though 65-95 percent of managers' time was spent on non-managerial duties).

[14] The FLSA recognizes the nature of a retail business and states that "an employee of a retail or service establishment shall not be excluded from the definition of an employee employed in a bona fide executive or administrative capacity because of the number of hours in his work week which he devotes to activities not directly or closely related to the performance of executive or administrative activities." 29 U.S.C. § 213(a)(1).

8

In *Grace*, the Fourth Circuit found that the plaintiff "was performing management duties whenever she was in the store, even though she also devoted most of her time [99%] to doing the mundane physical activities necessary for its successful operation." *Id.* at 517. Similar to the plaintiff in *Grace*, Atkins contends that she devoted more than 50% of her time performing nonexempt work, however, she was also responsible for the overall management of the store for the entire time she was in the store. (Doc. No. 328, Atkins Dep. at 215-16, 222.) For example, Atkins was still responsible for her managerial duties, such as handling customer complaints and watching out for theft, even when performing nonexempt work. (*Id*. at 71, 82, 257-58.) Atkins testified that if she was working in a different area of the store or performing manual tasks, then she would stop what she was doing to address a customer who needed to speak with her. (*Id.* at 215). Moreover, Atkins implemented a "walkie-talkie" system which allowed her cashiers to easily reach her with pressing customer issues. (*Id*. at 216.) While Atkins argues that management was not her primary duty because she spent a majority of her time engaged in manual labor, the regulations and the court in *Grace* clarify that performance of these duties, in conjunction with overall supervision and management of the store, is not contrary to the application of the exemption.

> b. **The Relative Importance of the Managerial Duties as Compared with Other Types of Duties**

Atkins' managerial duties were more important than the other duties she performed because they were critical to the operation of the store. In *Grace*, the plaintiff's managerial tasks, which included filling out paperwork, addressing customer complaints, working with employees on their schedules, and collecting cash, were critical to the operation of the store, as there was "*no one else at the site to direct these actions*." *Grace*, 637 F.3d at 517 (emphasis in the original).

Similarly, Atkins' managerial tasks, which included training employees (Doc. No. 328, Atkins Dep. at 82, 211), completing the store's financial paperwork (*Id*. at 199-203), apportioning hours to employees (*Id*. at 126), and disciplining employees (*Id*. at 157), were critical to the operation of the store. While Atkins argues that she was under the direct supervision of the district manager, she nonetheless stated that her district manager, during the relevant time period, only came to her store two to three times a month for a short visit – not enough time to direct the managerial tasks. (*Id*. at 50-51, 220.) Therefore, the store could not have operated successfully without the managerial functions performed by Atkins.

    c.  **Frequency With Which the Employee Exercises Discretionary Power**

  Atkins exercised discretion virtually every day and all day long in her capacity as store manager. Atkins decided how to complete the performance reviews for her employees (*Id*. at 144-45); how to adjust the schedule (*Id*. at 126); how to handle customer complaints and reduce theft (*Id*. at 71, 95, 215); how to apportion work among herself and her employees (*Id*. at 205); how to review employment applications and select candidates for interviews (*Id*. at 100, 103-05, 108-09); what various types of merchandise to order (*Id*. at 195); and, while at the same time, satisfying the needs of her customers. All of these tasks involved "discretionary acts inherent in being responsible for the successful operation of a retail store." *Grace*, 637 F.3d at 517. Moreover, although Family Dollar maintains certain policies and procedures for the sake of consistency, Atkins exercised discretion in deciding how to execute these policies and procedures.[15]

---

[15] *See Murray v. Stuckey's, Inc.*, 50 F.3d 564, 570 (8th Cir. 1995) (*Murray II*) (standardized procedures and policies may circumscribe but do not eliminate discretion of on-site store managers); *Thomas v. Speedway SuperAmerica LLC*, 506 F.3d, 496, 507 (6th Cir. 2007) (manager still exercised discretion on a daily basis even though store had standardized operating procedures); *Grace*, 637 F.3d 508, 516 (manager still exercised discretion even though she was subject to company policies and the company template for a store in the Family Dollar chain).

### d. Relative Freedom from Supervision

Relative freedom from supervision does not demand complete freedom from supervision. In *Grace*, the plaintiff's supervising district manager typically visited the store once every two to three weeks.[16] *Grace*, 637 F.3d at 517. The *Grace* court also noted, apart from the district manager's supervision, which was not uncharacteristic for any retail operation, the district manager was not a "micro-manager who constantly was looking over [the manager's] shoulder." *Id*. "The supervision of seventeen stores would hardly permit [the district manager] to micro-manage all of them." *Id*. Moreover, courts have found that an employee's "frequent, even daily exchange of e-mail and phone communications with her district manager" did not equate to exacting supervision. *Thomas*, 506 F.3d at 508.

Atkins was relatively free from supervision during the relevant time period. Atkins testified that her district manager would typically visit the store only two to three times per month. (Doc. No. 328, Atkins Dep. at 51.) In addition, Atkins admitted that she did not speak with her district manager every day by telephone. (*Id.* at 52.) The infrequency of the district manager's visits, paired with the availability for Atkins to communicate by phone with her district manager, does not equate to exacting supervision. *See Thomas*, 506 F.3d at 508.

Moreover, Atkins' district manager remained the same, despite the fact that Atkins managed three different stores over the course of her career at Family Dollar. (Doc. No. 328, DeBrocq Decl. ¶ 5). Family Dollar's records indicate that between September 24, 2001 and October 2001, Atkins' district manger was responsible for approximately twenty stores. (*Id.* at ¶ 4.) During this time period the district spanned 246 miles. (*Id.*) Between October 2001 and

---

[16]*See also Jones*, 69 Fed.Appx. at 635-38 (employee was relatively free from supervision where district manager visited one to four times per week); *Thomas*, 506 F.3d at 449, 507 (plaintiff was relatively free from supervision where district manager visited once or twice per week).

February 2003, her district manager was responsible for twenty-three stores. (*Id.*) During this time period the district spanned 124 miles. (*Id.*) The large territory and number of stores the district manager was responsible for supervising did not allow him to micro-manage each individual store. *See Grace*, 637 F.3d at 517.

      **e.**     **Relationship Between Salary and Wages Paid to Other Employees for the Kind of Nonexempt Work Performed by the Supervisor**

To determine the relationship between a managerial salary and wages paid to nonmanagerial employees, the Fourth Circuit considered, first, whether the manager earned more, in absolute terms, than nonmanagerial employees and, second, whether the manager was a "profit center." *Grace*, 637 F.3d at 517. This second consideration asks whether the manager had the ability to influence the amount of her compensation. *Id.*

As to the first consideration, Atkins earned significantly higher amounts on an hourly basis than nonexempt workers. The record shows that of the forty (40) nonexempt employees who worked in the stores where Atkins was the assigned store manager from September 24, 2001 through February 2003, approximately thirty-three (33) earned $6.00 or less per hour (even using the highest wage for those employees whose wages changed over time, the nonexempt employees working at Atkins' stores received an average hourly wage of $5.99 per hour). (Doc. No. 328, Debrocq Decl. ¶ 8.) In comparison, Atkins worked an average of 68.14 hours per week as store manager. (Doc. No. 784, Debrocq Decl. ¶ 5.) Atkins earned compensation which, when computed on an hourly basis, averaged between $7.33 per hour ($500 per week) and $7.56 per hour ($515 per week).

As to the second consideration, Atkins was a "profit center;" her performance evaluation, salary, and bonus depended on her store's profitability. *See Grace*, 637 F.3d at 517. Atkins

earned bonuses of $51.58 in December 2001 and $1,567.06 in October 2002, for which nonexempt store employees were not eligible. (Doc. No. 784, Debrocq Decl. ¶ 4.) A review of these calculations and comparisons reveal a significant difference in wages between Atkins and her nonexempt employees.

### 3. Customary and Regular Direction of the Work of Two or More other Employees

To qualify as an executive, the regulations require an employee's primary duty to include the "customary and regular direction of the work of two or more other employees." 29 C.F.R. § 541.119(a) (pre-2004). The pre-2004 regulations do not further define the terms "customary and regular." Atkins testified that, on a daily basis, she directed the work of her employees. (Doc. No. 328, Atkins Dep. at 39, 205, 222.)

The regulations also require that the employee direct the work of "two full-time employees or the equivalent." 29 C.F.R. § 541.105(a)(pre-2004). The DOL has adopted an "80-hour rule" which generally requires an exempt executive to direct a total of eighty employee-hours of work each week. *See* 69 Fed.Reg. 22135; *see also Grace*, 637 F.3d at 513 (holding that Grace customarily and regularly directed the work of two or more other employees who worked eighty or more hours per week during 89.23% of the weeks that she was store manager).

Family Dollar's records reflect that Atkins managed at least 80 employee hours 95.95% of the time she was a store manager during the relevant time period. (Doc. No. 328, Debrocq Decl. ¶ 7.) Therefore, Atkins customarily and regularly directed the work of at least two full-time employees and satisfies this factor.

## **CONCLUSION**

Looking at the facts in the light most favorable to the non-moving party, the Court finds that Family Dollar has satisfied the DOL regulations qualifying Atkins as an exempt executive under the FLSA. No reasonable jury could find otherwise. Therefore, Family Dollar is entitled to judgment as a matter of law.

**ORDER**

IT IS ORDERED that:

(1) Defendant's Motion for Summary Judgment (Doc No. 327) is GRANTED and Plaintiff Arlene Atkins is dismissed;

(2) The Court finds that there is no just reason to delay finding of final judgment for Family Dollar with regard to Plaintiff Arlene Atkins' claim against Family Dollar;

(3) The Clerk is directed to enter final judgment, pursuant to Rule 54(b), for Family Dollar with regard to Plaintiff Arlene Atkins.

**SO ORDERED.**

Signed: August 3, 2012

Graham C. Mullen
United States District Judge