IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:08MD1932-MU

| | |
|---|---|
| IN RE FAMILY DOLLAR ) | |
| FLSA LITIGATION ) | |
| ) | |
| _____) | ORDER |
| ) | |
| *Concerning McCarty v. Family Dollar* ) | |
| *Stores* ) | |
| ) | |
| Case No. 3:08-cv-1934 ) | |
| _____) | |

**THIS MATTER** is before the Court on Defendant's Motion for Summary Judgment and Memorandum in Support (Doc. No. 907); Plaintiff's Response in Opposition (Doc. No. 926); and Defendant's Reply (Doc. No. 943). For the reasons set forth below, the motion is **GRANTED**.

## FACTS

Plaintiff, Betty McCarty, began working for Family Dollar as an Assistant Store Manager in 1989.[1] (Doc. No. 908, McCarty Dep. at 11-12, 14.) In 1990, McCarty was promoted to Store Manager of the New Boston, Texas store.[2] (*Id.* at 14, 18.) Prior to her promotion, McCarty

---

[1] The Court notes that Plaintiff's declaration was prepared after Plaintiff's deposition and on many occasions directly contradicts her sworn testimony. Plaintiff cannot create a dispute about a fact contained in deposition testimony by referring to a subsequent affidavit of the deponent contradicting the deponent's prior testimony, for "it is well established that a genuine issue of fact is not created where the only issue of fact is to determine which of the two conflicting versions of a party's testimony is correct." *Erwin v. United States*, 591 F.3d 313, 325 n.7 (4th Cir. 2010) (internal quotation marks and alterations omitted) (quoting *Halperin v. Abacus Tec. Corp.*, 128 F.3d 191, 198 (4th Cir. 1997); *see also Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 341 (4th Cir. 2001); *Rohrbough v. Wyeth Labs.*, 916 F.2d 970, 975-76 (4th Cir. 1990); *Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984). To the extent that Plaintiff's deposition testimony and later affidavit are inconsistent, the Court will disregard the affidavit and rely on the testimony she gave in her deposition, where she was examined at length about her responsibilities and a manager of a Family Dollar store. *See Grace*, 637 F.3d at 513.

[2] McCarty filed her opt-in consent form on January 25, 2008. Accordingly, January 25, 2005, or three years prior to her opt-in date, through the end of her employment on May 18, 2008, represents the longest possible relevant time period for McCarty's claims in this action.

1

attended a one-week training course in Charlotte, NC, where she testifies that she was trained on various paperwork, including how to do layaways, record sales and payroll, and the Beat Yesterday Book. (*Id*. at 15-16.) McCarty remained Store Manager at the New Boston Road store (Store 4214) at all times during the relevant time period for her claims, with the exception of one week spent as the Store Manager at Store 1295 in Texarkana. (*Id*. at 19-20.) Family Dollar paid McCarty, as store manager, a weekly salary ranging from $718 to $783 from January 23, 2005 until her employment ended on May 18, 2008. (Doc. No. 908, DeBrocq Decl. ¶ 4.) McCarty also earned bonuses of $2,313.82 in 2005, $2,027.25 in 2006, and $1,939.70 in 2007. (McCarty Dep. at 79-81; DeBrocq Decl. ¶ 5.) Nonexempt employees were not eligible for these bonuses, which were tied to the store's performance as measured at inventory time. (McCarty Dep. at 33-34; DeBrocq Decl. ¶ 5.) McCarty worked an average of 67 hours per week as store manager. (DeBrocq Decl. ¶ 6.)

The record shows that of the nineteen nonexempt employees who were supervised by McCarty during the relevant time period, all earned $8.00 per hour or less. (*Id*. at ¶9.) Even using the highest hourly wage for those employees whose wages changed over time, nonexempt employees working at McCarty's store received an average hourly wage of $7.31 per hour from January 23, 2005 to February 5, 2005, and $5.53 per hour after that for the remainder of McCarty's time as store manager. (*Id*.) Family Dollar's records reflect that McCarty managed at least 80 employee hours 97% of the time she was a store manager during the relevant time period. (*Id*. at ¶ 8.)

McCarty contends that she devoted 90% of her time to performing nonexempt work, but also admits she was the person responsible for running the store. (McCarty Dep. at 219-20.) For example, McCarty admitted that even when she was performing non-managerial tasks in the

2

store, she concurrently was responsible for the store's security by watching for and stopping shoplifters, providing customer service, handling other management issues that arose, and supervising and directing her employees. (*Id*. at 37, 85-88, 90-91, 207-08.) McCarty had the authority and ability to direct other employees to perform this nonexempt work. (*Id*. at 67-70, 90-91.)

McCarty was responsible for many tasks and duties as part of her job. Specifically, McCarty was responsible for: interviewing and screening employees and providing hiring recommendations; completing the hiring paperwork (*Id*. at 113-19, 126-27, 146-49, 152-53.); training employees (*Id*. at 36-37, 39-40, 74-78, 83, 105-07, 147, 149-50, 210, 217, 220-21, 223.); ensuring that Family Dollar procedures were being followed (*Id*. at 147, 149-50, 220-21.); scheduling employees (McCarty Dep. at 71-72, 165-67, 221.); handling schedule change requests (*Id*. at 72.); supervising and directing employees' work (*Id*. at 67-70, 90-91, 190-91, 203.); maintaining financial and sales paperwork and handling the bank deposits (*Id*. at 16, 76-77, 81, 174-75, 191-203.); evaluating the work of her employees and recommending raises and promotions (*Id*. at 61-62, 83-84, 119-25.); counseling and disciplining employees when necessary (*Id*. at 92-112, 220.); planning and apportioning work among her employees (McCarty Dep. at 108, 175, 190-91, 198-99, 203.); maintaining the security of the store and guarding against theft (*Id*. at 36-37, 149-50, 221-22.); ensuring that the store stayed within the allocated payroll budget (*Id*. at 165-67, 220, 227.); ordering merchandise and supplies (*Id*. at 185-88, 209.); and monitoring legal compliance measures with respect to hiring. (*Id*. at 113-19, 147.)

McCarty testified that she determined whether a candidate should move forward in the hiring process and, therefore, whether a candidate was ultimately hired. (*Id*. at 26-27, 29, 61, 63-64, 70.) McCarty also decided what interview questions to ask candidates. (McCarty Dep. at

3

222.) McCarty hired at least seven cashiers at the New Boston Road store and recommend the promotion of another cashier to Assistant Store Manager. (*Id*. at 26-27, 29, 61-64, 70.). In addition, McCarty also recommended raises for her hourly employees after completing their annual performance reviews. (*Id*. at 119-22.)

As store manager, McCarty reported to a district manager. McCarty testified that her district manager, Rick Pardue, visited the store once a month, even when he maintained an office at McCarty's store, and would stay for 30 to 60 minutes. (*Id*. at 53-56, 85.) Family Dollar's records indicate that during the relevant time period, McCarty's district manager oversaw 18 stores throughout Texas, Oklahoma, and Arkansas, including the store managed by McCarty, spanning a territory of approximately 152 miles from north to south and 136 miles from east to west. (DeBrocq Decl. ¶ 7.)

## STANDARD OF REVIEW

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party always bears the initial burden of "informing the district court of the basis for its motion," and identifying the matter "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Once the movant has met the initial burden, "the non-moving party 'may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.'" *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)). This is particularly important where the nonmoving party bears the burden of proof. *Hughes*, 48 F.3d at 1381. A genuine issue for trial exists "if the evidence is such that a reasonable jury could return

a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id*. at 249-50. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict.

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id* at 248. "The determination of whether an employee falls within the scope of a FLSA exemption is ultimately a legal question," *Walton v. Greenbrier Ford, Inc.*, 370 F.3d 446, 450 (4th Cir. 2004), and the Fourth Circuit has repeatedly affirmed the grant of summary judgment where the facts demonstrate that an employee is exempt. *See, e.g., Grace v. Family Dollar Stores, Inc.*, 637 F. 3d 508 (4th Cir. 2011) (affirming grant of summary judgment and holding that Family Dollar Store Manager was exempt executive); *Darveau v. Detecon, Inc.*, 515 F.3d 334 (4th Cir. 2008); *Jones v. Virginia Oil Co., Inc.*, 69 Fed. Appx. 633 (4th Cir. 2003); *Smith v. First Union National Bank*, 202 F.3d 234 (4th Cir. 2000).

## **DISCUSSION**

The Fair Labor Standards Act ("FLSA") requires that an employee receive overtime pay if he or she works more than forty hours a week. 29 U.S.C. § 207(a)(1). The FLSA, however, exempts from this requirement "any employee employed in a bona fide executive…capacity." 29 U.S.C. § 213(a)(1). The Department of Labor ("DOL") has promulgated regulations which further describe and interpret the scope of this exemption.

The current regulations provide that an employee qualifies as an executive if: (1) she is compensated on a salary basis at a rate of at least $455 per week; (2) her primary duty is management of the enterprise; (3) she customarily and regularly directs the work of two or more

other employees; and (4) she has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight. 29 C.F.R. § 541.100(a) (2004). The DOL has also promulgated additional regulations which further describe and define these tests; these additional regulations are discussed below. In light of these regulations, McCarty qualifies as an exempt executive.

### 1. Family Dollar Satisfies the Salary Basis Test

Throughout the relevant time period that McCarty was the store manager, Family Dollar paid her a salary between $718 and $733 per week. Therefore, Family Dollar satisfies the salary basis test, which requires a weekly salary of not less than $455 per week. 29 C.F.R. § 541.100(a).

### 2. Family Dollar Satisfies the Primary Duty Test

The regulations provide guidance as to how an employee's primary duty may be determined.[3] The regulations instruct that the determination should be "based on all the facts in a particular case." 29 C.F.R. § 541.700(a). The regulations set forth, but are not limited to, four factors to consider in this analysis: (1) the amount of time spent in the performance of managerial duties; (2) the relative importance of the managerial duties as compared with other types of duties; (3) the relative freedom from supervision; and (4) the relationship between the manager's salary and the wages paid to other employees for the kind of nonexempt work performed by the supervisor. (*Id.*)

---

[3] The Court finds McCarty's argument that she was merely a "working foreman" unavailing. The current regulations state that a "*manager in a retail establishment*" can "supervise employees and serve customers at the same time without losing the exemption." 29 C.F.R. § 541.106(b) (emphasis added). Section 29 C.F.R. § 541.106(c) states "[i]n contrast, " a "working supervisor" who performs "nonexempt work *on the production line in a manufacturing plant* does not become exempt" merely by occasionally directing the work of other nonexempt employees on the "*production line*." (emphasis added).

Upon consideration of the factors identified for determining whether McCarty's primary duty was management, the Court concludes that the factors are readily satisfied.

### a. The Amount of Time Spent in Performance of Managerial Duties

The regulations provide a list of "management" activities, which include, but are not limited to:

> Interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing their work, maintaining their production or sales records for use in supervision or control; appraising their productivity and efficiency for the purpose of recommending promotions or other changes in their status; handling their complaints and grievances and disciplining them when necessary; planning the work; determining the type of materials, supplies, machinery or tools to be used or merchandise to be bought, stocked, and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety of the [employees] and the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.[4]

29 C.F.R. § 541.102. McCarty explicitly testified that she performed *almost every one* of these management activities as a Family Dollar Store Manager.[5] For example, McCarty interviewed and screened potential employees and hired cashiers (McCarty Dep. at 26-27, 29, 61, 63-64, 70.); trained her employees, including training on Family Dollar policies and procedures (*Id*. at 36-37, 39-40, 74-78, 83, 105-07, 147, 149-50, 210, 217, 220-21, 223.); assigned employees to a schedule and set their hours of work, including adjusting the schedule for employee requests for time off (*Id*. at 71-72, 165-67, 221.); and directed and supervised her employees' work. (*Id*. at

---

[4] An employee need not perform all management duties listed in the regulations, or evenly regularly perform such duties, in order to be considered an exempt executive. *See Aguirre v. SBC Communs., Inc.*, 2007 U.S. Dist. Lexis 72666, 63-62 (S.D. Tex. Sept. 30, 2007) (finding that "plaintiffs' 'primary duty' for purposes of the executive exemption was 'management,' despite the fact that the plaintiffs did not perform other 'managerial' duties listed in Section 541.102.").

[5] The fact that the Assistant Managers can perform the same tasks as McCarty does not render her tasks and duties any less managerial. Courts have consistently held that the fact that a non-exempt employee may sometimes perform exempt duties does not make these duties any less exempt/managerial. *See Baldwin v. Trailer Inns., Inc.*, 266 F.3d 1104, 1115 (9th Cir. 2001) ("[t]hat the [non-exempt] assistant managers may have performed some managerial tasks does not render the tasks non-exempt.").

67-70, 90-91, 190-91, 203.) In addition, McCarty maintained and was responsible for certain sales and financial records and bank deposits (*Id*. at 16, 76-77, 81, 174-75, 191-203.); evaluated the work of her employees for the purpose of recommending promotions and raises (*Id*. at 61-62, 83-84, 119-25.); disciplined employees when necessary by providing verbal counseling and brought other disciplinary situations to the attention of her district manager for advice (McCarty Dep. at 67, 90-91, 97, 220.); and planned and apportioned work among her employees. (*Id*. at 108, 175, 190-91, 198-99, 203.) Furthermore, McCarty was responsible for the safety and security of the store (*Id*. at 36-37, 149-50, 219-22.); controlling and staying within the allocated payroll budget (*Id*. at 165-67, 220, 227.); and monitoring legal compliance measures with respect to hiring, such as completing I-9 paperwork. (*Id*. at 113-19, 147.)

McCarty cannot overcome the exemption by claiming she spent the majority of her time performing non-managerial duties. The regulations state that an employee who spends more than fifty percent of his or her time performing managerial work will typically satisfy the primary duty requirement. 29 C.F.R. § 541.700(b). The regulations, however, also emphasize that "time alone…is not the sole test" and that exempt executives are not required to spend more than fifty percent of their time performing exempt work if other factors support the conclusion that management is their primary duty.[6] *Id*.; *see also Grace*, 637 F.3d 508, 515 (4th Cir. 2011).

The regulations specifically address the concept of concurrent duties. 29 C.F.R. § 541.106. Concurrent performance, or multi-tasking, of exempt and nonexempt work is explicitly

---

[6] The Court disagrees with McCarty's contention that failure to meet the 50 percent threshold means that an employee fails to satisfy the primary duty requirement. The Fourth Circuit clarified the application of the 50 percent "rule of thumb" by stating that, "[i]t is clear from this language that primary duty is meant to be assessed by the totality of the circumstances." *Counts v. S.C. Elec. & Gas Co.*, 317 F.3d 453, 456 (4th Cir. 2003). McCarty's reliance on *Clark v. J.M. Benson Co., Inc.*, 789 F.2d 282 (4th Cir. 1986) is misplaced because the court held that it would apply the 50 percent rule to that specific case. Additionally, McCarty's reliance on *Shockley v. City of Newport News*, 997 F.2d 18 (4th Cir. 1993) is also misplaced because that case involved police officers, not retail store managers, who were not paid on a salary basis – something that is not at issue here.

recognized as a managerial duty by the DOL's regulations. *Id*.; *see also* 29 U.S.C. § 213(a)(1).[7] "It is misleading simply to add up the time that [Plaintiff] spent unloading trucks, stocking inventory, running cash registers, or sweeping floors and conclude thereby that she was merely a clerk and not a manager." *Grace*, 637 F.3d at 516.

Here, McCarty was ultimately responsible for the performance of the store and remained the highest ranking employee in the store, even while performing nonexempt work. (McCarty Dep. at 84-85, 219-20.) Thus, McCarty "remain[ed] responsible for the success or failure of the business operations under [her] management while performing the nonexempt work." 29 C.F.R. § 541.106. In other words, McCarty performed her nonexempt tasks in the context of her overall responsibility to ensure the store was profitable. *Grace*, 637 F.3d at 516.

McCarty also performed her nonexempt tasks concurrently with her exempt managerial work. For example, McCarty maintained responsibility for the security of the store by watching for and stopping shoplifters. (McCarty Dep. at 37.) McCarty also supervised and directed her employees while performing nonexempt tasks around the store. (*Id*. at 90-91.) McCarty would occasionally have to address customer issues while performing non-managerial work or handle other management issues that arose. (*Id*. at 85-88, 90-91, 207-08.) Finally, as contemplated by 29 C.F.R. § 541.700(c), McCarty had the discretion and flexibility to choose what tasks to delegate to her hourly employees. (*Id*. at 67-70, 90-91.) Thus, McCarty had a choice of which duties to perform, in contrast to a nonexempt employee who would simply perform the task to which he or she was assigned. (*Id*.)

---

[7] The FLSA recognizes the nature of retail business and states that "an employee of a retail or service establishment shall not be excluded from the definition of an employee employed in a bona fide executive or administrative capacity because of the number of hours in his work week which he devotes to activities not directly or closely related to the performance of executive or administrative activities." 29 U.S.C. § 213(a)(1).

9

In *Grace*, the Fourth Circuit found the plaintiff "was performing management duties whenever she was in the store, even though she also devoted most of her time [99%] to doing the mundane physical activities necessary for its successful operation." *Grace*, 637 F.3d at 517. Similar to the plaintiff in *Grace*, even though McCarty contends that she devoted 90% of her time to performing nonexempt work, she was also the person responsible for running the store. (McCarty Dep. at 219-20.) For example, McCarty admitted that even when she was doing non-managerial tasks in the store, she was concurrently responsible for the store's security by watching for and stopping shoplifters, providing customer service, handling other management issues that arose, and supervising and directing her employees. (*Id*. at 37, 85-88, 90-91, 207-08.) McCarty also had the authority and ability to direct other employees to perform this nonexempt work. (*Id*. at 67-70, 90-91.) While McCarty argues that management was not her primary duty because she spent the majority of her time engaged in manual labor, the regulations and the Court in *Grace* clarify that performance of these duties, in conjunction with overall supervision and management of the store, is not contrary to the application of the exemption. Thus, McCarty's own testimony regarding her duties and tasks reflect that they were undeniably managerial in nature and easily meet the requirements of the executive exemption. *See Grace*, 637 F.3d at 508.

    b.  **The Relative Importance of the Managerial Duties as Compared with Other Types of Duties**

McCarty's managerial duties were more important than the other duties she performed because they were critical to the operation of the store. In *Grace*, the plaintiff's managerial tasks, which included filling out paperwork, addressing customer complaints, working with employees on their schedules, and collecting cash, were critical to the operation of the store, as there was "*no one else at the site to direct these actions*." *Grace*, 637 F.3d at 517 (emphasis in

original). Similarly, McCarty's managerial tasks, which included training employees (McCarty Dep. at 39-41, 217.), completing and maintaining the store's sales and financial records (*Id*. at 16, 76-77, 81, 174-75, 191-203.), apportioning hours to employees (*Id*. at 108, 175, 190-91, 198-99, 203.), handling customer complaints and refunds (*Id*. at 86-88.), and directing and supervising employees' work (*Id*. at 67-70, 90-91, 190-91, 203.), were critical to the operation of the store. In fact, McCarty's managerial duties were so important that employees even called to consult her at home on her day off. (*Id*. at 169-170.) While McCarty argues that she was under the direct supervision of her district manager, she nonetheless stated that the district manager visited the store only once a month and only stayed for 30 to 60 minutes each visit – not enough to direct the managerial tasks. (McCarty Dep. at 53-56, 85.) Therefore, because she was the only person running the store, the store could not have operated successfully without McCarty's handling of these managerial tasks.

    c.  **Relative Freedom from Supervision**

Relative freedom from supervision does not demand complete freedom from supervision. In *Grace*, the plaintiff's supervising district manager typically visited the store once every two to three weeks. *Grace*, 637 F.3d at 517. The court also noted, apart from his supervision, which was not uncharacteristic for any retail operation, the district manager was not a "micro-manager who constantly was looking over [the manager's] shoulder." *Id*. The supervision of seventeen stores would hardly permit [the district manager] to micro-manage all of them. *Id*.; *see also Thomas v. Speedway Super America LLC*, 506 F.3d 496, 504-509 (6th Cir. 2007) (court found it significant that plaintiff's district manager was responsible for ten to twelve stores, as opposed to situations where a higher level manager was responsible for only a few stores).

11

McCarty was relatively free from supervision during the relevant time period. McCarty testified that her district manager, Rick Pardue, visited the store only once a month and would only stay for 30 to 60 minutes at a time. (McCarty Dep. at 53-56.) Moreover, Family Dollar's records indicate that during the relevant time period, McCarty's district manager oversaw eighteen stores, including McCarty's store. (DeBrocq Decl. ¶ 7.) The infrequency of Pardue's visits and the large number of stores he was responsible for supervising does not allow him to micro-manage each individual store. *See Grace*, 637 F.3d at 517; *Thomas*, 506 F.3d at 508.

### d. Relationship Between Salary and Wages Paid to Other Employees for the Kind of Nonexempt Work Performed by the Supervisor

To determine the relationship between a managerial salary and wages paid to nonmanagerial employees, the Fourth Circuit considered, first, whether the manager earned more, in absolute terms, than nonmanagerial employees and, second, whether the manager was a "profit center." *Grace*, 637 F.3d at 517. This second consideration asks whether the manager had the ability to influence the amount of her compensation. *Id*.

As to the first consideration, McCarty earned significantly higher amounts on an hourly basis than nonexempt workers. The record shows that of the nineteen nonexempt employees that McCarty supervised during the relevant time period, all of them earned $8.00 per hour or less. (DeBrocq Decl. ¶ 9.) Even using the highest wage for those employees whose wages changed over time, the hourly employees at McCarty's store received an average hourly wage of $7.31 per hour for the period January 23, 2005 to February 5, 2005 and $5.53 per hour for the remainder of McCarty's tenure. (*Id*.) In comparison, McCarty worked an average of 67 hours per week as store manager. (*Id*. at ¶ 6.) Even setting aside her bonus payments, McCarty earned compensation, which when computed on an hourly basis, averaged between $10.72 and $11.69

per hour during the relevant time period. A review of these calculations reveals a significant difference in wages between McCarty and her nonexempt employees.

As to the second consideration, McCarty was a "profit center," her bonuses depended on her store's profitability and were directly tied to her performance in terms of sales, shrink, and inventory results. (McCarty Dep. at 33-34.); *See Grace*, 637 F.3d at 517. McCarty earned bonuses of $2, 313.82 in 2005, $2,027.25 in 2006, and $1,939.70 in 2007; bonuses for which nonexempt store employees were not eligible. (DeBrocq Decl. ¶ 5.) Therefore, since McCarty had the ability to directly influence her own compensation, this factor is satisfied.

### e. Frequency With Which the Employee Exercises Discretionary Power

While this factor is no longer an explicit factor in the "primary duty" analysis under the current regulations, the fact that McCarty exercised discretion virtually every day and all day long in her capacity as store manager supports that her primary duty was management. McCarty decided how to assign and apportion work among herself and her employees (McCarty Dep. at 108, 175, 190-91, 198-99, 203.); how to adjust the schedule (*Id*. at 72.); how to discipline employees (*Id*. at 67, 90-91, 97.); how to interview candidates (*Id*. at 26-27, 29, 61, 63-64, 70.); and how to make sure the store ran safely (*Id*. at 37-38, 205.); while at the same time satisfying customers. All of these tasks involved "discretionary acts inherent in being responsible for the successful operation of a retail store." *Grace*, 637 F.3d at 517. Moreover, the fact that Family Dollar maintains certain policies and procedures for the sake of consistency does not mean that McCarty failed to exercise discretion in enforcing these policies and procedures.[8]

---

[8] *See Murray v. Stuckey's, Inc.*, 50 F.3d 564, 570 (8th Cir. 1995) (standardized procedures and policies may circumscribe but do not eliminate discretion of on-site store manager); *Thomas v. Speedway Super America LLC*, 506 F.3d 496, 507 (6th Cir. 2007) (manager still exercised discretion on a daily basis even though store had standardized operating procedures); *Grace v. Family Dollar Stores, Inc.*, 637 F.3d 508 (4th Cir. 2011) (manager still exercised discretion even though she was subject to company policies and the company template for a store in the Family Dollar chain).

### 3. Customary and Regular Direction of the Work of Two or More other Employees

To qualify as an executive, the regulations require an employee's primary duty to include the "customary and regular direction of the work of two or more other employees." 29 C.F.R. § 541.100(a)(3). "The phrase 'customary and regular' means a frequency that must be greater than occasion but which, of course, may be less than constant." 29 C.F.R. § 541.704. McCarty, on a daily basis, directed the work of her employees. (McCarty Dep. at 84-85, 219-20.)

Both sets of regulations also require the employee to direct the work of "two full-time employees or the equivalent." 20 C.F.R. § 541.104(a). The DOL has adopted an "80-hour rule" which generally requires an exempt executive to direct a total of eighty employee-hours of work each week. *See* 69 Fed.Reg. 22135; *see also Grace*, 637 F.3d at 513 (holding that Grace customarily and regularly directed the work of two or more other employees who worked eighty or more hours per week during 89.23% of the weeks that she was store manager). Family Dollar's records reflect that McCarty managed at least 80 employee hours 97% of the time she was a store manager during the relevant time period. (DeBrocq Decl. ¶ 8.) Therefore, McCarty customarily and regularly directed the work of at least two full-time employees and satisfies this factor.

### 4. Authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight

Finally, the additional prong of the executive exemption test contained in the current regulations states that an exempt employee has authority to hire *or* fire other employees *or* his recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees are given particular weight. 29 C.F.R. § 541.100(a)(4). The DOL provides guidance with respect to whether an employee's recommendations satisfy this standard.

Specifically, the "factors to be considered include, but are not limited to, whether it is part of the employee's job duties to make such suggestions and recommendations; the frequency with which such suggestions and recommendations are made or requested; and the frequency with which the employee's suggestions and recommendations are relied upon." 29 C.F.R. § 541.105. Importantly, the employee's recommendations "may still be deemed to have 'particular weight' even if a higher level manager's recommendation has more importance and even if the employee does not have the authority to make the ultimate decision as to the employee's change in status." *Id*.

McCarty's deposition testimony establishes that she meets the additional prong of the executive exemption test contained in the current regulations, namely that her suggestions and recommendations as to the hiring and change of status of other employees were given particular weight. McCarty acknowledges that her duties included hiring and that her District Manager relied upon her to hire the right people. (McCarty Dep. at 210-11, 220.) In fact, McCarty was actively involved in the interviewing and employee screening process, reviewing applications and conducting the sole interviews before hiring seven cashiers. (*Id*. at 26-27, 29, 61, 63-64, 70.) Once McCarty decided to hire a candidate, the candidate was required to submit to a drug test and a background check, and McCarty could hire the candidate if the drug test and background check were passed. (*Id*. at 28-29, 63-64.) McCarty also recommended that cashier William Duenas be promoted to Assistant Store Manager, and her District Manager accepted her recommendation. (*Id*. at 61-62.) Therefore, while McCarty may not have had the ultimate decision making authority with respect to hiring, it is undisputable that at least some of her recommendations were closely followed, thereby satisfying the particular weight requirement.

15

## CONCLUSION

Looking at the facts in the light most favorable to the non-moving parry, the Court finds that Family Dollar has satisfied the DOL regulations qualifying McCarty as an exempt executive under the FLSA. No reasonable jury could find otherwise. Therefore, Family Dollar is entitled to judgment as a matter of law.

## ORDER

IT IS ORDERED that

(1) Defendant's Motion for Summary Judgment (Doc. No. 907) is GRANTED and Plaintiff Betty McCarty is dismissed;

(2) The Court finds that there is no just reason to delay finding of final judgment for Family Dollar with regard to Plaintiff Betty McCarty's claim against Family Dollar;

(3) The Clerk is directed to enter final judgment, pursuant to Rule 54(b), for Family Dollar with regard to Plaintiff Betty McCarty.

Signed: July 2, 2013

*[signature]*

Graham C. Mullen
United States District Judge