IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:08MD1932-MU

| | |
|---|---|
| IN RE FAMILY DOLLAR FLSA LITIGATION ) ) ) ) ) ) *Concerning Jackson v. Family Dollar Stores* ) ) ) ) Case No. 3:08-cv-1939 ) ) | ORDER |

**THIS MATTER** is before the Court on Defendant's Motion for Summary Judgment and Memorandum in Support (Doc. No. 956); Plaintiff's Response in Opposition (Doc. No. 967); and Defendant's Reply (Doc. No. 993). For the reasons set forth below, the motion is **GRANTED**.

**FACTS**[1]

Plaintiff, Terri Jackson, began working for Family Dollar in 2005, first as a clerk and then as a Store Manager.[2] (Doc. No. 957, Jackson Dep. at 43-44, 55.) Jackson became a Store

---

[1] To the extent Plaintiff makes any factual assertions based on the decision in *Morgan v. Family Dollar Stores, Inc.*, the court will disregard such assertions. The court will also disregard exhibits based on the *Morgan* case. In *Grace v. Family Dollar Stores, Inc.*, the Fourth Circuit Court of Appeals rejected Ms. Grace's argument that the facts in *Morgan* and in her case were identical; similarly, this Court finds no basis to support the assumption that the facts between Plaintiff's case and the *Morgan* case are the same. *See Grace v. Family Dollar Stores, Inc.*, 637 F.3d 508 (4th Cir. 2011) (finding that potential variations between store size, store inventory, and the individual responsibilities of managers, as well as differences in managers' performance of exempt and nonexempt duties and the supervisory activity of district managers, precluded Plaintiff's argument that the facts in *Morgan* and in her case were identical).

[2] The Court notes that Plaintiff's Response was prepared after Plaintiff's deposition and on many occasions directly contradicts her sworn testimony. Plaintiff cannot create a dispute about a fact contained in deposition testimony by presenting her own contradictory testimony, for "it is well established that a genuine issue of fact is not created where the only issue of fact is to determine which of the two conflicting versions of a party's testimony is correct." *Erwin v. United States*, 591 F.3d 313, 225 n.7 (4th Cir. 2010) (internal quotation marks and alterations omitted) (quoting *Halperin v. Abacus Tec. Corp.*, 128 F.3d 191, 198 (4th Cir. 1997); *see also Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 341 (4th Cir. 2001); *Rohrbough v. Wyeth Labs.*, 916 F.2d 970, 975-76 (4th Cir. 1990); *Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984). To the extent that Plaintiff's deposition testimony and Plaintiff's Response are inconsistent, the Court will disregard Plaintiff's Response and rely on the testimony she

1

Manager at Store 5982 in Tucson, Arizona on April 30, 2006, moved to an Assistant Store Manager position from May 29 to July 22, 2006, and then moved back to the Store Manager position from July 23, 2006, until she resigned on January 17, 2007. (Doc. No. 957, DeBrocq Decl. ¶ 4; Jackson Dep. at 55.)[3] When Jackson first became a Store Manager, she was trained on various tasks, including handling office paperwork, using and implementing the Family Dollar handbook, interviewing, performing store counts, ordering merchandise for the store, stocking shelves, and completing new hire paperwork. (Jackson Dep. at 56-60.)

As Store Manager, Jackson was the highest ranking and highest paid employee in the store. (*Id*. at 56.) Family Dollar paid Jackson a weekly salary of $550 from April 30, 2006 to May 27, 2006 and $600 from July 23, 2006 to January 17, 2007. (DeBrocq Decl. ¶ 4.) Although Jackson did not earn a bonus during this time period, Jackson was eligible to receive bonuses based on her store's profitably and whether she was employed when bonuses were paid. (*Id*. at ¶ 5.) In contrast, nonexempt employees were not eligible to receive bonuses. (*Id*.) Jackson worked an average of 62.06 hours per week during the relevant time period for her claims. (*Id*. at ¶ 6.)

The record shows that of the seventeen nonexempt employees who worked at Jackson's store during the relevant time period, twelve earned $6.75 per hour or less. (*Id*. at ¶ 9.) Even using the highest hourly wages earned by employees whose wages changed over time, the hourly employees who worked in Jackson's store earned an average of $6.84 per hour. (*Id*.) Family Dollar's records reflect that Jackson managed at least 80 employee hours 90.32% of the time

---

gave in her deposition, where she was examined at length about her responsibilities as a manager of a Family Dollar Store. *See Grace*, 637 F.3d at 513.
[3] Jackson filed her opt-in consent form on February 21, 2008. Accordingly, January 25, 2005, or three years prior to her opt-in date, through the end of her employment on January 17, 2007, represents the longest possible relevant time period for Jackson's claims in this action.

during the relevant time period. (Jackson Dep. at 25, 198; DeBrocq Decl. ¶ 4.) Jackson typically worked with two or three employees at her store on a daily basis. (DeBrocq Decl. ¶ 8.)

Jackson contents that she devoted 80-85% of her time to performing nonexempt work, but also admits that she was responsible for running the store. (Jackson Dep. at 65, 171, 204-205, 228-230.) For example, Jackson admitted that even when she was performing non-managerial tasks in the store, she concurrently was responsible for the performance of the store and remained the highest ranking employee. (*Id*. at 56, 86-89, 228-31.) Jackson also supervised and directed her employees, to the extent possible, while performing nonexempt tasks around the store. (*Id*. at 86-89, 230-31.) Moreover, as contemplated by 29 C.F.R. § 541.700(c), Jackson had the discretion and the flexibility to choose what tasks to perform herself and what tasks to delegate to other employees. (*Id*.)

Jackson was responsible for many tasks and duties as part of her job. Specifically, Jackson was responsible for: reviewing job applications to determine best potential employees for her store; interviewing and screening potential employees; determining if employees passed drug screening and background checks; checking references; providing hiring recommendations; completing hiring paperwork; training employees; ensuring that Family Dollar policies were being followed; scheduling employees; handling vacation requests; delegating employees' work; maintaining financial and sales paperwork and handling the bank deposits; evaluating the work of her employees and grooming them for promotions; counseling and disciplining/coaching employees when necessary; planning and assigning work to employees; maintaining the security of the store and guarding against theft; and ensuring the store stayed within the allocated payroll budget. (*Id*. at 68-69, 85-97, 107-08,115-16,127,150,160-65,172-73,178-80,183-84,188-92,196-97.)

Jackson testified that she determined whether a candidate should move forward in the hiring process. (*Id*. at 91-94, 115-16.) Jackson chose not to interview everyone who applied, and would forward candidates to her District Manager along with recommendations for which ones to move forward in the hiring process. (*Id*.) Jackson cannot recall a single instance where her District Manager disagreed with her recommendation to hire someone. (*Id*. at 115-18.)

As Store Manager, Jackson reported to a District Manager. Jackson testified that her District Manager, Carrie Pollard, visited the store only once a month and stayed for a few minutes to a couple of hours each time. (*Id*. at 62, 228.) Family Dollar's records indicate that during the relevant time period, Jackson's District Manager oversaw 17 stores, including Jackson's, which spanned a territory of approximately 692 miles in Arizona. (DeBrocq Decl. ¶7.)

## STANDARD OF REVIEW

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party always bears the initial burden of "informing the district court of the basis for its motion," and identifying the matter "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Once the movant has met the initial burden, "the non-moving party 'may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.'" *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)). This is particularly important where the nonmoving party bears the burden of proof. *Hughes*, 48 F.3d at 1381. A genuine issue for trial exists "if the evidence is such that a reasonable jury could return

a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id*. at 249-50. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict.

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id*. at 248. "The determination of whether an employee falls within the scope of a FLSA exemption is ultimately a legal question," *Walton v. Greenbrier Ford, Inc.*, 370 F.3d 446, 450 (4th Cir. 2004), and the Fourth Circuit has repeatedly affirmed the grant of summary judgment where the facts demonstrate that an employee is exempt. *See, e.g., Grace v. Family Dollar Stores, Inc.*, 637 F. 3d 508 (4th Cir. 2011) (affirming grant of summary judgment and holding that Family Dollar Store Manager was exempt executive); *Darveau v. Detecon, Inc.*, 515 F.3d 334 (4th Cir. 2008); *Jones v. Virginia Oil Co., Inc.*, 69 Fed. Appx. 633 (4th Cir. 2003); *Smith v. First Union National Bank*, 202 F.3d 234 (4th Cir. 2000).

## DISCUSSION

The Fair Labor Standards Act ("FLSA") requires that an employee receive overtime pay if he or she works more than forty hours a week. 29 U.S.C. § 207(a)(1). The FLSA, however, exempts from this requirement "any employee employed in a bona fide executive…capacity." 29 U.S.C. § 213(a)(1). The Department of Labor ("DOL") has promulgated regulations which further describe and interpret the scope of this exemption.

The current regulations provide that an employee qualifies as an executive if: (1) she is compensated on a salary basis at a rate of at least $455 per week; (2) her primary duty is management of the enterprise; (3) she customarily and regularly directs the work of two or more

other employees; and (4) she has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight. 29 C.F.R. § 541.100(a) (2004).

Jackson concedes in her Response that she is not challenging the first or third tests, thus the only tests at issue are whether Jackson's primary duty is management of the enterprise and whether she has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.[4] The DOL has promulgated additional regulations which further describe and define these tests; these additional regulations are discussed below. In light of these regulations, Jackson qualifies as an exempt executive.

### 1. Family Dollar Satisfies the Primary Duty Test

The regulations provide guidance as to how an employee's primary duty may be determined. The regulations instruct that the determination should be "based on all the facts in a particular case." 29 C.F.R. § 541.700(a). The regulations set forth, but are not limited to, four factors to consider in this analysis: (1) the amount of time spent in the performance of managerial duties; (2) the relative importance of the managerial duties as compared with other types of duties; (3) the relative freedom from supervision; and (4) the relationship between the manager's salary and the wages paid to other employees for the kind of nonexempt work performed by the supervisor. (*Id*.)

Upon consideration of the factors identified for determining whether Jackson's primary duty was management, the Court concludes that the factors are readily satisfied.

---

[4] Plaintiff incorrectly contends that "frequency of discretion" is an independent "primary duty" factor. *See* (Doc. No. 967, Pl. Resp. at 11.)

### a. The Amount of Time Spent in Performance of Managerial Duties

The regulations provide a list of "management" activities, which include, but are not limited to:

> Interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing their work, maintaining their production or sales records for use in supervision or control; appraising their productivity and efficiency for the purpose of recommending promotions or other changes in their status; handling their complaints and grievances and disciplining them when necessary; planning the work; determining the type of materials, supplies, machinery or tools to be used or merchandise to be bought, stocked, and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety of the [employees] and the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.[5]

29 C.F.R. § 541.102.

Jackson explicitly testified that she performed *almost every one* of these management activities as a Family Dollar Store Manager.[6] For example, Jackson interviewed and screened potential employees and provided hiring recommendations (Jackson Dep. at 91-97, 108, 115-16, 127, 157-160.); trained her employees, including training on Family Dollar policies and procedures (*Id*. at 107, 196-97.); assigned employees to a schedule and set their hours of work, including having to adjust the schedule to make sure the employee's availability and the store's needs were appropriately covered (*Id*. at 164-66.); and directed and supervised her employees' work. (*Id*. at 86-89, 193.) In addition, Jackson maintained and was responsible for certain sales

---

[5] An employee need not perform all management duties listed in the regulations, or evenly regularly perform such duties, in order to be considered an exempt executive. *See Aguirre v. SBC Communs., Inc.*, 2007 U.S. Dist. Lexis 72666, 63-62 (S.D. Tex. Sept. 30, 2007) (finding that "plaintiffs' 'primary duty' for purposes of the executive exemption was 'management,' despite the fact that the plaintiffs did not perform other 'managerial' duties listed in Section 541.102.").

[6] The fact that the Assistant Managers can perform the same tasks as Jackson does not render her tasks and duties any less managerial. Courts have consistently held that the fact that a non-exempt employee may sometimes perform exempt duties does not make these duties any less exempt/managerial. *See Baldwin v. Trailer Inns., Inc.*, 266 F.3d 1104, 1115 (9th Cir. 2001) ("[t]hat the [non-exempt] assistant managers may have performed some managerial tasks does not render the tasks non-exempt.").

and financial records, as well as bank deposits (*Id*. at 172-73, 178-80, 188-192.); evaluated the work of her employees and coached them, including grooming for the purpose of recommending promotions (*Id*. at 68-69, 85-86, 150.); disciplined employees when necessary by providing verbal coaching and discipline (Jackson Dep. at 68-69, 71-72, 85-86.); and planned and apportioned work among her employees. (*Id*. at 86-90, 231.) Furthermore, Jackson was responsible for the safety and security of the store (*Id*. at 183-84, 194.); controlling and staying within the allocated payroll budget (*Id*. at 163, 190, 216-17.); and monitoring legal compliance measures with respect to hiring, such as completing I-9 paperwork. (*Id*. at 105, 128-33.)

Jackson cannot overcome the exemption by claiming that she spent the majority of her time performing non-managerial duties. The regulations state than an employee who spends more than fifty percent of his or her time performing managerial work will typically satisfy the primary duty requirement. 29 C.F.R. § 541.700(b). The regulations, however, also emphasize that "time alone…is not the sole test" and that exempt executives are not required to spend more than fifty percent of their time performing exempt work if other factors support the conclusion that management is their primary duty.[7] *Id*. In *Grace*, the Fourth Circuit explained that "[t]here is no per se rule that once the amount of time spent on manual labor approaches a certain percentage, satisfaction of this factor is precluded as a matter of law." 637 F.3d 508, 515 (4th Cir. 2011).

---

[7] The Court disagrees with Jackson's contention that failure to meet the 50 percent threshold means that an employee fails to satisfy the primary duty requirement. The Fourth Circuit clarified the application of the 50 percent "rule of thumb" by stating that, "[i]t is clear from this language that primary duty is meant to be assessed by the totality of the circumstances." *Counts v. S.C. Elec. & Gas Co.*, 317 F.3d 453, 456 (4th Cir. 2003). Jackson's reliance on *Clark v. J.M. Benson Co., Inc.*, 789 F.2d 282 (4th Cir. 1986) is misplaced because the court held that it would apply the 50 percent rule to that specific case. Additionally, Jackson's reliance on *Shockley v. City of Newport News*, 997 F.2d 18 (4th Cir. 1993) is also misplaced because that case involved police officers, not retail store managers, who were not paid on a salary basis – something that is not at issue here.

The regulations also specifically address the concept of concurrent duties. 29 C.F.R. § 541.106. Concurrent performance, or multi-tasking, of exempt and nonexempt work is explicitly recognized as a managerial duty by the DOL's regulations. *Id.*; *see also* 29 U.S.C. § 213(a)(1).[8] "It is misleading simply to add up the time that [Plaintiff] spent unloading trucks, stocking inventory, running cash registers, or sweeping floors and conclude thereby that she was merely a clerk and not a manager." *Grace*, F.3d at 516.

Jackson was ultimately responsible for the performance of the store and remained the highest ranking employee in the store, even while performing nonexempt work. (Jackson Dep. at 65, 171, 228-30.) Thus, Jackson "remain[ed] responsible for the success or failure of the business operations under [her] management while performing the nonexempt work." 29 C.F.R. § 541.106. In other words, Jackson performed her nonexempt tasks in the context of her overall responsibility to ensure the store was profitable. *See Grace*, 637 F.3d at 516.

In *Grace*, the Fourth Circuit found the plaintiff "was performing management duties whenever she was in the store, even though she also devoted most of her time [99%] to doing the mundane physical activities necessary for its successful operation." 637 F.3d at 517. Similar to the plaintiff in *Grace*, even though Jackson contends that she devoted 80-85% of her time to performing nonexempt work, she was also the person responsible for running the store and performed her nonexempt tasks concurrently with her exempt managerial work. (Jackson Dep. at 86-89, 230-31.) For example, Jackson supervised and directed her employees, to the extent possible, while performing nonexempt tasks around the store. (*Id.*) Jackson affirmed that she led by example. (*Id.* at 83.) Moreover, as contemplated by 29 C.F.R. § 541.700(c), Jackson had

---

[8] The FLSA recognizes the nature of retail business and states that "an employee of a retail or service establishment shall not be excluded from the definition of an employee employed in a bona fide executive or administrative capacity because of the number of hours in his work week which he devotes to activities not directly or closely related to the performance of executive or administrative activities." 29 U.S.C. § 213(a)(1).

the discretion and flexibility to choose what tasks to perform herself and what tasks to delegate to other employees; she delegated tasks according to "who is in the store at a particular date or time, what we were doing that day." (*Id*. at 86-87, 230-31.) Thus, Jackson had a choice of what duties to perform, in contrast to a nonexempt employee who would simply perform the task to which he or she was assigned. (*Id*.)

While Jackson argues that management was not her primary duty because she spent the majority of her time engaged in manual labor, the regulations and the Court in *Grace* clarify that performance of these duties, in conjunction with overall supervision and management of the store, is not contrary to the application of the exemption. Thus, Jackson's own testimony regarding her duties and tasks reflect that they were undeniably managerial in nature and easily meet the requirements of the executive exemption. *See Grace*, 637 F.3d at 508.

    b.  **The Relative Importance of the Managerial Duties as Compared with Other Types of Duties**

Jackson's managerial duties were more important than the other duties she performed because they were critical to the operation of the store. In *Grace*, the plaintiff's managerial tasks, which included filling out paperwork, addressing customer complaints, working with employees on their schedules, and collecting cash, were critical to the operation of the store, as there was "*no one else at the site to direct these actions*." *Grace*, 637 F.3d at 517 (emphasis in original). Similarly, Jackson's managerial tasks, which included interviewing and employee screening (Jackson Dep. at 91-97, 108, 115-16, 127, 157-60.), training (*Id*. at 107, 196-97.), store security (*Id*. at 183-184, 194.), bank deposits (*Id*. at 172-73, 178-80, 188-92.), financial and sales paperwork (*Id*.), scheduling (*Id*. at 164-66.), and overall supervision and direction of her employees (*Id*. at 86-89, 193.), were critical to the operation of the store. In fact, Jackson's

managerial duties were so important that Jackson left to-do lists, prioritizing the tasks that needed to be completed, when she was not at the store. (*Id*. at 89.)

While Jackson argues that she was under the direct supervision of her District Manager, she nonetheless stated that the District Manager visited the store only once every month and stayed for a few minutes to a couple of hours at a time – not enough to direct the managerial tasks. (*Id*. at 228-30.) Therefore, because she was the only person running the store, the store could not have operated successfully without Jackson's handling of these managerial tasks.

### c.     Relative Freedom from Supervision

Relative freedom from supervision does not demand complete freedom from supervision. In *Grace*, the plaintiff's supervising District Manager typically visited the store once every two to three weeks. *Grace*, 637 F.3d at 517. The court also noted, apart from his supervision, which was not uncharacteristic for any retail operation, the district manager was not a "micro-manager who constantly was looking over [the manager's] shoulder." *Id*. The supervision of seventeen stores would hardly permit [the District Manager] to micro-manage all of them. *Id*.; *see also Thomas v. Speedway Super America LLC*, 506 F.3d 496, 504-509 (6th Cir. 2007) (court found it significant that plaintiff's District Manager was responsible for ten to twelve stores, as opposed to situations where a higher level manager was responsible for only a few stores).

Jackson was relatively free from supervision during the relevant time period. Jackson testified that her District Manager, Carrie Pollard, visited the store only once every month and would only stay for a few minutes to a couple of hours at a time. (Jackson Dep. at 228-30.) Family Dollar's records indicate that during the relevant time period, Jackson's District Manager oversaw seventeen stores, including Jackson's store, which spanned a territory of approximately 692 miles in Arizona. (DeBrocq Decl. ¶ 7.) Moreover, Jackson's testimony makes it clear that

her District Manager was not a micro-manager. Jackson interviewed and screened potential employees on her own, delegated tasks on her own for her whole store to complete, provided training to new hires, was responsible for grooming employees for potential promotions, and ordered merchandise and monitored inventory levels to achieve the best possible sales for her store. (Jackson Dep. at 86-89, 91-94, 107, 115-16, 150-51, 170-71.)

Though Jackson stated that she could not deviate from Family Dollar policies without District Manager approval and was in daily contact with Pollard through email and phone calls, this does not equate to exacting supervision. In *Grace*, the Fourth Circuit held that the plaintiff was relatively free from direct supervision, despite her being in contact with her District Manager by telephone and email, and being subject to company policies, procedures, and budgetary requirements, as this type of supervision "was not uncharacteristic for any retail operation." 637 F.3d at 517. The infrequency of Pollard's visits and the large number of stores she was responsible for supervising does not allow her to micro-manage each individual store. *See Grace*, 637 F.3d at 517; *Thomas*, 506 F.3d at 508.

### d. Relationship Between Salary and Wages Paid to Other Employees for the Kind of Nonexempt Work Performed by the Supervisor

To determine the relationship between a managerial salary and wages paid to nonmanagerial employees, the Fourth Circuit considered, first, whether the manager earned more, in absolute terms, than nonmanagerial employees and, second, whether the manager was a "profit center." *Grace*, 637 F.3d at 517. This second consideration asks whether the manager had the ability to influence the amount of her compensation. *Id.*

As to the first consideration, Jackson earned significantly higher amounts on an hourly basis than nonexempt workers. The record shows that of the seventeen nonexempt employees who worked at Jackson's store during the relevant time period, twelve made $6.75 per hour or

12

less and the highest paid nonexempt employee earned less than Jackson. (DeBrocq Decl. ¶ 9.) Even using the highest hourly wage for those employees whose wages changed over time, nonexempt employees received an average hourly wage of only $6.84 per hour. (*Id*.) In comparison, Family Dollar's records indicate that Jackson worked an average of 62.06 hours per week. (*Id*. at ¶ 6.) Jackson earned compensation, which when computed on an hourly basis, averaged between $8.86 and $9.67 per hour during the relevant time period. A review of these calculations reveals a significant difference in wages between Jackson and her nonexempt employees.

As to the second consideration, Jackson was a "profit center," in that she had the ability to influence the amount of compensation she received. *See Grace*, 637 F.3d at 517-18. Indeed, Jackson was responsible for the overall profitability of her Family Dollar store. (Jackson Dep. at 65, 170-71, 173.) Jackson was expected, as a Store Manager, to increase sales, reduce shrink, and stay within her allocated payroll budget. (*Id*. at 131-32, 171-73, 190.) While Jackson did not receive any bonuses during her seven months as a Store Manager, she was, in fact, eligible to receive one based on her store's profitability and whether she was employed when bonuses were paid. (DeBrocq Decl. ¶5.) In contrast, nonexempt employees were not eligible to receive bonuses. (*Id*.) Therefore, since Jackson had the ability to directly influence the amount of her compensation, this factor is satisfied.

     e.  **Frequency With Which the Employee Exercises Discretionary Power**

While this factor is no longer an explicit factor in the "primary duty" analysis under the current regulations, the fact that Jackson exercised discretion virtually every day and all day long in her capacity as store manager supports that her primary duty was management. Jackson decided how to assign and apportion work among herself and her employees (Jackson Dep. at

13

86-90, 231.); how to adjust the schedule (*Id*. at 164-66.); how to discipline employees (*Id*. at 68-69, 71-72, 85-86.); how to interview candidates (*Id*. at 91-97, 108, 115-16, 127, 157-60.); and how to make sure the store ran safely (*Id*. at 183-184, 194.); while at the same time satisfying customers. All of these tasks involved "discretionary acts inherent in being responsible for the successful operation of a retail store." *Grace*, 637 F.3d at 517. Moreover, the fact that Family Dollar maintains certain policies and procedures for the sake of consistency does not mean that Jackson failed to exercise discretion in enforcing these policies and procedures.[9]

> **4. Authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight**

Finally, the additional prong of the executive exemption test contained in the current regulations states that an exempt employee has authority to hire *or* fire other employees *or* his recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees are given particular weight. 29 C.F.R. § 541.100(a)(4). The DOL provides guidance with respect to whether an employee's recommendations satisfy this standard. Specifically, the "factors to be considered include, but are not limited to, whether it is part of the employee's job duties to make such suggestions and recommendations; the frequency with which such suggestions and recommendations are made or requested; and the frequency with which the employee's suggestions and recommendations are relied upon." 29 C.F.R. § 541.105. Importantly, the employee's recommendations "may still be deemed to have 'particular weight' even if a higher level manager's recommendation has more importance and even if the employee

---

[9] *See Murray v. Stuckey's, Inc.*, 50 F.3d 564, 570 (8th Cir. 1995) (standardized procedures and policies may circumscribe but do not eliminate discretion of on-site store manager); *Thomas v. Speedway Super America LLC*, 506 F.3d 496, 507 (6th Cir. 2007) (manager still exercised discretion on a daily basis even though store had standardized operating procedures); *Grace v. Family Dollar Stores, Inc.*, 637 F.3d 508 (4th Cir. 2011) (manager still exercised discretion even though she was subject to company policies and the company template for a store in the Family Dollar chain).

14

does not have the authority to make the ultimate decision as to the employee's change in status."
*Id*.

Jackson's deposition testimony establishes that she meets the additional prong of the executive exemption test contained in the current regulations, namely that her suggestions and recommendations as to the hiring and change of status of other employees were given particular weight. Jackson was actively involved in the interviewing and employee screening process. (Jackson Dep. at 91-94, 115-16.) Jackson testified that when screening and interviewing candidates, she would consider their work history, job stability, gaps in employment, and type of work the applicant had preciously done. (*Id*. at 91-92.) Jackson chose not to interview everyone who applied, and would forward candidates to her District Manager along with recommendations for which ones to move forward in the hiring process. (*Id*. at 91-94, 115-16.) Jackson therefore effectively controlled which candidates were presented for possible District Manager approval. Courts have recognized that a manager plays an important role in the hiring process when she has the ability to veto a potential hire by not presenting the applicant to her supervisor. *See Pollard v. GPM Invs., LLC*, No. 3:10-cv-115, 2011 U.S. Dist. LEXIS 24199 at *27 (E.D. Va. Mar. 10, 2011) (holding that managers "had sufficient input in the hiring, firing, and promotions to justify their exemptions" where the managers screened applicants and determined whether they would continue the application process).

In addition, Jackson's District Manager followed Jackson's hiring recommendations. Jackson affirmed that her District Manager relied on Jackson's evaluations of potential hires in order for the potential hires to receive an interview. (Jackson Dep. at 115-18.) Further, Jackson's District Manager relied on Jackson's interviews and recommendations for individuals that Jackson thought should be hired. (*Id*.) In fact, Jackson did not recall a single instance where

15

her District Manager disagreed with Jackson's recommendation to hire someone. (*Id.*) Therefore, while Jackson may not have had the ultimate decision making authority with respect to hiring, it is undisputable that she controlled the screening process and at least some of her recommendations as to hiring were closely followed, thereby satisfying the particular weight requirement.

## CONCLUSION

Looking at the facts in the light most favorable to the non-moving parry, the Court finds that Family Dollar has satisfied the DOL regulations qualifying Jackson as an exempt executive under the FLSA. No reasonable jury could find otherwise. Therefore, Family Dollar is entitled to judgment as a matter of law.

## ORDER

IT IS ORDERED that

(1) Defendant's Motion for Summary Judgment (Doc. No. 956) is GRANTED and Plaintiff Terri Jackson is dismissed;

(2) The Court finds that there is no just reason to delay finding of final judgment for Family Dollar with regard to Plaintiff Terri Jackson's claim against Family Dollar;

(3) The Clerk is directed to enter final judgment, pursuant to Rule 54(b), for Family Dollar with regard to Plaintiff Terri Jackson.

Signed: July 22, 2013

Graham C. Mullen
United States District Judge