IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:08MD1932-GCM

| | |
|---|---|
| IN RE FAMILY DOLLAR ) | |
| FLSA LITIGATION ) | |
| ) | |
| _____ ) | **ORDER** |
| ) | |
| *Concerning Jackson v. Family Dollar* ) | |
| *Stores* ) | |
| ) | |
| Case No. 3:08-cv-1939 ) | |
| _____ ) | |

**THIS MATTER** is before the Court on Defendant's Motion for Summary Judgment and Memorandum in Support (Doc. No. 917); Plaintiff's Response in Opposition (Doc. No. 944); and Defendant's Reply (Doc. No. 948). For the reasons set forth below, the motion is **GRANTED**.

## **FACTS**[1]

Plaintiff, Kimberly Szilagyi, was hired as a Store Manager for Family Dollar in April 2007.[2] (Doc. No. 917, Szilagyi Dep. at 37.) After two to three weeks of training at Store 4134,

---

[1] To the extent Plaintiff makes any factual assertions based on the decision in *Morgan v. Family Dollar Stores, Inc.*, the court will disregard such assertions. The court will also disregard exhibits based on the *Morgan* case. In *Grace v. Family Dollar Stores, Inc.*, the Fourth Circuit Court of Appeals rejected Ms. Grace's argument that the facts in *Morgan* and in her case were identical; similarly, this Court finds no basis to support the assumption that the facts between Plaintiff's case and the *Morgan* case are the same. *See Grace v. Family Dollar Stores, Inc.*, 637 F.3d 508 (4th Cir. 2011) (finding that potential variations between store size, store inventory, and the individual responsibilities of managers, as well as differences in managers' performance of exempt and nonexempt duties and the supervisory activity of district managers, precluded Plaintiff's argument that the facts in *Morgan* and in her case were identical).

[2] The Court notes that Plaintiff's declaration was prepared after Plaintiff's deposition and on many occasions directly contradicts her sworn testimony. Plaintiff cannot create a dispute about a fact contained in deposition testimony by referring to a subsequent affidavit of the deponent contradicting the deponent's prior testimony, for "it is well established that a genuine issue of fact is not created where the only issue of fact is to determine which of the two conflicting versions of a party's testimony is correct." *Erwin v. United States*, 591 F.3d 313, 325 n.7 (4th Cir. 2010) (internal quotation marks and alterations omitted) (quoting *Halperin v. Abacus Tec. Corp.*, 128 F.3d 191, 198 (4th Cir. 1997); *see also Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 341 (4th Cir. 2001); *Rohrbough v. Wyeth Labs.*, 916 F.2d 970, 975-76 (4th Cir. 1990); *Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984). To the extent that Plaintiff's deposition testimony and later affidavit are inconsistent, the Court will disregard the

1

Szilagyi became Store Manager of the Catalina, Arizona Store (Store 5827), where Szilagyi remained Store Manager at all times during the relevant time period for her claims.[3] (Doc. No. 917, Szilagyi Dep. at 38, 44 50, 63; DeBrocq Decl. ¶¶ 4-5.)

Family Dollar paid Szilagyi a weekly salary of $785 from April 29, 2007 to March 1, 2008. (DeBrocq Decl. ¶ 4.) Szilagyi worked an average of 66.8 hours per week as Store Manager. (*Id.* at ¶ 5.)

The record shows that of the seventeen nonexempt employees who worked at Szilagyi's store during the relevant time period, fourteen made $9.00 per hour or less. (*Id.* at ¶ 8.) Even using the highest hourly wages earned by employees whose wages changed over time, the hourly employees who worked in Szilagyi's store earned an average of $8.47 per hour during the relevant time period. (*Id.*) Family Dollar's records reflect that Szilagyi managed at least 80 employee hours 91% of the time during the relevant time period. (*Id.* at ¶ 7.)

Szilagyi contends that she devoted 90-95% of her time to performing nonexempt work, but also admits that it was at her own decision after determining that she was the most available person to do the task, and also that she was still responsible for running the store at the same time. (Szilagyi Dep. at 80-81, 89, 96-97, 167, 216, 228-29.) For example, Szilagyi admitted that even when she was performing non-managerial tasks in the store, she concurrently was responsible for the store, managing the store, and supervising her employees. (*Id*. at 176, 227-28.) Szilagyi also had the authority and ability to direct other employees to perform this nonexempt work. (*Id*. at 184.)

---

affidavit and rely on the testimony she gave in her deposition, where she was examined at length about her responsibilities as a manager of a Family Dollar store. *See Grace*, 637 F.3d at 513.

[3] Szilagyi filed her opt-in consent form February 21, 2008. Accordingly, February 21, 2005, or three years prior to her opt-in date, through the end of her employment in March of 2008, represents the longest possible relevant time period for Szilagyi's claims in this action.

Szilagyi was responsible for many tasks and duties as part of her job. Specifically, Szilagyi was responsible for: interviewing and screening employees and providing hiring recommendations; completing the hiring paperwork; training employees; training other managers on Family Dollar procedures and policies; handling requests for time off and occasions when employees failed to show up for work; supervising and directing employees' work; ensuring the store remained stocked; evaluating the work of her employees and recommending pay increases and promotions; counseling and disciplining employees when necessary, including recommending termination; maintaining the security of the store and guarding against theft; ensuring that the store stayed within the allocated payroll budget; and monitoring legal compliance measures with respect to hiring. (Szilagyi Dep. at 61-62, 67-69, 70-74, 81, 85-86, 89, 94-97, 101-03, 105-08, 114-16, 127, 129, 132-34, 135, 143, 146-47, 155-56, 163, 165-66, 167, 172, 176, 184, 187-89, 191-92, 194-95, 202-04, 217.)

Szilagyi testified that she determined whether a candidate should move forward in the hiring process. (*Id*. at 105-08, 162.) If Szilagyi did not believe that a candidate would be a good fit at the store, based on their past experience, availability, attitude, confidence, friendliness, energy level, amount of questions they asked about Family Dollar, whether they demonstrated a true interest in the job, and whether it appeared they "would be there for the long-term versus…just something for a paycheck until they [got] something better," then that candidate would not move forward in the hiring process. (*Id.* at 105-08.) Alternatively, if Szilagyi believed that the candidate should be hired, she either hired the candidate herself, or made a recommendation to her District Manager. (*Id*. at 129-30, 133, 146, 150.) Szilagyi testified that she hired Kisha Bitsuie, Leonard Denning, Barbara Alstrom, and Marcella Contreras on her own accord. (*Id*. at 129-30, 132, 146, 149-50.)

Szilagyi also provided recommendations regarding pay raises and promotion of employees to Assistant Store Manager. (*Id*. at 163, 165-66.) Szilagyi conducted annual performance evaluations of her associates and her ratings of the associates affected their ability to be promoted. (*Id*. at 82.) Based on her evaluation of Angelica Gomez's performance and her belief that Gomez was "a great employee" who could handle the job, Szilagyi recommended that she be promoted to a management position, and the District Manager followed this recommendation. (*Id*. at 163-64.)

In addition, Szilagyi took responsibility for employee misconduct and disciplined them accordingly. (*Id*. at 61-65, 195-96, 198.) For example, Szilagyi completed a Performance Improvement Action Plan on Angelica Gomez for punching in incorrectly. (*Id*. at 61-65.) Szilagyi also completed Performance Improvement Action Plans for Kisha Bitsuie for cash register shortages and tardiness. (*Id*. at 67-69.) Additionally, Szilagyi occasionally noted on former employees' Personnel Action Form that they were not eligible for re-hire**.** (*Id*. at 195-96, 198.)

As Store Manager, Szilagyi reported to a District Manager. Szilagyi testified that her District Manager, Carrie Pollard, initially visited the store only once a month, but later the visits became more "sporadic" and Pollard would sometimes not visit the store for months. (*Id*. at 49-50.) Family Dollar's records indicate that during the relevant time period, Szilagyi's District Manager oversaw fifteen stores throughout Arizona, spanning a territory of approximately 228 miles. (DeBrocq Decl. ¶ 6.)

## **STANDARD OF REVIEW**

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party always bears the initial burden of "informing the district court of the basis for its motion," and identifying the matter "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Once the movant has met the initial burden, "the non-moving party 'may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.'" *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)). This is particularly important where the nonmoving party bears the burden of proof. *Hughes*, 48 F.3d at 1381. A genuine issue for trial exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id*. at 249-50. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict.

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id*. at 248. "The determination of whether an employee falls within the scope of a FLSA exemption is ultimately a legal question," *Walton v. Greenbrier Ford, Inc.*, 370 F.3d 446, 450 (4th Cir. 2004), and the Fourth Circuit has repeatedly affirmed the grant of summary judgment where the facts demonstrate that an employee is exempt. *See, e.g., Grace v. Family Dollar Stores, Inc.*, 637 F. 3d 508 (4th Cir. 2011) (affirming grant of summary judgment and holding that Family Dollar Store Manager was exempt executive); *Darveau v. Detecon, Inc.*, 515 F.3d 334 (4th Cir. 2008); *Jones v. Virginia Oil Co., Inc.*, 69 Fed. Appx. 633 (4th Cir. 2003); *Smith v. First Union National Bank*, 202 F.3d 234 (4th Cir. 2000).

5

**DISCUSSION**

The Fair Labor Standards Act ("FLSA") requires that an employee receive overtime pay if he or she works more than forty hours a week. 29 U.S.C. § 207(a)(1). The FLSA, however, exempts from this requirement "any employee employed in a bona fide executive…capacity." 29 U.S.C. § 213(a)(1). The Department of Labor ("DOL") has promulgated regulations which further describe and interpret the scope of this exemption.

The current regulations provide that an employee qualifies as an executive if: (1) she is compensated on a salary basis at a rate of at least $455 per week; (2) her primary duty is management of the enterprise; (3) she customarily and regularly directs the work of two or more other employees; and (4) she has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight. 29 C.F.R. § 541.100(a) (2004).

Szilagyi concedes in her Response that she is not challenging the first or third tests, thus the only tests at issue are (1) whether Szilagyi's primary duty is management of the enterprise and (2) whether she has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight. The DOL has also promulgated additional regulations which further describe and define these tests; these additional regulations are discussed below. In light of these regulations, Szilagyi qualifies as an exempt executive.

**1.      Family Dollar Satisfies the Primary Duty Test**

The regulations provide guidance as to how an employee's primary duty may be determined.[4] The regulations instruct that the determination should be "based on all the facts in

---
[4] The Court finds Szilagyi's argument that she was merely a "working foreman" unavailing. The current regulations state that a "*manager in a retail establishment*" can "supervise employees and serve customers at the same time

a particular case." 29 C.F.R. § 541.700(a). The regulations set forth, but are not limited to, four factors to consider in this analysis: (1) the amount of time spent in the performance of managerial duties; (2) the relative importance of the managerial duties as compared with other types of duties; (3) the relative freedom from supervision; and (4) the relationship between the manager's salary and the wages paid to other employees for the kind of nonexempt work performed by the supervisor. (*Id.*)

Upon consideration of the factors identified for determining whether Szilagyi's primary duty was management, the Court concludes that the factors are readily satisfied.

### a. The Amount of Time Spent in Performance of Managerial Duties

The regulations provide a list of "management" activities, which include, but are not limited to:

> Interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing their work, maintaining their production or sales records for use in supervision or control; appraising their productivity and efficiency for the purpose of recommending promotions or other changes in their status; handling their complaints and grievances and disciplining them when necessary; planning the work; determining the type of materials, supplies, machinery or tools to be used or merchandise to be bought, stocked, and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety of the [employees] and the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.[5]

29 C.F.R. § 541.102.

---

without losing the exemption." 29 C.F.R. § 541.106(b) (emphasis added). Section 29 C.F.R. § 541.106(c) states "[i]n contrast, " a "working supervisor" who performs "nonexempt work *on the production line in a manufacturing plant* does not become exempt" merely by occasionally directing the work of other nonexempt employees on the "*production line*." (emphasis added).

[5] An employee need not perform all management duties listed in the regulations, or evenly regularly perform such duties, in order to be considered an exempt executive. *See Aguirre v. SBC Communs., Inc.*, 2007 U.S. Dist. Lexis 72666, 63-62 (S.D. Tex. Sept. 30, 2007) (finding that "plaintiffs' 'primary duty' for purposes of the executive exemption was 'management,' despite the fact that the plaintiffs did not perform other 'managerial' duties listed in Section 541.102.").

Szilagyi explicitly testified that she performed *almost every one* of these management activities as a Family Dollar Store Manager.[6] For example, Szilagyi interviewed and screened potential employees and provided hiring recommendations (Szilagyi Dep. at 105-08, 129, 132-34, 146-47, 163, 165-66.); provided training to her employees on Family Dollar benefits, policies and procedures (*Id*. at 68-69, 135, 172, 187-89.); assigned employees to a schedule and set their individual hours of work including having to adjust the schedule if employees needed or requested time off (*Id*. at 89, 94-97, 202-04.); and directed and supervised her employees' work. (*Id*. at 70-74, 85-86, 167, 172, 176, 184.) In addition, Szilagyi evaluated the work of her employees for the purpose of recommending promotions (*Id*. at 102-03.); and disciplined employees when necessary by providing verbal coaching and discipline, then if she felt further discipline was warranted, could make recommendations to her District Manager. (*Id*. at 61-62, 67-69, 81, 101-102, 166-67, 191, 194-95.) Furthermore, Szilagyi was responsible for the safety and security of the store (*Id*. at 191-92.); making sure the store was adequately stocked (*Id.* at 217.); controlling and staying within the allocated payroll budget (*Id*. at 97, 192.); and monitoring legal compliance measures with respect to hiring, such as completing I-9 paperwork. (*Id*. at 116.)

Szilagyi cannot overcome the exemption by claiming that she spent the majority of her time performing non-managerial duties. The regulations state that an employee who spends more than fifty percent of his or her time performing managerial work will typically satisfy the primary duty requirement. 29 C.F.R. § 541.700(b). The regulations,

---

[6] The fact that the Assistant Managers can perform the same tasks as Szilagyi does not render her tasks and duties any less managerial. Courts have consistently held that the fact that a non-exempt employee may sometimes perform exempt duties does not make these duties any less exempt/managerial. *See Baldwin v. Trailer Inns., Inc.*, 266 F.3d 1104, 1115 (9th Cir. 2001) ("[t]hat the [non-exempt] assistant managers may have performed some managerial tasks does not render the tasks non-exempt.").

8

however, also emphasize that "time alone…is not the sole test" and that exempt executives are not required to spend more than fifty percent of their time performing exempt work if other factors support the conclusion that management is their primary duty.[7] *Id.* In *Grace*, the Fourth Circuit explained that "[t]here is no per se rule that once the amount of time spent on manual labor approaches a certain percentage, satisfaction of this factor is precluded as a matter of law." 637 F.3d 508, 515 (4th Cir. 2011).

The regulations also specifically address the concept of concurrent duties. 29 C.F.R. § 541.106. Concurrent performance, or multi-tasking, of exempt and nonexempt work is explicitly recognized as a managerial duty by the DOL's regulations. *Id.*; *see also* 29 U.S.C. § 213(a)(1).[8] "It is misleading simply to add up the time that [Plaintiff] spent unloading trucks, stocking inventory, running cash registers, or sweeping floors and conclude thereby that she was merely a clerk and not a manager." *Grace*, F.3d at 516.

Szilagyi was ultimately responsible for the performance of the store and remained the highest ranking employee in the store, even while performing nonexempt work. (Szilagyi Dep. at 189, 227-29.) Thus, Szilagyi "remain[ed] responsible for the success or failure of the business operations under [her] management while performing the nonexempt work." 29 C.F.R. § 541.106. In other words, Szilagyi performed her nonexempt tasks in the context of her overall responsibility to ensure the store was profitable. *See Grace*, 637 F.3d at 516.

---

[7] The Court disagrees with Szilagyi's contention that failure to meet the 50 percent threshold means that an employee fails to satisfy the primary duty requirement. The Fourth Circuit clarified the application of the 50 percent "rule of thumb" by stating that, "[i]t is clear from this language that primary duty is meant to be assessed by the totality of the circumstances." *Counts v. S.C. Elec. & Gas Co.*, 317 F.3d 453, 456 (4th Cir. 2003). Szilagyi's reliance on *Clark v. J.M. Benson Co., Inc.*, 789 F.2d 282 (4th Cir. 1986) is misplaced because the court held that it would apply the 50 percent rule to that specific case. Additionally, to the extent that Szilagyi relies on *Shockley v. City of Newport News*, 997 F.2d 18 (4th Cir. 1993), it is also misplaced because that case involved police officers, not retail store managers, who were not paid on a salary basis – something that is not at issue here.

[8] The FLSA recognizes the nature of retail business and states that "an employee of a retail or service establishment shall not be excluded from the definition of an employee employed in a bona fide executive or administrative capacity because of the number of hours in his work week which he devotes to activities not directly or closely related to the performance of executive or administrative activities." 29 U.S.C. § 213(a)(1).

9

In *Grace*, the Fourth Circuit found the plaintiff "was performing management duties whenever she was in the store, even though she also devoted most of her time [99%] to doing the mundane physical activities necessary for its successful operation." 637 F.3d at 517. Similar to the plaintiff in *Grace*, even though Szilagyi contends that she devoted 90-95% of her time to performing nonexempt work, she was also the person responsible for running the store and performed her nonexempt tasks concurrently with her exempt managerial work. (Szilagyi Dep. at 189, 227-29.) For example, Szilagyi maintained responsibility for the supervision of her employees and the service they provided to her customers, even as she was stocking shelves or sweeping the floor. (*Id*. at 228.) Szilagyi also handled customer complaints while performing non-managerial work. (*Id*. at 176.) Moreover, as contemplated by 29 C.F.R. § 541.700(c), Szilagyi had the discretion and flexibility to choose what tasks to perform herself and what tasks to delegate to other employees. (*Id*. at 184, 229.) Thus, Szilagyi had a choice of which duties to perform, in contrast to a nonexempt employee who would simply perform the task to which he or she was assigned. (*Id*.) Szilagyi also had the authority and the ability to direct other employees to perform this nonexempt work. (*Id.*)

While Szilagyi argues that management was not her primary duty because she spent the majority of her time engaged in manual labor, the regulations and the Court in *Grace* clarify that performance of these duties, in conjunction with overall supervision and management of the store, is not contrary to the application of the exemption. Thus, Szilagyi's own testimony regarding her duties and tasks reflect that they were undeniably managerial in nature and easily meet the requirements of the executive exemption. *See Grace*, 637 F.3d at 508.

### b. The Relative Importance of the Managerial Duties as Compared with Other Types of Duties

Szilagyi's managerial duties were more important than the other duties she performed because they were critical to the operation of the store. In *Grace*, the plaintiff's managerial tasks, which included filling out paperwork, addressing customer complaints, working with employees on their schedules, and collecting cash, were critical to the operation of the store, as there was "*no one else at the site to direct these actions*." *Grace*, 637 F.3d at 517 (emphasis in original). Similarly, Szilagyi's managerial tasks, which included interviewing and employee screening (Szilagyi Dep. at 105-08, 129, 132-34, 146-47, 163, 165-66.), training (*Id.* at 68-69, 135, 172, 187-89.), store security (*Id.* at 191-92.), customer complaints (*Id.* at 176.), scheduling (*Id.* at 89, 94-97, 202-04.), and the overall supervision and direction of her employees (*Id.* at 70-74, 85-86, 167, 172, 176, 184.), were critical to the operation of the store. In fact, Szilagyi's managerial duties were so important that she would provide lists of duties for her associates on days in which she would not be in the store. (*Id.* at 70-72, 72-74, 85-86.)

While Szilagyi argues that she was under the direct supervision of her District Manager, she nonetheless stated that the District Manager visited the store only once every month, or sometimes even once every few months, and stayed for an hour or less at a time – not enough to direct the managerial tasks. (*Id.* at 49-51.) Therefore, because she was the only person running the store, the store could not have operated successfully without Szilagyi's handling of these managerial tasks.

### c. Relative Freedom from Supervision

Relative freedom from supervision does not demand complete freedom from supervision. In *Grace*, the plaintiff's supervising District Manager typically visited the store once every two to three weeks. *Grace*, 637 F.3d at 517. The court also noted, apart from his supervision, which

11

was not uncharacteristic for any retail operation, the district manager was not a "micro-manager who constantly was looking over [the manager's] shoulder." *Id*. The supervision of seventeen stores would hardly permit [the District Manager] to micro-manage all of them. *Id*.; *see also Thomas v. Speedway Super America LLC*, 506 F.3d 496, 504-509 (6th Cir. 2007) (court found it significant that plaintiff's District Manager was responsible for ten to twelve stores, as opposed to situations where a higher level manager was responsible for only a few stores).

Szilagyi was relatively free from supervision during the relevant time period. Szilagyi testified that her District Manager, Carrie Pollard, initially visited the store only once a month, but later the visits became more "sporadic" and Pollard would sometimes not visit the store for months at a time. (Szilagyi Dep. at 49-50.) Moreover, Family Dollar's records indicate that during the relevant time period, Szilagyi's District Manager oversaw fifteen stores, including Szilagyi's store, spanning a territory of approximately 228 miles. (DeBrocq Decl. ¶ 6.) Though Szilagyi was in contact with Pollard through regular phone calls, this does not equate to exacting supervision. In *Grace*, the Fourth Circuit held that the plaintiff was relatively free from direct supervision, despite her being in contact with her District Manager by telephone and email, and being subject to company policies, procedures, and budgetary requirements, as this type of supervision "was not uncharacteristic for any retail operation." 637 F.3d at 517. The infrequency of Pollard's visits and the large number of stores she was responsible for supervising does not allow her to micro-manage each individual store. *See Grace*, 637 F.3d at 517; *Thomas*, 506 F.3d at 508.

        **d.**     **Relationship Between Salary and Wages Paid to Other Employees for the Kind of Nonexempt Work Performed by the Supervisor**

To determine the relationship between a managerial salary and wages paid to nonmanagerial employees, the Fourth Circuit considered, first, whether the manager earned

12

more, in absolute terms, than nonmanagerial employees and, second, whether the manager was a "profit center." *Grace*, 637 F.3d at 517. This second consideration asks whether the manager had the ability to influence the amount of her compensation. *Id.*

As to the first consideration, Szilagyi earned significantly higher amounts on an hourly basis than nonexempt workers. The record shows that of the seventeen nonexempt employees who worked at Szilagyi's store during the relevant time period, fourteen made $9.00 per hour or less. (DeBrocq Decl. ¶ 8.) Even using the highest hourly wage for those employees whose wages changed over time, nonexempt employees received an average hourly wage of only $8.47 per hour. (*Id.*) In comparison, Family Dollar's records indicate that Szilagyi worked an average of 66.8 hours per week. (*Id.* at ¶ 5.) Szilagyi earned compensation, which when computed on an hourly basis, averaged around $11.75 per hour during the relevant time period. (Doc. No. 917, *Id.* at ¶¶ 4-5.) A review of these calculations reveals a significant difference in wages between Szilagyi and her nonexempt employees.

As to the second consideration, Szilagyi was a "profit center," her bonuses depended on her store's profitability and were directly tied to her performance in terms of sales, shrink, and passing inventory. (Szilagyi Dep. at 97, 187-189.); *See Grace*, 637 F.3d at 517. Therefore, since Szilagyi had the ability to directly influence her own compensation, this factor is satisfied.

    e.  **Frequency With Which the Employee Exercises Discretionary Power**

While this factor is no longer an explicit factor in the "primary duty" analysis under the current regulations, the fact that Szilagyi exercised discretion virtually every day and all day long in her capacity as store manager supports that her primary duty was management. Szilagyi decided how to assign and apportion work among herself and her employees (Szilagyi Dep. at 184, 229.), how to adjust the schedule (*Id.* at 89, 94-97, 202-04.), how to discipline employees

(*Id*. at 61-62, 67-69, 81, 101-02, 166-67, 191, 194-95.), how to interview and screen candidates (*Id*. at 105-08, 129, 132-34, 146-47, 163, 165-66.), and how to make sure the store ran safely (*Id*. at 191-92.); while at the same time satisfying customers and handling their complaints (*Id.* at 176.). All of these tasks involved "discretionary acts inherent in being responsible for the successful operation of a retail store." *Grace*, 637 F.3d at 517. Moreover, the fact that Family Dollar maintains certain policies and procedures for the sake of consistency does not mean that Szilagyi failed to exercise discretion in enforcing these policies and procedures.[9]

### 2. Authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight

Finally, the additional prong of the executive exemption test contained in the current regulations states that an exempt employee has authority to hire *or* fire other employees *or* his recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees are given particular weight. 29 C.F.R. § 541.100(a)(4). The DOL provides guidance with respect to whether an employee's recommendations satisfy this standard. Specifically, the "factors to be considered include, but are not limited to, whether it is part of the employee's job duties to make such suggestions and recommendations; the frequency with which such suggestions and recommendations are made or requested; and the frequency with which the employee's suggestions and recommendations are relied upon." 29 C.F.R. § 541.105. Importantly, the employee's recommendations "may still be deemed to have 'particular weight' even if a higher level manager's recommendation has more importance and even if the employee

---

[9] *See Murray v. Stuckey's, Inc.*, 50 F.3d 564, 570 (8th Cir. 1995) (standardized procedures and policies may circumscribe but do not eliminate discretion of on-site store manager); *Thomas v. Speedway Super America LLC*, 506 F.3d 496, 507 (6th Cir. 2007) (manager still exercised discretion on a daily basis even though store had standardized operating procedures); *Grace v. Family Dollar Stores, Inc.*, 637 F.3d 508 (4th Cir. 2011) (manager still exercised discretion even though she was subject to company policies and the company template for a store in the Family Dollar chain).

14

does not have the authority to make the ultimate decision as to the employee's change in status."
*Id*.

Szilagyi's deposition testimony establishes that she meets the additional prong of the executive exemption test contained in the current regulations, namely that her suggestions and recommendations as to the hiring and change of status of other employees were given particular weight. Szilagyi was actively involved in the interviewing and employee screening process, even hiring several employees, including Kisha Bitsuie, Leonard Denning, Barbara Alstrom, and Marcella Contreras. (Szilagyi Dep. at 129-30, 132, 146, 149-50.) Pollard was merely notified by phone of these hires. (*Id.* at 146-47.) If Szilagyi did not believe that a candidate would be a good fit at the store, she did not include that candidate in the group of candidates to move forward in the hiring process. (*Id*. at 105-08.) Alternatively, if Szilagyi believed that the candidate should be hired, she made that recommendation to her District Manager. (*Id*. at 129-30, 133, 146, 150.) Szilagyi therefore effectively controlled which candidates were presented for possible District Manager approval. Courts have recognized that a manager plays an important role in the hiring process when she has the ability to veto a potential hire by not presenting the applicant to her supervisor. *See Pollard v. GPM Invs., LLC*, No. 3:10-cv-115, 2011 U.S. Dist. LEXIS 24199 at *27 (E.D. Va. Mar. 10, 2011) (holding that managers "had sufficient input in the hiring, firing, and promotions to justify their exemptions" where the managers screened applicants and determined whether they would continue in their application process).

Similarly, Szilagyi's District Manager also closely followed her recommendations with respect to pay raises and promotions. (*Id*. at 163, 165-66.) Szilagyi testified that based on her evaluation of Angelica Gomez's performance and her belief that she could handle the job, Szilagyi recommended that Gomez be promoted to Assistant Store Manager and Szilagyi's

15

District Manager followed this recommendation. (*Id*.) Szilagyi also attributes the fact that she never had to terminate someone while in her position as Store Manager, or even recommend someone for termination, to her good discretion in choosing the right job candidate for the job. (*Id*. at 174.)

Therefore, while Szilagyi may not have had the ultimate decision making authority with respect to hiring, it is undisputable that she controlled the screening process and at least some of her recommendations as to hiring and promotion were closely followed, thereby satisfying the particular weight requirement.

## **CONCLUSION**

Looking at the facts in the light most favorable to the non-moving parry, the Court finds that Family Dollar has satisfied the DOL regulations qualifying Szilagyi as an exempt executive under the FLSA. No reasonable jury could find otherwise. Therefore, Family Dollar is entitled to judgment as a matter of law.

## **ORDER**

IT IS ORDERED that

(1) Defendant's Motion for Summary Judgment (Doc. No. 917) is GRANTED and Plaintiff Dayna Szilagyi is dismissed;

(2) The Court finds that there is no just reason to delay finding of final judgment for Family Dollar with regard to Plaintiff Dayna Szilagyi's claim against Family Dollar;

(3) The Clerk is directed to enter final judgment, pursuant to Rule 54(b), for Family Dollar with regard to Plaintiff Dayna Szilagyi.

Signed: January 23, 2014

Graham C. Mullen
United States District Judge