IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:08-md-01932-GCM

| | |
|---|---|
| IN RE FAMILY DOLLAR FLSA LITIGATION | )<br>)<br>)<br>) **ORDER**<br>) |
| *Concerning Moody v. Family Dollar Stores* | )<br>)<br>)<br>) |
| Case No. 3:08-cv-1935 | )<br>) |

**THIS MATTER** is before the Court on Defendant's Motion for Summary Judgment and Memorandum in Support (Doc. No. 1078); Plaintiff's Response in Opposition (Doc. No. 1111); and Defendant's Reply (Doc. No. 1117). For the reasons set forth below, the motion is **GRANTED**.

## **FACTS**[1]

Plaintiff, Catherine Corrigan, began working for Family Dollar in 2007 as an Assistant Store Manager. (Doc. No. 1078, Corrigan Dep. at 33-37, 71.) In April of 2008, Corrigan was promoted to Store Manager of the Orlando, Florida Store (Store 7708), where Corrigan remained

---

[1] To the extent Plaintiff makes any factual assertions based on the decision in *Morgan v. Family Dollar Stores, Inc.*, the court will disregard such assertions. The court will also disregard exhibits based on the *Morgan* case. In *Grace v. Family Dollar Stores, Inc.*, the Fourth Circuit Court of Appeals rejected Ms. Grace's argument that the facts in *Morgan* and in her case were identical; similarly, this Court finds no basis to support the assumption that the facts between Plaintiff's case and the *Morgan* case are the same. *See Grace v. Family Dollar Stores, Inc.*, 637 F.3d 508 (4th Cir. 2011) (finding that potential variations between store size, store inventory, and the individual responsibilities of managers, as well as differences in managers' performance of exempt and nonexempt duties and the supervisory activity of district managers, precluded Plaintiff's argument that the facts in *Morgan* and in her case were identical).

Store Manager at all times during the relevant time period for her claims.[2] (Doc. No. 1078, Corrigan Dep. at 35-37, 52; Hartsell Decl. ¶ 4.)

Family Dollar paid Corrigan a weekly salary of $700.00 from April 13, 2008 to August 30, 2008, $707.00 from August 31, 2008 to September 12, 2009, and $725.00 from September 13, 2009 until the end of her employment on August 10, 2010. (Hartsell Decl. ¶ 4.) Corrigan also received two bonuses during the relevant time period for her claim. On October 17, 2008, she received a bonus of $708.39; and on October 16, 2009, she received a bonus of $2,477.00. (*Id*. at ¶ 5; Corrigan Dep. at 64.) Nonexempt employees were not eligible for these bonuses, which were tied to the store's performance in terms of sales, inventory, and shrink—in other words, overall profitability. (Corrigan Dep. at 64-67; Hartsell Decl. ¶ 5.) Corrigan worked an average of 58.01 hours per week as Store Manager. (Hartsell Decl. ¶ 6.)

The record shows that of the twenty-nine nonexempt employees who worked at Corrigan's store during the relevant time period, twenty-five made $8.50 per hour or less, and the highest paid nonexempt employee earned $9.30 per hour. (*Id*. at ¶ 9.) Even using the highest hourly wages earned by employees whose wages changed over time, the hourly employees who worked in Corrigan's store earned an average of $7.64 per hour during the relevant time period. (*Id*.) Family Dollar's records reflect that Corrigan managed at least 80 employee hours 100% of the time during the relevant time period. (*Id.*)

Corrigan contends that she devoted 60-70% of her time to performing nonexempt work, but also admits that she was "the highest ranking employee" in her store as Store Manager, and was responsible for the store's performance and profitability at all times. (Corrigan Dep. at 55-

---

[2] Corrigan filed her opt-in consent form on August 24, 2010, which results in a potential statute of limitations period dating back to August 24, 2007. However, Corrigan did not become Store Manager until April 2008. Accordingly, the period from April 2008 to the end of her employment with Family Dollar on August 10, 2010 represents the longest possible relevant time period for Corrigan's claims in this action.

57, 70, 195-97, 122-26.) For example, Corrigan admitted that even when she was performing non-managerial tasks in the store, she concurrently was responsible for supervising and directing her employees, dealing with theft and shoplifters, and handling customer issues. (*Id*. at 132; Whittington Decl. ¶¶ 14, 25.) Corrigan also had the authority and ability to direct other employees to perform this nonexempt work. (Whittington Decl. ¶¶ 6, 10-11.) Further, when applying for jobs after being terminated by Family Dollar in August 2010, Corrigan wrote on her resume that as Store Manager at Family Dollar, she was "responsible for total store operations, inventory and cash control, employee hiring, training, and retention." (Doc. No. 1079-4.)

Corrigan was responsible for many tasks and duties as part of her job. Specifically, Corrigan was responsible for: interviewing and screening employees and providing hiring recommendations; training employees; ensuring that Family Dollar procedures were being followed; scheduling employees; handling requests for time off and occasions when employees failed to show up for work; supervising and directing employees' work; maintaining financial and sales paperwork and handling the bank deposits; handling customer complaints; evaluating the work of her employees and recommending pay increases and promotions; counseling and disciplining employees when necessary, including recommending termination; handling employee complaints and conflicts; maintaining the security of the store and guarding against theft; ensuring that the store stayed within the allocated payroll budget; and monitoring legal compliance measures with respect to hiring. (Corrigan Dep. at 48-49, 79-80, 91-92, 130, 147-48, 162-63, 166, 180-81, 195-97, 201-05, 213, 216-20, 248-49, 257-60, 262, 265-67; Whittington Decl. ¶¶ 4-9, 11-15, 17-18, 21, 23, 25.)

Corrigan played a particularly important role in the interviewing and screening process because she determined whether a candidate should move forward in the hiring process.

(Corrigan Dep. at 213.) If Corrigan believed the candidate should be hired, she made that recommendation to her District Manager, and she even had the authority to hire cashiers on her own . (*Id*. at 216-18.) Corrigan also testified that she used her judgment in providing recommendations regarding the promotion of employees to Assistant Store Manager. (*Id.* at 218-20, 223-25.) Based on her evaluation of their performance and her belief that they were a good fit for the job, Corrigan recommended certain employees, such as Max Dufty, "Brittany," and "Val," be promoted to Assistant Store Managers, and as such, her District Manager followed her recommendations and promoted the named employees. (*Id*.)

Further, Corrigan's District Manager generally accepted Corrigan's recommendations to terminate employees, and Corrigan was then responsible for terminating employees after consulting with her District Manager. (*Id.* 262-65.) Corrigan also used her judgment in disciplining her employees, and would both write up her employees for unexcused absences and issue performance improvement action plans. (*Id.* at 257-62; Whittington Decl. ¶ 9.)

As Store Manager, Corrigan did report to a District Manager. However, her District Manager did not work in her store and was not present on a daily basis. (Corrigan Dep. at 139-42.) Mike Brean and Kim O'Brien were Corrigan's District Managers during the relevant time period. Brean was Corrigan's District Manager from the time she began working at Store 7708, until June 2010 when O'Brien took over as District Manager. Family Dollar's records indicate that during the relevant time period, Corrigan's District Managers were responsible for 32 stores throughout Florida, spanning a territory of approximately 27.4 miles from north to south and 14.5 miles from east to west. (Hartsell Decl. ¶ 7.) Corrigan testified that at most, Brean visited her store only once per week, and that the visit usually occurred on a Saturday. (Corrigan Dep.

4

at 142.) Corrigan also testified that O'Brien did not visit her store a single time from June 2010 until Corrigan's termination on August 10, 2010. (*Id.* at 185-86.)

## **STANDARD OF REVIEW**

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party always bears the initial burden of "informing the district court of the basis for its motion," and identifying the matter "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Once the movant has met the initial burden, "the non-moving party 'may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.'" *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)). This is particularly important where the nonmoving party bears the burden of proof. *Hughes*, 48 F.3d at 1381. A genuine issue for trial exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id*. at 249-50. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict.

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id*. at 248. "The determination of whether an employee falls within the scope of a FLSA exemption is ultimately a legal question," *Walton v. Greenbrier Ford, Inc.*, 370 F.3d 446, 450 (4th Cir. 2004), and the Fourth Circuit has repeatedly affirmed the grant of summary judgment where the facts demonstrate that an

5

employee is exempt. *See, e.g., Grace v. Family Dollar Stores, Inc.*, 637 F. 3d 508 (4th Cir. 2011) (affirming grant of summary judgment and holding that Family Dollar Store Manager was exempt executive); *Darveau v. Detecon, Inc.*, 515 F.3d 334 (4th Cir. 2008); *Jones v. Virginia Oil Co., Inc.*, 69 Fed. Appx. 633 (4th Cir. 2003); *Smith v. First Union National Bank*, 202 F.3d 234 (4th Cir. 2000).

## **DISCUSSION**

The Fair Labor Standards Act ("FLSA") requires that an employee receive overtime pay if he or she works more than forty hours a week. 29 U.S.C. § 207(a)(1). The FLSA, however, exempts from this requirement "any employee employed in a bona fide executive…capacity." 29 U.S.C. § 213(a)(1). The Department of Labor ("DOL") has promulgated regulations which further describe and interpret the scope of this exemption.

The current regulations provide that an employee qualifies as an executive if: (1) she is compensated on a salary basis at a rate of at least $455 per week; (2) her primary duty is management of the enterprise; (3) she customarily and regularly directs the work of two or more other employees; and (4) she has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.[3] 29 C.F.R. § 541.100(a) (2004).

Corrigan concedes in her Response that she is not challenging the first or third tests, thus the only tests at issue are (1) whether Corrigan's primary duty is management of the enterprise and (2) whether she has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight. The DOL has also promulgated additional

---

[3] Plaintiff seems to incorrectly contend that "frequency of discretion" is an independent "primary duty factor." *See* (Doc. No. 111, Pl.'s Resp. at 16.)

6

regulations which further describe and define these tests; these additional regulations are discussed below. In light of these regulations, Corrigan qualifies as an exempt executive.

1. **Family Dollar Satisfies the Primary Duty Test**

The regulations provide guidance as to how an employee's primary duty may be determined.[4] The regulations instruct that the determination should be "based on all the facts in a particular case." 29 C.F.R. § 541.700(a). The regulations set forth, but are not limited to, four factors to consider in this analysis: (1) the amount of time spent in the performance of managerial duties; (2) the relative importance of the managerial duties as compared with other types of duties; (3) the relative freedom from supervision; and (4) the relationship between the manager's salary and the wages paid to other employees for the kind of nonexempt work performed by the supervisor. (*Id.*)

Upon consideration of the factors identified for determining whether Corrigan's primary duty was management, the Court concludes that the factors are readily satisfied.

a. **The Amount of Time Spent in Performance of Managerial Duties**

The regulations provide a list of "management" activities, which include, but are not limited to:

> Interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing their work, maintaining their production or sales records for use in supervision or control; appraising their productivity and efficiency for the purpose of recommending promotions or other changes in their status; handling their complaints and grievances and disciplining them when necessary; planning the work; determining the type of materials, supplies, machinery or tools to be used or merchandise to be bought, stocked, and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety of the [employees] and the property; planning and

---

[4] The Court finds Corrigan's argument that she was merely a "working foreman" unavailing. The current regulations state that a "*manager in a retail establishment*" can "supervise employees and serve customers at the same time without losing the exemption." 29 C.F.R. § 541.106(b) (emphasis added). Section 29 C.F.R. § 541.106(c) states "[i]n contrast, " a "working supervisor" who performs "nonexempt work *on the production line in a manufacturing plant* does not become exempt" merely by occasionally directing the work of other nonexempt employees on the "*production line*." (emphasis added).

controlling the budget; and monitoring or implementing legal compliance measures.[5]

29 C.F.R. § 541.102.

Corrigan testified that she performed a majority of these management activities as Family Dollar Store Manager.[6] For example, Corrigan interviewed and screened potential employees and provided hiring recommendations (Corrigan Dep. at 213, 216-18.); provided training to her employees on Family Dollar benefits, policies and procedures (*Id*. at 146-49; Whittington Decl. ¶ 6.); assigned employees to a schedule and set their individual hours of work including having to adjust the schedule if employees needed or requested time off (Corrigan Dep. at 201-05, 267.); directed and supervised her employees' work (*Id*. at 130; Whittington Decl. ¶¶ 4-8, 23-25.); and was responsible for making merchandise refund decisions (Corrigan Dep. at 206-08.) In addition, Corrigan maintained and was responsible for certain sales and financial records, as well as bank deposits (Corrigan Dep. at 159, 162-63, 166.); evaluated the work of her employees for the purpose of recommending promotions (*Id.* at 79-85, 91-94, 218-20, 223-25; Whittington Decl. ¶ 8.); and disciplined employees when necessary by providing verbal coaching and discipline, then if she felt further discipline was warranted, made recommendations to her District Manager, which her District Manager followed. (Corrigan Dep. at 257-62, 264-65; Whittington Decl. ¶ 9.) Furthermore, Corrigan was

---

[5] An employee need not perform all management duties listed in the regulations, or evenly regularly perform such duties, in order to be considered an exempt executive. *See Aguirre v. SBC Communs., Inc.*, 2007 U.S. Dist. Lexis 72666, 63-62 (S.D. Tex. Sept. 30, 2007) (finding that "plaintiffs' 'primary duty' for purposes of the executive exemption was 'management,' despite the fact that the plaintiffs did not perform other 'managerial' duties listed in Section 541.102.").

[6] The fact that the Assistant Managers can perform the same tasks as Corrigan does not render her tasks and duties any less managerial. Courts have consistently held that the fact that a non-exempt employee may sometimes perform exempt duties does not make these duties any less exempt/managerial. *See Baldwin v. Trailer Inns., Inc.*, 266 F.3d 1104, 1115 (9th Cir. 2001) ("[t]hat the [non-exempt] assistant managers may have performed some managerial tasks does not render the tasks non-exempt.").

responsible for the safety and security of the store (Whittington Decl. ¶¶ 18-19.); controlling and staying within the allocated payroll budget (Corrigan Dep. at 196-97.); monitoring legal compliance measures with respect to hiring, such as completing I-9 paperwork (*Id*. at 248-49.); and handling all customer complaints. (Whittington Decl. ¶ 14.)

Corrigan cannot overcome the exemption by claiming that she spent the majority of her time performing non-managerial duties, such as unloading freight and stocking the shelves. The regulations state that an employee who spends more than fifty percent of his or her time performing managerial work will typically satisfy the primary duty requirement. 29 C.F.R. § 541.700(b). The regulations, however, also emphasize that "time alone…is not the sole test" and that exempt executives are not required to spend more than fifty percent of their time performing exempt work if other factors support the conclusion that management is their primary duty.[7] *Id*. In *Grace*, the Fourth Circuit explained that "[t]here is no per se rule that once the amount of time spent on manual labor approaches a certain percentage, satisfaction of this factor is precluded as a matter of law." 637 F.3d 508, 515 (4th Cir. 2011).

The regulations also specifically address the concept of concurrent duties. 29 C.F.R. § 541.106. Concurrent performance, or multi-tasking, of exempt and nonexempt work is explicitly recognized as a managerial duty by the DOL's regulations. *Id*.; *see also* 29 U.S.C. § 213(a)(1).[8] "It is misleading simply to add up the time that [Plaintiff] spent unloading trucks, stocking

---

[7] The Court disagrees with Corrigan's contention that failure to meet the 50 percent threshold means that an employee fails to satisfy the primary duty requirement. The Fourth Circuit clarified the application of the 50 percent "rule of thumb" by stating that, "[i]t is clear from this language that primary duty is meant to be assessed by the totality of the circumstances." *Counts v. S.C. Elec. & Gas Co.*, 317 F.3d 453, 456 (4th Cir. 2003). Corrigan's reliance on *Clark v. J.M. Benson Co., Inc.*, 789 F.2d 282 (4th Cir. 1986) is misplaced because the court held that it would apply the 50 percent rule to that specific case.

[8] The FLSA recognizes the nature of retail business and states that "an employee of a retail or service establishment shall not be excluded from the definition of an employee employed in a bona fide executive or administrative capacity because of the number of hours in his work week which he devotes to activities not directly or closely related to the performance of executive or administrative activities." 29 U.S.C. § 213(a)(1).

inventory, running cash registers, or sweeping floors and conclude thereby that she was merely a clerk and not a manager." *Grace*, F.3d at 516.

Corrigan was ultimately responsible for the performance of the store and remained the highest ranking employee in the store, even while performing nonexempt work. (Corrigan Dep. at 55-57, 70, 195-97.) Thus, Corrigan "remain[ed] responsible for the success or failure of the business operations under [her] management while performing the nonexempt work." 29 C.F.R. § 541.106. In other words, Corrigan performed her nonexempt tasks in the context of her overall responsibility to ensure the store was profitable. *See Grace*, 637 F.3d at 516.

In *Grace*, the Fourth Circuit found the plaintiff "was performing management duties whenever she was in the store, even though she also devoted most of her time [99%] to doing the mundane physical activities necessary for its successful operation." 637 F.3d at 517. Similar to the plaintiff in *Grace*, even though Corrigan contends that she devoted 60-70% of her time to performing nonexempt work, she was also the person responsible for running the store and performed her nonexempt tasks concurrently with her exempt managerial work. (Corrigan Dep. at 122-26.) For example, Corrigan maintained responsibility for the supervision of her employees and the service they provided to her customers, even as she was stocking shelves. (*Id*. at 132.) Corrigan also handled customer complaints and monitored the store's security while performing non-managerial work. (*Id*.) Moreover, as contemplated by 29 C.F.R. § 541.700(c), Corrigan had the discretion and flexibility to choose what tasks to perform herself and what work, often nonexempt work, to delegate to other employees. (Whittington Decl. ¶ 6.) In fact, she often exercised this discretion by instructing employees to handle stocking or cleaning duties while the Assistant Store Manager and other hourly employees felt as though they could not delegate work to Corrigan because Corrigan was viewed as the "authority figure" of the store.

(*Id.*) Thus, Corrigan had a choice of which duties to perform, in contrast to a nonexempt employee who would simply perform the task to which he or she was assigned.

While Corrigan argues that management was not her primary duty because she spent the majority of her time engaged in manual labor, the regulations and the Court in *Grace* clarify that performance of these duties, in conjunction with overall supervision and management of the store, is not contrary to the application of the exemption. Thus, Corrigan's own testimony regarding her duties and tasks reflect that they were undeniably managerial in nature and easily meet the requirements of the executive exemption. *See Grace*, 637 F.3d at 508.

### b. The Relative Importance of the Managerial Duties as Compared with Other Types of Duties

Corrigan's managerial duties were more important than the other duties she performed because they were critical to the operation of the store. In *Grace*, the plaintiff's managerial tasks, which included filling out paperwork, addressing customer complaints, working with employees on their schedules, and collecting cash, were critical to the operation of the store, as there was "*no one else at the site to direct these actions*." *Grace*, 637 F.3d at 517 (emphasis in original). Similarly, Corrigan's managerial tasks, which included interviewing and employee screening (Corrigan Dep. at 213, 216-18.), training (*Id*. at 146-49; Whittington Decl. ¶ 6.), store security (Whittington Decl. ¶¶ 18-19.), bank deposits and financial and sales paperwork (Corrigan Dep. at 159, 162-63, 166.), scheduling (*Id*. at 201-05, 267.), and the overall supervision and direction of her employees (*Id*. at 55-57, 70, 130, 195-97; Whittington Decl. ¶¶ 4-8, 23-25.), were critical to the operation of the store. In fact, Corrigan's managerial duties were so important that employees sometimes called her at home about work related issues when she was not physically present at the store, and Corrigan created and left "to do" lists for her Assistant Store Managers when she went on vacation. (Whittington Decl. ¶¶ 22-23.)

While Corrigan argues that she was under the direct supervision of her District Manager, she nonetheless stated that District Manager Mike Brean visited the store only once every week and stayed anywhere from ten minutes to a couple hours, and District Manager Kim O'Brien did not even visit the store one time in two months. (Corrigan Dep. at 142). This clearly is not enough time to direct the managerial tasks. Therefore, because she was the only person running the store, the store could not have operated successfully without Corrigan's handling of these managerial tasks.

### c. Relative Freedom from Supervision

Relative freedom from supervision does not demand complete freedom from supervision. In *Grace*, the plaintiff's supervising District Manager typically visited the store once every two to three weeks. *Grace*, 637 F.3d at 517. The court also noted, apart from his supervision, which was not uncharacteristic for any retail operation, the district manager was not a "micro-manager who constantly was looking over [the manager's] shoulder." *Id*. The supervision of seventeen stores would hardly permit [the District Manager] to micro-manage all of them. *Id*.; *see also Thomas v. Speedway Super America LLC*, 506 F.3d 496, 504-509 (6th Cir. 2007) (court found it significant that plaintiff's District Manager was responsible for ten to twelve stores, as opposed to situations where a higher level manager was responsible for only a few stores).

Corrigan was relatively free from supervision during the relevant time period. Corrigan testified that Brean visited the store only once every week and would only stay for approximately ten minutes to a couple of hours at a time and when O'Brien replaced him for the last two months of Corrigan's employment at Family Dollar, she failed to visit the store even once. (Corrigan Dep. at 142.) Moreover, Family Dollar's records indicate that during the relevant time period, Corrigan's District Manager oversaw thirty-two stores at one time, including Corrigan's

12

store, spanning a territory of approximately 27.4 miles. (Hartsell Decl. ¶ 7.) Though Corrigan was in contact with her District Manager through bi-weekly conference calls, this does not equate to exacting supervision. *Grace*, 637 F.3d at 517. In *Grace*, the Fourth Circuit held that the plaintiff was relatively free from direct supervision, despite her being in contact with her District Manager by telephone and email, and being subject to company policies, procedures, and budgetary requirements, as this type of supervision "was not uncharacteristic for any retail operation." 637 F.3d at 517. The infrequency of Brean and O'Brien's visits and the large number of stores they were responsible for supervising does not allow them to micro-manage each individual store. *See Grace*, 637 F.3d at 517; *Thomas*, 506 F.3d at 508.

> **d. Relationship Between Salary and Wages Paid to Other Employees for the Kind of Nonexempt Work Performed by the Supervisor**

To determine the relationship between a managerial salary and wages paid to nonmanagerial employees, the Fourth Circuit considered, first, whether the manager earned more, in absolute terms, than nonmanagerial employees and, second, whether the manager was a "profit center." *Grace*, 637 F.3d at 517. This second consideration asks whether the manager had the ability to influence the amount of her compensation. *Id*.

As to the first consideration, Corrigan earned significantly higher amounts on an hourly basis than nonexempt workers. The record shows that of the twenty-nine nonexempt employees who worked at Corrigan's store during the relevant time period, twenty-five made $8.50 or less per hour, and the highest paid nonexempt employee still only earned $9.30 per hour. (Hartsell Decl. ¶ 9.) Even using the highest hourly wage for those employees whose wages changed over time, nonexempt employees received an average hourly wage of only $7.64 per hour. (*Id*.) In comparison, Family Dollar's records indicate that Corrigan worked an average of 58.01 hours per week. (*Id*. at ¶ 6.) Even setting aside her bonus payment, Corrigan earned compensation,

which when computed on an hourly basis, averaged between $12.07 and $12.50 per hour during the relevant time period. (Doc. No. 1078, Hartsell Decl ¶ 4.) A review of these calculations reveals a significant difference in wages between Corrigan and her nonexempt employees.

As to the second consideration, Corrigan was a "profit center," her bonuses depended on her store's profitability and were directly tied to her performance in terms of sales, shrink, and inventory results. (Corrigan Dep. at 55-57, 63-65, 195-97.); *See Grace*, 637 F.3d at 517. Corrigan earned bonuses of $702.39 and $2,477.00 during the relevant time period; bonuses for which nonexempt store employees were not eligible. (*Id*. at 64; Hartsell Decl. ¶ 5.) Therefore, since Corrigan had the ability to directly influence her own compensation, this factor is satisfied.

### e. Frequency With Which the Employee Exercises Discretionary Power

While this factor is no longer an explicit factor in the "primary duty" analysis under the current regulations, the fact that Corrigan exercised discretion virtually every day and all day long in her capacity as store manager supports that her primary duty was management. Corrigan decided how to assign and apportion work among herself and her employees (Whittington Decl. ¶¶ 6, 8, 11, 23.), how to adjust the schedule (Corrigan Dep. at 201-05, 267.), how to discipline employees (*Id*. at 257-62.), how to interview candidates (*Id*. at 213.), and how to make sure the store ran safely (Whittington Decl. ¶¶ 18-19.); while at the same time satisfying customers. All of these tasks involved "discretionary acts inherent in being responsible for the successful operation of a retail store." *Grace*, 637 F.3d at 517. Moreover, the fact that Family Dollar maintains certain policies and procedures for the sake of consistency does not mean that Corrigan failed to exercise discretion in enforcing these policies and procedures.[9]

---

[9] *See Murray v. Stuckey's, Inc.*, 50 F.3d 564, 570 (8th Cir. 1995) (standardized procedures and policies may circumscribe but do not eliminate discretion of on-site store manager); *Thomas v. Speedway Super America LLC*, 506 F.3d 496, 507 (6th Cir. 2007) (manager still exercised discretion on a daily basis even though store had standardized operating procedures); *Grace v. Family Dollar Stores, Inc.*, 637 F.3d 508 (4th Cir. 2011) (manager still

14

## 2. Authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight

Finally, the additional prong of the executive exemption test contained in the current regulations states that an exempt employee has authority to hire *or* fire other employees *or* his recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees are given particular weight. 29 C.F.R. § 541.100(a)(4). The DOL provides guidance with respect to whether an employee's recommendations satisfy this standard. Specifically, the "factors to be considered include, but are not limited to, whether it is part of the employee's job duties to make such suggestions and recommendations; the frequency with which such suggestions and recommendations are made or requested; and the frequency with which the employee's suggestions and recommendations are relied upon." 29 C.F.R. § 541.105. Importantly, the employee's recommendations "may still be deemed to have 'particular weight' even if a higher level manager's recommendation has more importance and even if the employee does not have the authority to make the ultimate decision as to the employee's change in status." *Id*.

Corrigan's deposition testimony establishes that she meets the additional prong of the executive exemption test contained in the current regulations, namely that her suggestions and recommendations as to the hiring and change of status of other employees were given particular weight. Corrigan was actively involved in the interviewing and employee screening process, and even hired employee Eriyana Whittington for a cashier position, requesting that she start work the next day. (Corrigan Dep. at 213, 216-18; Whittington Decl. ¶ 7.) Corrigan testified that she only selected certain applicants to move on for an interview after they passed the preliminary

---

exercised discretion even though she was subject to company policies and the company template for a store in the Family Dollar chain).

screening tests (Corrigan Dep. at 213.)  Additionally, if Corrigan believed that the candidate should be hired, she made that recommendation to her District Manager.  (*Id*. at 216-18.)  Corrigan therefore effectively controlled which candidates were presented for possible District Manager approval.  Courts have recognized that a manager plays an important role in the hiring process when she has the ability to veto a potential hire by not presenting the applicant to her supervisor.  *See Pollard v. GPM Invs., LLC*, No. 3:10-cv-115, 2011 U.S. Dist. LEXIS 24199 at *27 (E.D. Va. Mar. 10, 2011) (holding that managers "had sufficient input in the hiring, firing, and promotions to justify their exemptions" where the managers screened applicants and determined whether they would continue in their application process).

In addition, Corrigan's District Manager closely followed her recommendations with respect to promotions and terminations.  (Corrigan Dep. at 218-25, 262-65.)  Corrigan specifically recalled that her District Manager followed her recommendations regarding the promotion of Max Duffy, "Brittany," and "Val" from cashiers to Assistant Store Managers.  (*Id.* at 218-20, 223-25.)  Corrigan also testified that her District Manager "generally" accepted her recommendations to terminate certain employees.  (*Id*. at 262-65.)  Therefore, while Corrigan may not have had the ultimate decision making authority with respect to hiring, it is undisputable that she controlled the screening process and at least some of her recommendations as to hiring, promotion and termination were closely followed, thereby satisfying the particular weight requirement.

## CONCLUSION

Looking at the facts in the light most favorable to the non-moving parry, the Court finds that Family Dollar has satisfied the DOL regulations qualifying Corrigan as an exempt executive

16

under the FLSA. No reasonable jury could find otherwise. Therefore, Family Dollar is entitled to judgment as a matter of law.

**ORDER**

IT IS ORDERED that

(1) Defendant's Motion for Summary Judgment (Doc. No. 1078) is GRANTED and Plaintiff Catherine Corrigan is dismissed;

(2) The Court finds that there is no just reason to delay finding of final judgment for Family Dollar with regard to Plaintiff Catherine Corrigan's claim against Family Dollar;

(3) The Clerk is directed to enter final judgment, pursuant to Rule 54(b), for Family Dollar with regard to Plaintiff Catherine Corrigan.

Signed: January 28, 2014

Graham C. Mullen
United States District Judge