IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:08MD1932-GCM

| | |
|---|---|
| IN RE FAMILY DOLLAR FLSA LITIGATION ) ) ) _____ ) ) *Concerning Slater v. Family Dollar Stores* ) ) ) Case No. 3:07-cv-501 ) _____ ) | ORDER |

**THIS MATTER** is before the Court on Defendant's Motion for Summary Judgment and Memorandum in Support (Doc. No. 1042); Plaintiff's Response in Opposition (Doc. No. 1071); and Defendant's Reply (Doc. No. 1097). For the reasons set forth below, the motion is **GRANTED**.

## **FACTS**[1]

Plaintiff, Rochelle Anthony, began working for Family Dollar in 2003 as a stocker, and eventually moved into a management position.[2] (Doc. No. 1042, Anthony Dep. at 49-50.)

---

[1] To the extent Plaintiff makes any factual assertions based on the decision in *Morgan v. Family Dollar Stores, Inc.*, the court will disregard such assertions. The court will also disregard exhibits based on the *Morgan* case. In *Grace v. Family Dollar Stores, Inc.*, the Fourth Circuit Court of Appeals rejected Ms. Grace's argument that the facts in *Morgan* and in her case were identical; similarly, this Court finds no basis to support the assumption that the facts between Plaintiff's case and the *Morgan* case are the same. *See Grace v. Family Dollar Stores, Inc.*, 637 F.3d 508 (4th Cir. 2011) (finding that potential variations between store size, store inventory, and the individual responsibilities of managers, as well as differences in managers' performance of exempt and nonexempt duties and the supervisory activity of district managers, precluded Plaintiff's argument that the facts in *Morgan* and in her case were identical).

[2] The Court notes that Plaintiff's declaration was prepared after Plaintiff's deposition and on many occasions directly contradicts her sworn testimony. Plaintiff cannot create a dispute about a fact contained in deposition testimony by referring to a subsequent affidavit of the deponent contradicting the deponent's prior testimony, for "it is well established that a genuine issue of fact is not created where the only issue of fact is to determine which of the two conflicting versions of a party's testimony is correct." *Erwin v. United States*, 591 F.3d 313, 325 n.7 (4th Cir. 2010) (internal quotation marks and alterations omitted) (quoting *Halperin v. Abacus Tec. Corp.*, 128 F.3d 191, 198 (4th Cir. 1997); *see also Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 341 (4th Cir. 2001); *Rohrbough v. Wyeth Labs.*, 916 F.2d 970, 975-76 (4th Cir. 1990); *Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984). To the extent that Plaintiff's deposition testimony and later affidavit are inconsistent, the Court will disregard the

1

Anthony became Store Manager of the Jackson, Mississippi Store (Store 6731) on August 21, 2005. (Doc. No. 1042, Anthony Dep. at 76-77; Hartsell Decl. ¶ 4.) Anthony worked at Store 6731 at all times during the relevant time period for her claims. (Doc. No. 1042).[3]

Family Dollar paid Anthony a weekly salary of $700 from August 21, 2005 to April 6, 2006. (Hartsell Decl. ¶ 4.) Anthony also earned a bonus of $1,272.09 during the relevant time period for her claims. (*Id*. at ¶ 5; Anthony Dep. at 79, 213-14.) Nonexempt employees were not eligible for these bonuses, which were tied to the store's performance as measured at inventory time. (*Id*. at 80, 215-16; Hartsell Decl. ¶ 5.) Anthony worked an average of 76.19 hours per week as Store Manager. (*Id*. at ¶ 6.)

The record shows that of the twenty-nine nonexempt employees who worked at Anthony's store, twenty-seven made $6 per hour or less. (*Id*. at ¶ 9.) Even using the highest hourly wages earned by employees whose wages changed over time, the hourly employees who worked in Anthony's store earned an average of $5.70 per hour during the relevant time period. (*Id*.) Family Dollar's records reflect that Anthony managed at least 80 employee hours 100% of the time during the relevant time period. (*Id*. at ¶ 8.)

Anthony contends that she devoted 80-90% of her time to performing nonexempt work, but also admits that she was "the boss of the store." (Anthony Dep. at 146.) For example, Anthony provided new hire training on the register by working as a cashier herself and maintained responsibility for the security of the store by watching for shoplifters as she was running the cash register. (*Id*. at 122-23, 127-28.) Also, to the extent possible, Anthony

---

affidavit and rely on the testimony she gave in her deposition, where she was examined at length about her responsibilities as a manager of a Family Dollar store. *See Grace*, 637 F.3d at 513.

[3] Anthony filed her opt-in consent form on February 27, 2007. Accordingly, February 27, 2004, or three years prior to her opt-in date, through the end of her employment on April 6, 2006, represents the longest possible relevant time period for Anthony's claims in this action.

2

supervised and directed her employees while performing nonexempt tasks around the store, such as double-checking the manner in which her employees unloaded freight to make sure it was done properly. (*Id*. at 186-87.) Anthony also would occasionally have to address customer issues while performing non-managerial work. (*Id*. at 125-26.) Finally, Anthony had the authority and ability to direct other employees to perform nonexempt work. (*Id*. at 175-76, 186.)

Anthony was responsible for many tasks and duties as part of her job. Specifically, Anthony was responsible for: keeping the store staffed; interviewing and screening employees and providing hiring recommendations; completing the hiring paperwork; training employees; ensuring that Family Dollar procedures were being followed; scheduling employees; maintaining personnel files for her employees; handling occasions when employees failed to show up for work; directing and double-checking employees' work; ensuring her employees clocked in and out and correcting any payroll issues if an employee forgot to clock in; maintaining financial and sales paperwork and handling the bank deposits; maintaining petty cash; counseling and verbally disciplining employees when necessary; maintaining the security of the store and guarding against theft; ensuring that the store stayed within the allocated payroll budget; uploading the payroll information for her employees; setting the schematics for the store; making sure that everything in the store, *e.g.*, the computers, were functioning properly; and monitoring legal compliance measures with respect to hiring. (Anthony Dep. at 18-20, 23, 85-86, 88-91, 93-94, 97-98, 101-02, 104, 106, 113-16, 119-20, 122-24, 128, 130, 132-33, 144, 149, 153-54, 156-57, 165, 178, 186-87, 195, 199-203, 206, 215.)

Though Anthony utilized a team concept in running her store, she was "the boss of the store" and served as the head of the team she built at her store. (*Id*. at 146.) Anthony testified that when she was away from the store or had a day off, she would receive calls from her

employees asking her how certain things should be done at the store. (*Id*. at 172-73.) Similarly, if an employee failed to come to work, it was Anthony's responsibility to either call another employee to cover the shift or cover the shift herself. (*Id*. at 101-02.)

Anthony also held weekly meetings with her employees to discuss matters relevant to her employees, such as their schedules and ways to get the merchandise out, and also to share any information she had learned from a store manager meeting with her District Manager. (*Id.* at 117-19.) Anthony also handled customer complaints and managed the employees. (*Id*. at 220-21.) For example, as Store Manager Anthony would talk to any employee who was rude to a customer because she believed that in order to work in retail and keep customers coming to and shopping in a store you had to give excellent customer service. (*Id*.)

As Store Manager, Anthony reported to a District Manager. During the relevant time period Anthony's District Manager was Bill Faller. (Hartsell Decl. ¶ 7). The District Manager visited the store "twice a month maybe," and when he would come to the store he would work exclusively with Anthony and give her direction on how to better run the store. (Anthony Dep. at 98-99.) Family Dollar's records indicate that during the relevant time period, Anthony's District Manager oversaw twenty-three stores throughout Arkansas and Mississippi, spanning a territory of approximately 212 miles from north to south and 55.5 miles from east to west. (Hartsell Decl. ¶ 7.)

## **STANDARD OF REVIEW**

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party always bears the initial burden of "informing the district court of the basis for its motion," and

identifying the matter "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Once the movant has met the initial burden, "the non-moving party 'may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.'" *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)). This is particularly important where the nonmoving party bears the burden of proof. *Hughes*, 48 F.3d at 1381. A genuine issue for trial exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249-50. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict.

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248. "The determination of whether an employee falls within the scope of a FLSA exemption is ultimately a legal question," *Walton v. Greenbrier Ford, Inc.*, 370 F.3d 446, 450 (4th Cir. 2004), and the Fourth Circuit has repeatedly affirmed the grant of summary judgment where the facts demonstrate that an employee is exempt. *See, e.g., Grace v. Family Dollar Stores, Inc.*, 637 F. 3d 508 (4th Cir. 2011) (affirming grant of summary judgment and holding that Family Dollar Store Manager was exempt executive); *Darveau v. Detecon, Inc.*, 515 F.3d 334 (4th Cir. 2008); *Jones v. Virginia Oil Co., Inc.*, 69 Fed. Appx. 633 (4th Cir. 2003); *Smith v. First Union National Bank*, 202 F.3d 234 (4th Cir. 2000).

**DISCUSSION**

The Fair Labor Standards Act ("FLSA") requires that an employee receive overtime pay if he or she works more than forty hours a week. 29 U.S.C. § 207(a)(1). The FLSA, however, exempts from this requirement "any employee employed in a bona fide executive…capacity." 29 U.S.C. § 213(a)(1). The Department of Labor ("DOL") has promulgated regulations which further describe and interpret the scope of this exemption.

The current regulations provide that an employee qualifies as an executive if: (1) she is compensated on a salary basis at a rate of at least $455 per week; (2) her primary duty is management of the enterprise; (3) she customarily and regularly directs the work of two or more other employees; and (4) she has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.[4] 29 C.F.R. § 541.100(a) (2004).

Anthony concedes in her Response that she is not challenging the first or third tests, thus the only tests at issue are (1) whether Anthony's primary duty is management of the enterprise and (2) whether she has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight. The DOL has also promulgated additional regulations which further describe and define these tests; these additional regulations are discussed below. In light of these regulations, Anthony qualifies as an exempt executive.

**1.      Family Dollar Satisfies the Primary Duty Test**

The regulations provide guidance as to how an employee's primary duty may be determined. The regulations instruct that the determination should be "based on all the facts in a

---

[4] Plaintiff incorrectly contends that "frequency of discretion" is an independent "primary duty factor." *See* (Doc. No. 1071, Pl.'s Resp. at 22.)

particular case." 29 C.F.R. § 541.700(a). The regulations set forth, but are not limited to, four factors to consider in this analysis: (1) the amount of time spent in the performance of managerial duties; (2) the relative importance of the managerial duties as compared with other types of duties; (3) the relative freedom from supervision; and (4) the relationship between the manager's salary and the wages paid to other employees for the kind of nonexempt work performed by the supervisor. (*Id.*)

Upon consideration of the factors identified for determining whether Anthony's primary duty was management, the Court concludes that the factors are readily satisfied.

### a. The Amount of Time Spent in Performance of Managerial Duties

The regulations provide a list of "management" activities, which include, but are not limited to:

> Interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing their work, maintaining their production or sales records for use in supervision or control; appraising their productivity and efficiency for the purpose of recommending promotions or other changes in their status; handling their complaints and grievances and disciplining them when necessary; planning the work; determining the type of materials, supplies, machinery or tools to be used or merchandise to be bought, stocked, and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety of the [employees] and the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.[5]

29 C.F.R. § 541.102.

---

[5] An employee need not perform all management duties listed in the regulations, or evenly regularly perform such duties, in order to be considered an exempt executive. *See Aguirre v. SBC Communs., Inc.*, 2007 U.S. Dist. Lexis 72666, 63-62 (S.D. Tex. Sept. 30, 2007) (finding that "plaintiffs' 'primary duty' for purposes of the executive exemption was 'management,' despite the fact that the plaintiffs did not perform other 'managerial' duties listed in Section 541.102.").

7

Anthony explicitly testified that she performed *almost every one* of these management activities as a Family Dollar Store Manager.[6] For example, Anthony interviewed and screened potential employees and provided hiring recommendations (Anthony Dep. at 86-90.); provided training to her employees on Family Dollar benefits, policies and procedures (*Id*. at 128-29, 132-33.); assigned employees to a schedule and set their individual hours of work, including having to adjust the schedule if employees needed or requested time off (*Id*. at 101-02.); and directed and supervised her employees' work. (*Id*. at 98, 129, 149, 186-87, 205-06.) In addition, Anthony maintained and was responsible for certain sales and financial records, as well as bank deposits and disciplined employees when necessary by providing verbal coaching and discipline. (*Id*. at 91, 104, 123-24, 134, 144, 221.) Furthermore, Anthony was responsible for the safety and security of the store (*Id*. at 122-23.); controlling and staying within the allocated payroll budget (*Id*. at 111-12.); and monitoring legal compliance measures with respect to hiring, such as completing I-9 paperwork. (*Id*. at 93-94.)

Anthony cannot overcome the exemption by claiming that she spent the majority of her time performing non-managerial duties. The regulations state that an employee who spends more than fifty percent of his or her time performing managerial work will typically satisfy the primary duty requirement. 29 C.F.R. § 541.700(b). The regulations, however, also emphasize that "time alone…is not the sole test" and that exempt executives are not required to spend more than fifty percent of their time performing exempt work if other factors support the conclusion that management is their primary

---

[6] The fact that the Assistant Managers can perform the same tasks as Anthony does not render her tasks and duties any less managerial. Courts have consistently held that the fact that a non-exempt employee may sometimes perform exempt duties does not make these duties any less exempt/managerial. *See Baldwin v. Trailer Inns., Inc.*, 266 F.3d 1104, 1115 (9th Cir. 2001) ("[t]hat the [non-exempt] assistant managers may have performed some managerial tasks does not render the tasks non-exempt.").

duty.[7] *Id*. In *Grace*, the Fourth Circuit explained that "[t]here is no per se rule that once the amount of time spent on manual labor approaches a certain percentage, satisfaction of this factor is precluded as a matter of law." 637 F.3d 508, 515 (4th Cir. 2011).

The regulations also specifically address the concept of concurrent duties. 29 C.F.R. § 541.106. Concurrent performance, or multi-tasking, of exempt and nonexempt work is explicitly recognized as a managerial duty by the DOL's regulations. *Id*.; *see also* 29 U.S.C. § 213(a)(1).[8] "It is misleading simply to add up the time that [Plaintiff] spent unloading trucks, stocking inventory, running cash registers, or sweeping floors and conclude thereby that she was merely a clerk and not a manager." *Grace*, F.3d at 516.

Anthony was ultimately responsible for the performance of the store and remained the highest ranking employee in the store, even while performing nonexempt work. (Anthony Dep. at 146-47, 215.) Thus, Anthony "remain[ed] responsible for the success or failure of the business operations under [her] management while performing the nonexempt work." 29 C.F.R. § 541.106. In other words, Anthony performed her nonexempt tasks in the context of her overall responsibility to ensure the store was profitable. *See Grace*, 637 F.3d at 516.

In *Grace*, the Fourth Circuit found the plaintiff "was performing management duties whenever she was in the store, even though she also devoted most of her time [99%] to doing the mundane physical activities necessary for its successful operation." 637 F.3d at 517. Similar to

---

[7] The Court disagrees with Anthony's contention that failure to meet the 50 percent threshold means that an employee fails to satisfy the primary duty requirement. The Fourth Circuit clarified the application of the 50 percent "rule of thumb" by stating that, "[i]t is clear from this language that primary duty is meant to be assessed by the totality of the circumstances." *Counts v. S.C. Elec. & Gas Co.*, 317 F.3d 453, 456 (4th Cir. 2003). Anthony's reliance on *Clark v. J.M. Benson Co., Inc.*, 789 F.2d 282 (4th Cir. 1986) is misplaced because the court held that it would apply the 50 percent rule to that specific case. Additionally, Anthony's reliance on *Shockley v. City of Newport News*, 997 F.2d 18 (4th Cir. 1993) is also misplaced because that case involved police officers, not retail store managers, who were not paid on a salary basis – something that is not at issue here.

[8] The FLSA recognizes the nature of retail business and states that "an employee of a retail or service establishment shall not be excluded from the definition of an employee employed in a bona fide executive or administrative capacity because of the number of hours in his work week which he devotes to activities not directly or closely related to the performance of executive or administrative activities." 29 U.S.C. § 213(a)(1).

the plaintiff in *Grace*, even though Anthony contends that she devoted 80-90% of her time to performing nonexempt work, she was also the person responsible for running the store and performed her nonexempt tasks concurrently with her exempt managerial work. (Anthony Dep. at 224.) For example, Anthony provided new hire training on the register by working as a cashier herself, and maintained responsibility for the security of the store by watching for shoplifters as she was running the cash register. (*Id.* at 122-23, 127-28.) Anthony also supervised and directed her employees while performing nonexempt tasks around the store, such as double-checking the manner in which her employees unloaded freight to make sure it was done properly. (*Id.* at 186-87.) Moreover, as contemplated by 29 C.F.R. § 541.700(c), Anthony had the discretion and flexibility to choose what tasks to perform herself and what tasks to delegate to other employees. (*Id.* at 98, 175-76, 182, 186.) Thus, Anthony had a choice of which duties to perform, in contrast to a nonexempt employee who would simply perform the task to which he or she was assigned. (*Id.*) Anthony also had the authority and the ability to direct other employees to perform this nonexempt work. (*Id.* at 175-76, 186.)

While Anthony argues that management was not her primary duty because she spent the majority of her time engaged in manual labor, the regulations and the Court in *Grace* clarify that performance of these duties, in conjunction with overall supervision and management of the store, is not contrary to the application of the exemption. Thus, Anthony's own testimony regarding her duties and tasks reflect that they were undeniably managerial in nature and easily meet the requirements of the executive exemption. *See Grace*, 637 F.3d at 508.

### b. The Relative Importance of the Managerial Duties as Compared with Other Types of Duties

Anthony's managerial duties were more important than the other duties she performed because they were critical to the operation of the store. In *Grace*, the plaintiff's managerial tasks, which included filling out paperwork, addressing customer complaints, working with employees on their schedules, and collecting cash, were critical to the operation of the store, as there was "*no one else at the site to direct these actions*." *Grace*, 637 F.3d at 517 (emphasis in original). Similarly, Anthony's managerial tasks, which included interviewing and employee screening (Anthony Dep. at 18-20, 88-90, 156-57.), training (*Id*. at 128-29, 132-33.), store security (*Id*. at 122-23.), bank deposits and financial and sales paperwork (*Id*. at 123-24, 134, 144.), scheduling (*Id*. at 101-02.), and the overall supervision and direction of her employees, were critical to the operation of the store. (*Id*. at 98, 129, 149, 186-87, 205-06.)

While Anthony argues that she was under the direct supervision of her District Manager, she nonetheless stated that the District Manager visited her store "twice a month maybe" and worked exclusively with Anthony to give direction on how to better run the store – not enough to direct the managerial tasks. (*Id*. at 98-99.) Therefore, because she was the only person running the store, the store could not have operated successfully without Anthony's handling of these managerial tasks.

### c. Relative Freedom from Supervision

Relative freedom from supervision does not demand complete freedom from supervision. In *Grace*, the plaintiff's supervising District Manager typically visited the store once every two to three weeks. *Grace*, 637 F.3d at 517. The court also noted, apart from his supervision, which was not uncharacteristic for any retail operation, the district manager was not a "micro-manager who constantly was looking over [the manager's] shoulder." *Id*. The supervision of seventeen

stores would hardly permit [the District Manager] to micro-manage all of them. *Id.*; *see also Thomas v. Speedway Super America LLC*, 506 F.3d 496, 504-509 (6th Cir. 2007) (court found it significant that plaintiff's District Manager was responsible for ten to twelve stores, as opposed to situations where a higher level manager was responsible for only a few stores).

Anthony was relatively free from supervision during the relevant time period. Anthony testified that her District Manager visited the store "twice a month maybe." (Anthony Dep. at 98-99.) Moreover, Family Dollar's records indicate that during the relevant time period, Anthony's District Managers oversaw twenty-three stores, including Anthony's store, spanning a territory of approximately 212 miles from north to south and 55.5 miles from east to west in Arkansas and Mississippi. (Hartsell Decl. ¶ 7.) Though Anthony was in contact with her District Manager through regular conference calls, this does not equate to exacting supervision. In *Grace*, the Fourth Circuit held that the plaintiff was relatively free from direct supervision, despite her being in contact with her District Manager by telephone and email, and being subject to company policies, procedures, and budgetary requirements, as this type of supervision "was not uncharacteristic for any retail operation." 637 F.3d at 517. The infrequency of the District Manager's visits and the large number of stores he was responsible for supervising does not allow him to micro-manage each individual store. *See Grace*, 637 F.3d at 517; *Thomas*, 506 F.3d at 508.

    **d.**  **Relationship Between Salary and Wages Paid to Other Employees for the Kind of Nonexempt Work Performed by the Supervisor**

To determine the relationship between a managerial salary and wages paid to nonmanagerial employees, the Fourth Circuit considered, first, whether the manager earned more, in absolute terms, than nonmanagerial employees and, second, whether the manager was a

12

"profit center." *Grace*, 637 F.3d at 517. This second consideration asks whether the manager had the ability to influence the amount of her compensation. *Id.*

As to the first consideration, Anthony earned significantly higher amounts on an hourly basis than nonexempt workers. The record shows that of the twenty-nine nonexempt employees who worked at Anthony's store, twenty-seven made $6 per hour or less. (Hartsell Decl. ¶ 9.) Even using the highest hourly wage for those employees whose wages changed over time, nonexempt employees received an average hourly wage of only $5.70 per hour. (*Id.*) In comparison, Family Dollar's records indicate that Anthony worked an average of 76.19 hours per week. (*Id.* at ¶ 7.) Even setting aside her bonus payment, Anthony earned compensation, which when computed on an hourly basis, averaged to $9.19 per hour during the relevant time period. A review of these calculations reveals a significant difference in wages between Anthony and her nonexempt employees.

As to the second consideration, Anthony was a "profit center," her bonuses depended on her store's profitability and were directly tied to her performance in terms of sales, shrink, and inventory results. (Anthony Dep. at 214-16.); *See Grace*, 637 F.3d at 517. Anthony earned a bonus of $1,272.09 during the relevant time period; a bonus for which nonexempt store employees were not eligible. (Hartsell Decl. ¶ 5.) Therefore, since Anthony had the ability to directly influence her own compensation, this factor is satisfied.

          e.        **Frequency With Which the Employee Exercises Discretionary Power**

While this factor is no longer an explicit factor in the "primary duty" analysis under the current regulations, the fact that Anthony exercised discretion virtually every day and all day long in her capacity as store manager supports that her primary duty was management. Anthony decided how to assign and apportion work among herself and her employees (Anthony Dep. at

13

98, 149, 205-06.), how to adjust the schedule (*Id*. at 101-02.), how to interview candidates (*Id*. at 18-20, 88-90, 156-57.), and how to make sure the store ran safely (*Id*. at 122-23.); while at the same time satisfying customers. All of these tasks involved "discretionary acts inherent in being responsible for the successful operation of a retail store." *Grace*, 637 F.3d at 517. Moreover, the fact that Family Dollar maintains certain policies and procedures for the sake of consistency does not mean that Anthony failed to exercise discretion in enforcing these policies and procedures.[9]

### 2. Authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight

Finally, the additional prong of the executive exemption test contained in the current regulations states that an exempt employee has authority to hire *or* fire other employees *or* his recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees are given particular weight. 29 C.F.R. § 541.100(a)(4). The DOL provides guidance with respect to whether an employee's recommendations satisfy this standard. Specifically, the "factors to be considered include, but are not limited to, whether it is part of the employee's job duties to make such suggestions and recommendations; the frequency with which such suggestions and recommendations are made or requested; and the frequency with which the employee's suggestions and recommendations are relied upon." 29 C.F.R. § 541.105. Importantly, the employee's recommendations "may still be deemed to have 'particular weight' even if a higher level manager's recommendation has more importance and even if the employee does not have the authority to make the ultimate decision as to the employee's change in status." *Id*.

---

[9] *See Murray v. Stuckey's, Inc.*, 50 F.3d 564, 570 (8th Cir. 1995) (standardized procedures and policies may circumscribe but do not eliminate discretion of on-site store manager); *Thomas v. Speedway Super America LLC*, 506 F.3d 496, 507 (6th Cir. 2007) (manager still exercised discretion on a daily basis even though store had standardized operating procedures); *Grace v. Family Dollar Stores, Inc.*, 637 F.3d 508 (4th Cir. 2011) (manager still exercised discretion even though she was subject to company policies and the company template for a store in the Family Dollar chain).

14

Anthony's deposition testimony establishes that she meets the additional prong of the executive exemption test contained in the current regulations, namely that her suggestions and recommendations as to the hiring and change of status of other employees were given particular weight. Anthony was actively involved in the interviewing and employee screening process. (Anthony Dep. at 18-20, 88-90, 156-57.) Anthony testified that she made the first cut of potential applicants by reviewing the applications of individuals who had passed an initial background screening process. (*Id*. at 87-88.) She would then contact her District Manager to advise who from that group she wished to interview for a position. (*Id*.) Anthony therefore effectively controlled which candidates were presented for possible District Manager approval. Courts have recognized that a manager plays an important role in the hiring process when she has the ability to veto a potential hire by not presenting the applicant to her supervisor. *See Pollard v. GPM Invs., LLC*, No. 3:10-cv-115, 2011 U.S. Dist. LEXIS 24199 at *27 (E.D. Va. Mar. 10, 2011) (holding that managers "had sufficient input in the hiring, firing, and promotions to justify their exemptions" where the managers screened applicants and determined whether they would continue in their application process).

In addition, Anthony's District Manager closely followed Anthony's hiring recommendations. Both times Anthony interviewed and recommended candidates, her hiring recommendations were followed by her District Manager. (*Id*. at 18-20, 90, 156-57.)

Therefore, while Anthony may not have had the ultimate decision making authority with respect to hiring, it is undisputable that she controlled the screening process and at least some of her recommendations as to hiring, promotion and termination were closely followed, thereby satisfying the particular weight requirement.

## CONCLUSION

Looking at the facts in the light most favorable to the non-moving party, the Court finds that Family Dollar has satisfied the DOL regulations qualifying Rochelle Anthony as an exempt executive under the FLSA. No reasonable jury could find otherwise. Therefore, Family Dollar is entitled to judgment as a matter of law.

## ORDER

IT IS ORDERED that

(1) Defendant's Motion for Summary Judgment (Doc. No. 1042) is GRANTED and Plaintiff Rochelle Anthony is dismissed;

(2) The Court finds that there is no just reason to delay a finding of final judgment for Family Dollar with regard to Plaintiff Rochelle Anthony's claim against Family Dollar;

(3) The Clerk is directed to enter final judgment, pursuant to Rule 54(b), for Family Dollar with regard to Plaintiff Rochelle Anthony.

Signed: February 4, 2014

Graham C. Mullen
United States District Judge