IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:08MD1932-GCM

| | |
|---|---|
| IN RE FAMILY DOLLAR ) <br> FLSA LITIGATION ) <br> ) <br> _____ ) <br> ) <br> *Concerning Magwood v. Family Dollar* ) <br> *Stores* ) <br> ) <br> Case No. 3:08-cv-1938 ) <br> _____ ) | **ORDER** |

**THIS MATTER** is before the Court on Defendant's Motion for Summary Judgment and Memorandum in Support (Doc. No. 1080); Plaintiff's Response in Opposition (Doc. No. 1112); and Defendant's Reply (Doc. No. 1118). For the reasons set forth below, the motion is **GRANTED**.

## **FACTS**[1]

Plaintiff, Rosie Magwood, began working for Family Dollar in 1999, first as a stocker and then as an Assistant Store Manager. (Doc. No. 1080, Magwood Dep. at 38, 43-44.) In October of that same year, Magwood was promoted to Store Manager, and in January 2005, she was transferred to the Daleville, Alabama Store (Store 1948), where she remained Store Manager

---

[1] To the extent Plaintiff makes any factual assertions based on the decision in *Morgan v. Family Dollar Stores, Inc.*, the court will disregard such assertions. The court will also disregard exhibits based on the *Morgan* case. In *Grace v. Family Dollar Stores, Inc.*, the Fourth Circuit Court of Appeals rejected Ms. Grace's argument that the facts in *Morgan* and in her case were identical; similarly, this Court finds no basis to support the assumption that the facts between Plaintiff's case and the *Morgan* case are the same. *See Grace v. Family Dollar Stores, Inc.*, 637 F.3d 508 (4th Cir. 2011) (finding that potential variations between store size, store inventory, and the individual responsibilities of managers, as well as differences in managers' performance of exempt and nonexempt duties and the supervisory activity of district managers, precluded Plaintiff's argument that the facts in *Morgan* and in her case were identical).

1

at all times during the relevant time period for her claims.[2] (Doc. No. 1080, Magwood Dep. at 85; Hartsell Decl. ¶ 4.)

Family Dollar paid Magwood a weekly salary of $555.00 from February 4, 2005 to April 16, 2005 and $565.00 from April 17, 2005 to August 27, 2007. (Hartsell Decl. ¶ 4.) Magwood also earned two bonuses during the relevant time period. On May 6, 2005, she earned a bonus of $169.68, and on May 5, 2006, she received another bonus of $684.17. (*Id.* at ¶ 5; Magwood Dep. at 86.) Nonexempt employees were not eligible for these bonuses, which were tied to the store's performance in terms of overall profitability. (Magwood Dep. at 86, 93-95; Hartsell Decl. ¶ 5.) Magwood worked an average of 57.39 hours per week as Store Manager. (Hartsell Decl. ¶ 6.)

The record shows that of the twelve nonexempt employees who worked at Magwood's store during the relevant time period, five made $6.00 per hour or less, and seven made $7.00 per hour or less. (*Id.* at ¶ 10.) Even using the highest hourly wages earned by employees whose wages changed over time, the hourly employees who worked in Magwood's store earned an average of $6.91 per hour during the relevant time period. (*Id.*) Family Dollar's records reflect that Magwood managed at least 80 employee hours 70.2% of the time during the relevant time period. (*Id.* at ¶ 8.)

Magwood contends that she devoted 70-80% of her time performing nonexempt work, but also admits that she was responsible for running the store and was the highest ranking management official in the store on a daily basis. (Magwood Dep. at 84, 87-88, 202.) For example, Magwood admitted that even when she was performing non-managerial tasks in the

---

[2] Magwood filed her opt-in consent form on February 4, 2008. Accordingly, February 4, 2005, or three years prior to her opt-in date, through the end of her employment on March 27, 2007 represents the longest possible relevant time period for Magwood's claims in this action.

store, she concurrently was responsible for supervising her employees, watching for shoplifters, and handling customer complaints. (*Id*. at 166, 189-90.) Magwood also had the authority and ability to direct other employees to perform this nonexempt work. (*Id*. at 167-68.)

Magwood was responsible for many tasks and duties as part of her job. Specifically, Magwood was responsible for: interviewing and screening employees and providing hiring recommendations; completing the hiring paperwork; training employees; training other managers on Family Dollar procedures and policies; ensuring that Family Dollar procedures were being followed; handling requests for time off and occasions when employees failed to show up for work; supervising and directing employees' work; maintaining financial and sales paperwork and handling the bank deposits; ordering and transferring additional inventory to keep her store stocked; evaluating the work of her employees and recommending pay increases and promotions; counseling and disciplining employees when necessary, including recommending termination; planning and apportioning work among her employees; maintaining the security of the store and guarding against theft; ensuring that the store stayed within the allocated payroll budget; and monitoring legal compliance measures with respect to hiring. (Magwood Dep. at 33-34, 52, 64-67, 69-70, 76, 79-81, 83-84, 96-98, 101, 103-04, 105-08, 109-10, 113-14, 116-17, 121-27, 129-31, 133-37, 138, 140-42, 145, 159, 165, 170-72, 175, 161-63, 174-75, 178-79 181, 182, 183-86, 187-88, 189-90, 200, 218.)

Magwood testified that she determined whether a candidate should move forward in the hiring process. (*Id*. at 65-67, 69-70.) If Magwood did not believe that a candidate would be a good fit at the store, then that person went no further in the interview process. (*Id*. at 69-70.) Alternatively, if Magwood believed the candidate should be hired, she made that recommendation to her District Manager. (*Id*. at 63-65.) Magwood testified that as Store

Manager, she recommended three individuals, "Reggie, "Haywood," and "Burns," for Assistant Manager positions and that she could not recall a single instance where one of her hiring recommendations was not followed by her District Manager. (*Id.* at 76-77, 123.) Moreover, Magwood also testified that she hired "McDaniel" and William Campbell as cashiers herself. (*Id.* at 125, 130-31.)

Magwood was responsible for conducting annual performance evaluations of her employees, and her ratings of the employees affected their ability to receive a pay raise and/or a promotion. (*Id*. at 133-37, 138, 140-42.) She also verbally coached her employees on the proper way to do things and would counsel those employees who did not "heed" her direction. (*Id.* at 165, 175, 188.) In addition, Magwood reported employee misconduct and recommended terminations to her District Manager. (*Id.* at 79-81, 96-98, 101, 103-04, 159, 165, 175, 187-89.) For example, Magwood recommended an Assistant Store Manager, "Reggie," for termination and her District Manager then approved the termination. (*Id.* at 98-101.) In other instances, Magwood recommended that an employee be fired after walking out during a shift, and Magwood herself terminated a female employee who continuously had problems with her cash drawer after counseling the employee on the issue. (*Id.* at 79-81, 102-104.) Magwood cannot recall a single instance where her recommendation to terminate an employee was not followed. (*Id.* at 104.)

As Store Manager, Magwood reported to a District Manager. Magwood testified that her District Manager, Edward Rueve, visited the store only once a month or once every six weeks and would stay for only about an hour each visit. (*Id*. at 62-63.) Family Dollar's records indicate that during the relevant time period, Magwood's District Manager oversaw sixteen

stores throughout Alabama, spanning a territory of approximately 159 miles from north to south and 158 miles from east to west. (Hartsell Decl. ¶ 7.)

## STANDARD OF REVIEW

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party always bears the initial burden of "informing the district court of the basis for its motion," and identifying the matter "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Once the movant has met the initial burden, "the non-moving party 'may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.'" *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)). This is particularly important where the nonmoving party bears the burden of proof. *Hughes*, 48 F.3d at 1381. A genuine issue for trial exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249-50. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict.

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248. "The determination of whether an employee falls within the scope of a FLSA exemption is ultimately a legal question," *Walton v. Greenbrier Ford, Inc.*, 370 F.3d 446, 450 (4th Cir. 2004), and the Fourth Circuit has repeatedly affirmed the grant of summary judgment where the facts demonstrate that an

employee is exempt. *See, e.g., Grace v. Family Dollar Stores, Inc.*, 637 F. 3d 508 (4th Cir. 2011) (affirming grant of summary judgment and holding that Family Dollar Store Manager was exempt executive); *Darveau v. Detecon, Inc.*, 515 F.3d 334 (4th Cir. 2008); *Jones v. Virginia Oil Co., Inc.*, 69 Fed. Appx. 633 (4th Cir. 2003); *Smith v. First Union National Bank*, 202 F.3d 234 (4th Cir. 2000).

## **DISCUSSION**

The Fair Labor Standards Act ("FLSA") requires that an employee receive overtime pay if he or she works more than forty hours a week. 29 U.S.C. § 207(a)(1). The FLSA, however, exempts from this requirement "any employee employed in a bona fide executive…capacity." 29 U.S.C. § 213(a)(1). The Department of Labor ("DOL") has promulgated regulations which further describe and interpret the scope of this exemption.

The current regulations provide that an employee qualifies as an executive if: (1) she is compensated on a salary basis at a rate of at least $455 per week; (2) her primary duty is management of the enterprise; (3) she customarily and regularly directs the work of two or more other employees; and (4) she has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.[3] 29 C.F.R. § 541.100(a) (2004).

Magwood concedes in her Response that she is not challenging the first test, thus the only tests at issue are (1) whether Magwood's primary duty is management of the enterprise, (2) whether she customarily and regularly supervised the work of two or more other employees, and (3) whether she has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status

---
[3] Plaintiff incorrectly contends that "frequency of discretion is an independent "primary duty factor." *See* (Doc.1112, Pl. Resp. at 28.)

of other employees are given particular weight. The DOL has also promulgated additional regulations which further describe and define these tests; these additional regulations are discussed below. In light of these regulations, Magwood qualifies as an exempt executive.

1. **Family Dollar Satisfies the Primary Duty Test**

The regulations provide guidance as to how an employee's primary duty may be determined.[4] The regulations instruct that the determination should be "based on all the facts in a particular case." 29 C.F.R. § 541.700(a). The regulations set forth, but are not limited to, four factors to consider in this analysis: (1) the amount of time spent in the performance of managerial duties; (2) the relative importance of the managerial duties as compared with other types of duties; (3) the relative freedom from supervision; and (4) the relationship between the manager's salary and the wages paid to other employees for the kind of nonexempt work performed by the supervisor. (*Id.*)

Upon consideration of the factors identified for determining whether Magwood's primary duty was management, the Court concludes that the factors are readily satisfied.

a. **The Amount of Time Spent in Performance of Managerial Duties**

The regulations provide a list of "management" activities, which include, but are not limited to:

> Interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing their work, maintaining their production or sales records for use in supervision or control; appraising their productivity and efficiency for the purpose of recommending promotions or other changes in their status; handling their complaints and grievances and disciplining them when necessary; planning the work; determining the type of materials, supplies,

---

[4] To the extent that Magwood argues she was merely a "working foreman," the Court finds this argument unavailing. The current regulations state that a "*manager in a retail establishment*" can "supervise employees and serve customers at the same time without losing the exemption." 29 C.F.R. § 541.106(b) (emphasis added). Section 29 C.F.R. § 541.106(c) states "[i]n contrast, " a "working supervisor" who performs "nonexempt work *on the production line in a manufacturing plant* does not become exempt" merely by occasionally directing the work of other nonexempt employees on the "*production line*." (emphasis added).

7

> machinery or tools to be used or merchandise to be bought, stocked, and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety of the [employees] and the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.[5]

29 C.F.R. § 541.102.

Magwood explicitly testified that she performed *almost every one* of these management activities as a Family Dollar Store Manager.[6] For example, Magwood interviewed and screened potential employees and provided hiring recommendations (Magwood Dep. at 52, 64-67, 69-70, 76, 121-27, 129-31.); provided training to her employees on Family Dollar benefits, policies and procedures (*Id*. at 105-06, 108, 124-25.); assigned employees to a schedule and set their individual hours of work including having to adjust the schedule if employees needed or requested time off (*Id*. at 83-84, 170-72, 174-75, 218.); and directed and supervised her employees' work. (*Id*. at 35, 178-79, 189.) In addition, Magwood maintained and was responsible for certain sales and financial records, as well as bank deposits and incident reports (*Id*. at 33-34, 161-63, 181, 183-86.); evaluated the work of her employees for the purpose of recommending promotions (*Id*. at 133-37, 138, 140-42.); and disciplined employees when necessary by providing verbal coaching and discipline, then if she felt further discipline was warranted, made recommendations to her District Manager, which her District Manager followed.

---

[5] An employee need not perform all management duties listed in the regulations, or evenly regularly perform such duties, in order to be considered an exempt executive. *See Aguirre v. SBC Communs., Inc.*, 2007 U.S. Dist. Lexis 72666, 63-62 (S.D. Tex. Sept. 30, 2007) (finding that "plaintiffs' 'primary duty' for purposes of the executive exemption was 'management,' despite the fact that the plaintiffs did not perform other 'managerial' duties listed in Section 541.102.").

[6] The fact that the Assistant Managers can perform the same tasks as Magwood does not render her tasks and duties any less managerial. Courts have consistently held that the fact that a non-exempt employee may sometimes perform exempt duties does not make these duties any less exempt/managerial. *See Baldwin v. Trailer Inns., Inc.*, 266 F.3d 1104, 1115 (9th Cir. 2001) ("[t]hat the [non-exempt] assistant managers may have performed some managerial tasks does not render the tasks non-exempt.").

(*Id*. at 79-81, 96-98, 101, 103-04, 159, 165, 175, 187-89.) Furthermore, Magwood was responsible for the safety and security of the store (*Id*. at 181-82, 189-90, 200.); controlling and controlling and staying within the allocated payroll budget (*Id*. at 113-14, 145, 218.); and monitoring legal compliance measures with respect to hiring, such as completing I-9 paperwork. paperwork. (*Id*. at 105-08, 109-10, 116-17.)

Magwood cannot overcome the exemption by claiming that she spent the majority of her of her time performing non-managerial duties. The regulations state that an employee who spends more than fifty percent of his or her time performing managerial work will typically satisfy the primary duty requirement. 29 C.F.R. § 541.700(b). The regulations, however, also emphasize that "time alone…is not the sole test" and that exempt executives are not required to spend more than fifty percent of their time performing exempt work if other factors support the conclusion that management is their primary duty.[7] *Id*. In *Grace*, the Fourth Circuit explained that "[t]here is no per se rule that once the amount of time spent on manual labor approaches a certain percentage, satisfaction of this factor is precluded as a matter of law." 637 F.3d 508, 515 (4th Cir. 2011).

The regulations also specifically address the concept of concurrent duties. 29 C.F.R. § 541.106. Concurrent performance, or multi-tasking, of exempt and nonexempt work is explicitly recognized as a managerial duty by the DOL's regulations. *Id*.; *see also* 29 U.S.C. § 213(a)(1).[8]

---

[7] The Court disagrees with any contention that failure to meet the 50 percent threshold means that an employee fails to satisfy the primary duty requirement. The Fourth Circuit clarified the application of the 50 percent "rule of thumb" by stating that, "[i]t is clear from this language that primary duty is meant to be assessed by the totality of the circumstances." *Counts v. S.C. Elec. & Gas Co.*, 317 F.3d 453, 456 (4th Cir. 2003). Magwood's reliance on *Clark v. J.M. Benson Co., Inc.*, 789 F.2d 282 (4th Cir. 1986) is misplaced because the court held that it would apply the 50 percent rule to that specific case.

[8] The FLSA recognizes the nature of retail business and states that "an employee of a retail or service establishment shall not be excluded from the definition of an employee employed in a bona fide executive or administrative capacity because of the number of hours in his work week which he devotes to activities not directly or closely related to the performance of executive or administrative activities." 29 U.S.C. § 213(a)(1).

"It is misleading simply to add up the time that [Plaintiff] spent unloading trucks, stocking inventory, running cash registers, or sweeping floors and conclude thereby that she was merely a clerk and not a manager." *Grace*, F.3d at 516.

Magwood was ultimately responsible for the performance of the store and remained the highest ranking employee in the store, even while performing nonexempt work. (Magwood Dep. at 35, 151-53, 156, 160, 166, 187, 190-91, 203.) Thus, Magwood "remain[ed] responsible for the success or failure of the business operations under [her] management while performing the nonexempt work." 29 C.F.R. § 541.106. In other words, Magwood performed her nonexempt tasks in the context of her overall responsibility to ensure the store was profitable. *See Grace*, 637 F.3d at 516.

In *Grace*, the Fourth Circuit found the plaintiff "was performing management duties whenever she was in the store, even though she also devoted most of her time [99%] to doing the mundane physical activities necessary for its successful operation." 637 F.3d at 517. Similar to the plaintiff in *Grace*, even though Magwood contends that she devoted 70-80% of her time to performing nonexempt work, she was also the person responsible for running the store and performed her nonexempt tasks concurrently with her exempt managerial work. (Magwood Dep. at 35, 151-53, 156, 160, 166, 187, 190-91, 203.) For example, Magwood maintained responsibility for the supervision of her employees and the service they provided to her customers, even as she was stocking or running the register. (*Id*. at 166.) Magwood also handled customer complaints while performing non-managerial work, even if an Assistant Store Manager was present in the store as well. (*Id*. at 156, 190.) Moreover, as contemplated by 29 C.F.R. § 541.700(c), Magwood had the discretion and flexibility to choose what tasks to perform herself and what tasks to delegate to other employees. (*Id*. at 35, 167-68, 178-79.) Thus,

10

Magwood had a choice of which duties to perform, in contrast to a nonexempt employee who would simply perform the task to which he or she was assigned. (*Id*.) Magwood would even leave to-do lists when she was not physically present in the store to direct her employees' work. (*Id*. at 178-79.)

While Magwood argues that management was not her primary duty because she spent the majority of her time engaged in manual labor, the regulations and the Court in *Grace* clarify that performance of these duties, in conjunction with overall supervision and management of the store, is not contrary to the application of the exemption. Thus, Magwood's own testimony regarding her duties and tasks reflect that they were undeniably managerial in nature and easily meet the requirements of the executive exemption. *See Grace*, 637 F.3d at 508.

        **b.**      **The Relative Importance of the Managerial Duties as Compared with Other Types of Duties**

Magwood's managerial duties were more important than the other duties she performed because they were critical to the operation of the store. In *Grace*, the plaintiff's managerial tasks, which included filling out paperwork, addressing customer complaints, working with employees on their schedules, and collecting cash, were critical to the operation of the store, as there was "*no one else at the site to direct these actions*." *Grace*, 637 F.3d at 517 (emphasis in original). Similarly, Magwood's managerial tasks, which included interviewing and employee screening (Magwood Dep. at 52, 64-67, 69-70, 76.), training (*Id*. at 105-06, 108, 109-10, 116-17.), store security (*Id*. at 181-82, 189-90, 200.), bank deposits and financial and sales paperwork (*Id*. at 33-34, 161-63, 181, 183-86.), scheduling (*Id*. at 83-84, 170-72, 174-75, 218.), and the overall supervision and direction of her employees, were critical to the operation of the store. (*Id*. at 67-68, 166, 167-68, 188-89.) In fact, Magwood's managerial duties were so important

that she would leave to-do lists for her employees for times when she was not physically present in the store. (*Id*. at 178-79.)

While Magwood argues that she was under the direct supervision of her District Manager, she nonetheless stated that the District Manager visited the store only once every month or once every six weeks and stayed for only approximately one hour at a time – not enough to direct the managerial tasks. (*Id*. at 62-63, 163.) Therefore, because she was the only person running the store, the store could not have operated successfully without Magwood's handling of these managerial tasks.

      **c.**      **Relative Freedom from Supervision**

Relative freedom from supervision does not demand complete freedom from supervision. In *Grace*, the plaintiff's supervising District Manager typically visited the store once every two to three weeks. *Grace*, 637 F.3d at 517. The court also noted, apart from his supervision, which was not uncharacteristic for any retail operation, the district manager was not a "micro-manager who constantly was looking over [the manager's] shoulder." *Id*. The supervision of seventeen stores would hardly permit [the District Manager] to micro-manage all of them. *Id*.; *see also Thomas v. Speedway Super America LLC*, 506 F.3d 496, 504-509 (6th Cir. 2007) (court found it significant that plaintiff's District Manager was responsible for ten to twelve stores, as opposed to situations where a higher level manager was responsible for only a few stores).

Magwood was relatively free from supervision during the relevant time period. Magwood testified that her District Manager, Edward Rueve, visited the store only once every month or sometimes even once every six weeks and would only stay for an hour at a time. (Magwood Dep. at 62-63, 163.) Moreover, Family Dollar's records indicate that during the relevant time period, Magwood's District Manager oversaw sixteen stores, including Magwood's

12

store, spanning a territory of approximately 159 miles from north to south and 158 miles from east to west. (Hartsell Decl. ¶ 7.) Though Magwood was in contact with Rueve through regular conference calls, this does not equate to exacting supervision. In *Grace*, the Fourth Circuit held that the plaintiff was relatively free from direct supervision, despite her being in contact with her District Manager by telephone and email, and being subject to company policies, procedures, and budgetary requirements, as this type of supervision "was not uncharacteristic for any retail operation." 637 F.3d at 517. The infrequency of Rueve's visits and the large number of stores he was responsible for supervising does not allow him to micro-manage each individual store. *See Grace*, 637 F.3d at 517; *Thomas*, 506 F.3d at 508.

> **d. Relationship Between Salary and Wages Paid to Other Employees for the Kind of Nonexempt Work Performed by the Supervisor**

To determine the relationship between a managerial salary and wages paid to nonmanagerial employees, the Fourth Circuit considered, first, whether the manager earned more, in absolute terms, than nonmanagerial employees and, second, whether the manager was a "profit center." *Grace*, 637 F.3d at 517. This second consideration asks whether the manager had the ability to influence the amount of her compensation. *Id*.

As to the first consideration, Magwood earned significantly higher amounts on an hourly basis than nonexempt workers. The record shows that of the twelve nonexempt employees who worked at Magwood's store during the relevant time period, five made $6.00 per hour or less and seven made $7.00 per hour or less. (Hartsell Decl. ¶ 10.) Even using the highest hourly wage for those employees whose wages changed over time, nonexempt employees received an average hourly wage of only $6.91 per hour. (*Id*.) In comparison, Family Dollar's records indicate that Magwood worked an average of 57.39 hours per week. (*Id*. at ¶ 6.) Even setting aside her bonus payments, Magwood earned compensation, which when computed on an hourly basis, averaged

13

between $9.67 and $9.84 per hour during the relevant time period. (Doc. No. 1080.) A review of these calculations reveals a significant difference in wages between Magwood and her nonexempt employees.

As to the second consideration, Magwood was a "profit center," her bonuses depended on her store's profitability and were directly tied to her performance in terms of sales, shrink, and inventory results. (Magwood Dep. at 151-53, 186-87.); *See Grace*, 637 F.3d at 517. Magwood also earned two bonuses during the relevant time period. She received $169.68 on May 6, 2005 and $684.17 on May 5, 2006; bonuses for which nonexempt store employees were not eligible. (*Id*. at 86; Hartsell Decl. ¶ 5.) Therefore, since Magwood had the ability to directly influence her own compensation, this factor is satisfied.

e. **Frequency With Which the Employee Exercises Discretionary Power**

While this factor is no longer an explicit factor in the "primary duty" analysis under the current regulations, the fact that Magwood exercised discretion virtually every day and all day long in her capacity as store manager supports that her primary duty was management. Magwood decided how to assign and apportion work among herself and her employees (Magwood Dep. at 35, 178-79, 189.), how to adjust the schedule (*Id*. at 83-84, 170-72, 174-75, 218.), how to discipline employees (*Id*. at 79-81, 96-98, 101, 103-04, 159, 165, 175, 187-89.), how to interview candidates (*Id*. at 52, 64-67, 69-70, 76.), and how to make sure the store ran safely (*Id*. at 181-82, 189-90, 200.); while at the same time satisfying customers. All of these tasks involved "discretionary acts inherent in being responsible for the successful operation of a retail store." *Grace*, 637 F.3d at 517. Moreover, the fact that Family Dollar maintains certain

14

policies and procedures for the sake of consistency does not mean that Magwood failed to exercise discretion in enforcing these policies and procedures.[9]

## 2. Customarily and regularly directed the work of two or more employees

The DOL regulations require that an employee customarily and regularly direct the work of "two full-time employees or their equivalent." 29 C.F.R. §§ 541.100(a), 541.104. The regulations define the phrase "customarily and regularly" to mean "a frequency that must be greater than occasional but which, of course, may be less than constant." 29 C.F.R. § 541.701. Generally, the DOL has adopted an "80-hour rule," requiring an exempt employee to direct a total of 80 employee-hours of work each week. *See* Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 69 Fed.Reg. 22, 122, 22, 135 (Apr. 23, 2004); *see also Ward*, 830 F. Supp. 2d at 112.

However, in *Murray v. Stuckey's, Inc.*, 50 F.3d 564, 569 (8th Cir. 1995) (*Murray II*), the Eighth Circuit held that the 80-hour rule is not a rigid standard, and specifically rejected the DOL's justification for this rule in the case of store managers of certain retail establishments. Further, the DOL and other courts have specifically recognized that "circumstances might justify lower standards." *Murray II*, 50 F.3d at 569; see also DOL Field Operations Handbook, Sec22c00 ("Unusual circumstances might occasionally justify lower standards… the determination as to whether an employee customarily and regularly supervises other employees within the meaning of Reg. 541.1(b) depends on all facts and circumstances"). For example, in *Murray II*, the court held that the fact that certain store managers who schedule fewer employees

---

[9] *See Murray v. Stuckey's, Inc.*, 50 F.3d 564, 570 (8th Cir. 1995) (standardized procedures and policies may circumscribe but do not eliminate discretion of on-site store manager); *Thomas v. Speedway Super America LLC*, 506 F.3d 496, 507 (6th Cir. 2007) (manager still exercised discretion on a daily basis even though store had standardized operating procedures); *Grace v. Family Dollar Stores, Inc.*, 637 F.3d 508 (4th Cir. 2011) (manager still exercised discretion even though she was subject to company policies and the company template for a store in the Family Dollar chain).

15

during the winter, when business was slow, constituted "unusual circumstances" that did not defeat the exemption. 50 F.3d 564.

Here, Magwood testified that she normally had one Assistant Store Manager and two cashiers at her store. (Magwood Dep. at 90.) Family Dollar's records show that during the relevant time period, from February 4, 2005 to March 27, 2007, Magwood directed at least 80 employee-hours of work for 70.2% of the time that she was Store Manager. (Hartsell Decl. ¶ 8.) Of the weeks Plaintiff directed at least 80 employee-hours, during 36 weeks she directed more than 85 employee-hours, during 20 weeks she directed more than 90 employee-hours, and during 6 weeks she directed between 100-121 employee-hours. (*Id.* ¶ 9.) In contrast, of the weeks where she directed fewer than 80 employee-hours, for 17 of those weeks she still directed over 75 employee-hours, and she only directed fewer than 70 employee-hours for 8 weeks during the relevant time period. (*Id.*)

Family Dollar's payroll budget for Magwood's store allowed her flexibility to hire at least two full-time employees, and Family Dollar ensured that Magwood's store was appropriately staffed. Magwood was provided with a payroll budget to sufficiently staff more than 82 employee-hours per week every week during the relevant time period, and the fact that Magwood frequently did staff more than 80 employee-hours per week demonstrates that she did have an adequate payroll to keep her store staffed appropriately. (*Id.* ¶ 14.) Further, the information contained in the database produced to Magwood, as FD-MDL-148839, and cited in Michele Hartsell's declaration, reveals that the periods where Magwood failed to fully utilize the payroll available to her, corresponds to periods where she lost employees and took an unusually long time to replace them. (Doc. No. 1118, Ex.1-2.) [10]

---

[10] Exhibit 1 is an excerpt of the pivot table that Michele Hartsell references in paragraphs 8-9 of her declaration, and Exhibit 2 is an excerpt from the spreadsheet produced as FD-MDL-148839, which demonstrates only those

The fact that Magwood did not staff her store consistently in line with Family Dollar's expectations constitutes an unusual circumstance, and Magwood should not be permitted to defeat the exemption due to her own staffing shortcomings. *See e.g.*, *Marx v. Friendly Ice Cream Corp.*, 882 A.2d 374, 386 (N.J. Super Ct. 2005) (cautioning that "managers may schedule their staff time poorly, through inexperience, incompetence or design, thereby creating the necessity that justifies their own performance of nonexempt work and receipt of overtime pay"). As this Court has previously held, "Family Dollar's payroll budget allowed for flexibility to hire at least two full time employees and Family Dollar took this step to ensure that [Plaintiff's] store was appropriately staffed. The fact that [Plaintiff] did not meet Family Dollar's expectation constitutes an unusual circumstance." *Grace v. Family Dollar Stores, Inc.*, 2012 U.S. Dist. LEXIS 108773 (W.D.N.C. Aug. 3, 2012) (granting summary judgment against plaintiff Phillis Fancher even though she directed 80 employee hours a week only 48% of the time).

Thus, even though Magwood did not meet a specific quantitative requirement set forth by the regulations for the entire relevant time period, an unusual circumstance existed in that she did not staff her stores consistently from week to week or fully use the payroll budget provided to her. Therefore, this requirement is satisfied.

### 3. Authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight

Finally, the additional prong of the executive exemption test contained in the current regulations states that an exempt employee has authority to hire *or* fire other employees *or* his recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees are given particular weight. 29 C.F.R. § 541.100(a)(4). The DOL provides

---

employees who worked at Magwood's store (omitting any confidential information, such as the pay rate of her employees).

guidance with respect to whether an employee's recommendations satisfy this standard. Specifically, the "factors to be considered include, but are not limited to, whether it is part of the employee's job duties to make such suggestions and recommendations; the frequency with which such suggestions and recommendations are made or requested; and the frequency with which the employee's suggestions and recommendations are relied upon." 29 C.F.R. § 541.105. Importantly, the employee's recommendations "may still be deemed to have 'particular weight' even if a higher level manager's recommendation has more importance and even if the employee does not have the authority to make the ultimate decision as to the employee's change in status." *Id*.

Magwood's deposition testimony establishes that she meets the additional prong of the executive exemption test contained in the current regulations, namely that her suggestions and recommendations as to the hiring and change of status of other employees were given particular weight. Magwood was actively involved in the interviewing and employee screening process, even hiring two employees, "McDaniel" and William Campbell as cashiers. (Magwood Dep. at 63-67, 69-70, 76, 97-98, 121-27, 129-31.) If Magwood did not believe that a candidate would be a good fit at the store, she did not include that candidate in the group of candidates she recommended for hire to her District Manager. (*Id*. at 69-70.) Alternatively, if Magwood believed that the candidate should be hired, then that candidate would move forward in the hiring process. (*Id*. at 65-67, 69-70.) Magwood therefore effectively controlled which candidates were presented for possible District Manager approval. Courts have recognized that a manager plays an important role in the hiring process when she has the ability to veto a potential hire by not presenting the applicant to her supervisor. *See Pollard v. GPM Invs., LLC*, No. 3:10-cv-115, 2011 U.S. Dist. LEXIS 24199 at *27 (E.D. Va. Mar. 10, 2011) (holding that managers "had

18

sufficient input in the hiring, firing, and promotions to justify their exemptions" where the managers screened applicants and determined whether they would continue in their application process).

In addition, Magwood's District Manager closely followed Magwood's hiring recommendations. Magwood specifically recalled that her District Manager followed her recommendation regarding the hiring of "Reggie," "Haywood," and "Burns" as Assistant Store Managers. (Magwood Dep. at 76-77, 123.) In contrast, Magwood could not recall a single instance where she recommended someone for hire and that recommendation was not followed by her District Manager. (*Id*. at 123.) Magwood also testified that she hired "McDaniel" and William Campbell to be cashiers on her own. (*Id.* at 125, 130-31.)

Similarly, Magwood's District Manager also closely followed her recommendations with respect to terminations. (*Id*. at 79-81, 96-98, 101, 103-04, 159, 165, 175, 187-89.) Magwood testified that based on her belief and recommendation that "Reggie," an Assistant Store Manager, be terminated for excessive shrink, Mr. Rueve approved "Reggie's" termination. (*Id.* at 98-101.) In other instance, Rueve approved the termination of a cashier who walked out of the store during her shift, and Magwood herself even terminated one female employee who had several problems with her cash drawer. (*Id.* at 79-81, 102-04.) Therefore, while Magwood may not have had the ultimate decision making authority with respect to hiring, it is undisputable that she controlled the screening process and at least some of her recommendations as to hiring, promotion and termination were closely followed, thereby satisfying the particular weight requirement.

## CONCLUSION

Looking at the facts in the light most favorable to the non-moving parry, the Court finds that Family Dollar has satisfied the DOL regulations qualifying Magwood as an exempt executive under the FLSA. No reasonable jury could find otherwise. Therefore, Family Dollar is entitled to judgment as a matter of law.

## ORDER

IT IS ORDERED that

(1) Defendant's Motion for Summary Judgment (Doc. No. 1080) is GRANTED and Plaintiff Rosie Magwood is dismissed;

(2) The Court finds that there is no just reason to delay finding of final judgment for Family Dollar with regard to Plaintiff Rosie Magwood's claim against Family Dollar;

(3) The Clerk is directed to enter final judgment, pursuant to Rule 54(b), for Family Dollar with regard to Plaintiff Rosie Magwood.

Signed: February 7, 2014

Graham C. Mullen
United States District Judge