IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:08MD1932-GCM

| | |
|---|---|
| IN RE FAMILY DOLLAR FLSA LITIGATION ) ) ) ) ) ) *Concerning Scott v. Family Dollar Stores* ) ) ) Case No. 3:08-cv-00540 ) ) | **ORDER** |

**THIS MATTER** is before the Court on Defendant's Motion for Summary Judgment and Memorandum in Support (Doc. No. 970); Plaintiff's Response in Opposition and Motion for Summary Judgment (Doc. No. 1003); and Defendant's Reply (Doc. No. 1007). For the reasons set forth below, the Defendant's motion is **GRANTED**.

## FACTS

Plaintiff, Ruby Brady, began working for Family Dollar in 1999 as an Assistant Store Manager, and was later promoted to Store Manager.[1] (Doc. No. 970; Brady Dep. at 17.) Brady was hired at Store 1080 in Tampa, Florida, but in 2005 Brady transferred to Store 4225 in Lakeland, Florida. (Doc. No. 970; Brady Dep. at 12-13, 17; Hartsell Decl. ¶ 4.) Brady worked as

---

[1] The Court notes that Plaintiff's declaration was prepared after Plaintiff's deposition and on many occasions directly contradicts her sworn testimony. Plaintiff cannot create a dispute about a fact contained in deposition testimony by referring to a subsequent affidavit of the deponent contradicting the deponent's prior testimony, for "it is well established that a genuine issue of fact is not created where the only issue of fact is to determine which of the two conflicting versions of a party's testimony is correct." *Erwin v. United States*, 591 F.3d 313, 325 n.7 (4th Cir. 2010) (internal quotation marks and alterations omitted) (quoting *Halperin v. Abacus Tec. Corp.*, 128 F.3d 191, 198 (4th Cir. 1997); *see also Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 341 (4th Cir. 2001); *Rohrbough v. Wyeth Labs.*, 916 F.2d 970, 975-76 (4th Cir. 1990); *Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984). To the extent that Plaintiff's deposition testimony and later affidavit are inconsistent, the Court will disregard the affidavit and rely on the testimony she gave in her deposition, where she was examined at length about her responsibilities as a manager of a Family Dollar store. *See Grace*, 637 F.3d at 513.

1

Store Manager of Store 4225 at all times during the relevant time period for her claims. (Doc. No. 970; Brady Dep. at 13; Hartsell Decl. ¶ 4).[2]

Family Dollar paid Brady a weekly salary of $939.47 from February 15, 2007 to November 8, 2008. (Brady Dep. at 24; Hartsell Decl. ¶ 4.) Brady also earned two bonuses of $1,830.80 and $1,177.39 during the relevant time period for her claims. (Brady Dep. at 27-28; Hartsell Decl. at ¶ 5.) Nonexempt employees were not eligible for these bonuses, which were tied to the store's performance as measured at inventory time. (Brady Dep. at 53; Hartsell Decl. ¶ 5.) Brady worked an average of 56.18 hours per week as Store Manager at Store 4225 during the relevant time period. (Hartsell Decl. ¶ 6.)

The record shows that of the twenty-one nonexempt employees who worked at Brady's store during the relevant time period, nineteen made $8 per hour or less (*Id*. at ¶ 9.) Even using the highest hourly wages earned by employees whose wages changed over time, the hourly employees who worked in Brady's store earned an average of $7.58 per hour during the relevant time period. (*Id*.) Family Dollar's records reflect that Brady managed at least 80 employee hours 100% of the time during the relevant time period. (*Id*. at ¶ 8.)

Brady contends that she devoted 90% of her time to performing nonexempt work, but also admits that she was responsible for running the store. (Pl.'s Resp., Ex. A at ¶ 9; Brady Dep. at 159-60, 206.) For example, Brady admitted that even when she was performing non-managerial tasks in the store, she concurrently was responsible for maintaining the security of the store by watching for and dealing with shoplifters. (*Id*. at 58-59.) Also, to the extent possible, Brady supervised and directed her employees while performing non-managerial tasks

---

[2] Brady filed her opt-in consent form on February 15, 2010. Accordingly, February 15, 2007, or three years prior to her opt-in date, through the end of her employment on November 8, 2008, represents the longest possible relevant time period for Brady's claims in this action.

2

around the store, and specifically Brady was in charge of the truck delivery process while she was assisting other employees in unloading the truck. (*Id*. at 60, 231.) Brady also had the authority and ability to direct other employees to perform this nonexempt work. (*Id*. at 231-32, 256.)

Brady was responsible for many tasks and duties as part of her job. Specifically, Brady was responsible for: interviewing and screening employees and providing hiring recommendations, including as to the new hires' starting pay; completing the hiring paperwork; training employees and grooming them for advancement; ensuring that Family Dollar procedures were being followed; scheduling employees, including handling vacation requests and occasions when employees failed to show up for work; supervising and directing employees' work; maintaining financial and sales paperwork and handling the bank deposits; evaluating the work of her employees and recommending promotions; handling employee complaints and conflicts; counseling and disciplining employees when necessary; planning and apportioning work among her employees; maintaining the security of the store and guarding against theft; and monitoring legal compliance measures with respect to hiring. (Brady Dep. at 32, 64-65, 69-73, 75-81, 98-123, 126-28, 135-44, 150-57, 163-64, 178-81, 182-85, 196-99, 200-03, 220-21, 228-30, 234-237, 240-41, 243-44, 246-48, 250-56.)

Though Brady utilized a team concept in running her store, she was "in charge" and served as the head of the team she built at her store. *Id*. at 34. Brady testified that even on her day off, she would receive phone calls at home with questions from her employees about problems or issues at the store. (*Id*. at 50-51, 256.) Brady was actively involved in the interviewing and employee screening process. (*Id.* at 100-23.) If Brady did not believe that a candidate would be a good fit at the store, she did not include that candidate in the group of

3

candidates she recommended for hire to her District Manager. (*Id*. at 91-96, 100, 106.) Alternatively, if Brady believed the candidate should be hired, she made that recommendation to her District Manager. (*Id*.) Brady even recommended a starting pay rate for those candidates that were hired. (*Id*. at 107-08.)

Brady led by example and employed a management style that was polite, but she also expected her subordinates to follow through on her instructions. (*Id*. at 22, 74-75, 157-58, 176-77.) She gave explicit instructions to her subordinates on how to complete tasks, and when she was not there, she left notes on tasks to be completed. (*Id.* at 157-59, 224-25.) Brady was also responsible for employee discipline. (*Id*. at 173-78.) For example, Brady issued verbal warnings and, after consulting the District Manager, issued written warnings and even terminated employees. (*Id*.)

As Store Manager, Brady reported to a District Manager. During the relevant time period Brady's District Manager was Richard Bradley. (*Id*. at 85-86; Hartsell Decl. ¶ 7). Bradley visited Brady's store, on average, once a month. (Brady Dep. at 85-86.) Family Dollar's records indicate that during the relevant time period, Brady's District Manager oversaw twenty-four stores throughout Florida, spanning a territory of approximately 60 miles from north to south and 60 miles from east to west. (Hartsell Decl. ¶ 7.)

## **STANDARD OF REVIEW**

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party always bears the initial burden of "informing the district court of the basis for its motion," and identifying the matter "it believes demonstrate[s] the absence of a genuine issue of material

fact." *Celotex*, 477 U.S. at 323. Once the movant has met the initial burden, "the non-moving party 'may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.'" *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)). This is particularly important where the nonmoving party bears the burden of proof. *Hughes*, 48 F.3d at 1381. A genuine issue for trial exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id*. at 249-50. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict.

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id*. at 248. "The determination of whether an employee falls within the scope of a FLSA exemption is ultimately a legal question," *Walton v. Greenbrier Ford, Inc.*, 370 F.3d 446, 450 (4th Cir. 2004), and the Fourth Circuit has repeatedly affirmed the grant of summary judgment where the facts demonstrate that an employee is exempt. *See, e.g., Grace v. Family Dollar Stores, Inc.*, 637 F. 3d 508 (4th Cir. 2011) (affirming grant of summary judgment and holding that Family Dollar Store Manager was exempt executive); *Darveau v. Detecon, Inc.*, 515 F.3d 334 (4th Cir. 2008); *Jones v. Virginia Oil Co., Inc.*, 69 Fed. Appx. 633 (4th Cir. 2003); *Smith v. First Union National Bank*, 202 F.3d 234 (4th Cir. 2000).

**DISCUSSION**

1. **Collateral Estoppel does not Preclude Family Dollar's Motion for Summary Judgment.**

Brady asserts that as an opt-in plaintiff in the *Morgan v. Family Dollar Stores* litigation, the jury has already found that Brady and other similarly situated plaintiffs were improperly classified as exempt executive employees. (Doc. 1003, Pl.'s Resp. at 1.) Brady suggests that collateral estoppel precludes Family Dollar's summary judgment motion.

The party invoking collateral estoppel has the burden of proving that: (1) the issue sought to be determined is identical to the one actually litigated in an earlier suit; (2) the issue was actually determined in a prior proceeding; (3) the issue was a critical and necessary part of judgment in the prior proceeding; (4) the prior judgment is final and valid; and (5) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the previous forum. *Collins v. Pond Creek Mining Co.*, 468 F.3d 213, 217 (4th Cir. 2006); *see e.g., Sedlack v. Braswell Servs. Grp., Inc.*, 134 F.3d 219, 224 (4th Cir. 1998) (citing *Ramsay v. U.S. Immigration and Naturalization Serv.*, 14 F.3d 206, 210 (4th Cir. 1994)).

Brady cannot meet her burden of demonstrating that the issue herein is identical to the one previously litigated because the fact-specific details of Brady's responsibilities and actions as Store Manager were not addressed by the *Morgan* court. This Court and the Fourth Circuit have explicitly rejected the attempt to cast this action as a carbon copy of *Morgan v. Family Dollar Stores.* 551 F.3d 1233 (11th Cir. 2008). *See e.g., Grace v. Family Dollar Stores, Inc.*, 637 F.3d 508, 518 (4th Cir. 2011) ("While Grace argues that the facts in *Morgan* and in the current case are the same, there is no basis to support that claim."); *Grace v. Family Dollar Stores, Inc.*, 3:08 MD 1932-GCM, 2011 U.S. Dist. LEXIS 84386 at *22 n.2 (W.D.N.C. July 29, 2011) ("[T]his Court has clearly stated that this case is not *Morgan* and therefore, this Court

would not be following the *Morgan* court."). The determination that individuals in *Morgan* were not properly classified as exempt during a particular time period does not mean that those individuals are presumptively and indefinitely non-exempt. Brady's specific duties and responsibilities during this specific time period were not before the court until now and therefore the issue herein is not identical to the issue actually litigated in the earlier suit.

### 2. There is no Genuine Dispute of Material Fact that Brady Qualifies as an Exempt Executive under the Fair Labor Standards Act

The Fair Labor Standards Act ("FLSA") requires that an employee receive overtime pay if he or she works more than forty hours a week. 29 U.S.C. § 207(a)(1). The FLSA, however, exempts from this requirement "any employee employed in a bona fide executive…capacity." 29 U.S.C. § 213(a)(1). The Department of Labor ("DOL") has promulgated regulations which further describe and interpret the scope of this exemption.

The current regulations provide that an employee qualifies as an executive if: (1) she is compensated on a salary basis at a rate of at least $455 per week; (2) her primary duty is management of the enterprise; (3) she customarily and regularly directs the work of two or more other employees; and (4) she has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight. 29 C.F.R. § 541.100(a) (2004).

There is no dispute about the first or third tests and thus the only tests at issue are (1) whether Brady's primary duty is management of the enterprise and (2) whether she has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees are given particular weight.

### a. Family Dollar Satisfies the Primary Duty Test

The regulations provide guidance as to how an employee's primary duty may be determined. The regulations instruct that the determination should be "based on all the facts in a particular case." 29 C.F.R. § 541.700(a). The regulations set forth, but are not limited to, four factors to consider in this analysis: (1) the amount of time spent in the performance of managerial duties; (2) the relative importance of the managerial duties as compared with other types of duties; (3) the relative freedom from supervision; and (4) the relationship between the manager's salary and the wages paid to other employees for the kind of nonexempt work performed by the supervisor. (*Id.*)

Upon consideration of the factors identified for determining whether Brady's primary duty was management, the Court concludes that the factors are readily satisfied.

### i. The Amount of Time Spent in Performance of Managerial Duties

The regulations provide a list of "management" activities, which include, but are not limited to:

> Interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing their work, maintaining their production or sales records for use in supervision or control; appraising their productivity and efficiency for the purpose of recommending promotions or other changes in their status; handling their complaints and grievances and disciplining them when necessary; planning the work; determining the type of materials, supplies, machinery or tools to be used or merchandise to be bought, stocked, and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety of the [employees] and the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.[3]

---

[3] An employee need not perform all management duties listed in the regulations, or evenly regularly perform such duties, in order to be considered an exempt executive. *See Aguirre v. SBC Communs., Inc.*, 2007 U.S. Dist. Lexis 72666, 63-62 (S.D. Tex. Sept. 30, 2007) (finding that "plaintiffs' 'primary duty' for purposes of the executive exemption was 'management,' despite the fact that the plaintiffs did not perform other 'managerial' duties listed in Section 541.102.").

29 C.F.R. § 541.102.

Brady explicitly testified that she performed *almost every one* of these management activities as a Family Dollar Store Manager.[4] For example, Brady interviewed and screened potential employees and provided hiring recommendations (Brady Dep. at 32, 100-23, 150-57, 228-30, 243-44.); provided training to her employees on Family Dollar benefits, policies and procedures (*Id*. at 126-28, 135-40.); assigned employees to a schedule and set their individual hours of work, including having to adjust the schedule if employees needed or requested time off (*Id*. at 64-65, 140-43, 163-64, 220-21, 234-35, 253.); and directed and supervised her employees' work. (*Id*. at 32, 60, 153-62, 224-25, 233, 235-37.) In addition, Brady maintained and was responsible for certain sales and financial records, as well as bank deposits and incident reports (*Id*. at 75-81, 182-85, 254-56.); evaluated the work of her employees for the purpose of recommending promotions (*Id*. at 85-86.); and disciplined employees when necessary by providing verbal coaching and discipline, then if she felt further discipline was warranted, made recommendations to her District Manager. (*Id*. at 32, 143, 171-74, 177-78, 208-12, 247-48.) Furthermore, Brady was responsible for the safety and security of the store (*Id*. at 78-81, 196-99.); controlling and staying within the allocated payroll budget (*Id*. at 107-08, 200-03.); and monitoring legal compliance measures with respect to hiring, such as completing I-9 paperwork. (*Id*. at 98-100, 110-12, 118-23.)

Brady cannot overcome the exemption by claiming that she spent the majority of her time performing non-managerial duties. The regulations state that an employee who spends more than fifty percent of his or her time performing managerial work will typically satisfy the

---

[4] The fact that the Assistant Managers can perform the same tasks as Brady does not render her tasks and duties any less managerial. Courts have consistently held that the fact that a non-exempt employee may sometimes perform exempt duties does not make these duties any less exempt/managerial. *See Baldwin v. Trailer Inns., Inc.*, 266 F.3d 1104, 1115 (9th Cir. 2001) ("[t]hat the [non-exempt] assistant managers may have performed some managerial tasks does not render the tasks non-exempt.").

9

primary duty requirement. 29 C.F.R. § 541.700(b). The regulations, however, also emphasize that "time alone…is not the sole test" and that exempt executives are not required to spend more than fifty percent of their time performing exempt work if other factors support the conclusion that management is their primary duty. *Id*. In *Grace*, the Fourth Circuit explained that "[t]here is no per se rule that once the amount of time spent on manual labor approaches a certain percentage, satisfaction of this factor is precluded as a matter of law." 637 F.3d 508, 515 (4th Cir. 2011).

The regulations also specifically address the concept of concurrent duties. 29 C.F.R. § 541.106. Concurrent performance, or multi-tasking, of exempt and nonexempt work is explicitly recognized as a managerial duty by the DOL's regulations. *Id*.; *see also* 29 U.S.C. § 213(a)(1).[5] "It is misleading simply to add up the time that [Plaintiff] spent unloading trucks, stocking inventory, running cash registers, or sweeping floors and conclude thereby that she was merely a clerk and not a manager." *Grace*, F.3d at 516.

Brady was ultimately responsible for the performance of the store and remained the highest ranking employee in the store, even while performing nonexempt work. (Brady Dep. at 23, 77-78, 115.) Thus, Brady "remain[ed] responsible for the success or failure of the business operations under [her] management while performing the nonexempt work." 29 C.F.R. § 541.106. In other words, Brady performed her nonexempt tasks in the context of her overall responsibility to ensure the store was profitable. *See Grace*, 637 F.3d at 516.

In *Grace*, the Fourth Circuit found the plaintiff "was performing management duties whenever she was in the store, even though she also devoted most of her time [99%] to doing the

---

[5] The FLSA recognizes the nature of retail business and states that "an employee of a retail or service establishment shall not be excluded from the definition of an employee employed in a bona fide executive or administrative capacity because of the number of hours in his work week which he devotes to activities not directly or closely related to the performance of executive or administrative activities." 29 U.S.C. § 213(a)(1).

mundane physical activities necessary for its successful operation." 637 F.3d at 517. Similar to the plaintiff in *Grace*, even though Brady contends that she devoted 90% of her time to performing nonexempt work, she was also the person responsible for running the store and performed her nonexempt tasks concurrently with her exempt managerial work. (Brady Dep. at 22, 74-75, 157-58, 167-69, 176-77.) For example, Brady was in charge of the truck delivery process while she was assisting other employees in unloading the truck. (*Id*. at 231.) Brady also supervised and directed her employees while performing non-managerial tasks around the store. (*Id*. at 58-60.) Moreover, as contemplated by 29 C.F.R. § 541.700(c), Brady had the discretion and flexibility to choose what tasks to perform herself and what tasks to delegate to other employees. (*Id*. at 157-59, 224-25.) Thus, Brady had a choice of which duties to perform, in contrast to a nonexempt employee who would simply perform the task to which he or she was assigned. (*Id*.) Brady also had the authority and the ability to direct other employees to perform this nonexempt work. (*Id*. at 231-32, 256.)

While Brady argues that management was not her primary duty because she spent the majority of her time engaged in manual labor, the regulations and the Court in *Grace* clarify that performance of these duties, in conjunction with overall supervision and management of the store, is not contrary to the application of the exemption. Thus, Brady's own testimony regarding her duties and tasks reflect that they were undeniably managerial in nature and easily meet the requirements of the executive exemption. *See Grace*, 637 F.3d at 508.

### ii. The Relative Importance of the Managerial Duties as Compared with Other Types of Duties

Brady's managerial duties were more important than the other duties she performed because they were critical to the operation of the store. In *Grace*, the plaintiff's managerial tasks, which included filling out paperwork, addressing customer complaints, working with

employees on their schedules, and collecting cash, were critical to the operation of the store, as there was "*no one else at the site to direct these actions*." *Grace*, 637 F.3d at 517 (emphasis in original). Similarly, Brady's managerial tasks, which included interviewing and employee screening (Brady Dep. at 32, 100-23, 150-57, 228-30, 243-44.), training (*Id*. at 126-28, 135-40.), store security (*Id*. at 78-81, 196-99.), bank deposits and financial and sales paperwork (*Id*. at 75-81, 182-85, 254-56.), scheduling (*Id*. at 64-65, 140-43, 163-64, 220-21, 234-35.), and the overall supervision and direction of her employees, were critical to the operation of the store. (*Id*. at 32, 60, 153-62, 224-25, 2233, 235-37.)

While Brady argues that she was under the direct supervision of her District Manager, she nonetheless stated that the District Manager visited the store, on average, once every month. (*Id*. at 85-86.) Therefore, because she was the only person running the store, the store could not have operated successfully without Brady's handling of these managerial tasks.

### iii. **Relative Freedom from Supervision**

Relative freedom from supervision does not demand complete freedom from supervision. In *Grace*, the plaintiff's supervising District Manager typically visited the store once every two to three weeks. *Grace*, 637 F.3d at 517. The court also noted, apart from his supervision, which was not uncharacteristic for any retail operation, the district manager was not a "micro-manager who constantly was looking over [the manager's] shoulder." *Id*. The supervision of seventeen stores would hardly permit [the District Manager] to micro-manage all of them. *Id*.; *see also Thomas v. Speedway Super America LLC*, 506 F.3d 496, 504-509 (6th Cir. 2007) (court found it significant that plaintiff's District Manager was responsible for ten to twelve stores, as opposed to situations where a higher level manager was responsible for only a few stores).

12

Brady was relatively free from supervision during the relevant time period. Brady testified that her District Manager visited the store on average once every month. (Brady Dep. at 85-86.) Moreover, Family Dollar's records indicate that during the relevant time period, Brady's District Manager oversaw twenty-four stores, including Brady's store, spanning a territory of approximately 60 miles from north to south and 60 miles from east to west in Florida. (Hartsell Decl. ¶ 7.) Though Brady was in contact with her District Manager through regular conference calls, this does not equate to exacting supervision. In *Grace*, the Fourth Circuit held that the plaintiff was relatively free from direct supervision, despite her being in contact with her District Manager by telephone and email, and being subject to company policies, procedures, and budgetary requirements, as this type of supervision "was not uncharacteristic for any retail operation." 637 F.3d at 517. The infrequency of the District Manager's visits and the large number of stores he was responsible for supervising does not allow him to micro-manage each individual store. *See Grace*, 637 F.3d at 517; *Thomas*, 506 F.3d at 508.

### iv. Relationship Between Salary and Wages Paid to Other Employees for the Kind of Nonexempt Work Performed by the Supervisor

To determine the relationship between a managerial salary and wages paid to nonmanagerial employees, the Fourth Circuit considered, first, whether the manager earned more, in absolute terms, than nonmanagerial employees and, second, whether the manager was a "profit center." *Grace*, 637 F.3d at 517. This second consideration asks whether the manager had the ability to influence the amount of her compensation. *Id*.

As to the first consideration, Brady earned significantly higher amounts on an hourly basis than nonexempt workers. The record shows that of the twenty-one nonexempt employees who worked at Brady's store during the relevant time period, 19 made $8 per hour or less, and the highest paid nonexempt employee, an assistant store manager, earned $14.22 per hour.

13

(Hartsell Decl. ¶ 9.) Even using the highest hourly wage for those employees whose wages changed over time, nonexempt employees received an average hourly wage of only $7.58 per hour. (*Id.*) In comparison, Family Dollar's records indicate that Brady worked an average of 56.18 hours per week. (*Id.* at ¶ 6.) Even setting aside her bonus payment, Brady earned compensation that, when computed on an hourly basis, averaged $16.72 per hour during the relevant time period. A review of these calculations reveals a significant difference in wages between Brady and her nonexempt employees.

As to the second consideration, Brady was a "profit center," her bonuses depended on her store's profitability and were directly tied to her performance in terms of sales, shrink, and inventory results. (Brady Dep. at 17-18, 25-29, 66-68, 77-78.); *See Grace*, 637 F.3d at 517. Brady earned two bonuses of $1,830.80 and $1,177.39 during the relevant time period; bonuses for which nonexempt store employees were not eligible. (Hartsell Decl. ¶ 5.) Therefore, since Brady had the ability to directly influence her own compensation, this factor is satisfied.

### v. Frequency With Which the Employee Exercises Discretionary Power

While this factor is no longer an explicit factor in the "primary duty" analysis under the current regulations, the fact that Brady exercised discretion virtually every day and all day long in her capacity as store manager supports that her primary duty was management. Brady decided how to assign and apportion work among herself and her employees (Brady Dep. at 231-32, 256.), how to adjust the schedule (*Id.* at 64-65, 140-43, 163-64, 220-21, 234-35, 253.), how to interview candidates (*Id.* at 100-23, 228-30.), and how to make sure the store ran safely (*Id.* at 78-81, 196-99.); while at the same time satisfying customers. All of these tasks involved "discretionary acts inherent in being responsible for the successful operation of a retail store." *Grace*, 637 F.3d at 517. Moreover, the fact that Family Dollar maintains certain policies and

14

procedures for the sake of consistency does not mean that Brady failed to exercise discretion in enforcing these policies and procedures.[6]

### b. Authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight

Finally, the additional prong of the executive exemption test contained in the current regulations states that an exempt employee has authority to hire *or* fire other employees *or* his recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees are given particular weight. 29 C.F.R. § 541.100(a)(4). The DOL provides guidance with respect to whether an employee's recommendations satisfy this standard. Specifically, the "factors to be considered include, but are not limited to, whether it is part of the employee's job duties to make such suggestions and recommendations; the frequency with which such suggestions and recommendations are made or requested; and the frequency with which the employee's suggestions and recommendations are relied upon." 29 C.F.R. § 541.105. Importantly, the employee's recommendations "may still be deemed to have 'particular weight' even if a higher level manager's recommendation has more importance and even if the employee does not have the authority to make the ultimate decision as to the employee's change in status." *Id*.

Brady's deposition testimony establishes that she meets the additional prong of the executive exemption test contained in the current regulations, namely that her suggestions and recommendations as to the hiring and change of status of other employees were given particular weight. Brady was actively involved in the interviewing and employee screening process.

---

[6] *See Murray v. Stuckey's, Inc.*, 50 F.3d 564, 570 (8th Cir. 1995) (standardized procedures and policies may circumscribe but do not eliminate discretion of on-site store manager); *Thomas v. Speedway Super America LLC*, 506 F.3d 496, 507 (6th Cir. 2007) (manager still exercised discretion on a daily basis even though store had standardized operating procedures); *Grace v. Family Dollar Stores, Inc.*, 637 F.3d 508 (4th Cir. 2011) (manager still exercised discretion even though she was subject to company policies and the company template for a store in the Family Dollar chain).

(Brady Dep. at 100-23, 228-30.) Brady testified that when screening and interviewing candidates, she would primarily focus on whether they were presentable to customers. (*Id*. at 104-05.) If Brady believed that the candidate should be hired, she made that recommendation to her District Manager. (*Id*. at 91-96, 100, 106.) Brady therefore effectively controlled which candidates were presented for possible District Manager approval. Courts have recognized that a manager plays an important role in the hiring process when she has the ability to veto a potential hire by not presenting the applicant to her supervisor. *See Pollard v. GPM Invs., LLC*, No. 3:10-cv-115, 2011 U.S. Dist. LEXIS 24199 at *27 (E.D. Va. Mar. 10, 2011) (holding that managers "had sufficient input in the hiring, firing, and promotions to justify their exemptions" where the managers screened applicants and determined whether they would continue in their application process).

In addition, Brady's District Manager closely followed her hiring recommendations. Brady could not recall a single instance where she recommended someone for hire and that recommendation was not followed by her District Manager. (Brady Dep. at 96, 100.)

Similarly, Brady's District Manager also closely followed her recommendations with respect to the promotion of employees to Assistant Store Manager. (*Id*. at 48-49, 129-30.) Brady testified that she recommended that Judy Moore, Betty Anderson, Brandie Getchell, and Gloria Major be promoted to Assistant Store Manager, and her District Manager followed each of these recommendations. (*Id*. 129-30, 216-19.)

Therefore, while Brady may not have had the ultimate decision making authority with respect to hiring, it is undisputable that she controlled the screening process and at least some of her recommendations as to hiring, promotion and termination were closely followed, thereby satisfying the particular weight requirement.

16

## CONCLUSION

Looking at the facts in the light most favorable to the non-moving party, the Court finds that Family Dollar has satisfied the DOL regulations qualifying Ruby Brady as an exempt executive under the FLSA. No reasonable jury could find otherwise. Therefore, Family Dollar is entitled to judgment as a matter of law.

## ORDER

IT IS ORDERED that

(1) Defendant's Motion for Summary Judgment (Doc. No. 970) is GRANTED and Plaintiff Ruby Brady is dismissed;

(2) The Court finds that there is no just reason to delay a finding of final judgment for Family Dollar with regard to Plaintiff Ruby Brady's claim against Family Dollar;

(3) The Clerk is directed to enter final judgment, pursuant to Rule 54(b), for Family Dollar with regard to Plaintiff Ruby Brady.

Signed: April 8, 2014

Graham C. Mullen
United States District Judge