# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## 3:08MD1932-GCM

| | | |
|---|---|---|
| IN RE FAMILY DOLLAR | ) | |
| FLSA LITIGATION | ) | |
| | ) | |
| _____) | | **ORDER** |
| | ) | |
| *Concerning Moody v. Family Dollar* | ) | |
| *Stores* | ) | |
| | ) | |
| Case No. 3:08-cv-1935 | ) | |
| _____) | | |

     **THIS MATTER** is before the Court on Defendant's Motion for Summary Judgment and

Memorandum in Support (Doc. No. 972); Plaintiff's Response in Opposition (Doc. No. 1023);

and Defendant's Reply (Doc. No. 1031). For the reasons set forth below, the motion is

**GRANTED**.

## FACTS

     Plaintiff, Doris Moody, began working for Family Dollar in 1980 as a cashier at Store

312 in Newport, Tennessee. [1] (Doc. No. 972; Moody Dep. at 61-63, 77.) Moody was promoted

to Floor Supervisor, and then shortly thereafter she was promoted to Store Manager. (Doc. No.

972; Moody Dep. at 74-77.) In October 1985 Moody requested a transfer; she worked for a nine-

month stint as the Store Manager for Store 810 in Newcastle, Delaware before Family Dollar

---

[1] The Court notes that Plaintiff's declaration was prepared after Plaintiff's deposition and on many occasions directly contradicts her sworn testimony. Plaintiff cannot create a dispute about a fact contained in deposition testimony by referring to a subsequent affidavit of the deponent contradicting the deponent's prior testimony, for "it is well established that a genuine issue of fact is not created where the only issue of fact is to determine which of the two conflicting versions of a party's testimony is correct." *Erwin v. United States*, 591 F.3d 313, 325 n.7 (4th Cir. 2010) (internal quotation marks and alterations omitted) (quoting *Halperin v. Abacus Tec. Corp.*, 128 F.3d 191, 198 (4th Cir. 1997); *see also Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 341 (4th Cir. 2001); *Rohrbough v. Wyeth Labs.*, 916 F.2d 970, 975-76 (4th Cir. 1990); *Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984). To the extent that Plaintiff's deposition testimony and later affidavit are inconsistent, the Court will disregard the affidavit and rely on the testimony she gave in her deposition, where she was examined at length about her responsibilities as a manager of a Family Dollar store. *See Grace*, 637 F.3d at 513.

transferred her to Store 890 in Pennsauken, New Jersey.  (Doc. No. 972; Moody Dep. at 104-07.)

Moody remained at Store 890 from May 1986 to February 2005 when she transferred to Store

2620 in Sarasota, Florida.  (Moody Dep. at 108-09; Hartsell Decl. ¶ 4.)  Moody remained at

Store 2620 until June 2005 when she transferred to Store 2807 in Mulberry, Florida, where she

remained until the end of her employment in November 2008.  (Moody Dep. at 169-70; Hartsell

Decl. ¶ 4.)

Family Dollar paid Moody a weekly salary of $1,027 from September 26, 2004 to June

25, 2005 at Stores 890 and 2620.  (Hartsell Decl. ¶ 4.) Moody was paid a weekly salary of $750

from June 26, 2005 to July 8, 2006, $776.25 from July 9, 2006 to July 21, 2007, $797.98 from

July 22, 2007 to July 19, 2008, and $820.33 from July 20, 2008 until the end of her employment

on November 14, 2008.  (*Id*.)  Moody also received six bonuses during the relevant time period

for her claims.  (*Id*. at ¶ 5.)  On June 3, 2005 she received a bonus of $689.43; on September 9,

2005 she received a bonus of $111.84; on August 11, 2006 she received a bonus of $1,138.84; on

August 10, 2007 she received a bonus of $1,380.32; on April 27, 2008 she received a bonus of

$37.25; and on August 8, 2008 she received a bonus of $903.31. (*Id*.) Nonexempt employees

were not eligible for these bonuses, which were tied to the store's performance as measured at

inventory time.  (Moody Dep. at 249-50; Hartsell Decl. ¶ 5.)  Moody worked an average of 69.08

hours per week as Store Manager at Store 2620 during the time period from February 27, 2005 to

June 25, 2005 and an average of 63.62 hours per week as Store Manager at Stores 2620 and 2807

from June 26, 2005 to the end of her employment on November 14, 2008.  (Hartsell Decl. ¶ 6.)

The record shows that of the twenty-four nonexempt employees who worked at Store

2620 from February 7, 2005 to June 25, 2005, nineteen made $7 per hour or less, and the highest

paid nonexempt employee earned $14 per hour. (*Id*. at ¶ 9.)  Even using the highest hourly wages

earned by employees whose wages changed over time, the hourly employees who worked in Moody's store earned an average of $7.13 per hour during the relevant time period. (*Id*.) Of the seventeen nonexempt employees who worked at Store 2807 from June 26, 2005 to November 14, 2008, ten made $8 per hour or less, and the highest paid nonexempt employee earned $10.00 per hour. (*Id*.) Family Dollar's records reflect that Moody managed at least 80 employee hours 100% of the time from February 7, 2005 to June 25, 2005 and managed at least 80 employee hours 89.89% of the time from June 26, 2005 to November 14, 2008. (*Id*. at ¶ 8.)

Moody contends that she devoted the majority of her time to performing nonexempt work, but also admits that she was responsible for running the store. (Moody Decl. at ¶ 9; Moody Dep. at 30-31, 93-95, 97-98, 210, 219-22.) For example, Moody admitted that even when she was performing non-managerial tasks in the store, she concurrently was responsible for supervising her employees and handling customer complaints. (*Id*. at 111, 155-156, 196.) Moody also had the authority and ability to direct other employees to perform this nonexempt work. (*Id*. at 321-22, 331-32, 386-89.)

Moody was responsible for many tasks and duties as part of her job. Specifically, Moody was responsible for: interviewing and screening employees and hiring employees; completing the hiring paperwork; training employees; training new Store Managers; ensuring that Family Dollar procedures were being followed; scheduling employees; handling vacation requests and occasions when employees failed to show up for work; supervising and directing employees' work; maintaining financial and sales paperwork and handling the bank deposits; evaluating the work of her employees and recommending promotions; handling customer complaints; planning and apportioning work among her employees; maintaining the security of the store and guarding against theft; ensuring that the store stayed within the allocated payroll budget; and monitoring

legal compliance measures with respect to hiring.  (Moody Dep. at 51, 91-103, 121-22, 140-41, 194, 196, 212-15, 227-28, 235-38, 240-41, 245-48, 252, 255-67, 268-76, 283, 295 298-300, 315-24, 331-36, 338, 343-47, 349, 367, 372-76, 382, 386-89.)

Though Moody utilized a team concept in running her store, she was "in charge" and served as the head of the team she built at her store.  (*Id.* at 30-31, 93-95, 97-98, 210, 219-22.) Moody testified that her employees would have to call her if a customer wanted to return an item without a receipt and called her with questions while she was in the hospital.  (*Id.* at 303-04, 326-27.)  If Moody did not believe that a candidate would be a good fit at the store, she did not include that candidate in the group of candidates she recommended for hire to her District Manager.  (*Id.* at 260-64.)  Alternatively, if Moody believed the candidate should be hired, she made that recommendation to her District Manager.  (*Id.*)

Moody used her judgment in providing recommendations regarding the promotion of employees to Assistant Store Manager.  (*Id.* at 267-78, 373-76.)  Based on her evaluation of their performance and her belief that they could handle the job, during her time as Store Manager for Store 2807, Moody recommended that Elenix Mercado and Louis Pagan be promoted to Assistant Store Manager, and her District Manager followed each of these recommendations. (*Id.* at 267-78, 373-76.)


Moody performed her managerial duties at the same time that she performed nonexempt tasks, such as helping to run cash registers, unloading freight, and cleaning the store.  (*Id.* at 98-99, 327-28, 342-50.)  She maintained responsibility for the security of the store by watching for shoplifters, even as she was walking the floor.  (*Id.* at 232-33.)  Also, to the extent possible, Moody supervised and directed her employees while performing nonexempt tasks around the

store. *Id.* at 140. Moody also would occasionally have to address customer issues while performing non-managerial work. *Id.* at 321-22, 386-89.

As Store Manager, Moody reported to a District Manager. During the relevant time period Moody's District Managers included Joann Palmeri from February 7, 2005 to June 25, 2005 (District 228, Store 2620), Richard Bradley from June 26, 2005 to October 7, 2007, and Luis Moran from October 7, 2007 to November 14, 2008 (District 420, Store 2807). (*Id.* at 228-32; Hartsell Decl. ¶ 7.) The District Manager at Store 2807 only visited her store twice each month. (Moody Dep. at 228-32.) Family Dollar's records indicate that during the relevant time period, Moody's District Manager at Store 2620 oversaw twenty stores throughout Florida, spanning a territory of approximately 35 miles from north to south and 15 miles from east to west. (Hartsell Decl. ¶ 7.) Moody's District Managers at Store 2807 were responsible for 15 stores throughout Florida, spanning a territory of 45 miles from north to south and 47 miles from east to west. (Hartsell Decl. ¶ 7.)

## STANDARD OF REVIEW

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party always bears the initial burden of "informing the district court of the basis for its motion," and identifying the matter "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Once the movant has met the initial burden, "the non-moving party 'may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.'" *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)). This is

particularly important where the nonmoving party bears the burden of proof. *Hughes*, 48 F.3d at 1381. A genuine issue for trial exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id*. at 249-50. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict.

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id*. at 248. "The determination of whether an employee falls within the scope of a FLSA exemption is ultimately a legal question," *Walton v. Greenbrier Ford, Inc.*, 370 F.3d 446, 450 (4th Cir. 2004), and the Fourth Circuit has repeatedly affirmed the grant of summary judgment where the facts demonstrate that an employee is exempt. *See, e.g., Grace v. Family Dollar Stores, Inc.*, 637 F. 3d 508 (4th Cir. 2011) (affirming grant of summary judgment and holding that Family Dollar Store Manager was exempt executive); *Darveau v. Detecon, Inc.*, 515 F.3d 334 (4th Cir. 2008); *Jones v. Virginia Oil Co., Inc.*, 69 Fed. Appx. 633 (4th Cir. 2003); *Smith v. First Union National Bank*, 202 F.3d 234 (4th Cir. 2000).

## DISCUSSION

### 1. Collateral Estoppel does not Preclude Family Dollar's Motion for Summary Judgment

Moody asserts that as an opt-in plaintiff in the *Morgan v. Family Dollar Stores* litigation, the jury has already found that Moody and other similarly situated plaintiffs were improperly classified as exempt executive employees. (Doc. 1023, Pl.'s Resp. at 1.) Moody suggests that collateral estoppel precludes the Defendant's summary judgment motion.

The party invoking collateral estoppel has the burden of proving that:  (1) the issue sought to be determined is identical to the one actually litigated in an earlier suit; (2) the issue was actually determined in a prior proceeding; (3) the issue was a critical and necessary part of judgment in the prior proceeding; (4) the prior judgment is final and valid; and (5) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the previous forum.  *Collins v. Pond Creek Mining Co.*, 468 F.3d 213, 217 (4th Cir. 2006); *see e.g., Sedlack v. Braswell Servs. Grp., Inc.*, 134 F.3d 219, 224 (4th Cir. 1998) (citing *Ramsay v. U.S. Immigration and Naturalization Serv.*, 14 F.3d 206, 210 (4th Cir. 1994)).

Moody cannot meet her burden of demonstrating that the issue herein is identical to the one previously litigated because the fact-specific details of Moody's responsibilities and actions as Store Manager were not addressed by the *Morgan* court.  This Court and the Fourth Circuit have explicitly rejected the attempt to cast this action as a carbon copy of *Morgan v. Family Dollar Stores.*  551 F.3d 1233 (11th Cir. 2008).  *See e.g., Grace v. Family Dollar Stores, Inc.*, 637 F.3d 508, 518 (4th Cir. 2011) ("While Grace argues that the facts in *Morgan* and in the current case are the same, there is no basis to support that claim."); *Grace v. Family Dollar Stores, Inc.*, 3:08 MD 1932-GCM, 2011 U.S. Dist. LEXIS 84386 at *22 n.2 (W.D.N.C. July 29, 2011) ("[T]his Court has clearly stated that this case is not *Morgan* and therefore, this Court would not be following the *Morgan* court.").  The determination that individuals in *Morgan* were not properly classified as exempt during a particular time period does not mean that those individuals are presumptively and indefinitely non- exempt.  Moody's responsibilities and duties during this specific time period were not before the court until now and therefore the issue herein is not identical to the issue actually litigated in the earlier suit.

### 2. There is no Genuine Dispute of Material Fact that Moody Qualifies as an Exempt Executive under the Fair Labor Standards Act

The Fair Labor Standards Act ("FLSA") requires that an employee receive overtime pay if he or she works more than forty hours a week. 29 U.S.C. § 207(a)(1). The FLSA, however, exempts from this requirement "any employee employed in a bona fide executive…capacity." 29 U.S.C. § 213(a)(1). The Department of Labor ("DOL") has promulgated regulations which further describe and interpret the scope of this exemption.

The current regulations provide that an employee qualifies as an executive if: (1) she is compensated on a salary basis at a rate of at least $455 per week; (2) her primary duty is management of the enterprise; (3) she customarily and regularly directs the work of two or more other employees; and (4) she has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight. 29 C.F.R. § 541.100(a) (2004).

Moody is not challenging the first or third tests, thus the only tests at issue are (1) whether Moody's primary duty is management of the enterprise and (2) whether she has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight. The DOL has also promulgated additional regulations which further describe and define these tests; these additional regulations are discussed below. In light of these regulations, Moody qualifies as an exempt executive.

### a. Family Dollar Satisfies the Primary Duty Test

The regulations provide guidance as to how an employee's primary duty may be determined. The regulations instruct that the determination should be "based on all the facts in a

particular case." 29 C.F.R. § 541.700(a). The regulations set forth, but are not limited to, four factors to consider in this analysis: (1) the amount of time spent in the performance of managerial duties; (2) the relative importance of the managerial duties as compared with other types of duties; (3) the relative freedom from supervision; and (4) the relationship between the manager's salary and the wages paid to other employees for the kind of nonexempt work performed by the supervisor. (*Id*.)

Upon consideration of the factors identified for determining whether Moody's primary duty was management, the Court concludes that the factors are readily satisfied.

### i. **The Amount of Time Spent in Performance of Managerial Duties**

The regulations provide a list of "management" activities, which include, but are not limited to:

> Interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing their work, maintaining their production or sales records for use in supervision or control; appraising their productivity and efficiency for the purpose of recommending promotions or other changes in their status; handling their complaints and grievances and disciplining them when necessary; planning the work; determining the type of materials, supplies, machinery or tools to be used or merchandise to be bought, stocked, and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety of the [employees] and the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.[2]

29 C.F.R. § 541.102.

---

[2] An employee need not perform all management duties listed in the regulations, or evenly regularly perform such duties, in order to be considered an exempt executive. *See Aguirre v. SBC Communs., Inc.*, 2007 U.S. Dist. Lexis 72666, 63-62 (S.D. Tex. Sept. 30, 2007) (finding that "plaintiffs' 'primary duty' for purposes of the executive exemption was 'management,' despite the fact that the plaintiffs did not perform other 'managerial' duties listed in Section 541.102.").

Moody explicitly testified that she performed *almost every one* of these management activities as a Family Dollar Store Manager. [3]  For example, Moody interviewed and screened potential employees and provided hiring recommendations (Moody Dep. at 260-66, 268-69, 273-76.); provided training to her employees on Family Dollar benefits, policies, and procedures (*Id*. at 51, 93-100, 121-22, 140-41, 173-74, 194, 212-214, 234-38, 252, 283, 323-34, 343-44, 346-48.); assigned employees to a schedule and set their individual hours of work, including having to adjust the schedule if employees needed or requested time off (*Id*. at 315-21.); and directed and supervised her employees' work.  (*Id*. at 227-28, 240-41, 245-49, 295, 300.)  In addition, Moody maintained and was responsible for certain sales and financial records, as well as bank deposits and incident reports (*Id*. at 101-02, 332-36, 346-49.); and evaluated the work of her employees for the purpose of recommending promotions (*Id*. at 234-35.)  Furthermore, Moody was responsible for the safety and security of the store (*Id*. at 91-92, 142-43, 350-51.); controlling and staying within the allocated payroll budget (*Id*. at 366-68, 382.); and monitoring legal compliance measures with respect to hiring, such as completing I-9 paperwork.  (*Id*. at 338-39.)

Moody cannot overcome the exemption by claiming that she spent the majority of her time performing non-managerial duties.  The regulations state that an employee who spends more than fifty percent of his or her time performing managerial work will typically satisfy the primary duty requirement.  29 C.F.R. § 541.700(b).  The regulations, however, also emphasize that "time alone…is not the sole test" and that exempt

---

[3] The fact that the Assistant Managers can perform the same tasks as Moody does not render her tasks and duties any less managerial.  Courts have consistently held that the fact that a non-exempt employee may sometimes perform exempt duties does not make these duties any less exempt/managerial. *See Baldwin v. Trailer Inns., Inc.*, 266 F.3d 1104, 1115 (9th Cir. 2001) ("[t]hat the [non-exempt] assistant managers may have performed some managerial tasks does not render the tasks non-exempt.").

executives are not required to spend more than fifty percent of their time performing exempt work if other factors support the conclusion that management is their primary duty. *Id.* In *Grace*, the Fourth Circuit explained that "[t]here is no per se rule that once the amount of time spent on manual labor approaches a certain percentage, satisfaction of this factor is precluded as a matter of law." 637 F.3d 508, 515 (4th Cir. 2011).

The regulations also specifically address the concept of concurrent duties. 29 C.F.R. § 541.106. Concurrent performance, or multi-tasking, of exempt and nonexempt work is explicitly recognized as a managerial duty by the DOL's regulations. *Id.*; *see also* 29 U.S.C. § 213(a)(1).[4] "It is misleading simply to add up the time that [Plaintiff] spent unloading trucks, stocking inventory, running cash registers, or sweeping floors and conclude thereby that she was merely a clerk and not a manager." *Grace*, F.3d at 516.

Moody was ultimately responsible for the performance of the store and remained the highest ranking employee in the store, even while performing nonexempt work. (Moody's Dep. at 98-99, 129-30, 221-22, 327-28, 342-50.) Thus, Moody "remain[ed] responsible for the success or failure of the business operations under [her] management while performing the nonexempt work." 29 C.F.R. § 541.106. In other words, Moody performed her nonexempt tasks in the context of her overall responsibility to ensure the store was profitable. *See Grace*, 637 F.3d at 516.

In *Grace*, the Fourth Circuit found the plaintiff "was performing management duties whenever she was in the store, even though she also devoted most of her time [99%] to doing the mundane physical activities necessary for its successful operation." 637 F.3d at 517. Similar to

---

[4] The FLSA recognizes the nature of retail business and states that "an employee of a retail or service establishment shall not be excluded from the definition of an employee employed in a bona fide executive or administrative capacity because of the number of hours in his work week which he devotes to activities not directly or closely related to the performance of executive or administrative activities." 29 U.S.C. § 213(a)(1).

the plaintiff in *Grace*, even though Moody contends that she spent the majority of her time performing nonexempt work, she was also the person responsible for running the store and performed her nonexempt tasks concurrently with her exempt managerial work. (Moody Dep. at 30-31, 93-95, 97-98, 210, 219-22.) For example, if Moody was not in the store her employees would have to call her if a customer wanted to return an item without a receipt. (*Id*. at 326-27.) Moody's team even called her with questions while she was in the hospital. (*Id*. at 303-04.) Moreover, as contemplated by 29 C.F.R. § 541.700(c), Moody had the discretion and flexibility to choose what tasks to perform herself and what tasks to delegate to other employees. (*Id*. at 228-32.) Thus, Moody had a choice of which duties to perform, in contrast to a nonexempt employee who would simply perform the task to which he or she was assigned. (*Id*.) Moody also had the authority and the ability to direct other employees to perform this nonexempt work. (*Id*. at 227-28, 240-41, 245-49, 295, 300.)

While Moody argues that management was not her primary duty because she spent the majority of her time engaged in manual labor, the regulations and the Court in *Grace* clarify that performance of these duties, in conjunction with overall supervision and management of the store, is not contrary to the application of the exemption. Thus, Moody's own testimony regarding her duties and tasks reflect that they were undeniably managerial in nature and easily meet the requirements of the executive exemption. *See Grace*, 637 F.3d at 508.

### ii. The Relative Importance of the Managerial Duties as Compared with Other Types of Duties

Moody's managerial duties were more important than the other duties she performed because they were critical to the operation of the store. In *Grace*, the plaintiff's managerial tasks, which included filling out paperwork, addressing customer

complaints, working with employees on their schedules, and collecting cash, were critical to the operation of the store, as there was "*no one else at the site to direct these actions*." *Grace*, 637 F.3d at 517 (emphasis in original). Similarly, Moody's managerial tasks, which included interviewing and employee screening (Moody Dep. at 260-66, 268-69, 273-76.), training (*Id*. at 51, 93-100, 121-22, 140-41, 173-74, 194, 212-14, 234-38, 252, 283, 323-34, 343-44, 346-48.), store security (*Id*. at 91-92, 142-43, 350-51.), bank deposits and financial and sales paperwork (*Id*. at 101-02, 332-36, 346-49.), scheduling (*Id*. at 315-21.), and the overall supervision and direction of her employees, were critical to the operation of the store. (*Id*. at 227-28, 240-41, 245-49, 295, 300.)

While Moody argues that she was under the direct supervision of her District Manager, she nonetheless stated that the District Manager of Store 2807 only visited her store twice each month– not enough to direct the managerial tasks. (*Id*. at 229-32.) Therefore, because she was the only person running the store, the store could not have operated successfully without Moody's handling of these managerial tasks.

### iii. Relative Freedom from Supervision

Relative freedom from supervision does not demand complete freedom from supervision. In *Grace*, the plaintiff's supervising District Manager typically visited the store once every two to three weeks. *Grace*, 637 F.3d at 517. The court also noted, apart from his supervision, which was not uncharacteristic for any retail operation, the district manager was not a "micro-manager who constantly was looking over [the manager's] shoulder." *Id*. The supervision of seventeen stores would hardly permit [the District Manager] to micro-manage all of them. *Id*.; *see also Thomas v. Speedway Super America LLC*, 506 F.3d 496, 504-509 (6th Cir. 2007) (court found it

significant that plaintiff's District Manager was responsible for ten to twelve stores, as opposed to situations where a higher level manager was responsible for only a few stores).

Moody was relatively free from supervision during the relevant time period. Moody testified that her District Manager visited the store twice each month. (Moody Dep. at 228-32.) Moreover, Family Dollar's records indicate that during the relevant time period, Moody's District Manager for Store 2620 oversaw twenty stores, including Moody's store, spanning a territory of approximately 35 miles from north to south and 15 miles from east to west in Florida. (Hartsell Decl. ¶ 7.) Moody's District Managers for Store 2807 were responsible for fifteen stores throughout Florida, spanning a territory of 45 miles from north to south and 47 miles from east to west. (*Id*.) Though Moody was in contact with her District Managers regularly, this does not equate to exacting supervision. In *Grace*, the Fourth Circuit held that the plaintiff was relatively free from direct supervision, despite her being in contact with her District Manager by telephone and email, and being subject to company policies, procedures, and budgetary requirements, as this type of supervision "was not uncharacteristic for any retail operation." 637 F.3d at 517. The infrequency of the District Managers' visits and the large number of stores they were responsible for supervising does not allow them to micro-manage each individual store. *See Grace*, 637 F.3d at 517; *Thomas*, 506 F.3d at 508.

### iv. Relationship Between Salary and Wages Paid to Other Employees for the Kind of Nonexempt Work Performed by the Supervisor

To determine the relationship between a managerial salary and wages paid to nonmanagerial employees, the Fourth Circuit considered, first, whether the manager earned more, in absolute terms, than nonmanagerial employees and, second, whether the manager was a "profit center." *Grace*, 637 F.3d at 517. This second consideration asks whether the manager had the ability to influence the amount of her compensation. *Id*.

As to the first consideration, Moody earned significantly higher amounts on an hourly basis than nonexempt workers. The record shows that of the 24 nonexempt employees who worked at Moody's Store 2620 during the relevant time period, 19 made $7.00 per hour or less, and the highest paid nonexempt employee earned $14 per hour. (Hartsell Decl. ¶ 9.) Of the 17 nonexempt employees who worked at Store 2807 during the relevant time period, 10 made $8.00 per hour or less, and the highest paid nonexempt employee earned $10.00 per hour. (*Id*.) Even using the highest hourly wage for those employees whose wages changed over time, nonexempt employees received an average hourly wage of only $7.13 per hour at Store 2620 and $7.96 per hour at Store 2807. (*Id*.) In comparison, Family Dollar's records indicate that Moody worked an average of 69.08 hours per week at Store 2620 and an average of 63.62 hours per week at Store 2807. (*Id*. at ¶ 6.) Even setting aside her bonus payment, Moody earned compensation, which when computed on an hourly basis, averaged between $11.79 and $14.87 per hour during the relevant time period. A review of these calculations reveals a significant difference in wages between Moody and her nonexempt employees.

As to the second consideration, Moody was a "profit center," her bonuses depended on her store's profitability and were directly tied to her performance in terms of sales, shrink, and inventory results. (Moody Dep. at 517-18.); *See Grace*, 637 F.3d at 517. Moody earned six bonuses during the relevant time period, including (1) $689.43, (2) $111.84, (3) $1,138.84, (4) $1,380.32, (5) $37.25, and (6) $903.31. (Hartsell Decl. ¶ 5.) These were bonuses for which nonexempt store employees were not eligible. (*Id*.) Therefore, since Moody had the ability to directly influence her own compensation, this factor is satisfied.

### v. Frequency With Which the Employee Exercises Discretionary Power

While this factor is no longer an explicit factor in the "primary duty" analysis under the current regulations, the fact that Moody exercised discretion virtually every day and all day long in her capacity as store manager supports that her primary duty was management. Moody decided how to assign and apportion work among herself and her employees (Moody Dep. at 227-232, 240-41, 245-49, 295, 300.), how to adjust the schedule (*Id*. at 315-21.), how to interview candidates (*Id*. at 260-66, 268-69, 273-76.), and how to make sure the store ran safely (*Id*. at 91-92, 142-43, 350-51.); while at the same time satisfying customers. All of these tasks involved "discretionary acts inherent in being responsible for the successful operation of a retail store." *Grace*, 637 F.3d at 517. Moreover, the fact that Family Dollar maintains certain policies and procedures for the sake of consistency does not mean that Moody failed to exercise discretion in enforcing these policies and procedures.[5]

### b. Authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight

Finally, the additional prong of the executive exemption test contained in the current regulations states that an exempt employee has authority to hire *or* fire other employees *or* his recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees are given particular weight. 29 C.F.R. § 541.100(a)(4). The DOL provides guidance with respect to whether an employee's recommendations satisfy this standard. Specifically, the "factors to be considered include, but are not limited to, whether it is part of the employee's job duties to make such suggestions and recommendations; the frequency with which such suggestions and recommendations are made or requested; and the frequency with which the

---

[5] *See Murray v. Stuckey's, Inc.*, 50 F.3d 564, 570 (8th Cir. 1995) (standardized procedures and policies may circumscribe but do not eliminate discretion of on-site store manager); *Thomas v. Speedway Super America LLC*, 506 F.3d 496, 507 (6th Cir. 2007) (manager still exercised discretion on a daily basis even though store had standardized operating procedures); *Grace v. Family Dollar Stores, Inc.*, 637 F.3d 508 (4th Cir. 2011) (manager still exercised discretion even though she was subject to company policies and the company template for a store in the Family Dollar chain).

employee's suggestions and recommendations are relied upon." 29 C.F.R. § 541.105. Importantly, the employee's recommendations "may still be deemed to have 'particular weight' even if a higher level manager's recommendation has more importance and even if the employee does not have the authority to make the ultimate decision as to the employee's change in status." *Id*.

Moody's deposition testimony establishes that she meets the additional prong of the executive exemption test contained in the current regulations, namely that her suggestions and recommendations as to the hiring and change of status of other employees were given particular weight. Moody was actively involved in the interviewing and employee screening process. (Moody Dep. at 260-66, 268-69, 273-76.) Moody testified that when screening and interviewing candidates, she would primarily focus on whether they had a criminal background and the length of time working for previous employers, and based on her judgment of whether they would be a good fit in her store Moody determined whether the candidate should move forward in the hiring process. (*Id*. at 260-64.) If Moody did not believe that a candidate would be a good fit at the store, she did not move the candidate forward in the process. (*Id.*) Moody therefore effectively controlled which candidates were presented for possible District Manager approval. Similarly, Moody used her judgment in providing recommendations regarding the promotion of employees to Assistant Store Manager. (*Id*. at 267-78, 373-76.) Courts have recognized that a manager plays an important role in the hiring process when she has the ability to veto a potential hire by not presenting the applicant to her supervisor. *See Pollard v. GPM Invs., LLC*, No. 3:10-cv-115, 2011 U.S. Dist. LEXIS 24199 at *27 (E.D. Va. Mar. 10, 2011) (holding that managers "had sufficient input in the hiring, firing, and promotions to justify their exemptions" where the

managers screened applicants and determined whether they would continue in their application process).

In addition, Moody's District Manager closely followed Moody's hiring and promotion recommendations. Moody testified that based on her evaluation of their performance and her belief that they could handle the job, she recommended that Elenix Mercado and Louis Pagan be promoted to Assistant Store Manager, and the District Manager followed both of these recommendations. (Moody Dep. at 267-78, 373-76.)

Therefore, while Moody may not have had the ultimate decision making authority with respect to hiring, it is undisputable that she controlled the screening process and at least some of her recommendations as to hiring, promotion and termination were closely followed, thereby satisfying the particular weight requirement.

## CONCLUSION

Looking at the facts in the light most favorable to the non-moving parry, the Court finds that Family Dollar has satisfied the DOL regulations qualifying Doris Moody as an exempt executive under the FLSA. No reasonable jury could find otherwise. Therefore, Family Dollar is entitled to judgment as a matter of law.

## ORDER

IT IS ORDERED that

(1)    Defendant's Motion for Summary Judgment (Doc. No. 972) is GRANTED and Plaintiff Doris Moody is dismissed;

(2)    The Court finds that there is no just reason to delay finding of final judgment for Family Dollar with regard to Plaintiff Doris Moody's claim against Family Dollar;

(3)     The Clerk is directed to enter final judgment, pursuant to Rule 54(b), for Family Dollar

        with regard to Plaintiff Doris Moody.


                                        Signed: April 8, 2014


                                        Graham C. Mullen
                                        United States District Judge