UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:08MD1932

| | |
|---|---|
| IN RE FAMILY DOLLAR ) | |
| FLSA LITIGATION ) | |
| ) | |
| _____ ) | **ORDER** |
| ) | **and** |
| *Concerning Samuel v. Family Dollar* ) | **ORDER TO SHOW CAUSE** |
| *Stores* ) | |
| ) | |
| Case No. 3:12-cv-1951 ) | |
| _____ ) | |

**THIS MATTER** is before the Court on Plaintiffs' Motion for Judicial Disqualification and/or Recusal, and Motion to Stay Pending Resolution of Disqualification/Recusal (Doc. No. 1204). The Court notes that the presiding District Judge (Honorable Graham C. Mullen) requested the undersigned – as the Chief Judge of the Western District of North Carolina – to rule on the disqualification and recusal issues. Judge Mullen already granted that portion of the instant motion seeking a stay. (Doc. No. 1242). Thus, the only issue before the undersigned is whether Judge Mullen should be disqualified or recused in this matter. To be clear, the ruling herein expresses no opinion whatsoever as to the merits of this action, the propriety of this matter to proceed as a multi-district litigation case, the issue of remand, or the previous rulings made by Judge Mullen. For the reasons that follow, the Court DENIES Plaintiffs' motion, and requests additional briefing as to why SANCTIONS should not be imposed on Plaintiffs' counsel.

I. **Factual Background**

This is an action for overtime brought pursuant to the Fair Labor Standards Act, transferred to the current multi-district litigation (MDL) in 2008, the Honorable Judge Graham C. Mullen presiding. The conduct relevant to the instant motion began in August of 2013.

1

Plaintiffs' counsel, Mr. Kleppin, filed a motion to extend the discovery period from August 28, 2013, to October 31, 2013. (Doc. No. 1038). Defendant's counsel, Mr. Ybarra, responded with a motion to extend discovery until September 30, 2013. (Doc. No. 1044). On September 24, Judge Mullen amended the scheduling order for the purpose of permitting further depositions specified in the order. (Doc. No. 1068). Thereafter, Plaintiffs, through counsel, filed a motion objecting to Mr. Ybarra's conduct during depositions and seeking to compel counsel to comply with the rules governing depositions in the future. (Doc. No. 1073). (This motion was denied in March. (Doc. No. 1176)). Thereafter, defense filed a motion for sanctions against Mr. Kleppin for canceling a scheduled deposition at the last minute. (Doc. No. 1096).

In addition, numerous discovery, tag-along, and summary judgment motions were filed throughout the course of these months. Many of these motions were submitted with proposed orders attached. On January 31, 2014, Mr. Ybarra sent a letter to the court requesting a status conference and an abeyance for all summary judgment motions. (Doc. No. 1143, Ex. 1). Mr. Kleppin promptly filed a motion to strike the letter, (Doc. No. 1143), which was denied as frivolous. (Doc. No. 1150). Judge Mullen's order postponed all summary judgment deadlines pending a status conference scheduled by the court. In addition, Judge Mullen found "Mr. Kleppin's behavior to be disturbing," calling into question his ability to remain lead counsel for the plaintiffs in the MDL. (Id.)

On March 17, 2014, Judge Mullen held a hearing on nine motions pending before the court, including the motion to compel the deposition of Charles Giron, the aforementioned deposition canceled by Mr. Kleppin. Mr. Kleppin told the court that he canceled the deposition scheduled for October 1 because he did not want to violate the court's order ending discovery on September 30. (Doc. No. 1183 at 56-58). Judge Mullen's ruling from the bench was as follows:

2

In this matter the plaintiff had noticed Mr. Giron's deposition for the 1st of October. The parties had agreed that the deposition would proceed on the 1st of October; which although technically was one day past the deadline of September 30th, everybody had agreed. Nobody got back to the Court to say is this okay. Mr. Kleppin didn't get back to the Court and say is this okay. But he does not deny that he agreed that this matter would proceed at that time. He canceled this on the literal eve of the deposition.[1]

This is unreasonable vexatious behavior and his explanation is disingenuous at best. I don't know why he acted that way, but he did. And I find that this is objectively reckless conduct. And his explanation is disingenuous. I'm going to sanction Kleppin for $1,695.40, which is the cost for Mr. Ybarra's airfare, hotel and rental car. (Id. at 67-68; see also, Doc. 1178, Order Granting Motion for Sanctions).

Later in the hearing, Judge Mullen stated that Mr. Kleppin's behavior was "frankly, outrageous, totally outrageous. . . . [O]ff-the-wall inappropriate, unprofessional. . . ." (Doc. No. 1183 at 75-76). Judge Mullen also stated that he was considering whether to refer Mr. Kleppin to the Florida Bar. (Id. at 76).

On May 9, 2014, Judge Mullen referred Mr. Kleppin to the Florida Bar. (Doc. No. 1204, Ex. 2). On May 21, the Florida Bar made Mr. Kleppin aware of the referral. (Id.). On July 17, Mr. Kleppin filed the instant motion to recuse Judge Mullen and to the stay the matter pending resolution of disqualification. (Doc. No. 1204). The motion to stay was granted on August 25. (Doc. No. 1242). A response and reply were filed and the issue is now ripe for this Court's review.

## II. Legal Standard

Plaintiffs call to the Court's attention numerous iterations of the same legal standard. A judicial officer may not create even an appearance of impropriety; if he does, he must recuse himself. See Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847, 860-61 (1988). Title

---

[1] The deposition was scheduled for October 1, and that date was confirmed on the afternoon of September 30. After close of business on September 30, Mr. Kleppin cancelled the deposition and failed to appear the following day.

3

28 U.S.C. § 455 requires a federal judge to disqualify himself "in any proceeding in which his impartiality might reasonably be questioned." According to both the Fourth and Eleventh Circuits, this inquiry is objective. See In re Beard, 811 F.2d 818, 827 (4th Cir. 1987); Bivens Gardens Office Bldg., Inc. v. Barnett Banks of Florida, Inc., 140 F.3d 898, 912 (11th Cir. 1998). The purpose underlying this statute is to promote the public's confidence in the judiciary and in the judicial process itself. See Liljeberg, 486 U.S. at 861-66.

Title 28 U.S.C. § 144 mandates recusal when a party to any proceeding in a district court files an affidavit that the presiding judge has "a personal bias or prejudice either against him or in favor of any adverse party."[2] Under both § 455 and § 144, the alleged bias and prejudice must stem from an *extrajudicial* source, resulting in an opinion based on something "other than what the judge learned from his participation in the case." U.S. v. Grinnell Corp., 384 U.S. 563, 583 (1966). "Opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceeding . . . do not constitute a basis for bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." Liteky v. U.S., 510 U.S. 540, 555 (1994).

Neither statute provides a basis for recusal in the instant case. For the reasons hereinafter stated, the Court holds that the Honorable Judge Mullen's conduct as presiding judge over this MDL does not create even an appearance of impropriety, thus making recusal unnecessary.

### III. Timeliness

---

[2] Mr. Kleppin initially filed and signed the affidavit required by § 144. At least four circuit courts have held that § 144 requires the affidavit to be executed by a *party*; an affidavit signed by counsel is insufficient. See Pomeroy v. Merritt Plaza Nursing Home, Inc., 760 F.2d 654, 658-59 (5th Cir. 1985); Roberts v. Bailar, 625 F.2d 125, 128 (6th Cir. 1980); United States ex rel. Wilson v. Coughlin, 472 F.2d 100, 104 (7th Cir. 1973); Gieve v. Pence, 431 F.2d 942, 943 (9th Cir. 1970). The Court finds the issue moot since Mr. Kleppin attached an additional affidavit, signed by a plaintiff, with his Reply. (Doc. No. 1245, Ex. 2).

Defense initially argues that Plaintiffs' motion is untimely as a whole. United States v. Owens notes timeliness as an "essential element" of both § 144 and § 455, requiring counsel to raise the issue "at the earliest moment after knowledge of the facts." Owens, 902 F.2d 1154, 1156 (4th Cir. 1990); see also, Sine v. Local No. 992 Int'l Bhd. Of Teamsters, 882 F.2d 913, 915 (4th Cir. 1989) ("[M]otions to recuse must be filed at the first opportunity after discovery of the facts tending to prove disqualification."). A denial of the motion to recuse can be justified on timeliness grounds alone. See Newport News Holdings Corp. v. Virtual City Vision, Inc., 650 F.3d 423, 433 (4th Cir. 2011).

The dates of activities (based on this Court's review of the voluminous record) that serve as the basis for Mr. Kleppin's motion for recusal are as follows (each event is discussed in detail below):

> January 31, 2014: Mr. Kleppin is copied on the letter at issue in the instant case. (Doc. No. 1143, Ex. 1).
>
> February 4, 2014: Judge Mullen denies Mr. Kleppin's motion to strike the letter. In his order he specifically describes the phone call that took place between Mr. Ybarra and his law clerk, thus informing Mr. Kleppin of the call. Judge Mullen holds summary judgment deadlines in abeyance pending a hearing and status conference. (Doc. No. 1150).[3]
>
> March 17, 2014: Mr. Kleppin is sanctioned at the motion hearing (order filed on March 18) and Judge Mullen terms Mr. Kleppin's argument "disingenuous." (Doc. No. 1183).[4]
>
> May 21, 2014: Florida Bar sends Mr. Kleppin a letter informing him of Judge Mullen's referral. (Doc. 1204, Ex. 2).
>
> June 19, 2014: Florida Bar sends Mr. Kleppin a letter informing him that his matter has been referred to the Fort Lauderdale Branch. (Doc. 1204, Ex. 2).

---

[3] Plaintiffs claim this order was an improper "ghost order" that should serve as a further basis for recusal. (Doc. No. 1204 at 1-2).

[4] Plaintiffs claim that an additional order issued after the hearing – an order striking collective action allegations (Doc. No. 1175) – was another improper "ghost order" that should serve as a basis for recusal. (Doc. No. 1204 at 3-5).

5

> July 17, 2014: Mr. Kleppin files motion to recuse Judge Mullen. (Doc. No. 1204).

As the defense points out, Mr. Kleppin filed his recusal motion at least 120 days after the March 17-18 events about which he now complains, and at least 160 days after he was made aware of the alleged ex parte communications. (Doc. No. 1222 at 9).

In his reply motion, Mr. Kleppin argues that timeliness is not an issue because undue judicial delay, yet another basis he claims for recusal, took place in "early August 2014." (Doc. No. 1245 at 5). As best the court can tell from Mr. Kleppin's muddled explanation, Judge Mullen's order holding the summary judgment deadline in abeyance constitutes undue delay when it reaches the six-month mark – here, "early August 2014." Mr. Kleppin cites no persuasive authority for this contention.

Further, he argues that he filed the recusal motion three weeks after learning that the Florida Bar was going to prosecute Judge Mullen's referral and that Judge Mullen would be a witness against him in that proceeding. (Id.). Since no other communication from the Florida Bar appears on the docket aside from the aforementioned letters, the Court assumes the source of Mr. Kleppin's "knowledge" was the June 19 letter regarding the referral of his case to the Fort Lauderdale Branch of the Florida Bar. If this is the case, his motion was filed four weeks later, not three, as he asserts, and the Court would like to note its disapproval for such a blatant misrepresentation of facts.

The Court recognizes that a claim for recusal based on the bar referral is dangerously close to untimely, as four weeks hardly qualifies as "the first opportunity" or "earliest moment after knowledge of the facts" that the case law requires. The Court recognizes that the motion is arguably well-past timely for the other bases upon which Plaintiffs' counsel moves for recusal.

6

Even presuming timeliness for sake of Plaintiffs' argument that Judge Mullen's actions as a whole demonstrate impropriety, the Court does not find that recusal is necessary.

## IV. Arguments for Recusal

Turning now to the merits of Plaintiffs' motion, the Court rejects all claims alleging bias, prejudice, or the appearance of impropriety in the instant litigation. Mr. Kleppin alleges numerous acts by Judge Mullen from which he concludes that a reasonable person might question Judge Mullen's impartiality, specifically (1) defense counsel's ex parte communication with Judge Mullen's law clerk, (2) Judge Mullen's referral of Mr. Kleppin to the Florida Bar, (3) Judge Mullen's use of "ghost orders" submitted by Defendant, and (4) harsh treatment from the bench. Each is addressed in turn.

### A. Ex parte communication with the Court's law clerk

Plaintiffs first argue that defense counsel engaged in ex parte communications with Judge Mullen's chambers, and that such communication warrants recusal. Plaintiffs assert the impropriety of a phone conversation that took place between defense attorney Mr. Ybarra and Judge Mullen's law clerk. Plaintiffs also assert the impropriety of the letter resulting from this conversation.

Judge Mullen put this entire event on the record in his order denying Plaintiffs' motion to strike the letter. The order states:

> Mr. Ybarra called [Judge Mullen's] law clerk to make the Court aware of additional litigation related to this MDL case that had recently been filed in Florida in anticipation of its likely transfer to the Court by the Judicial Panel for Multidistrict Litigation. Mr. Ybarra suggested to the Court that in light of the new action, pending discovery motions, and their potential impact on upcoming summary judgment deadlines, that a revision of the upcoming dispositive motion deadlines might be appropriate. [Judge Mullen's] law clerk requested that Mr. Ybarra confer with Mr. Kleppin, . . . to attempt to agree upon a proposed plan. Mr. Ybarra was instructed that if counsel were unable to agree, that he should draft a letter to the Court informing the Court and requesting a status conference.

7

> Mr. Ybarra promptly did so, and faxed a letter to the Court informing the Court
> that the parties were unable to agree on any revision of the deadlines, and
> requested a status conference before the Court to address the issues outlined
> above.

(Doc. No. 1150 at 1).

Mr. Kleppin does not dispute these facts; in fact, he cites the exact language in his motion for recusal. (Doc. No. 1204 at 6).

The Court has neither discovered any Fourth Circuit case law directly on point, nor has Plaintiffs' counsel directed it to any. Other circuit and district courts have held that ex parte communications with chambers concerning "routine matters of scheduling or administration" are permitted. Kaufman v. Am. Family Mut. Ins. Co., 2008 WL 4980360 at *3, (D. Colo. Nov. 19, 2008) aff'd, 601 F.3d 1088 (10th Cir. 2010); see also Carranza v. Fraas, 763 F. Supp.2d 113, 120 (D.D.C. 2011) ("Ex parte communications between a judge, acting through one of his or her law clerks, and counsel or a witness that do not touch upon the merits of the case generally do not warrant relief."); In re Adbox, Inc., 234 F. App'x 420, 421 (9th Cir. 2007) (holding that contacts between the party and judges and law clerk did not warrant recusal because the "communications related to purely procedural matters"). Additionally, the Second Circuit affirmed the use of phone calls and letter writing in scheduling matters in U.S. v. Helmsley:

> Where scheduling is involved, it is commonplace for trial judges to have their
> clerks telephone counsel from one side requesting either that he initiate discussion
> with the adversary over a schedule for submissions or that he a write a letter
> setting forth a proposal for scheduling. Such a call would not involve discussion
> of the merits or of any issue in the case; . . . . It serves only to set in motion an
> exchange of proposals for a schedule. *This is routine court practice in case
> management.*

Helmsley, 760 F. Supp. 338, 345 (S.D. NY 1991) aff'd, 963 F.2d 1522 (2d Cir. 1992) (emphasis added).

The record is clear that the conversation between Mr. Ybarra and the law clerk was strictly related to matters of procedure, specifically scheduling, and did not touch the merits of the case. (See Doc. No. 1150). The resulting letter was copied to Mr. Kleppin via email and facsimile; it does not constitute an ex parte communication. See COMMUNICATION, Black's Law Dictionary (9th ed. 2009) (defining "ex parte communication" as "a communication between counsel and the court when opposing counsel is not present"). Further, Mr. Kleppin does not deny that he received the letter and had knowledge of its contents.

Even presuming the conversation between Mr. Ybarra and the law clerk was an improper ex parte communication, recusal still would not be justified. In examining ex parte communications, the Court focuses "first, on the parties' opportunity to participate in the court's decision and, second, on whether the ex parte proceedings were unfairly prejudicial." See RZS Holdings AVV v. PDVSA Petroleo, S.A., 506 F.3d 350, 357 (4th Cir. 2007). Here, Mr. Kleppin had the ability to confer with Mr. Ybarra regarding scheduling *before* Mr. Ybarra sent the letter. Mr. Kleppin had the exact opportunity to avail himself of this method of communication with the court, but instead of responding in kind, he filed a motion to strike. (Doc. No. 1143). The fact that Mr. Kleppin disagreed with Judge Mullen's ultimate ruling on the scheduling issue neither evidences "unfair prejudice" nor emanates the "appearance of impropriety" that Plaintiffs claim it does, and cannot serve as a basis for recusal. As such, no recusal is necessary.

**B. Judge Mullen's referral of Mr. Kleppin to the Florida Bar**

Plaintiffs next argue that Judge Mullen should have recused himself from the case after he referred Mr. Kleppin to the Florida Bar. The bar referral letter provides in full:

> I am writing to the Florida Bar to complain about the conduct of one of your members, Chris Kleppin.

9

> Mr. Kleppin has been designated as lead Plaintiff Counsel in several Multi District Litigation cases. As such, it is his responsibility to supervise and participate in pretrial efforts to conduct all pretrial matters so that the MDL Court can send the case back for trial. This role requires a great deal of cooperation and professionalism. In my opinion, he has been neither cooperative nor professional.
>
> Enclosed is a packet of information which I believe clearly establishes a pattern of unacceptable behavior by Mr. Kleppin. I request that the Florida Bar review this matter and take whatever action it finds appropriate.

(Doc. No. 1204, Ex. 2).

In his motion, Mr. Kleppin mischaracterizes Judge Mullen's referral as a request for "formal bar discipline," when in actuality, the referral merely requests that the Florida Bar take whatever action it finds appropriate. (See Doc. 1204 at 9). Regardless, referral to a bar association for disciplinary review does not disqualify a judge or "call into question the impartiality of a judge." U.S. v. Mendoza, 468 F.3d 1256, 1262 (10th Cir. 2006). A judge is obliged to alert state bar authorities to attorney misconduct and "should not be disqualified for faithfully performing the duties of his office." Id. Further, the Committee on Codes of Conduct for United States Judges has stated that "when a judge files a complaint of unprofessional conduct against a lawyer, . . . and the lawyer is before the judge as counsel in the case giving rise to the unprofessional conduct, . . . the judge is not required to recuse on grounds of bias or prejudice simply because the complaint was filed." Advisory Opinion 66, pg. 66-1 (June 2009).

In support of his argument, Mr. Kleppin cites to previous cases in which he has moved to recuse a district court judge on the basis of the judge's referral of Mr. Kleppin to the state bar. See Perez v. Carey Intern., Inc., 2009 WL 4165166 at *1 (S.D. Fla. Aug. 25, 2009). The circumstances surrounding Perez are relevant. In 2009, Mr. Kleppin obtained a jury verdict in favor of his client – E.W. Ventures, Inc. – in a Southern District of Florida case, Exime v. E.W. Ventures, Inc., 2009 WL 1423345 at *1 (S.D. Fla. May 29, 2009). He thereafter moved for costs

and moved to recuse the presiding Judge Patricia Seitz, claiming that her demeanor during the trial showed bias against Mr. Kleppin and his client. Id. An additional ground for recusal was the fact that prior to Exime, Judge Seitz referred Mr. Kleppin to the Florida, Massachusetts, and Washington D.C. Bars as a result of litigation tactics he used in another case, Bernal v. All American Investment Realty, Inc., 479 F. Supp.2d 1291 (S.D. Fla 2007). In Exime, Judge Seitz concluded that recusal was improper and denied the motion. Exime at *4. Thereafter, in Perez, Mr. Kleppin moved to recuse Judge Seitz for the aforementioned bar referral related to Bernal; this time, Judge Seitz agreed with Mr. Kleppin, and recused herself from the case, stating that she was set "to appear as a witness in a Florida Bar proceeding against" Mr. Kleppin. Perez at *1.

Judge Seitz's recusal in Perez in unpersuasive. Judge Seitz referred Mr. Kleppin to the state bar in 2007, and she did not recuse herself from presiding over Mr. Kleppin's cases, namely Perez, until the Florida Bar filed a formal complaint against Mr. Kleppin in 2009. The formal complaint is issued at Stage 4 of the Florida Bar's investigatory procedure.[5] Judge Seitz did not recuse herself until her Bernal referral had reached that stage. (See Doc. No. 1222 at Ex. 4 and 5). In the instant case, Judge Mullen's referral has been transferred to a branch office, and is presumably undergoing a "factual analysis" (Stage 2). It must then be referred to a grievance committee who will make a probable cause determination (Stage 3). Only then will a formal complaint be filed against Mr. Kleppin, which is the point at which Judge Seitz recused herself in Perez. Therefore, even if Perez were binding on this Court, it would not be applicable; it would in fact weigh in favor of *denying* Mr. Kleppin's instant motion for recusal.

---

[5] According to its website, the Florida Bar has 5 stages of investigation- Stage 1 – Complaint Intake & Preliminary Investigation; Stage 2 – Branch Investigation; Stage 3 – Grievance Committee Process; Stage 4 – Trial; Stage 5 – Board of Governors Review. (See Doc. No 1222, Ex. 5). Based on the information in the record, witnesses are interviewed at Stage 3 at the earliest. (Id.).

11

### C. Judge Mullen's Use of "Ghost Orders"

Plaintiffs' claim that Judge Mullen's use of "ghost orders" runs contrary to Fourth Circuit precedent and mandates immediate recusal. Mr. Kleppin confuses "ghost orders," which are discouraged by law, with proposed orders, which are required by the Local Rules. See Local Rule 7.1(G). Although he does not clarify what is meant by "ghost orders" (a term generally used to describe an attorney clandestinely drafting motions for a pro se litigant, see e.g., In re Fengling Liu, 664 F.3d 367 (2d Cir. 2011)), the case law he cites announces a general prohibition against a judge requesting or directing a winning party to prepare findings of fact and law, which the judge adopts verbatim in the form of an order or opinion. See U.S. v. El Paso Natural Gas Co., 376 U.S. 651, 656 (1964); Chicopee Mfg. Corp. v. Kendall Co., 288 F.2d 719, 720 (1961). The distinguishing factor is that a "ghost order," as the term is used here, is filed *after* the judge has made a decision. See Anderson v. City of Bessemer City, N.C., 470 U.S. 564 (1985) ("We are also aware of the potential for overreaching and exaggeration on the part of attorneys preparing findings of fact when they have already been informed that the judge has decided in their favor.").

Local Rule 7.1(G) permits all parties to attach a proposed order to motions, which are placed on the docket. Naturally, opposing parties may address the contents of the other party's proposed orders and submit alternative recommendations. Mr. Kleppin's vehement objection to this common practice lacks merit and borders on frivolous. Further, his assertion that Judge Mullen adopted the proposed Motion to Strike order "verbatim" is a serious misrepresentation of fact. Even a quick comparison of the two will reveal several consequential inconsistencies

12

between the proposed order and the actual order. (Compare Doc. No. 1104, Ex. 1 (Proposed Order) and Doc. No. 1175 (Order)).[6] Plaintiffs' "ghost-order" claim is without merit.

### D. Other claims

Plaintiffs' additional arguments are unfounded and unsupported. He claims that Judge Mullen called him "disingenuous," which is another misrepresentation; Judge Mullen called Mr. Kleppin's explanation of his last-minute cancellation of a scheduled deposition "disingenuous." (Doc. No. 1183 at 67-68). Mr. Kleppin cites no applicable authority for the contention that Judge Mullen's usage of the term "disingenuous" warrants recusal. Defendant provides circuit court case law that holds just the opposite. See In re Beard, 811 F.2d 818, 830 (4th Cir. 1987) (finding that recusal was not required when the judge referred to the trial attorney as a "son-of-a-bitch" and "wise-ass" lawyer); In re Cooper, 821 F.2d 833, 843-44 (1st Cir. 1987) (finding that recusal was not necessary when a judge told an attorney he "has no credibility" and that the attorney's affidavit was "disingenuous").

Further, each assertion– the sanctions, the supposed harshness from the bench, the rulings in favor of defendants – is based on and grounded in the judicial rulings on the merits of the litigation. As stated above, when a claim is brought under either § 455 and § 144, the alleged bias and prejudice must stem from an *extrajudicial* source, resulting in an opinion based on something "other than what the judge learned from his participation in the case." U.S. v. Grinnell Corp., 384 U.S. 563, 583 (1966). According to the Justice Scalia,

> [J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion. In and of themselves . . . they cannot possibly show reliance on an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required . . . when no extrajudicial source is involved.

---

[6] Defendant's Proposed order to Extend Discovery (Doc. No. 1044, Ex. 1) and Judge Mullen's Order Extending Discovery (Doc. No. 1068) may be identical, but a verbatim adoption of dates and names in a scheduling order can hardly serve as the basis for a non-frivolous objection; as such, Plaintiffs' claim is without merit.

> *Not* establishing bias or partiality . . . are expressions of impatience, dissatisfaction, annoyance, even anger . . . . A judge's ordinary efforts at courtroom administration – even a stern and short-tempered judge's ordinary efforts at courtroom administration – remain immune.

Liteky, 510 U.S. at 555-56 (internal citations omitted).

In the words of the late Judge Widener, "Antipathy to an attorney is insufficient grounds for disqualification of the judge." In re Beard, 811 F.2d at 830. Mr. Kleppin has not proven that any of Judge Mullen's actions represent a deep-seated, continuing, and personal bias against Mr. Kleppin or his clients. His assertions lack merit.

## V.    Conclusion

According to Mr. Kleppin, "Judge Mullen's comments and actions would cause 'the average person on the street' to 'entertain a significant doubt' about her [sic] impartiality in the instant case." This is not so. Mr. Kleppin's average street person seems to this Court to be the hypersensitive, disgruntled party for whom recusal motions are used as a "brushback pitch to hurl at judges who do not rule in their favor." Belue v. Leventhal, 640 F.3d 567, 574 (4th Cir. 2011). The allegations brought by Plaintiffs, viewed individually or as a collective whole, do not require a recusal of the Honorable Judge Mullen. Therefore, this motion is DENIED.

## VI.    Sanctions

Plaintiffs' brief is chock-full of non-meritorious claims. His long-winded objections serve no purpose other than to delay these proceedings and create insurmountable barriers for this case's ultimate resolution. Further, Mr. Kleppin has repeatedly ignored the Local Rules of this district, displaying either inattentiveness, ignorance, or blatant disrespect towards binding authority.

For instance, Local Rule of Civil Procedure 7.1 clearly provides specifications for motions and briefs filed in civil cases in the Western District of North Carolina.

> (D) Page Limits, Fonts, and Spacing. Page limits, font sizes, spacing, and other formatting requirements are governed by the Standing Civil Order of the judge to whom the case is assigned. . . . Absent such requirements in the Standing Civil Order of the judge to whom the case is assigned, the page limit for any brief is 25 pages, the font size is a minimum of 12 point, **lines are double spaced**, margins are one inch, and each page is numbered.

LCvR 7.1(D) (emphasis added).

Mr. Kleppin's reference to this rule, on numerous occasions (see e.g., Docs. Nos. 1053, 1066) (requesting an extension for page limits)), demonstrates an awareness of this Local Rule. Nevertheless, and without any explanation for doing so, Plaintiffs' briefs have repeatedly failed to comply with the brief requirements, particularly the requirement that briefs be double spaced. By violating this requirement, Plaintiffs' briefs are significantly longer than permitted by the Local Rule.

A review of the docket in this matter indicates Mr. Kleppin's persistent, albeit inconsistent, failure to follow the Local Rule on brief limitations. (See Docs. Nos. 1102, 1108, 1211). In large part, these non-double-spaced briefs are only slightly less than twenty-five pages, thus indicating that had Plaintiffs' counsel complied with the rules on spacing, the briefs would have exceeded the twenty-five page limit. Notably, the docket reflects numerous instances where Plaintiffs' counsel used double spacing and complied with the twenty-five page limit. (See Docs. Nos. 1038, 1141, 1144, 1145). Therefore, it appears to this Court that Plaintiffs' counsel uses a "1.5 line spacing" to his advantage to skirt compliance with the Local Rule.

"The Court is a strong believer that the rules of the Court exist to create order out of chaos. Therefore, it is imperative that those rules be followed." McDougal v. G & S Tobacco

Dealers, L.L.C., 712 F. Supp.2d 488, 501 (N.D. W. Va. 2010) (striking brief for failure to comply with local rule regarding limitations on briefs); Iota Xi Chapter Of Sigma Chi Fraternity v. Patterson, 566 F.3d 138, 150 (4th Cir. 2009) (affirming trial court's decision to strike portions of a brief for noncompliance with local rules) (quoting Crowley v. L.L. Bean, Inc., 361 F.3d 22, 28 (1st Cir.2004) ("Within wide limits, it is for courts, not litigants, to decide what rules are desirable and how rigorously to enforce them.") (internal quotation marks omitted)).

For the conduct mentioned throughout this order and for his flagrant violation of the Local Rules, Mr. Kleppin is hereby ORDERED TO SHOW CAUSE AS TO why he should not be sanctioned in the Western District of North Carolina. Mr. Kleppin must submit his reasons in seven (7) calendar days and no later than September 25, 2014. Following the resolution of the show cause order, the Court will lift the stay.

IT IS THEREFORE ORDERED that Plaintiffs' Motion for Judicial Disqualification and/or Recusal (Doc. No. 1204) is DENIED.

IT IS SO ORDERED.

Signed: September 18, 2014

_____
Frank D. Whitney
Chief United States District Judge